UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: COMMERCIAL MONEY CENTER, INC., EQUIPMENT LEASE LITIGATION | : : : : : : : : : | Case No. 1:02CV16000<br><br>(MDL Docket No. 1490)<br><br>JUDGE O'MALLEY<br><br>**APPOINTMENT ORDER**<br>*(this Order applies to all cases)* |

Having had significant discussion with the parties at the September 22, 2005 Status Conference, and subsequent phone conferences with liaison counsel for the banks and the sureties, regarding the possibility of appointing a special master to assist the Court with the administration of this case on a going forward basis,[1] and based upon the parties' agreement as to the Special Master's identity, scope of authority, hourly rate and duration of service (subject to extension), the Court hereby **APPOINTS** as Special Master, **SHANNAN C. KRASNOKUTSKI, ESQ.**, of the following law firm:

> Nolan & Heller, LLP
> 39 North Pearl Street
> Albany, New York 12207
> (518) 449-3300 (general)
> (518) 432-3117 (direct)
> (518) 432-3123 (fax)
> *skrasnokutski@nolanandheller.com*

---

[1] As discussed at the September 22, 2005 conference, the complexity and volume of the *highly individualized* transactions at issue in this MDL, which resulted in a massive collective motion for judgment on the pleadings and undoubtedly will result in a myriad of transaction-specific motions for summary judgment, prompted the concept of appointing a special master to assist the Court in its administration of this MDL on a going forward basis. In that regard, the Court and the parties agree that the role of the special master in this MDL will primarily be an advisory one, directly conferring with the Court on the substantive and procedural issues presented by the parties.

This appointment is made pursuant to Federal Rule of Civil Procedure 53 and the Court's inherent authority.[2] As Rule 53 requires, the Court sets out below the Special Master's duties and terms and reasons for the appointment, and **ORDERS** the Special Master to "proceed with all reasonable diligence" per Rule 53(b)(2).

**IT IS FURTHER ORDERED** that the parties <u>shall confer and, within fifteen (15) days of the date of this Order, present the Court and the Special Master</u> with a Cost Apportionment Plan outlining how the Special Master's compensation will be apportioned among the parties. That document shall

---

[2] "Beyond the provisions of [Fed. R. Civ. P. 53] for appointing and making references to Masters, a Federal District Court has 'the inherent power to supply itself with this instrument for the administration of justice when deemed by it essential.'" *Schwimmer v. United States*, 232 F.2d 855, 865 (8th Cir. 1956) (quoting *In re: Peterson*, 253 U.S. 300, 311 (1920)); *see Ruiz v. Estelle*, 679 F.2d 1115, 1161 n.240 (5th Cir. 1982), *cert. denied*, 460 U.S. 1042 (1983) (same); *Reed v. Cleveland Bd. of Educ.*, 607 F.2d 737, 746 (6th Cir. 1979) (the authority to appoint "expert advisors *or* consultants" derives from either Rule 53 or the Court's inherent power). The Court's inherent power to appoint a special master, however, is not without limits. *See Cobell v. Norton*, 334 F.3d 1128, 1142 (D.C. Cir. 2003) (in the absence of consent by the parties, the inherent authority of the court does extend to allow appointment of special master to exercise "wide-ranging extrajudicial duties" such as "investigative, quasi-inquisitorial, quasi-prosecutorial role[s]").

This Court first discussed with the parties the possibility of appointing a special master during a status conference on September 22, 2005. *See* Fed. R. Civ. P. 16(c)(8, 12) ("At any conference under this rule consideration may be given, and the court may take appropriate action, with respect to . . . (8) the advisability of referring matters to a magistrate judge or master; [or] . . . (12) the need for adopting special procedures for managing potentially difficult or protracted actions that may involve complex issues, multiple parties, difficult legal questions, or unusual proof problems"). Following that conference and subsequent discussions with liaison counsel for the bank and surety groups, the parties communicated to the Court their agreement with regard to Ms. Krasnokutski's appointment as special master. The only areas of concern for any party pertain to the scope of the appointment, which the Court has assured the parties will be fairly narrow, and to costs, which the parties have agreed to apportion.

be filed on the master docket and mailed to the Special Master. If the parties so desire, the Cost Apportionment Plan may be filed under seal. For the benefit of the Special Master, the Cost Apportionment Plan shall include the names and addresses of the entities or individuals to whom the Special Master should direct approved billings (*see* section on Compensation, *infra*).

## I. BACKGROUND

These actions were transferred to this Court by order of the Judicial Panel on Multi-District Litigation ("the MDL Panel"), issued on October 25, 2002 (Doc. 1 in 02-16000). This Court has ordered that these actions be coordinated for pretrial purposes (Doc. 2 in 02-16000). As has been summarized in various prior orders of this Court, the dispute in these actions centers around the Sureties' potential liability on a plethora of surety bonds issued in connection with certain transactions between the Banks and Commercial Money Center, Inc. ("CMC"). CMC was a Nevada-based company that had significant operations in California. CMC's business purportedly involved leasing equipment and vehicles to numerous lessees in exchange for lease payments by each lessee. CMC then pooled the leases and sold them (or the rights to the income streams on them) to institutional investors.

In connection with these transactions, the Sureties issued Surety Contracts or bonds guaranteeing the performance of the lessees. Each investor expected to receive a monthly payment approximately equal to the amount due each month under the leases (or income streams) it purchased. The Banks in these actions are investors who purchased interests totaling more than $400 million in the CMC lease pools. CMC acted as sub-servicer of the various lease pools and was responsible for delivering the lease payments to the investors.

According to the Sureties, the majority of CMC's leasing business was a sham. The Sureties allege that many, if not most, of the purported CMC leases either never existed, were forged or were

3

sham transactions with CMC-affiliated entities. Many of the transactions were never consummated, either because the leases were never signed or funded, or because the equipment at issue was never delivered. Additionally, some of the transactions are alleged to have been disguised usurious loans.

The Sureties contend that CMC operated a Ponzi scheme, in which early investors were paid using money generated by new investors, while a large number of the supposed equipment leases were nonexistent or nonperforming. They claim to have been defrauded by CMC's representations regarding its financial condition and the condition of its lease pools.

Eventually, the Banks ceased receiving monthly payments from these investments, and each looked to the respective Sureties for payment. Although some of the claims were paid, each Surety refused, at some point, to pay the remainder of the claims. The Banks, Sureties and CMC filed these actions in various jurisdictions seeking judicial determination of their respective rights under the applicable documents.

Given the highly individualized nature of the documents involved in each transaction at issue, as evidenced by the Court's two lengthy opinions resolving the *Consolidated Motion for Judgment on the Pleadings*, a significant analytical and organizational challenge has arisen in connection with the Court's administration of this MDL on a going forward basis, a challenge that only will increase with the filing of the many anticipated dispositive motions. It was with this in mind that the Court engaged the parties in a discussion regarding the possibility of appointing a special master to assist the Court in a role akin to that of a specialized law clerk.

## II. FEDERAL RULE OF CIVIL PROCEDURE 53(b)(2)

Rule 53 was amended on December 1, 2003, and now requires that orders of appointment include certain items. *See* Fed. R. Civ. P. 53(b)(2). The following discussion sets forth the matters

4

required under the amended version of Rule 53.

### A. <u>Duties and Restrictions</u>

Rule 53(a)(1)(A) states that the Court may appoint a master to "perform duties consented to by the parties." In addition, the Court may appoint a master to: (1) "address pretrial and post-trial matters that cannot be addressed effectively and timely by an available district judge or magistrate judge of the district;" and (2) "hold trial proceedings and make or recommend findings of fact on issues to be decided by the court without a jury," if warranted by certain conditions. *See* Rule 53(a)(1)(B and C). Though available, the Court does not anticipate these types of duties to be relevant to this particular appointment.

The Court has reviewed recent legal authority addressing the duties of a Special Master that are permitted under the Federal Rules of Civil Procedure and Article III of the Constitution.[3] Consonant with this legal authority, the currently-anticipated needs of the Court, and the parties' expressed consent, the Court hereby **ORDERS** that the Special Master in this MDL shall have the

---

[3] *See, e.g.*, Fed. R. Civ. P. 53, advisory committee's notes (discussing the range of duties and authority of the Special Master). *See also* Mark Fellows & Roger Haydock, <u>Federal Courts Special Masters: A Resource in the Era of Complex Litig.</u> 31 Wm. Mitchell L. Rev. 1269; David Ferleger, <u>Masters in Complex Litigation and Amended Rule 53</u>, Special Masters Conference 2004 Course Materials (Nat'l Arbitr. Forum ed., 2004) (unpublished); Margaret Farrell, <u>Special Masters in the Federal Courts Under Revised Rule 53: Designer Roles</u>, Special Masters Conference 2004 Course Materials (Nat'l Arbitr. Forum ed., 2004) (unpublished). These three articles, written by federal-court-appointed special masters, note the increasing use and need for such appointments, and discuss the range of duties and limits of appointment. The articles are on file with the Advanced Dispute Resolution Institute at the William Mitchell College of Law, and are contained in reference materials distributed at the October, 2004 National Special Masters Conference.

authority to:[4]

- assist the Court in preparing for hearings, conferences or any other formal or informal interaction with the parties (including formulating agendas);

- oversee management of docketing, including the identification and processing of matters requiring Court rulings;

- assist the Court with legal analysis of the parties' motions or other submissions, whether made before, during, or after trials;[5]

- make recommendations and reports to the Court (which may include drafts of opinions and orders or any other written work product requested by the Court), upon request, regarding any matter pertinent to these proceedings; and

- communicate with parties and attorneys as needs may arise in order to permit the full and efficient performance of these duties (*see* discussion below regarding limitations with regard to these interactions).

In light of the nature of the interests involved in these proceedings, and the possibility that the Special Master's firm may engage in representation that arguably could conflict with certain parties' interests herein, the Court hereby imposes the following restriction as a term of the Special Master's appointment. The Special Master has consented to this restriction. **During the term of this**

---

[4] In light of the parties' expressed concerns relating to the scope of the Special Master's role herein, this Order comprehensively shall define the Special Master's duties and authority. Accordingly, the above list is meant to be comprehensive of the authority granted to the Special Master in this matter. In the event additional authority is deemed appropriate, the parties may move the Court for an expansion of the Special Master's authority. The Court may also, as necessary, expand the Special Master's authority *sua sponte*, but will only do so after notice to the parties and an opportunity to be heard.

[5] In this regard, all assistance with regard to legal analysis and drafting of memoranda and orders will be internal – *i.e.*, recommendations will not be issued subject to objections by the parties and consideration by the Court. Rather, all recommendations will be made to the Court, after which the Court will issue its own rulings. To the extent an exception to this general rule arises, this Order addresses *infra* the procedures that will govern.

6

**appointment, the Special Master shall not participate in any litigated matters involving sureties**. Though the Special Master's firm often represents banks, because that representation, as described to the Court by the firm's managing partner, does not pertain generally to advancing banks' rights *vis-a-vis* sureties and does not involve representation of any of the parties herein, the Court does not deem it necessary to restrict the Special Master's representation of non-party banks during the term of this appointment.

### B. Communication with Parties and the Court

Rule 53(b)(2)(B) directs the Court to set forth "the circumstances – if any – in which the master may communicate *ex parte* with the court or a party." The Special Master may communicate *ex parte* with the Court at the Special Master's discretion, without providing notice to the parties, in order to assist the Court with legal analysis of the parties' submissions (*e.g.*, the parties' motions). The Special Master may also communicate *ex parte* with the Court, without providing notice to the parties, regarding logistics, the nature of her activities, management of the litigation and any other procedural matter. The Court may later limit the Special Master's *ex parte* communications with the Court with respect to certain functions if the role of the Special Master changes. The Court may communicate with the Special Master, without providing notice to the parties, as it deems necessary.

The Special Master may communicate *ex parte* with any party or counsel, as the Special Master deems appropriate, for the purposes of ensuring the efficient administration and management of this MDL, including, for example, making informal suggestions to facilitate compliance with the Court's orders. The Special Master also may communicate *ex parte* with any party as to any topic specifically directed by the Court. Such designation by the Court need not be in writing. Such *ex parte* communications may, for example, address discovery – though that is not expected given that a

7

magistrate judge has assisted with discovery in the past – or other procedural issues specifically relevant to motion practice. Such *ex parte* communications shall not, however, address the merits of any substantive issue. As to all other matters, the Court's staff (*i.e.*, law clerk or courtroom deputy) should be the primary point of contact for the parties, though direct contact with the Special Master is not absolutely prohibited. Parties' contact with the Special Master, under any circumstances, shall be governed by the same boundaries applicable to contact with the Court itself.

### C. Master's Record

Rule 53(b)(2)(c) states that the Court must define "the nature of the materials to be preserved and filed as a record of the master's activities." As outlined in greater detail later in this Order, the Special Master shall maintain normal billing records of time spent on this matter, with reasonably detailed descriptions of her activities and matters worked upon. If the Court asks the Special Master to submit a formal report or recommendation regarding any matter (*i.e.*, a document prepared independent of the Court), the Special Master shall submit to the Court such report or recommendation in writing, for electronic filing on the master docket (02-16000). Given the nature of this particular appointment, however, this procedure likely will not be implicated.

The Special Master need not preserve for the record any documents created by the Special Master that are docketed in this or any other court, nor any documents received by the Special Master from counsel or parties in this case. The Special Master need not preserve draft versions of items prepared for the Court's consideration and ultimate issuance. The Court may later amend the requirements for the Special Master's record if the role of the Special Master changes.[6]

---

[6] *See, e.g., In re: Propulsid Products Liab. Litig.*, 2004 WL 1541922 (E.D. La. June 25, 2004) (setting out additional record-keeping requirements after the Special Master was charged with new duties of administering a settlement

8

### D. Review of the Special Master's Orders

Rule 53(b)(2)(D) directs the Court to state "the time limits, method of filing the record, other procedures, and standards for reviewing the master's orders, findings, and recommendations." Given the limited nature of the Special Master's role in this MDL, it is not anticipated that the Special Master independently will be filing items such that the typical mechanisms outlined in Rule 53(b)(2)(D) are necessary. Rather, it is anticipated the Special Master will be submitting items for review and issuance by the Court. To the extent they become necessary, however, the Court articulates below the rules that shall govern those circumstances where the Court directs the Special Master to prepare and file an independent recommendation.

Only upon request from the Court, the Special Master shall reduce to writing any formal order, finding, report, or recommendation and file it electronically on the master docket. Pursuant to Rule 53(g)(2), any party may file an objection to such an order, finding, report, or recommendation by the Special Master within **14 calendar days** of the date it was electronically filed.[7] Failure to meet this 14-day deadline shall result in permanent waiver of any objection to the Special Master's orders, findings, reports, or recommendations.[8] Absent timely objection by at least one party, the orders,

---

program).

[7] The Federal Rules of Civil Procedure shall govern the calculation of deadlines that fall on weekend or holidays.

[8] Rule 53(g)(2) provides that parties may file objections "no later than 20 days from the time the master's order, report, or recommendations are served, unless the court sets a different time." The Court chooses to set a period of 14 calendar days (NOT business days) in order to expedite final resolution of matters formally reported upon by the Special Master. Motions for extensions of time to file objections will not normally be granted unless good cause is shown. The Special Master may, however, provide in her order, finding, report, or recommendation that the period for filing objections to that particular document is some period

9

findings, reports, and recommendations of the Special Master shall be deemed approved, accepted, and ordered by the Court, unless the Court explicitly provides otherwise.

As provided in Rule 53(g)(4, 5), the Court shall review *de novo* all objections to conclusions of law made or recommended by the Special Master; and the Court shall set aside a ruling by the Special Master on a procedural matter only for an abuse of discretion. The Court shall "retain sole authority to issue final rulings on matters formally submitted for adjudication," unless otherwise later agreed to by the parties, and subject to waiver of objection to written orders or recommendations as noted above. To the extent the Special Master enters an order, finding, report, or recommendation regarding an issue of fact, the Court shall review such issue *de novo*, if any party timely objects pursuant to the 14 calendar day time period set forth herein. *See* Rule 53(g)(3). Failure to meet this deadline results in permanent waiver of any objection to the Special Master's findings of fact.

As noted previously, in light of the nature and scope of the Special Master's appointment in this MDL, it is not anticipated that these procedures will be used. In the interest of completeness and efficiency, however, should these procedures ever be deemed appropriate, the Court establishes the above guidelines.

### E. Compensation

Rule 53(b)(2)(E) states that the Court must set forth "the basis, terms, and procedure for fixing the master's compensation." *See also* Rule 53(h) (addressing compensation). The Special Master shall be compensated at the rate of **$150** per hour for a maximum of **1,000 hours**, with the parties bearing this cost in accordance with the apportionment plan upon which they shall agree. The Special Master shall inform the Court in writing when her allotted compensable hours drop below 150 hours. At that

---

longer than 14 calendar days, if a longer period appears warranted.

time, if not before, the Court will address the matter with the parties. The Court reserves the right to extend the allowable compensable hours and/or the hourly rate of the Special Master, despite objections from one or more of the parties, if it finds good cause to do so.

The Special Master shall incur only such fees and expenses as may be reasonably necessary to fulfill her duties under this Order, or such other Orders as the Court may issue. Compensable expenses shall include typical client-related costs (*e.g.*, phone charges, copying, computer research etc.) but shall not include, absent Court approval, compensation for support personnel (*e.g.*, paralegal or other professional assistance).

From time to time, on approximately a monthly basis (or whatever billing cycle the Special Master's firm employs), the Special Master **SHALL SUBMIT** only to the Court an itemized Statement of Fees and Expenses, which the Court will inspect carefully for regularity and reasonableness. In so far as the Special Master is an associate with the law firm of Nolan & Heller, LLP, an itemized billing statement from that law firm, in whatever form is normally used in the course of its accounting practices, shall constitute compliance with this directive.

Given that one of the duties of the Special Master is to assist the Court with legal analysis of the parties' submissions, the Court expects these itemized statements may reveal confidential communications between the Special Master and the Court. Accordingly, **the Court shall maintain these itemized statements under seal**, and they shall not be made available to the public or counsel. The Special Master shall attach to each itemized statement a separate Summary Statement, which shall not reflect any confidential information and shall contain a signature line for the Court, accompanied by the language "APPROVED FOR DISBURSEMENT."

If the Court determines the Statement of Fees and Expenses is regular and reasonable, the

Court will approve the corresponding Summary Statement and authorize the Special Master to transmit it to the individuals or entities identified in the parties' Cost Apportionment Plan. Upon receipt of the approved Summary Statement, the parties shall remit to the Special Master, *via* her firm, their respective portion of any Court-approved amount within **20 calendar days of receipt**.

### F. Other Matters

#### 1. *Affidavit*

Rule 53(b)(3) notes that the Court may enter an Order of appointment "only after the master has filed an affidavit disclosing whether there is any ground for disqualification under 28 U.S.C. §455." *See also* Rule 53(a)(2) (discussing grounds for disqualification). Attached to this Order is an affidavit previously submitted to the Court by the Special Master in anticipation of compliance with this aspect of Rule 53.

#### 2. *Cooperation*

The Special Master shall have the full cooperation of the parties and their counsel. As an agent and officer of the Court, the Special Master shall enjoy the same protections from being compelled to give testimony and from liability for damages as those enjoyed by other federal judicial adjuncts performing similar functions.[9] The parties will make readily available to the Special Master any and all facilities, files, databases, and documents which are necessary to fulfill the Special Master's functions under this Order.

#### 3. *Provision of Filed Materials to Special Master*

Given the volume and length of the materials the Court anticipates the parties will file, from this

---

[9] *See Atkinson-Baker & Associates, Inc. v. Kolts*, 7 F.3d 1452, 1454-55 (9th Cir. 1993) (applying the doctrine of absolute quasi-judicial immunity to a Special Master).

point forward the parties shall provide the Special Master with bound hard copies of the items outlined below. Such copies shall be mailed to the Special Master at the address provided at the beginning of this Order <u>on the same day they are filed</u> and shall be accompanied by a cover letter indicating the case(s) to which they pertain. The Court deems this accommodation necessary to reduce the Special Master's overhead costs, and, more importantly, to reduce the compilation time that often accompanies retrieving lengthy materials, which often contain voluminous and numerous exhibits. Reduction of such "compilation time" likely will result in a cost savings to the parties. This directive pertains to the following filings:

- motions for Summary Judgment (and all attendant briefing);
- motions for Leave to Amend Pleadings (and all attendant briefing);
- motions (or other form of submission – *e.g.*, letters) for final judgment (and all attendant briefing); and
- <u>any filing</u> that exceeds 20 pages, <u>and</u> contains (1) at least one exhibit that exceeds 20 pages or (2) more than 10 exhibits.[10]

Hard copies of the following already-filed items (if not yet ruled upon) also shall be provided to the Special Master within 10 days of the date of this Order by the original filing party:

- *NetBank's Motion Renewing its Interest in the Consolidated Motion for Judgment on the Pleadings* (Doc. 1712 in 02-16000) (and all briefing or correspondence filed in connection therewith);

---

[10] As to this catch-all category, if only one of multiple items in connection with a particular filing meets the above-outlined criteria (*e.g.*, the initial motion and brief is voluminous, but the response and reply are short, or vice versa), this directive applies only to that single filing. As to all other items (even if in a series relating to a single filing), the Special Master will retrieve them from ECF.

13

- motions (or other form of submission – *e.g.*, letters) for final judgment (and all attendant briefing) filed <u>prior to</u> the date of this Order;

- motions for letters rogatory (and all attendant briefing); and

- motions to remand (and all attendant briefing).

**IT IS SO ORDERED.**

/s/ Kathleen M. O'Malley
KATHLEEN McDONALD O'MALLEY
UNITED STATES DISTRICT JUDGE

**Dated: January 3, 2006**

14

## AFFIDAVIT OF SHANNAN C. KRASNOKUTSKI
(tendered pursuant to Federal Rule 53)

STATE OF NEW YORK      )
                       ) SS.      **AFFIDAVIT**
COUNTY OF ALBANY       )

I, **SHANNAN C. KRASNOKUTSKI**, being first duly sworn according to law, state the following:

1. I am an attorney at law, duly licensed to practice law in the States of Ohio and New York. My bar admissions are as follows:

   | | |
   |---|---|
   | Ohio Supreme Court, Attorney No. 0073814 | November 13, 2001 |
   | New York State (App. Div., 3rd Dept.), Attorney No. 4153185 | June 24, 2003 |
   | U.S. District Court Northern District of Ohio | July 14, 2003 |
   | U.S. Court of Appeals, Sixth Circuit | July 16, 2003 |
   | U.S. District Court, Northern District of New York | December 29, 2004. |

2. I have thoroughly familiarized myself with the issues involved in the Multi-District Litigation ("MDL") proceedings captioned *In re: Commercial Money Center, Inc., Equipment Lease Litigation*, MDL-1490 (Master Case Docket No. 1:02cv16000 – before the Honorable Kathleen M. O'Malley in the Northern District of Ohio). As a result of my knowledge of that MDL, I can attest and affirm that there are no non-disclosed grounds for disqualification under 28 U.S.C. §455 that would prevent me from serving as the Special Master in the captioned matter.

FURTHER AFFIANT SAYETH NAUGHT,

_____
SHANNAN C. KRASNOKUTSKI

Sworn to before me and subscribed in my presence this 3rd day of January 2006.

_____
Notary Public

38561

LUCY AGUILAR
Notary Public, State of New York
No. 01AG6116519
Qualified in Rensselaer County
Commission Expires October 4, 2008