UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: COMMERCIAL MONEY | : | Case No. 1:02CV16000 |
| CENTER, INC., EQUIPMENT | : | |
| LEASE LITIGATION | : | (MDL Docket No. 1490) |
| | : | |
| | : | JUDGE O'MALLEY |
| | : | |
| | : | <u>ORDER</u> |
| | : | |
| | : | (This Order Relates To Docs. 1086 |
| | : | and 1699 filed in 02-16000) |

These actions were transferred to this Court by order of the Judicial Panel on Multidistrict Litigation ("the MDL Panel"), issued on October 25, 2002. (02-16000, Doc. 1). This Court has ordered that these actions be coordinated for pretrial purposes. (Doc. 2).

The dispute in these actions centers around the Sureties' liability on various surety bonds issued in connection with certain transactions between the Banks[1] and Commercial Money Center ("CMC"). CMC's business purportedly involved the leasing of equipment and vehicles to numerous lessees in exchange for lease payments. CMC then pooled the leases and sold them to institutional investors. Apparently, the majority of CMC's leasing business was a sham, and the Banks lost over $400 million in these transactions. The Banks now sue the Sureties to recover on the surety bonds associated with the transactions.[2]

This action currently is before the Court upon (1) the motion of United Security Bank ("USB") for leave to file a supplemental counterclaim (02-16000, Doc. 1086); and (2) the

---

[1] Where not defined herein, capitalized terms used in this Opinion have the meanings ascribed to them in the Court's Consolidated Rulings issued August 19, 2005 (Docs. 1708, 1709).

[2] The Court does not summarize here the entirety of the complicated factual scenario involved in these cases. Rather, the Court refers the reader to its two Consolidated Rulings on the numerous Motions for Judgment on the Pleadings, issued August 19, 2005 (Docs. 1708, 1709).

1

motion of USB for a suggestion of remand (02-16000, Doc. 1699).[3] For the reasons set forth herein, the motion for leave to file a supplemental counterclaim is granted.[4] The motion for suggestion of remand is denied.

## BACKGROUND

On July 23, 2002, American Motorists Insurance Company ("AMICO") filed an action in the United States District Court for the Southern District of California seeking declaratory relief and rescission against six banks, including USB. Subsequently, that case was consolidated before this Court as 02-16024. On February 14, 2003, USB filed an Answer and Counterclaims against AMICO. USB moved for leave to file a Supplemental Counterclaim on April 12, 2004. On May 16, 2005, USB filed its motion for suggestion of remand, seeking that this case be returned to the District Court for the Southern District of California for all remaining proceedings. Both of these motions are ripe for ruling.

## DISCUSSION

**I. Motion for Leave to File Supplemental Counterclaim**

On April 12, 2004, USB filed its motion for leave to file a Supplemental Counterclaim, seeking to add as a counterclaim defendant Lumbermens Mutual Casualty Company ("Lumbermens"), the parent company of current counterclaim defendant AMICO. USB's current pleadings, asserted only against AMICO, raise several causes of action, including breach

---

[3] Although USB's motion is styled as a "motion to remand," USB's filings clarify that USB actually requests only that this Court make a suggestion of remand to the MDL Panel. As this is the proper procedure in any event, the Court treats USB's motion as a motion for suggestion of remand.

[4] Also pending in connection with USB's motion for leave to file a supplemental counterclaim is a motion by AMICO for leave to file a surreply (Doc. 1304). The basis for this request is AMICO's contention that USB has raised new arguments in its reply, including the argument that "AMICO has not retained liabilities for its surety obligations. . . ." (Doc. 1304, at 1). USB asserted in its opening memorandum, however, that "AMICO has transferred its liabilities, which include the claims by USB, to Lumbermens . . .", and that "AMICO's transfer of substantially all its assets raises questions as to sufficient funds to pay a judgment against it. . . ." (Doc. 1087, at 1-2, 6). Accordingly, the Court finds that AMICO had sufficient notice of these arguments and could have responded to them in its opposition brief. AMICO's motion for leave to file a surreply (Doc. 1304) is denied.

of contract, breach of implied covenant of good faith and fair dealing, fraud, and negligent misrepresentation. USB's proposed amendment contains no substantive changes to its causes of action, and seeks only to add Lumbermens as an additional party to its breach of contract claim. USB argues that, in the absence of Lumbermens, "complete relief cannot be accorded among those already parties." Fed. R. Civ. P. 19(a).

The filing of a supplemental pleading is governed by Fed. R. Civ. P. 15(d), which provides that, "[u]pon motion of a party, the court may, upon reasonable notice and upon such terms as are just, permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." Fed. R. Civ. P. 15(d); *see also Griffin v. County School Board*, 377 U.S. 218, 227 (1964):

> Rule 15 (d) of the Federal Rules of Civil Procedure plainly permits supplemental amendments to cover events happening after suit, and it follows, of course, that persons participating in these new events may be added if necessary. Such amendments are well within the basic aim of the rules to make pleadings a means to achieve an orderly and fair administration of justice. . . .

*Griffin*, 377 U.S. at 227 (footnote omitted).

Leave to amend is freely given, absent prejudice or bad faith, *see Foman v. Davis*, 371 U.S. 178, 182 (1962), but the decision remains within the discretion of the trial court. *See Switzer Bros., Inc. v. Byrne*, 242 F.2d 909, 913 (6th Cir. 1957). Generally speaking, the standard for permitting the filing of supplemental pleadings is substantially similar to that governing the filing of amended pleadings pursuant to Fed. R. Civ. P. 15(a). *See, e.g., Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996). Rule 15 also is to be applied liberally to permit the addition of parties. *See First City Nat'l Bank & Trust Co. v. Federal Deposit Ins. Co.*, 730 F. Supp. 501, 515 (E.D.N.Y. 1990).

Since USB's proposed supplemental pleading seeks the addition of a party, Federal Rules 20 and 21 also apply to the proposed filing. Those rules, however, also are discretionary. Fed. R. Civ. P. 20 provides that defendants may be joined in a single action where "there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action. . . ." Fed. R. Civ. P. 21 provides that parties may be added by order of the court "at any stage of the action and on such terms as are just. . . ." Thus, the standards for filing a supplemental pleading appear to be the same regardless of whether the issue is considered under Rule 15 or Rule 21. *See Loggerhead Turtle v. County Council of Volusia County*, 148 F.3d 1231, 1255 (11th Cir. 1998).

This Court previously has considered the appropriate standard for permitting leave to file a supplemental counterclaim. *See* Order on Lakeland/NetBank motion for leave to file supplemental pleadings, Doc. 1257, at 15-24. As this Court recognized in its prior Order, judicial discretion should be applied liberally in favor of allowing supplementation. *See Soler v. G & U, Inc.*, 103 F.R.D. 69, 73 (S.D.N.Y. 1984)("Rule 15(d) motions should be viewed with the same liberal principles applicable to Rule 15(a) motions.").

USB bases its motion on the occurrence of alleged transactions subsequent to the filing of USB's original counterclaim. Specifically, USB alleges that, in early 2003, AMICO transferred a substantial portion of its assets to Lumbermens, and that Lumbermens simultaneously assumed a significant portion of AMICO's liabilities. USB argues that, having assumed AMICO's liabilities in connection with claims by policyholders, Lumbermens is a necessary party, and that AMICO will not be prejudiced by the addition, since the Court has

4

extended the deadline for joining parties and amending pleadings.[5] USB contends that any required additional discovery will be minimal and limited to (1) the financial status of AMICO and Lumbermens, and (2) the terms of the AMICO/Lumbermens transaction. Finally, USB argues that the addition of Lumbermens to the action would promote justice, since AMICO's assets have fallen from $400 million to $35 million, and thus AMICO's ability to pay a judgment against it is threatened.

In support of its motion, USB has attached AMICO's annual filing with the California State Department of Insurance dated December 31, 2002. The December 2002 filing reflected that AMICO had reserved $529,384,985.00 for losses relating to filed and anticipated claims. AMICO's December 31, 2002 statement also showed a surplus in the amount of $386,368,322.00. By the time of AMICO's filing of its March 31, 2003 quarterly statement (also attached in support of USB's motion), however, both the loss reserve and the capital surplus appear to have been transferred to Lumbermens. The March 31, 2003 statement reflected a cash surplus payment of $385,825,443.00 to Lumbermens, as well as an amount payable to Lumbermens in the amount of $727,758.908.00. USB infers that the latter amount includes the previous loss reserves of $529,345,985.00—an amount that is reflected in AMICO's March 31, 2003 Cash Flow Analysis as "benefit and loss related payments." Finally, the March 31, 2003 filing reflects a dividend declared and unpaid to Lumbermens in the amount of $12,730,082.00. Based on USB's calculations, the March 31, 2003 statement thus reflected total transfers between AMICO and Lumbermens in the amount of more than $1.1 million.

---

[5] Most recently, this deadline was extended to 14 days after the mediation deadline or extended mediation deadline. (Doc. 1739, at 4). With a few limited, Court-authorized exceptions, mediation in these actions was complete by March 15, 2006. Pursuant to the Partial Case Management Plan issued on October 31, 2005 (Doc. 1739), motions for leave to amend the pleadings were due 14 days following the completion of mediation, or March 29, 2006. Accordingly, USB's motion for leave to file a supplemental counterclaim was timely when filed.

The "Notes to Financial Statements" attached to AMICO's March 31, 2003 statement explain that AMICO withdrew from the Kemper Quota Share Pooling Agreement ("Pooling Agreement") in the first quarter of 2003, and that it returned all remaining capital and surplus (subject to AMICO's retention of $12,000,000 in capital and surplus) to Lumbermens in connection with that transaction. Lumbermens and AMICO revised the Pooling Agreement, AMICO states, such that Lumbermens would "no longer cede 15% of reinsured risks to AMICO . . ." (Opp. Brief, 02-16000, Doc. 1182, at 4), and Lumbermens received a transfer of capital in exchange for its re-assumption of those risks. According to the Notes to Financial Statements, the "amount of capital returned to [Lumbermens] . . . amounted to $385,825,443." AMICO contends, however, that this transaction does not give rise to any liability or potential liability on the part of Lumbermens.

AMICO asserts that USB's proposed supplemental counterclaim would be futile, since Lumbermens was not a party to the underlying contract and thus cannot be liable on that contract as a matter of law. Concededly, the futility of a proposed claim is grounds for denying leave to file an amended or supplemental pleading. *See Foman*, 371 U.S. at 182; *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir. 2000). "[A] proposed amendment is futile[, however,] only if it could not withstand a Rule 12(b)(6) motion to dismiss. . . ." *Rose*, 203 F.3d at 421.

AMICO contends that, since Lumbermens undisputedly was not a party to the underlying contract, it cannot be held liable for that contract under any veil-piercing or vicarious liability standard. *See, e.g., Wady v. Provident Life & Accident Ins. Co. of Am.*, 216 F. Supp. 2d 1060, 1068-69 (C.D. Cal. 2002)(correspondence issued on parent's letterhead, in addition to loans made by parent to subsidiary, did not render subsidiary the "alter ego" of parent, nor render

parent liable for subsidiary's debts). AMICO claims that its transfers of assets and liabilities to Lumbermens are irrelevant to USB's motion for leave to file a supplemental counterclaim, since mere financial transactions between a parent and subsidiary do not render a parent liable for its subsidiary's debts. Rather, AMICO argues, such liability is imputed to a parent only where the parent has attempted to liquidate the subsidiary for purposes of avoiding its liabilities. *See, e.g., Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 529 (5th Dist. 2000).[6]

AMICO makes much of the fact that the transactions at issue were approved by the Illinois Department of Insurance, and that its return of capital to Lumbermens was a normal and proper transaction in the context of AMICO's withdrawal from the Pooling Agreement. USB's desire to add Lumbermens as a party to this action, however, is not based on any allegation of impropriety in the transactions between AMICO and Lumbermens. Rather, USB asserts that liability is attributable to Lumbermens based on that entity's voluntary assumption of AMICO's contractual obligations.

Based on the parties' description of the transaction, and the Court's own examination of AMICO's financial statements, the Court believes that the effect of the Pooling Agreement was to adjust the allocation of liabilities among Lumbermens and its affiliated companies. Presumably, such liabilities would have included AMICO's contingent liability to USB on USB's surety bond claims. Thus, it appears that, when AMICO withdrew from the Pooling Agreement in the first quarter of 2003, Lumbermens re-assumed the liabilities of AMICO, in exchange for a transfer of substantially all of AMICO's capital to Lumbermens.

The Court finds, therefore, that the question is not one of "alter ego" or veil piercing, but one of assumption. Unquestionably, an entity that was not an original party to an agreement

---

[6] The Court previously has found that, in the absence of any contrary selection by the parties in the transaction documents, California law applies to these claims. *See* Surety Order, 02-16000, Doc. 1708, at 14.

may subsequently assume obligations under that agreement, and thus may become an appropriate defendant to a breach of contract claim. *See, e.g., Ray v. Alad Corp.*, 19 Cal. 3d 22, 28 (1977); *Layton v. West*, 271 Cal. App. 2d 508, 511 (1st Dist. 1969).  Generally speaking, a corporation purchasing another corporation's assets assumes the seller's liabilities where "(1) there is an express or implied agreement of assumption, (2) the transaction amounts to a consolidation or merger of the two corporations, (3) the purchasing corporation is a mere continuation of the seller, or (4) the transfer of assets to the purchaser is for the fraudulent purpose of escaping liability for the seller's debts." *Ray*, 19 Cal. 3d at 28.

Essentially, USB argues for a finding of the first of these elements—e.g., that an express or implied assumption agreement was formed between AMICO and its parent, Lumbermens. While USB's claims are little more than allegations at this stage, those allegations are reasonably supported by the attached financial statements and are sufficient to support USB's assertion that Lumbermens assumed AMICO's liability on policyholder claims.

As noted above, AMICO argues that USB's "interpretation" of the financial statements documenting the transfers to Lumbermens is insufficient as a matter of law to support the filing of a supplemental counterclaim against Lumbermens.  AMICO does not, however, dispute USB's "interpretation" or challenge the apparent import of the documents.  Rather, AMICO's explanation of the transaction relating to AMICO's withdrawal from the Pooling Agreement seems consistent with USB's argument that such withdrawal had the effect of shifting AMICO's potential liabilities back to its parent, Lumbermens.  In AMICO's Responses to USB's Third Set of Special Interrogatories, attached as an Exhibit to USB's reply papers (Doc. 1288, Exh. 1), AMICO stated that, "[u]nder the Amended and Restated Quota Share Pooling Agreement . . . AMICO . . . ceded 100% of [its] insurance liabilities and expenses to [Lumbermens] resulting in

8

100% of the insurance liabilities and expense for business written by AMICO . . . being held at [Lumbermens] as 'pooled' business. . . . With all of the AMICO liabilities being returned to [Lumbermens] by virtue of Amendment No. 2, AMICO made a settlement payment to [Lumbermens] as the consideration for [Lumbermens] in accepting these insurance liabilities. . . ."

Based on both parties' filings and the Court's understanding of the transactions between AMICO and Lumbermens in the first quarter of 2003, it appears that a shifting of liabilities between AMICO and Lumbermens occurred in connection with AMICO's withdrawal from the Pooling Agreement. In any event, USB is not required to prove at this stage that the transaction had such an effect. As noted by the Court in its prior Order, the merits of a proposed claim should be irrelevant to a court's determination as to whether to permit a supplemental pleading, *see Kraushaar v. Leschin*, 4 F.R.D. 144, 145 (D. Pa. 1944), unless the new proposed claims or defenses are frivolous. *See Madison Fund, Inc. v. Denison Mines, Ltd.*, 90 F.R.D. 89, 91 (S.D.N.Y. 1981)(consideration of a motion for leave to amend "is not the time to address the merits of the [claim.]"). Rather, a motion for leave to amend should be denied only where the proposed amendment would not survive a motion to dismiss. *See Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 945 (D.C. Cir. 2004).

The Court finds that USB's allegations against Lumbermens are amply sufficient to survive a motion to dismiss. Moreover, since USB filed its motion for leave nearly two years ago, it timely requested leave to supplement. Despite the fact that fact discovery has closed in the interim, the Court does not believe that granting the narrow relief requested by USB will require extensive additional discovery or cause prejudice to AMICO. Accordingly, USB's

motion for leave to file a supplemental counterclaim (02-16000, Doc. 1086) is <u>granted</u>. USB shall file its supplemental counterclaim on or before <u>May 15, 2006</u>.

II.     **Motion for Suggestion of Remand**

USB requests that this Court suggest to the MDL Panel that this action (02-16024) be remanded to the District Court for the Southern District of California, the district in which the case originally was commenced.[7] USB argues that all remaining disputes in the action involve only USB and AMICO, and thus that this action will no longer benefit from consolidated MDL treatment. According to USB, it is the only bank continuing to pursue claims against AMICO's surety bonds, and pretrial proceedings of a "general" nature now have substantially concluded. AMICO argues that there has been no such "conclusion" of proceedings, and that this case is not so unique as to warrant special treatment.

The ultimate decision of whether to remand a case from a transferee court rests with the MDL Panel. *See* 28 U.S.C. § 1407. "In considering the question of remand, the Panel has consistently given great weight to the transferee judge's determination that remand of a particular action at a particular time is appropriate because the transferee judge, after all, supervises the day-to-day pretrial proceedings." *In re Data General Corp. Antitrust Litigation*, 510 F. Supp. 1220, 1226 (J.P.M.L. 1979), *quoting In re Holiday Magic Sec. & Antitrust Litigation*, 433 F. Supp. 1125, 1126 (J.P.M.L. 1977).

In requesting that a transferee judge issue a suggestion of remand prior to the conclusion of pretrial proceedings, "a party seeking remand to the transferor court has the burden of

---

[7]     As noted earlier in this opinion, USB's initial filing was incorrectly denominated a "Motion for Remand." In its "supplemental" memorandum (02-16000, Doc. 1707), USB clarified that it intended to request an Order of Suggestion of Remand. AMICO has objected to the Court's consideration of USB's allegedly untimely supplemental memorandum. (02-16024, Doc. 38). The Court has considered USB's supplemental memorandum, however, as that memorandum does no more than identify the correct procedural posture in which the Court should evaluate USB's motion. Moreover, given the Court's denial of USB's motion for suggestion of remand, there can be no prejudice to AMICO based on the Court's consideration of USB's supplemental memorandum.

10

establishing that such remand is warranted . . .", *Kinley Corp. v. Integrated Resources Equity Corp. (In re Integrated Resources, Real Estate Ltd. Partnership Sec. Litig.)*, 851 F. Supp. 556, 562 (S.D.N.Y. 1994), and a transferee judge should not make such a suggestion unless the judge "perceives his or her role in the case has ended." *Id*. Rather, a suggestion of remand is appropriate where a case will not "benefit from further coordinated proceedings as part of the MDL . . .", *McKinney v. Bridgestone/Firestone, Inc. (In re Bridgestone/Firestone, Inc., ATX, ATX II, & Wilderness Tires Prods. Liab. Litig.)*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001), and "when everything that remains to be done is case-specific." *Bridgestone/Firestone*, 128 F. Supp. 2d at 1197, *quoting In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000).

In its opposing memorandum, USB relies on a series of cases in which courts have found early remand appropriate, including cases in which only one plaintiff and/or one defendant remain in a multidistrict litigation matter. *See, e.g., In re Multidistrict Civil Actions Involving Air Crash Disaster near Dayton*, 386 F. Supp. 908, 909 (J.P.M.L. 1975)(although pretrial proceedings had not concluded, there was no benefit to retaining action where all related actions had been terminated); *see also In re A.H. Robins Co., Inc. "Dalkon Shield" IUD Products Liability Litigation*, 453 F. Supp. 108, 109 (J.P.M.L. 1978)(remanding actions against a sole defendant). USB argues that here, as in *Dalkon Shield*, "the purpose of the statute has been satisfied and areas of discovery remain that more properly can be concluded in the original transferor district. . . ." *Dalkon Shield*, 453 F. Supp. at 110.

Essentially, USB asserts that the full benefits of this consolidated proceeding were achieved during discovery, when claimant Banks coordinated their efforts to obtain information from AMICO. USB argues that such consolidation would no longer be beneficial, as the instant action (02-16024) now involves only USB and AMICO. The remaining pretrial proceedings will

involve expert discovery and dispositive motions, and USB asserts that such proceedings would be more efficiently conducted by the Southern District of California, the anticipated trial court in this matter.

AMICO, on the other hand, argues that remand of the USB action would be neither efficient nor appropriate, since pretrial proceedings in the consolidated MDL litigation have not been completed, and several actions involving AMICO continue to be litigated in the consolidated proceedings. According to AMICO, it remains involved in the following actions:[8]

(1) *AMICO v. Commercial Money Center, Inc., et al.*, 02-16003. This action has been stayed as to AMICO's claims against CMC and CSC, and AMICO has resolved its claims against Rafferty Capital Markets through the Court-ordered mediation process. It appears, however, that AMICO retains claims against Anthony & Morgan Surety & Insurance Services, Inc. and several individual defendants, which have not been resolved to date.

(2) *Huntington National Bank v. AMICO*, 02-16017. All claims between Huntington and AMICO have been resolved by stipulation; however, counterclaims by AMICO against Blaine Tanner and several Guardian entities remain pending. Counterclaims against AMICO by the Guardian entities also still are pending.

(3) *AMICO v. Ameriana Bank & Trust, et al.*, 02-16024. In the instant action, AMICO initially asserted claims against six banks, including USB. AMICO has resolved its claims with Lakeland Bank, General Electric Capital Corporation,

---

[8] Subsequent to the parties' completion of briefing on this motion, some of the claims in these cases were resolved through the Court-ordered mediation process. The list included here reflects only those cases and claims that the Court believes to be pending as of the date of the issuance of this Opinion.

Ameriana Bank & Trust, BlueBonnet Bank, and U.S. Bank Trust National Association. The disputes between AMICO and USB remain pending.[9]

AMICO contends that all of the lawsuits in which it is involved stem from the same nucleus of operative fact and involve issues of (1) CMC's fraudulent operation of its lease program; and (2) the failure of various individuals and entities to disclose CMC's fraud to AMICO.[10] AMICO relies on the language of the MDL Panel's initial transfer order to support the proposition that remand is inappropriate prior to completion of consolidated pretrial proceedings in these cases. That Order provided:

> All actions arise out of the same nucleus of operative facts pertaining to an alleged nationwide investment scheme to defraud investors in commercial equipment leases. . . . Now at issue in all MDL-1490 actions . . . are issues involving the validity or continuing validity of the underlying leases and the enforceability of subject surety bonds or insurance policies. Questions regarding these issues remain common regardless of whether the claimant to the bond or insurance proceeds is an investor or a lender, and regardless of the identity of the particular surety or insurance company involved. Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery, prevent inconsistent pretrial rulings, and conserve the resources of the parties, their counsel and the judiciary.

(Doc. 1, at 1-2).

AMICO argues that, contrary to the circumstances in USB's cited cases, all of the actions here will benefit greatly from continued MDL treatment, since several significant pretrial proceedings remain to be conducted in the consolidated MDL proceedings. Those proceedings

---

[9] There are several other actions that appear to involve AMICO, and the status of these actions is unclear to the Court. First, various interpleader claims asserted in 02-16008, which involve numerous parties to these actions, including AMICO, appear to be pending. Second, Lakeland and AMICO have resolved their disputes in 03-16001, and Lakeland also has resolved its disputes with Rafferty Capital Markets. It is unclear from the docket, however, whether AMICO retains affirmative claims against Rafferty Capital Markets in that case.

[10] AMICO also argues in its brief that the Huntington and AMICO pools share various specific factual characteristics. Since the claims between Huntington and AMICO now have been resolved, however, such similarities arguably have no relevance to the instant motion.

include: (1) expert disclosure and discovery; (2) motions regarding proposed amendments of pleadings and joining new parties (as well as the potential for additional discovery based on the substance of proposed amendments); (3) dispositive motions; and (4) venue/jurisdictional motions. AMICO asserts that coordinated treatment may be efficient and helpful in managing many of these remaining proceedings. As an example, AMICO notes that coordinated expert discovery may promote efficiency, since different parties with common interests are likely to designate the same experts.

Additionally, AMICO argues that premature remand to the Southern District of California might cause inefficiencies in that forum, since a total of five cases had been consolidated for handling and assigned to Judge Moskowitz prior to transfer, and it is unknown whether Judge Moskowitz intended to conduct a joint trial or other joint proceedings. If Judge Moskowitz had intended to conduct such consolidated proceedings, AMICO argues, then premature remand of only one of these cases might cause inconvenience on Judge Moskowitz's docket.

The Court believes that USB's motion for suggestion of remand is, in the first instance, an attempt to evade the MDL Panel's determination that litigation of these matters in a consolidated federal MDL forum is appropriate. That determination was based, at least in part, on a recognition that the issues involved in all of these cases are particularly complex and that it would be inefficient to require more than one Court to grapple with them any earlier than absolutely necessary. Moreover, USB's suggestions that the issues between USB and AMICO are somehow unique and separable from the rest of the consolidated cases are faulty at best. Although AMICO has resolved its disputes with the majority of the other claimant banks, a number of related claims remain between AMICO and other parties to the action. First, the

claims of the Guardian entities for bad faith and promissory estoppel (02-16017) involve, at least to some extent, determination of the terms of AMICO's surety bonds and its obligations to pay on those bonds. These are issues clearly contemplated by USB's claims against AMICO.

Second, even to the extent that no disputes remain between AMICO and other bank claimants, multiple claims remain pending between AMICO and non-bank parties to the action. Accordingly, if the MDL Panel were to remand the instant action, AMICO would simply be forced to litigate its claims in two separate forums. In any event, the claims between AMICO and non-claimant parties involve issues of fraud and knowledge on behalf of various parties to the transactions, and are sufficiently related as to weigh in favor of continued coordinated proceedings.

In addition to considerations of economy and efficiency, the Court believes that remand of this case prior to completion of the consolidated pretrial proceedings would pose a significant danger of inconsistent pretrial rulings. As noted by AMICO, multiple motions, including motions for leave to amend the pleadings, summary judgment motions, jurisdictional and venue motions remain to be resolved prior to trial in these matters. Although this Court previously has noted factual and legal differences between the various consolidated cases, there are also significant areas of overlap—including common threshold legal issues and, frequently, substantial similarities between the transaction documents. Particularly at the summary judgment stage, allowing consideration of these matters in divergent forums is highly likely to result in inconsistent and inequitable judicial treatment of similarly situated parties and issues.

USB's motion for a suggestion of remand (02-16000, Doc. 1699) is <u>denied</u>.

### III. Conclusion

For the reasons set forth above, the motion for leave to file a supplemental counterclaim

(02-16000, Doc. 1086) is <u>granted</u>.  The motion for suggestion of remand (02-16000, Doc. 1699) is <u>denied</u>.  AMICO's motion for leave to file a surreply (02-16000, Doc. 1304) also is <u>denied</u>.

**IT IS SO ORDERED.**

                                      <u>s/Kathleen M. O'Malley</u>
                                      **KATHLEEN McDONALD O'MALLEY**
                                      **UNITED STATES DISTRICT JUDGE**

**Dated: May 3, 2006**