# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: COMMERCIAL MONEY | : | Case No. 1:02CV16000 |
| CENTER, INC., EQUIPMENT | : | |
| LEASE LITIGATION | : | (MDL Docket No. 1490) |
| | : | |
| | : | JUDGE O'MALLEY |
| | : | |
| | : | ORDER |
| | : | |
| | : | (This Order Relates To Docs. 1678, |
| | : | 1695, 1712 and 1721 filed in |
| | : | 02-16000) |

These actions were transferred to this Court by order of the Judicial Panel on Multidistrict Litigation ("the MDL Panel"), issued on October 25, 2002. (Doc. 1). This Court has ordered that these actions be coordinated for pretrial purposes. (Doc. 2).

The dispute in these actions centers around the Sureties' liability on various surety bonds issued in connection with certain transactions between the Banks[1] and Commercial Money Center ("CMC"). CMC's business purportedly involved the leasing of equipment and vehicles to numerous lessees in exchange for lease payments. CMC then pooled the leases and sold them to institutional investors. Apparently, the majority of CMC's leasing business was a sham, and the Banks lost over $400 million in these transactions. The Banks now sue the Sureties to recover on the surety bonds associated with the transactions.[2]

---

[1]     Where not defined herein, capitalized terms used in this Opinion have the meanings ascribed to them in the Court's Consolidated Rulings issued August 19, 2005 (Docs. 1708, 1709).

[2]     The Court does not summarize here the entirety of the complicated factual scenario involved in these cases. Rather, the Court refers the reader to its two Consolidated Rulings on the numerous

This action currently is before the Court upon several pending motions, including (1) NetBank's Motion to Renew Its Interest in the Consolidated Motion for Judgment on the Pleadings ("Motion to Renew")(Doc. 1712);[3] (2) NetBank's Motion to Strike the Declaration of Jean Pierre Nogues in Opposition to NetBank's Motion to Renew ("Motion to Strike")(Doc. 1721); and (3) NetBank's Motion to Clarify/Enforce Briefing Deadlines for Dispositive Motions ("Motion to Clarify")(Doc. 1695).

As these motions raise related issues affecting the current posture of these cases, the Court has addressed them together. For the reasons set forth herein, NetBank's Motion to Renew (Doc. 1712) is granted. Based on NetBank's renewal of its motion, NetBank's request for judgment on the pleadings is granted in part and denied in part. With respect to NetBank's affirmative claims against Illinois Union (02-16010), NetBank's motion for judgment on the pleadings is denied. NetBank's motion for judgment on the pleadings also is denied with respect to Illinois Union's Fifth Counterclaim. Judgment on the pleadings is granted to NetBank, however, on Illinois Union's Fourth, Eighth and Ninth Counterclaims.

Additionally, NetBank's motion to strike the declaration of Jean Pierre Nogues (Doc. 1721) is denied. NetBank's summary judgment motion is deemed withdrawn without prejudice, and accordingly, the Motion to Clarify is denied as moot. The Court will, however, issue an Order establishing a schedule for dispositive motions and other outstanding matters.

## BACKGROUND

[3] While the Consolidated Motion addressed both Realty and the Sureties, the Court issued a separate Order regarding the Banks' dealings with Illinois Union. (Doc. 1709). NetBank renews its interest in the Consolidated Motion only to the extent that Motion addressed claims against and counterclaims asserted by Illinois Union. Accordingly, this Order does not address any claims asserted by NetBank against any other Surety.

NetBank, FSB ("NetBank"), one of the Claimant Banks in this action, originally joined in the Claimants' Lead Motion for Judgment on the Pleadings (Doc. 53)("Consolidated Motion"). NetBank withdrew from that motion, however, on April 14, 2004 (Doc. 1107). Subsequently, NetBank filed its Third Amended Complaint (Doc. 1274)[4] and a motion for partial summary judgment. (Doc. 1678).

The Sureties declined to respond to NetBank's partial summary judgment motion, asserting that the language of the Court's Amended Case Management Plan (Doc. 653) set the deadline for opposing dispositive motions 95 days after the close of expert discovery. Since expert discovery had not yet commenced (and had been stayed pending resolution of the Rule 12(c) motions), the Sureties argued that their opposition papers were not yet due. Because of this dispute, NetBank then filed its Motion to Clarify (Doc. 1695), which sought an Order compelling the Sureties to respond to NetBank's dispositive motion. The Motion to Clarify remains pending.

On August 19, 2005, this Court issued its Consolidated Rulings (Docs. 1708 and 1709), which resolved the pending motions for judgment on the pleadings. The Illinois Union Order (Doc. 1709) granted partial judgment on the pleadings to certain Banks with respect to their claims against Illinois Union Insurance Company. That Order also permitted NetBank, upon motion, to renew its interest in the Consolidated Motion (Doc. 53). NetBank immediately sought to avail itself of that opportunity, through the filing of the instant Motion to Renew (Doc. 1712).

---

[4]    The filing of this pleading was authorized by the Court's May 26, 2004 Order (Doc. 1257), which granted the motion of NetBank and Lakeland for leave to file supplemental pleadings (Doc. 200). The only material difference between the Second and Third Amended Complaints is NetBank's addition of certain claims against Royal Indemnity Company, based on Royal's conduct in the related California bankruptcy proceeding.

Despite the language of the Court's Order, which required NetBank to file a notice informing the Court as to the impact that granting the Motion to Renew would have on the pending summary judgment motion, NetBank failed to file any such notice. Instead, NetBank noted in its Position Statement, filed September 21, 2005, that it would "await[] a ruling from the Court on this Motion before taking one of the alternative steps outlined in Footnote 53 of the Illinois Union Order. . . ." (Doc. 1729, at 4). Thus, as of the date of this Order, NetBank's motion for partial summary judgment (based on the claims set forth in its <u>Third Amended Complaint</u>) remains pending, in conjunction with NetBank's motion to renew its interest in the Order granting Judgment on the Pleadings (which was based on the allegations set forth in the <u>Second Amended Complaint</u>). It is in this confusing posture that the within issues are presented to the Court.

Illinois Union vigorously has opposed NetBank's Motion to Renew, arguing that (1) NetBank, by withdrawing from the Consolidated Motion and filing its motion for summary judgment, waived its right to participate in the Illinois Union Order; (2) to the extent that the Court's Order granting NetBank's motion would determine the meaning of the Illinois Union policies, the Court first was required, pursuant to California law, to receive and consider all extrinsic evidence relevant to the meaning of the policies; (3) the Court's determination that Illinois Union issued surety bonds, rather than insurance policies, should not apply to NetBank, since NetBank expressly "admitted" and "ratified" Illinois Union's characterization of the transaction documents; (4) NetBank's transaction documents cannot be construed as surety bonds with CMC as the principal, since the SSAs impose no obligation on CMC to make payments to NetBank; (5) the Illinois Union Order does not apply to bar Illinois Union's claims

against NetBank, insofar as Illinois Union has alleged direct fraud on the part of NetBank; (6) alternatively, Illinois Union should be given the opportunity to file "supplemental papers" in opposition to the Consolidated Motion; and (7) in any event, Illinois Union should be given the opportunity to amend its pleadings, both with respect to NetBank and with respect to the other Banks party to this action.

In support of its opposition to NetBank's motion to renew, Illinois Union also submitted the declaration of its attorney, Jean Pierre Nogues ("Nogues Declaration"). In that Declaration, attorney Nogues testified as to the content of the evidence uncovered by Illinois Union during discovery, and averred as to the authenticity of certain exhibits, including transcripts of deposition testimony. NetBank then moved to strike the Nogues Declaration, asserting that the Declaration (1) was not based on personal knowledge; and (2) relied on inadmissible hearsay.

The Court considers the issues raised by the parties with respect to each of these pending motions below.

## DISCUSSION

As noted above, Illinois Union has raised multiple arguments opposing NetBank's request to renew its interest in the Consolidated Motion. As explained below, while a few of Illinois Union's arguments reflect appropriate limitations on the application of the Illinois Union Order to NetBank, the majority of these arguments are mere attempts to relitigate those issues decided adversely to Illinois Union in the August 19, 2005 Illinois Union Order. Accordingly, NetBank's Motion to Renew is <u>granted</u>, upon the terms and conditions explained herein.

## I.      Illinois Union's Challenges to NetBank's Motion to Renew

The Court first addresses issues relating to the propriety of granting NetBank's Motion to Renew, including Illinois Union's arguments that (1) NetBank, through its withdrawal from the Consolidated Motion and filing of a summary judgment motion, waived its right to participate in the Consolidated Motion; (2) the interpretation of the transaction documents requires extrinsic evidence and cannot be accomplished in the context of a Rule 12(c) motion; (3) NetBank has "admitted" or "ratified" Illinois Union's interpretation of the policy, thus barring the Court from extending the application of its prior orders to NetBank; and (4) NetBank's transaction documents cannot be construed as surety bonds with CMC as the principal, since the SSAs impose no obligation on CMC to make payments to NetBank. For the reasons explained in this section, NetBank's Motion to Renew is <u>granted</u>.

### A.      NetBank's Purported Waiver through Withdrawal from Consolidated Motion

At least implicitly, Illinois Union has argued that NetBank's withdrawal from the Consolidated Motion and filing of a summary judgment motion constitutes an effective waiver of NetBank's right to assert its interest in the Consolidated Motion. The Court views waiver as a threshold issue and, accordingly, first addresses this question, in light of the procedural posture of this case. For the reasons set forth herein, the Court concludes that the doctrine of waiver does not apply to the circumstances presented here.

Aside from certain inconsequential differences between the transaction documents, NetBank is similarly situated to the rest of the Banks with respect to its transactions with Illinois Union. For that reason, NetBank joined with the other Banks in filing the Consolidated Motion

in January 2003.  Neither NetBank nor Illinois Union briefed any issues specific to NetBank—presumably because no such briefing was necessary.  Thus, NetBank's decision to withdraw from the Consolidated Motion and file an individualized summary judgment motion apparently was a strategic choice and was not necessitated by any differences in the factual or legal posture of the case.

When the Court issued its Consolidated Rulings, it resolved certain global issues with respect to all parties involved in the Consolidated Motion.   Although the Consolidated Rulings explicitly did not apply to NetBank, those Rulings resolved threshold issues and thus became law of the case.   "The **law-of-the-case** doctrine posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Scott v. Churchill*, 377 F.3d 565, 569-70 (6th Cir. 2004).[5]

Pursuant to the law of the case doctrine, this Court's determination of issues between Illinois Union and parties similarly situated to NetBank necessarily must govern the disposition of the same issues as between Illinois Union and NetBank—regardless of whether those issues are presented in the context of a pleadings motion or summary judgment.  Thus, regardless of how NetBank's motion is styled, Illinois Union eventually must face the application of the Illinois Union Order to its NetBank transactions.

In the present posture of the case, the Court has before it a Rule 12(c) motion that was fully briefed prior to NetBank's withdrawal from the Consolidated Motion.   Requiring the

---

[5]    In a diversity case, application of the law of the case doctrine is a procedural matter governed by federal law. *See McDonald v. Petree*, 409 F.3d 724, 730 (6th Cir. 2005).  Procedural matters in multidistrict litigation proceedings are determined pursuant to the law of the circuit in which the transferee court sits. *See Fehmers v. Ford Motor Co. (In re Bridgestone/Firestone, Inc., ATX, ATX II, & Wilderness Tires Prods. Liab. Litig.*, 129 F. Supp. 2d 1202, 1205 (S.D. Ind. 2001).

parties to complete summary judgment briefing before extending the Court's rulings to NetBank would be a futile exercise. No prejudice inures to Illinois Union based on the Court's "reactivation" of NetBank's 12(c) motion.[6] Accordingly, the waiver doctrine does not preclude NetBank's renewal of its interest in the Consolidated Motion.

### B. Contractual Interpretation Principles and the Parol Evidence Rule

The Court next turns to Illinois Union's contentions relating to California law and its impact on the Court's interpretation of the documents in these cases. Although Illinois Union directs its briefing at NetBank's pending motion to renew, its argument essentially challenges the underlying reasoning of the Consolidated Rulings (Docs. 1708, 1709). Illinois Union contends that the Court applied an improper standard in holding that the terms of the transaction documents entitled the Banks to partial judgment on the pleadings. Illinois Union argues, in essence, that the Court could not have made such a determination under California law without first admitting and considering extrinsic evidence as to the documents' intended meaning.

Relying primarily on *Pacific Gas & Electric Co. v. G. W. Thomas Drayage &Rigging Co.*, 69 Cal. 2d 33 (1968), and *Wolf v. Superior Court*, 114 Cal. App. 4th 1343, 1351 (2d Dist. 2004), Illinois Union asserts that California has abandoned the "plain meaning" rule and that, "[u]nder state law, extrinsic evidence is admissible to aid contract interpretation even when the text is clear." *Molski v. Gleich*, 318 F.3d 937, 958 (9th Cir. 2003)(concurrence). Thus, Illinois Union argues that, as long as "the offered evidence is relevant to prove a meaning to which the language of the instrument is reasonably susceptible," the court is "require[d] . . . to look beyond

---

[6] Particularly given the more lenient standard applicable to Illinois Union's claims at the pleadings stage, Illinois Union has no basis to complain that these issues are addressed in the Rule 12(c), rather than the Rule 56, context.

the face of the [policy] to the true intentions of the parties. . . ." *Id.* at 958. Accordingly, Illinois Union asserts, determining the pleadings motion strictly on the basis of the transaction documents was impermissible under California law, and such interpretation should be deferred to the summary judgment stage or later.

The Court notes, preliminarily, that Illinois Union argued precisely the contrary point in its brief in opposition to the Consolidated Motion, and relied in part on California law to support its contentions. (Doc. 119). Section III(D) of Illinois Union's opposition papers was titled "The Unambiguous Policy Language And The Clear Intent Of The Parties Establishes That Illinois Union Issued Insurance Policies." *Id.* at 13.[7] In that section, Illinois Union argued, first, that this Court should not "ignore the plain language of the policies" in determining their meaning. (Doc. 119, at 13). Illinois Union also asserted that "[t]he language of a contract governs its interpretation if it is clear and explicit and does not involve an absurdity." *Id.*, *citing* Cal. Civ. Code § 1638. Finally, Illinois Union cited cases standing for the proposition that "the construction of agreements which are unambiguous on their face is a matter of law. . . ." *See* Doc. 119, at 13, n.8, *quoting Tanker v. North Crest Equestrian Ctr.*, 86 Ohio App. 3d 522, 525 (9th Dist. 1993). Having invited the Court to look to the plain contractual language in support of its position, Illinois Union cannot now complain that the Court accepted its suggestion, even if the Court adopted a contrary construction of that language.

---

[7]    Illinois Union did state that, "[a]t most, the Investor Banks' . . . assertions create material questions of fact which cannot be resolved on a motion for judgment on the pleadings. . . ." (Doc. 119, at 13, n.8). In the very next sentence, however, Illinois Union confirmed its position that the terms of its contracts were "unambiguous." Clearly, Illinois Union's assertions as to "ambiguity" in the instruments were no more than an afterthought and an alternative to its principal arguments. Illinois Union did not identify any terms in the documents that should be viewed as "ambiguous," nor did it argue that contractual construction principles would prevent the Court from accepting Illinois Union's own interpretation as a matter of law.

Nonetheless, as Illinois Union calls into question the reasoning underlying this Court's prior opinion, the Court briefly addresses this challenge to its previous analysis. First, despite Illinois Union's assertion that the Court's ruling was predicated on the application of California law, the Court did not find California law to be the exclusive source of guidance for interpretation of the transaction documents in this case. As the Court noted in the Illinois Union Order (Doc. 1709), all of the Sales and Servicing Agreements ("SSAs") used in Illinois Union's transactions contained a choice of law provision specifying the application of Nevada law.[8] Thus, to the extent that the Court necessarily construed the SSAs in the context of the entire transaction, the California interpretation rules were irrelevant to that analysis.

Moreover, although the Court acknowledges Illinois Union's cited decisions, the Court does not believe California law to be as clear as Illinois Union claims. First, there is substantial tension between the line of cases cited by Illinois Union and California's statutory interpretation provisions. As noted above, the California Civil Code provides that "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity. . . ." Cal. Civ. Code § 1638. Additionally, "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained <u>from the writing alone</u>, if possible. . . ." Cal. Civ. Code § 1639 (emphasis added).

---

[8]    The Court's review of Nevada law reflects that Nevada has not abandoned the "plain meaning" rule and applies a relatively strict version of the parol evidence rule. *See Crow-Spieker #23 v. Robinson*, 97 Nev. 302, 305 (1981)("[t]he parol evidence rule forbids the reception of evidence which would vary or contradict the contract. . . ."); *Trs. of the Constr. Indus. v. Summit Landscape Cos.*, 309 F. Supp. 2d 1228, 1235 (D. Nev. 2004)("[e]xtrinsic evidence is inadmissible to contradict a clear contract term. . . .").

Nevada has applied its parol evidence rule to the interpretation of insurance contracts. *See, e.g., Montana Ref. Co. v. National Union Fire Ins. Co.*, 918 F. Supp. 1395, 1397 (D. Nev. 1996)("[a]n insurance policy is a contract, construed as written absent any ambiguity. . . . Absent some ambiguity . . . a court may not look to anything but the entire contract. . . .")(internal quotations omitted). "Whether or not a document is ambiguous is a question of law for the court." *Margrave v. Dermody Props.*, 110 Nev. 824, 827 (1994).

Finally, Illinois Union's interpretation of California law would compel a finding that a contractual dispute may <u>never</u> be resolved in the context of a motion for judgment on the pleadings, regardless of the existence of an integrated agreement. The Court does not believe this to be the law of California. Notably, despite the existence of Illinois Union's cited cases, California courts have engaged in contractual interpretation at relatively early stages of litigation, and have determined the meaning of such contracts where possible from the face of the instrument. *See Mirpad v. California Ins. Guarantee Assn.*, 132 Cal. App. 4th 1058, 1069 (2d Dist. 2005)(applying statutory plain meaning rule to determine "clear and explicit" policy provisions, and ordering judgment on pleadings in favor of insurer); *Mez Indus. v. Pacific Nat. Ins. Co.*, 76 Cal. App. 4th 856, 878 (2d Dist. 1999)(granting insurer's demurrer, as policy provided no coverage for willful acts); *Aas v. Avemco Ins. Co.*, 55 Cal. App. 3d 312, 321 (1st Dist. 1976)(granting insurer's motion for judgment on the pleadings, where policy "raise[d] no ambiguity"). Additionally, federal courts applying California law have treated contractual interpretation as a legal question capable of determination without resort to extrinsic evidence. *See, e.g., Crow Winthrop Dev. Ltd. Pshp. v. Jamboree LLC (In re Crow Winthrop Operating Pshp.)*, 241 F.3d 1121, 1124 (9th Cir. 2001)("[u]nder California law, if a contract's terms are unambiguous, a court may interpret the contract without recourse to extrinsic evidence. . . ."); *Gerlinger v. Amazon.com, Inc.*, 311 F. Supp. 2d 838, 843 (N.D. Cal. 2004)("[i]nterpretation of a contract is a purely legal question which is susceptible to a motion for judgment on the pleadings."); *Scheffler v. Allstate Ins. Co.*, 196 F. Supp. 2d 1003, 1007 (C.D. Cal. 2002)(granting defendant's motion for judgment on the pleadings, as defendant's policy plainly imposed no obligation to defend insured plaintiff against claims at issue); *Lindsey v. Admiral Ins. Co.*, 804 F.

Supp. 47, 52 (N.D. Cal. 1992)(granting insurers' motion to dismiss and motion for judgment on the pleadings with respect to issue of obligation to defend insured).

While it may be true that California law permits, and even encourages, a more liberal resort to extrinsic evidence (and, thus, unlike the law in many states, does not bar consideration of it where a court deems resort to such evidence useful), the Court does not find, as Illinois Union contends, that California law <u>mandates</u> resort to such evidence in all cases. Accordingly, the Court adheres to its prior analysis and extends that analysis to the transaction documents executed between NetBank and Illinois Union.

### C. Ratification/Admissions of NetBank

Illinois Union, in its surreply to NetBank's Motion to Renew, claims that NetBank "ratified" or "admitted" Illinois Union's characterization of the transaction documents as insurance policies, since it did not object to that characterization prior to the initiation of this litigation. The Court previously has disposed of similar assertions in connection with the Consolidated Motion. In its opposition to that motion, Illinois Union claimed that various documents and statements on behalf of the investor banks constituted "admissions" by the investor banks as to the nature of the transactions. The Court noted, in the Illinois Union Order, that its decision was based only on the language and substance of the transaction documents and, as such, the asserted "admissions" by the banks did not trump the Court's contractual interpretation. (Doc. 1709, at 21, n.25).[9] Again, the Court adheres to its prior determination and

_____

[9] Illinois Union also relies on certain statements contained in NetBank's pleadings and its summary judgment motion briefing. As explained above and in the Illinois Union Order (Doc. 1709), however, the Court declines to ascribe binding significance to such purported "admissions" where they conflict with the Court's interpretation of the documents themselves.

extends the analysis set forth in the Illinois Union Order (Doc. 1709) to transactions involving NetBank.

## D. CMC's Alleged Obligee Status

Illinois Union argues that the Court cannot interpret NetBank's transaction documents to find that CMC is the principal obligor on a surety bond, since the SSAs impose no obligation on CMC to make payments to NetBank. The Court previously has considered the language of Illinois Union's policies and SSAs, however—and the NetBank documents are substantively identical to those previously reviewed. In the Illinois Union Order (Doc. 1709), the Court found that Illinois Union's transaction documents collectively supported a determination that CMC <u>had</u> undertaken obligations to the Banks, and was appropriately denominated as an obligor on a bond undertaken for the Banks' benefit.

As explained in detail in the Court's prior Orders, the language of the documents involved in the NetBank transactions belies Illinois Union's contention that CMC was intended to bear no obligation to NetBank. Illinois Union's policy (02-16010, Doc. 4, Exh. 35, at ¶ 6) defines "default" under a Lease as occurring when the "Named Insured fails to receive a payment under the Lease from the Company, as servicer, <u>or from any sub-servicer,</u> on the scheduled due date. . . ." (emphasis added). Accordingly, default could be triggered either by a failure of the lessee to pay, or by the failure of CMC, as sub-servicer, to meet its independent obligations to NetBank. Additionally, Illinois Union's assertion that the SSAs exempt CMC from the obligation to "advance" funds in the event of lessee default is contrary to the language of the documents. The SSAs actually provide that it is the <u>Servicer</u>—i.e., <u>Illinois Union</u>—that has no obligation to make such advance payments (as distinct from payments due, upon default,

as guarantor of the obligations undertaken in the SSAs). (02-16010, Doc. 4, Exh. 26, at section 4.6).

The Court also disagrees with Illinois Union's assertion that the policies insured CMC for its losses in connection with servicer advances. There is no such language in the policies. To the extent that the SSAs may have implied a right of reimbursement to CMC from funds advanced on account of defaults under the policies, the SSAs simultaneously undermined any such right, conveying to NetBank <u>all</u> of CMC's "rights under the Endorsements. . . ." (02-16010, Doc. 4, at ¶ 2.1). Accordingly, the SSAs make clear that any rights granted to CMC by the terms of the transaction documents are secondary and subordinate to the rights of NetBank.[10] Finally, as previously acknowledged in the Illinois Union Order, the Indemnity Agreement between CMC and Illinois Union belies any assertion of rights by CMC and supports the Court's reading of the documents.[11]

Thus, the Court adheres to the analysis set forth in the Illinois Union Order, and extends that analysis to the transactions between NetBank and Illinois Union. NetBank's motion to renew its interest in the Consolidated Motion for Judgment on the Pleadings is <u>granted</u>, and the Court hereby orders that its Illinois Union Order of August 19, 2005 (Doc. 1709) shall be deemed applicable to NetBank. Having reached that conclusion, however, there are certain significant limitations on the application of that Order to NetBank. Just as Illinois Union is

---

[10] Based on the language of the SSAs, including section 2.1(a), the Court also disagrees with Illinois Union's contention that, pursuant to the terms of the SSAs, CMC retained ownership of the leased equipment.

[11] Contrary to Illinois Union's contentions, the Indemnity Agreement is not "extrinsic evidence" that was improperly considered by the Court in its evaluation of the pleadings motion. The Indemnity Agreement between CMC and Illinois Union was attached as an Exhibit to NetBank's Second Amended Complaint, and thus was appropriate for consideration on a Rule 12(c) motion. (02-16010, Doc. 3, Exh. 8). *See* Fed. R. Civ. P. 10(c) ("[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

bound by the reasoning and rulings in the Illinois Union Order, so too is NetBank.  The Court

explains the impact of its earlier ruling on the NetBank/Illinois Union action below.

## II.  Application of the Consolidated Rulings to NetBank

### A.  Application to NetBank's Affirmative Claims

As explained above, the Court's Illinois Union Order granted partial judgment on the

pleadings to a number of banks as to claims between those banks and Illinois Union.  The Court

now extends the rulings in the Illinois Union Order (Doc. 1709) to the transactions between

Illinois Union and NetBank.  Accordingly, the Court now examines the specific application of its

Illinois Union Order to the claims asserted by NetBank.  The Court's Illinois Union Order (Doc.

1709) held that the language of the transaction documents precluded Illinois Union from raising

certain defenses to the Banks' claims in these actions, including defenses based on (1) the

alleged fraud of CMC, and CMC's purported status as "agent" for the Banks; and (2) insurance

law, which this Court has held inapplicable to the transactions between Illinois Union and the

Banks.  Those rulings apply with equal force to the claims asserted by and between NetBank and

Illinois Union.  The Illinois Union Order went further, however, and also granted partial

judgment to the Banks on certain of their affirmative claims because and to the extent that

Illinois Union's sole defenses to those claims were grounded in the theories rejected by the

Court.[12]

---

[12]   The Court's prior Order thus affected the affirmative claims asserted by multiple Banks, to the extent that those claims presented solely legal questions that were resolved by the prior Order.  Since the impact of the Illinois Union Order differs from bank to bank, and since many of these claims have been resolved through mediation in the interim, the Court does not specify here the impact of its Order on pleadings filed by Banks other than NetBank.

In the Consolidated Motion for Judgment on the Pleadings (02-16000, Doc. 53), in which NetBank now has reasserted its interest, NetBank moved for judgment as to three of the affirmative claims in its Second Amended Complaint (02-16010, Doc. 2):

(1)     Count I, Breach of Contract as to the Performance Bonds;

(2)     Count VII, Declaratory Judgment with respect to the Bonds and SSAs, as well as the     Sureties' indemnification obligations;

(3)     Count VIII, Promissory Estoppel, relating to statements made regarding the Bonds     and SSAs.

Each of these Counts requests judgment with respect to each of NetBank's lease pools, including all three lease pools on which Illinois Union served as surety. For the reasons explained herein, while Illinois Union is prohibited from relying on insurance-related defenses in response to NetBank's claims and may not resist the payment obligations to NetBank by reference to the underlying fraud of CMC or the lessees, NetBank's motion for judgment on the pleadings as to its claims must be <u>denied</u>.

NetBank purchased its Illinois Union pools on or about September 27, 2000; October 20, 2000; and January 2, 2001, respectively.[13] Although NetBank alleges essentially the same facts with respect to each of its lease pools, the Court's review of the parties' pleadings reflects that there are significant factual differences in the parties' allegations relating to the circumstances surrounding the various purchases.

---

[13]     The last NetBank lease pool, as to which Illinois Union issued a Bond on January 2, 2001, actually was purchased by NetBank several years earlier, in 1999. NetBank sought replacement coverage from Illinois Union when the former surety, Frontier Insurance Company, suffered a precipitous decline in its rating. According to Illinois Union, NetBank sought such replacement coverage under pressure from its regulating agency, the Office of Thrift Supervision ("OTF"), following an OTF examination of NetBank in November of 2000.

In considering NetBank's motion for judgment on the pleadings, the Court has reviewed NetBank's affirmative pleadings, as well as Illinois Union's Answer and Counterclaims. Illinois Union's pleadings demonstrate that, with respect to NetBank's first two lease pool purchases, Illinois Union relies on defenses grounded in the allegations of fraud by CMC, as well as the contention that insurance defenses foreclose or limit NetBank's recovery. These defenses all are precluded by the Court's findings in the Illinois Union Order.

With respect to the third lease pool, however, as to which Illinois Union issued "substitute" coverage on January 2, 2001, Illinois Union does not rely on defenses foreclosed by the Illinois Union Order. Rather, Illinois Union's Fifth Counterclaim alleges direct fraud against NetBank with respect to the third lease pool, asserting that "<u>NetBank knew</u> that a significant number of its leases were in default by not later than December 2000. . . ." Illinois Union Second Amended Counterclaims ("SAC"), 02-16007, Doc. 3, at 44 (emphasis added).[14]

Illinois Union's opposition to NetBank's Motion to Renew explains the basis for the allegations set forth in the Fifth Counterclaim.[15] Essentially, Illinois Union claims that, by December 2000, the audit conducted of NetBank by the Office of Thrift Supervision, as well as NetBank's own internal investigation, revealed sufficient information to put NetBank on notice of CMC's fraud. Nonetheless, Illinois Union contends, NetBank actively concealed this information in January 2001, in order to induce Illinois Union to issue a "substitute" policy on an

---

[14]    In its opposition brief, Illinois Union asserts that NetBank also may have engaged in fraud as to the earlier lease pools. No such allegation appears in the current pleadings, however. As noted below, the Court will address Illinois Union's desire to add such claims or defenses to its pleadings when it addresses Illinois Union's now-pending Motion for Leave to File Amended Counterclaims.

[15]    The Court sets forth the information contained in Illinois Union's brief only for explanatory purposes and does not consider it for purposes of determining the sufficiency of Illinois Union's pleading.

existing lease pool. According to Illinois Union, NetBank sought such "substitute" coverage as a replacement for its prior surety, Frontier Insurance Company, whose rating had declined precipitously. NetBank needed replacement coverage from an "A" rated insurer in order to avoid a requirement (imposed by its regulating agency, the Office of Thrift Supervision) that it maintain significant reserves in order to compensate for the increased risk on this lease pool.

In a Rule 12(c) motion for judgment on the pleadings, the Court must construe all well-pleaded material facts in favor of the nonmoving party. *See Benson v. O'Brien*, 67 F. Supp. 2d 825, 829 (N.D. Ohio 1999). As explained *infra*, section II.B., the Court finds that Illinois Union's Fifth Counterclaim sufficiently alleges fraud as against NetBank. Accordingly, in the context of this motion, the Court accepts Illinois Union's contentions, and those well-pleaded allegations compel denial of NetBank's motion for judgment on its affirmative claims.

The Court has stated herein its intention to apply the principles set forth in its Illinois Union Order, and it has done so, to the extent that NetBank's claims are encompassed by the terms of that Order. The Illinois Union Order did not hold, however, that Illinois Union was precluded from asserting fraud <u>on the part of an obligee Bank</u> as a defense to a bank's claims on the lease bonds. Accordingly, with respect to claims involving the third lease pool, it is clear that judgment in NetBank's favor is inappropriate. Insofar as Counts I, VII and VIII of NetBank's Second Amended Complaint seek judgment as to all three of the Illinois Union lease pools, moreover, NetBank's motion for judgment on the pleadings must be, and hereby is, <u>denied</u>.[16]

---

[16] The Court does not address the question of whether the Counts are severable by lease pool. The Court may consider that question after it assesses whether and to what extent Illinois Union will be permitted to amend its pleadings.

**B.      Application to Illinois Union's Counterclaims**

As explained above, the Illinois Union Order precluded Illinois Union from relying on an agency theory to impute fraud to the Banks based on allegedly fraudulent conduct by CMC. Since most of Illinois Union's claims (like its defenses) are grounded in CMC's fraudulent conduct, the Illinois Union Order thus encompasses the majority of the allegations asserted in Illinois Union's Second Amended Counterclaims ("SAC"), and thereby entitles NetBank to judgment on the majority of Illinois Union's Counterclaims.

Illinois Union's Fifth Counterclaim differs, however, from the other allegations of Illinois Union's pleading and contains direct allegations of fraud against NetBank. As such, the Fifth Counterclaim is not governed by the Illinois Union Order, and judgment on the pleadings is <u>denied</u> to NetBank as to the Fifth Counterclaim.

Illinois Union's SAC (02-16007, Doc. 3) contain a total of fourteen claims against various CMC-related entities, two Guardian entities, several CMC-affiliated individuals, multiple banks, and one surety (Royal Indemnity Company). Of these fourteen claims, the first through seventh seek rescission of various Illinois Union policies based on fraud.[17] The SAC contain five claims asserted against NetBank—the Fourth, Fifth, Eighth, Ninth and Eleventh Counterclaims. The Fourth and Fifth Counterclaims seek rescission, while the Eighth and Ninth are claims for declaratory relief. The Eleventh Counterclaim seeks a declaration that Royal's bonds provide primary coverage with respect to one of the NetBank pools.[18]

---

[17]      The remaining seven claims seek various remedies, including declaratory relief, indemnity, an accounting, and a constructive trust.

[18]      None of the Banks have sought judgment on the pleadings with respect to the Eleventh Counterclaim.

Illinois Union strenuously argues that the Court's prior ruling did not encompass Illinois Union's dealings with NetBank, and that Illinois Union's allegations against NetBank should be treated differently. As discussed above, Illinois Union asserts that, to the extent that its Second Amended Counterclaims allege direct fraud by NetBank (as opposed to attempts to impute CMC's fraud to NetBank), those claims were not precluded by the Court's prior Order and should be allowed to proceed. As noted above (section II.A., *supra*), the Court agrees.

The allegations set forth in the majority of the counterclaims (including the Fourth Counterclaim, asserted against NetBank) are identical to those asserted against other Banks and are governed by the analysis set forth in the Court's prior Orders granting the Banks' motion for partial judgment on the pleadings. The Fourth Counterclaim, in particular, is governed by section II(C) of the Illinois Union Order, which held that Illinois Union's allegations of fraud based on CMC's status as "agent" for the Banks failed to state a claim. Doc. 1709, section II(C).[19] The Court's prior ruling granting judgment on the pleadings thus is appropriately extended to the Fourth Counterclaim.

With respect to the Eighth and Ninth Counterclaims, those claims seek declaratory relief relating to certain defenses based on insurance law—specifically, the defenses based on preexisting losses and usury. As noted in this Court's Order granting the motions of Chase for final judgment (02-16000, Doc.1817), Illinois Union's insurance defenses also are precluded by the Illinois Union Order. That Order held that Illinois Union's policy was actually a surety bond

---

[19]    The Court is not persuaded by Illinois Union's effort to merge its agency and fraud theories. To the extent Illinois Union asserts that NetBank used CMC to help perpetuate an alleged fraud vis-à-vis the third lease pool, that assertion is governed by the Fifth Counterclaim, not by the traditional "agency" theories espoused in the Fourth Counterclaim.

and should be so construed. Accordingly, defenses grounded in insurance law are unavailable, and judgment on the pleadings is extended to the Eighth and Ninth Counterclaims as well.

The one exception to the Court's previous analysis is the Fifth Counterclaim, which is asserted against NetBank alone and seeks rescission of the Illinois Union policy issued on January 2, 2001. As the Fifth Counterclaim was asserted against NetBank alone, it could not have been resolved by the Court's prior ruling on the Motion for Judgment on the Pleadings (Doc. 1709). That opinion addressed only the transactions between Illinois Union and the other Banks, and explicitly excluded NetBank from its analysis. Moreover, since the Fifth Counterclaim asserts direct fraud against NetBank, it sets forth unique allegations that are distinct from those set forth in Illinois Union's Fourth Counterclaim (as well as the counterclaims asserted against other Banks). While Illinois Union's Fourth Counterclaim is based on representations made by CMC "on behalf of and as agent for" the Banks, *see* SAC, at ¶ 42, and the Banks' "actual[] or constructive[]" knowledge of CMC's fraud, *see* SAC, at ¶ 48, the Fifth Counterclaim alleges independent knowledge of lease defaults by NetBank prior to December 2000 and alleges that such knowledge was not disclosed to Illinois Union when NetBank sought and obtained a specific "substitute" guarantee from Illinois Union on a finite and identifiable pool of leases.

The allegations set forth in the Fifth Counterclaim, although significantly more precise than those contained in the Fourth Counterclaim, still present a close question in light of Fed. R. Civ. P. 9(b)'s admonishment that "the circumstances constituting fraud or mistake shall be stated with particularity. . . ." Fed. R. Civ. P. 9(b). The Court is mindful, however, that "[m]alice, intent, knowledge, and other condition of mind of a person may be averred generally. . . ." *Id.*

21

On balance, the Court believes that the allegations of the Fifth Counterclaim state a claim for fraud against NetBank, albeit a distinctly different one than that presented by the allegations appearing in the other Counterclaims.

In addition to alleging NetBank's direct knowledge of lease defaults, Illinois Union alleges that "NetBank employees[,] including Patrick Dowling" made representations to Illinois Union relating to the low degree of risk presented by the existing lease pool. Additionally, Illinois Union alleges fraud based on NetBank's failure to disclose facts (i.e., high rates of default) known to it prior to Illinois Union's issuance of the January 2, 2001 policy.

As the Court explained in the Illinois Union Order (and above, at section II.A.), that Order was based on the Court's determination that Illinois Union's pleadings did not state fraud claims against the Banks to the extent such claims were premised on CMC's alleged status as "agent" for the Banks. The Court did not address the situation where, as here, Illinois Union's fraud allegations are directed at NetBank and its own conduct. The Illinois Union Order did not preclude Illinois Union from stating a claim for rescission based on the direct fraud of a bank, and accordingly, it did not bar the assertion of Illinois Union's Fifth Counterclaim. Thus, judgment on the pleadings is <u>denied</u> to NetBank on this Counterclaim.

## III.     Request for Supplemental Briefing

To the extent that Illinois Union seeks leave to submit "supplemental papers" in opposition to NetBank's contentions in the Consolidated Motion (Doc. 53), that request is denied. The Consolidated Motion was fully briefed on March 28, 2003. NetBank did not withdraw from that motion until April 14, 2004, and the Court did not issue the Consolidated

Rulings until August 19, 2005. Illinois Union had ample opportunity to present its arguments regarding NetBank in connection with the briefing on the main motion and, to the extent that relevant information subsequently became available, could have requested leave to submit supplemental papers prior to issuance of the Court's Consolidated Rulings. The Court also has fully considered Illinois Union's arguments on the within motion, including the arguments presented in Illinois Union's surreply brief. Accordingly, supplemental briefing on the Consolidated Motion is unnecessary and will not be permitted.

## IV.    Motion to Strike Nogues Declaration

NetBank has moved to strike the declaration of Illinois Union's counsel, Jean Pierre Nogues, on the ground that it is not based on personal knowledge and contains impermissible hearsay. (Doc. 1721). In its analysis above, the Court has granted NetBank's Motion to Renew, and has defined the impact of extending the application of the Consolidated Rulings to the transactions that occurred between Illinois Union and NetBank. In making its determinations, the Court has considered all relevant evidence, including that contained in the Nogues declaration and exhibits thereto.

Since the Court's analysis is based, however, on construction of the transaction documents and of Illinois Union's pleadings, excluding the evidence in question would not materially affect the Court's analysis or the conclusions herein.[20] Accordingly, NetBank's Motion to Strike is <u>denied</u> as unnecessary.

---

[20]    Additionally, the Court notes that NetBank's own supporting exhibits are unaccompanied by any declaration and thus unauthenticated in any way. Since NetBank's supporting evidence relates almost exclusively to the propriety of amendment of Illinois Union's pleadings, however, this evidence does not change the Court's analysis or the conclusions set forth herein.

## IV. Amendment of Pleadings

In its briefing in opposition to NetBank's Motion to Renew, Illinois Union stated its intention to seek leave to amend its pleadings upon the Court's lifting of the stay in these proceedings. On March 29, 2006, on the Court-established deadline for filing motions for leave to amend, and shortly before issuance of the within Order, Illinois Union filed a Motion for Leave to Amend Counterclaims, seeking to allege against NetBank additional extrinsic facts in support of its contentions that (1) NetBank fraudulently concealed information in order to induce Illinois Union to issue its replacement policy in January 2001; and (2) Illinois Union issued an insurance policy, not a surety bond (and NetBank knew that the transaction was so structured). 02-16007, Doc. 55, attach. 1 (motion attached as exhibit).

Although Illinois Union's motion for leave to amend was filed after the completion of briefing on the within motions, the majority of NetBank's reply memorandum is devoted to NetBank's argument that any proposed amendments by Illinois Union would be futile. The Court agrees with Illinois Union that NetBank's analysis of a hypothetical complaint is premature and a waste of judicial resources. The Court will evaluate the viability of Illinois Union's proposed amendments upon completion of briefing of its motion for leave to amend. The question the Court must answer now is whether it should engage in that analysis before it may apply its earlier rulings to the NetBank/Illinois Union transactions.

As the Court has explained both in its Order granting Chase's motion for final judgment (02-16000, Doc.1817) and herein, Illinois Union's failure to request leave to amend its pleadings during the pendency of the Consolidated Motion was not based on any "request" by the Court. To the contrary, the Court continually has stated its desire for amendment of pleadings to occur

"sooner rather than later." *See* Transcript, 10/22/2003 (Doc. 557, at 90). Although the Court extended the deadline for amendment of the pleadings in order to account for additional matters that might become evident following the Court's ruling on the Rule 12(c) motions, Illinois Union's allegations relating to the structure of the transactions do not constitute such new matters. The question of whether Illinois Union entered into insurance agreements or surety contracts with the Banks has been in issue since the filing of the Consolidated Motion, and the parties directed significant portions of their briefing to that issue.

To the extent that Illinois Union was confused as to whether amendment of the pleadings was permitted during the pendency of the pleadings motions, the fact that other parties sought (and were granted) leave to amend during that period should have dispelled that uncertainty. NetBank and Lakeland filed a motion for leave to file supplemental pleadings (Doc. 200), which the Court granted on May 26, 2004 (Doc. 1257). United Security Bank also filed a motion for leave to file a supplemental counterclaim (Doc. 1086), which motion remains pending. Finally, during the pendency of the Consolidated Motion, Illinois Union itself filed a motion for leave to amend its pleadings in order to assert claims against CMC. (Doc. 77). In light of this history, the Court finds it difficult to accept Illinois Union's assertion that it believed that the Court discouraged the filing of amended pleadings.

Thus, a request by Illinois Union for leave to amend its claims in order to avoid the impact of a ruling developed over two years of careful consideration comes with ill grace. To the extent, moreover, that Illinois Union seeks to amend its Answer and Counterclaims in order to assert additional allegations of fraud by NetBank in connection with its third lease pool, the Court has found that the fraud allegations in its current pleadings are sufficient to withstand

judgment on the pleadings.  As such, further amendments on that issue would not aid Illinois Union's current cause—they are unnecessary at this stage.


**V.**     **Status of NetBank's Third Amended Complaint, Summary Judgment Motion and Motion to Clarify**

Finally, the Court clarifies the impact of the within ruling on the procedural status of these cases, including the status of NetBank's pleadings and the Motion to Clarify.

As noted herein, the within ruling <u>denies</u> partial judgment on the pleadings to NetBank on the affirmative allegations of its Second Amended Complaint; however, that pleading was superseded by NetBank's Third Amended Complaint.  Nonetheless, as the only substantive changes between the two pleadings involve additional allegations against Royal Indemnity Company, the status of NetBank's Third Amended Complaint should not be affected materially by this ruling.  Thus, the Court construes the Consolidated Motion as a motion for judgment on NetBank's Third Amended Complaint, and accordingly, the application of the within Order is extended to that pleading.

With respect to NetBank's pending summary judgment motion, NetBank failed to inform the Court of the potential impact of this ruling on that motion, stating that it would do so at a later date.  NetBank does not, however, retain a privilege to pick and choose when it will (or if it will) comply with this Court's Orders.  The Court declines either to undertake a *sua sponte* review of the impact of this Order on NetBank's summary judgment motion, or to allow further briefing on that issue.  Rather, NetBank's motion for summary judgment (Doc. 1678) is deemed <u>withdrawn without prejudice</u> to refiling relevant portions of that motion, in accordance with a dispositive motion schedule to be established by the Court.

Accordingly, the Motion to Clarify (Doc. 1695) is <u>denied as moot</u>. The Court will resolve the parties' confusion with respect to dispositive motion briefing schedules, and other outstanding matters, in a scheduling Order to be issued shortly.

## VI.     Conclusion

For the reasons set forth herein, NetBank's Motion to Renew (Doc. 1712) is <u>granted</u>. Based on NetBank's renewal of its motion, NetBank's request for judgment on the pleadings is <u>granted in part and denied in part</u>. With respect to NetBank's affirmative claims against Illinois Union (02-16010), NetBank's motion for judgment on the pleadings is <u>denied</u>, though Illinois Union is limited in the affirmative defenses it may assert in response to those claims to the extent explained in both this and the Illinois Union Order.

NetBank's motion for judgment on the pleadings with respect to Illinois Union's Counterclaims is <u>granted in part and denied in part</u>. Judgment on the pleadings is <u>granted</u> to NetBank on Illinois Union's Fourth, Eighth and Ninth Counterclaims. With respect to the Fifth Counterclaim, judgment on the pleadings is <u>denied</u> to NetBank.

Additionally, NetBank's motion to strike the declaration of Jean Pierre Nogues (Doc. 1721) is <u>denied</u>. NetBank's summary judgment motion (Doc. 1678) is deemed <u>withdrawn without prejudice</u>, and accordingly, the Motion to Clarify (Doc. 1695) is <u>denied as moot</u>. The Court will, however, issue an Order establishing a schedule for dispositive motions and other outstanding matters.

**IT IS SO ORDERED.**

s/Kathleen M. O'Malley
**KATHLEEN McDONALD O'MALLEY**

**UNITED STATES DISTRICT JUDGE**

**Dated: May 9, 2006**