UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: COMMERCIAL MONEY CENTER, INC., EQUIPMENT LEASE LITIGATION | : : : : : : : : : : | Case No. 1:02CV16000<br><br>(MDL Docket No. 1490)<br><br>JUDGE O'MALLEY<br><br>**MEMORANDUM OF OPINION AND ORDER**<br><br>This Order Relates To All Actions |

This action is before the Court upon the motion of the Guardian Parties[1] for an injunction pursuant to the All Writs Act, 28 U.S.C. § 1651 (02-16000, Doc. 1840), enjoining CadleRock Joint Venture, L.P. ("CadleRock") from proceeding with five state court actions pending in Ohio and Arizona against the Guardian Parties ("State Actions").[2] The State Actions arise from CadleRock's purchase of obligations owing from certain Guardian Parties to creditor banks, and the Guardian Parties' alleged default on those obligations.

In at least some of the State Actions, CadleRock seeks to establish priority over the Guardian Parties with respect to any monies recovered by virtue of the Guardian Parties' claims against Royal Indemnity Company in these actions. The Guardian Parties argue that the State

---

[1] According to the motion filing, the "Guardian Parties" collectively include the following: Blaine Tanner; Diversity Capital One, Inc.; Diversity Capital II, LLC; Guardian Advisor Corp.; Guardian Capital; Guardian Capital I, LLC; Guardian Capital II, LLC; Guardian Capital III, LLC; Guardian Capital IV, LLC; Guardian Capital V, LLC; Guardian Capital VI, LLC; Guardian Capital VII, LLC; Guardian Capital VIII, LLC; Guardian Capital IX, LLC; Guardian Capital XIV, LLC; Guardian Capital XV, LLC; Guardian Capital XVI, LLC; Guardian Capital XVII, LLC; Guardian Capital XVIII, LLC; Guardian Financial Group LLC; Guardian Investment Group 1, Ltd.; and Guardian Shield Holdings, Ltd.

[2] The state court actions that the Guardian Parties seek to stay include the following: *Sky Bank v. Diversity Capital II, LLC*, Cuyahoga County Court of Common Pleas Case No. CV-05-567006; *Sky Bank v. Guardian Capital XV, LLC, et al.*, Cuyahoga Count Court of Common Pleas Case No. CV-05-569391; *Sky Bank FKA etc. v. Guardian Capital IX, LLC, et al.,* Cuyahoga County Court of Common Pleas Case No. CV-05-567005; *CadleRock Joint Venture, LP v. Blaine A. Tanner, et al.*, Cuyahoga County Court of Common Pleas Case No. CV-06-581117; and *CadleRock Joint Venture, L.P. v. Blaine A. Tanner*, Yavapai County Superior Court of Arizona, Case No. CV2006-0197.

1

Actions should be stayed, because the continuation of those actions compromises this Court's consideration and determination of these cases, and also jeopardizes prospects for settlement in these matters. For the reasons set forth herein, the Guardian Parties' motion is <u>denied</u>.

I.   **BACKGROUND**

Blaine Tanner established each of the Guardian Parties as a single-purpose entity, with the function of purchasing bundles of equipment leases from Commercial Money Center, Inc. ("CMC"). The Guardian Parties purchased a total of fourteen lease pools and, in order to consummate the purchases, secured loans from various banks. CMC received the loan proceeds as payment for the lease pool assets, and each Guardian Party undertook a repayment obligation to its respective lender bank.

In most cases, the transactions were structured in such a way that payments to the lenders were made directly from the income stream of the lease pools. The difference between the amount owing to a bank in a particular month, and the amount received on the lease pools that month, represented profit accruing to a Guardian Party. The income stream from each lease pool was guaranteed by one of the various sureties involved in these actions. With respect to all of the pools relevant to this motion, the surety was Royal Indemnity Company ("Royal").

In late 2001 and early 2002, virtually all of the payments on the lease pools ceased. Investigation by the banks and sureties revealed massive fraud on the part of CMC, including CMC's operation of a Ponzi scheme in connection with the sale of interests in lease pools. In May 2002, CMC filed for bankruptcy.

In this multidistrict litigation, banks and other investors have sought recovery from the sureties on their bonds guaranteeing the income stream of the lease pools. The sureties have

denied payment, asserting that the surety bonds are void due to fraud in the inducement. With respect to the Royal bonds, both the Guardian Parties and their lender banks have asserted rights to recover on those instruments. Royal has asserted numerous defenses, including fraud on the part of the Guardian Parties.

As a result of the failure to receive payments on the lease pools, the Guardian Parties also defaulted on their obligations to the lender banks, and those banks secured judgments against the Guardian Parties. In 2005, Sky Bank, N.A. ("Sky") initiated three creditor's bill actions pursuant to O.R.C. § 2333.01 in Ohio state court against Guardian Capital IX, LLC, Guardian Capital XV, LLC and Diversity Capital II, LLC. In December 2005, Sky assigned its interests in the Guardian obligations to CadleRock, and CadleRock succeeded to Sky's position in the State Actions. In January 2006, CadleRock filed an additional action in Ohio state court against Blaine Tanner and multiple additional Guardian Parties. Also in early 2006, after receiving an assignment of judgment from First Merit Bank, N.A., CadleRock filed a Notice of Enrollment of Foreign Judgment in Arizona state court against Blaine Tanner individually.

In one of the Ohio state court actions (*Sky Bank FKA etc. v. Guardian Capital IX, LLC, et al.*, Cuyahoga County Court of Common Pleas, Case No. 567005), CadleRock has moved for summary judgment, seeking to (1) enjoin the Guardian Parties from taking possession of any monies received from a surety as a result of this litigation; (2) require the Guardian Parties to use any monies obtained from a surety to satisfy CadleRock's judgments; and (3) compel any surety found liable to any of the Guardian Parties to pay monies directly to CadleRock. The Guardian Parties contend that CadleRock intends to file similar motions in all of the State Actions, and that permitting the state courts to determine those motions would interfere with this Court's exercise of jurisdiction over the multidistrict litigation. Thus, the Guardian Parties request that

3

all of the State Actions be stayed pursuant to the All Writs Act. CadleRock has filed a memorandum in opposition to the Guardian Parties' motion for an injunctive stay. Royal has filed a memorandum indicating its non-opposition to the Guardian Parties' motion.

**II.  DISCUSSION**

The All Writs Act, 28 U.S.C. § 1651, provides:

> (a)  The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

28 U.S.C. § 1651(a). The purpose of the All Writs Act is to enable "courts to protect their respective jurisdictions," not only with respect to ongoing proceedings but also with respect to potential future proceedings, "as well as already-issued orders and judgments. . . ." *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004)(internal quotation omitted). A court may grant a writ pursuant to the All Writs Act wherever such a writ is "calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it," not simply where it is "'necessary' in the sense that the court could not otherwise physically discharge its . . . duties. . . ." *Adams v. United States*, 317 U.S. 269, 273 (1942). Rather, the court may "enjoin almost any conduct 'which, left unchecked, would have . . . the practical effect of diminishing the court's power to bring the litigation to a natural conclusion. . . .'" *Klay*, 376 F.3d at 1102, *quoting ITT Community Development Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978).

When the All Writs Act is employed with respect to ongoing state court proceedings, the scope of that Act is limited by the Anti-Injunction Act, 28 U.S.C. § 2283, which provides:

> A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act

> of Congress, or where necessary in aid of its jurisdiction, or to
> protect or effectuate its judgments.

28 U.S.C. § 2283. Courts have construed the Anti-Injunction Act as specifying three limited exceptions in which injunctions over state court proceedings are appropriate. In order to issue an injunction against the continuation of state court proceedings, the federal court must find one of these exceptions satisfied. *See Atlantic C. L. R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287 (1970).

The parties do not dispute the applicability of these statutory provisions to the determination of the Guardian Parties' motion. Rather, they disagree as to whether this case satisfies one of the exceptions contained in 22 U.S.C. § 2283, so as to permit the issuance of a federal court injunction against the continuation of the State Actions. The Guardian Parties do not argue that either the first or third exceptions apply here; rather, they assert that the Court should issue an injunction as "necessary in aid of its jurisdiction," pursuant to the second exception.

As the Guardian Parties concede, the "aiding in jurisdiction" exception generally applies in connection with *in rem* actions, where the court has exclusive jurisdiction over a *res*. *See Maryland Casualty Co. v. W.R. Grace & Co.*, 726 F. Supp. 62, 64 (S.D.N.Y. 1989), *aff'd*, 889 F.2d 1231 (2d Cir. 1989). In such cases, "because the 'exercise by the state court of jurisdiction over the same *res* necessarily impairs, and may defeat, the jurisdiction of the federal court already attached,' the federal court is empowered to enjoin any state court proceeding affecting that *res*. . . ." *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litigation)*, 770 F.2d 328, 336 (2d Cir. 1985), *quoting Kline v. Burke Constr. Co.*, 260 U.S. 226, 229 (1922).

The "aiding in jurisdiction" exception ordinarily does not extend to permit a district court to enjoin state court litigation in order to protect its own jurisdiction in ongoing *in personam*

proceedings. *See Klay*, 376 F.3d at 1103. The Guardian Parties acknowledge that an injunction typically is not available where the related federal court action is *in personam*, but contend that an exception to that general proposition is presented by "consolidated multidistrict litigation, where a parallel state court action threatens to frustrate proceedings and disrupt the orderly resolution of the federal litigation. . . ." *In re Prudential Ins. Co. of Am. Sales Practice Litig.*, 261 F.3d 355, 365 (3d Cir. 2001), *quoting Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996).

The Guardian Parties rely primarily on *Baldwin*, 770 F.2d at 337-38, in support of their argument that the procedural posture and the complexity of this case render it analogous to an *in rem* proceeding, such that injunctive relief against the continuation of related state court proceedings would be appropriate. The *Baldwin* case involved complex multidistrict litigation, where the district court had invested substantial time and effort in achieving settlements involving 18 of the 26 defendants. Prior to court approval of the settlements, 31 states objected to the proposed settlements and sought to file state court actions (asserting rights derivative of those of the class plaintiffs) in order to pursue additional recovery from defendants. These potential lawsuits threatened to derail the parties' settlements, impair the court's ability to conduct and adjudicate the eight non-settling actions, and render the likelihood of future settlements virtually nonexistent.

The district court enjoined the states from commencing state court suits against the defendants.[3] The Second Circuit affirmed, holding that:

---

[3] The *Baldwin* court found the Anti-Injunction Act inapplicable under the facts of that case, since the injunction applied to prevent the commencement of suits, rather than to halt ongoing proceedings. In determining the appropriateness of the injunction under the All Writs Act, however, the court considered cases interpreting the "necessary in aid of jurisdiction" clause of the Anti-Injunction Act. *See Baldwin*, 770 F.2d at 335.

> Even before a federal judgment is reached . . ., the preservation of the federal court's jurisdiction or authority over an ongoing matter may justify an injunction against actions in state court. Such 'federal injunctive relief may be necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case.'

*Baldwin*, 770 F.2d at 335, *quoting Atlantic C. L. R. Co.*, 398 U.S. at 295. The Guardian Parties contend that here, as in *Baldwin*, allowing the State Actions to proceed would "impair [this Court's] jurisdiction and authority over the consolidated federal multidistrict actions. . . ." *Baldwin*, 770 F.2d at 336; s*ee also Miller v. Brooks (In re Am. Honda Motor Co.)*, 315 F.3d 417, 440 (4th Cir. 2003)("in the multi-district litigation area, some courts have permitted injunctions against parallel state court proceedings under the 'necessary in aid of its jurisdiction' exception where such state court proceedings threatened to frustrate multi-district litigation proceedings and disrupt the orderly resolution of those proceedings. . . .").

In upholding the district court's issuance of the injunction, the *Baldwin* court noted the need to facilitate settlement in the consolidated actions by preventing the subsequent reassertion of the same causes of action in state court under a derivative claim theory. *See Baldwin*, 770 F.2d at 336-37. With respect to the non-settling defendants, the Second Circuit still found the injunction appropriate "[s]o long as there is a substantially significant prospect that these . . . defendants will settle in the reasonably near future. . . ." *Id.* at 338.

The Second Circuit noted in *Baldwin* that "the jurisdiction of a multidistrict court is 'analogous to that of a court in an *in rem* action or in a school desegregation case, where it is intolerable to have conflicting orders from different courts. . . .'" *Id.* at 337, *quoting* 17 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4225, at 105, n.8 (1973). The Guardian Parties maintain that the continuance of the State Actions here will result

in such conflicting orders, and will threaten the ability of this Court to manage and resolve the MDL litigation.

The Guardian Parties argue that, as in *Baldwin*, this case is so advanced in both duration and settlement posture that it is "the virtual equivalent of a *res* over which the district judge require[s] complete jurisdictional authority and control. . . ." (02-16000, Doc. 1839, Memorandum in Support, at 7). The Guardian Parties point out that, in four years of litigation, this Court has issued multiple orders, has resolved threshold issues under the transaction documents, and has facilitated numerous settlements through the global mediation process. The Guardian Parties assert that CadleRock has attempted to manipulate the progress of the MDL by undertaking a series of "state court actions designed to influence the defendants' choices in the federal litigation . . . ." *Baldwin*, 770 F.2d at 338.

According to the Guardian Parties, CadleRock's State Actions seek determination of the parties' rights and obligations under the same documents involved in the consolidated multidistrict cases. Moreover, the Guardian Parties argue, the threat to this Court's jurisdiction is more imminent than that presented in *Baldwin*, as the State Actions already have been filed and, in one action, CadleRock has filed a dispositive motion. Additionally, the Guardian Parties argue, the granting of CadleRock's requested relief in the State Actions would remove any incentive for the banks and sureties to engage in settlement negotiations with the Guardian Parties, since CadleRock then would have priority to all funds otherwise payable to the Guardian Parties.

The Guardian Parties also assert that an injunction is appropriate here because the subject matter of this case is the equivalent of a *res* over which this Court must protect its exclusive jurisdiction. In several of the State Actions (case numbers CV-05-567006, CV-05-569391, and

CV-05-567005), CadleRock seeks to attain priority status over the Guardian Parties with respect to any monies received from Royal as a result of the multidistrict litigation, and to compel Royal to pay any counterclaim award proceeds directly to CadleRock. In case number CV-06-581117, CadleRock seeks an order that any actions taken by Blaine Tanner or his assigns are to be undertaken for the benefit of CadleRock, and that any claims or counterclaims asserted by Blaine Tanner or his assigns cannot be settled or compromised without CadleRock's consent. Additionally, CadleRock seeks an order that all funds due to the Guardian Parties (including such funds as may be awarded as a result of this litigation) be paid over to CadleRock. Thus, the Guardian Parties argue that the multidistrict litigation essentially involves a *res*—i.e., the proceeds of the Royal surety bond—that is property subject to this litigation and over which this Court has jurisdiction. The Guardian Parties argue that, in the event that the state courts grant CadleRock's requested remedies, the property interests involved in this action will be encumbered, and this Court's exercise of its jurisdiction will be constrained.

CadleRock, on the other hand, argues that the exceptions set forth in the Anti-Injunction Act, 28 U.S.C. § 2283, must be strictly construed. "Any doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed in an orderly fashion to finally determine the controversy. . . ." *Atlantic C. L. R. Co.*, 398 U.S. at 297. According to CadleRock, the circumstances presented here do not fall within any of the three exceptions delimited in the Anti-Injunction Act, and thus issuance of an injunction is inappropriate.

CadleRock claims that the application of the "aiding in jurisdiction" exception is limited to *in rem* actions, where the federal court must retain control of the *res* over which it has jurisdiction. *See, e.g., Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977)("[t]he

9

traditional notion is that *in personam* actions in federal and state court may proceed concurrently, without interference from either court. . . ."); *Kline*, 260 U.S. at 230 ("a mere question of personal liability . . . does not tend to impair or defeat the jurisdiction of the court in which a prior action for the same cause is pending. . . ."); *Red Rock Cola Co. v. Red Rock Bottlers, Inc.*, 195 F.2d 406, 410 (5th Cir. 1952)(where both the state and federal court proceedings are *in personam*, "each Court is entitled to proceed without interference from the other. . . ."). CadleRock concedes, however, that injunctive relief may be appropriate in certain proceedings, whether or not *in rem*, where an injunction is "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide the case." *Atlantic C. L. R. Co.*, 398 U.S. at 295.

CadleRock argues that *Baldwin*, cited by the Guardian Parties, is entirely distinguishable from the situation presented here, because (1) there are no agreed-upon settlements affecting the claims asserted by CadleRock in this litigation; (2) there is no indication that the Guardian Parties and Royal are likely to reach settlement as to the disputes between them; and (3) CadleRock's claims in the State Actions are unrelated to the multidistrict litigation, and thus success by CadleRock in the State Actions would not affect Royal's incentives to attempt to resolve its disputes with the Guardian Parties. Since CadleRock seeks only to gain priority over any payments due the Guardian Parties, CadleRock argues that the State Actions do not raise the prospect of double or conflicting liabilities on the part of Royal.

CadleRock argues that an injunction is inappropriate here, because the Ohio creditor's bill actions seek only to attach an equitable lien on any <u>potential</u> proceeds due the Guardian Parties as a result of their claims against Royal. According to CadleRock, any relief granted to

CadleRock by the state court would be effective only when and if sums of money <u>became due</u> from Royal to the Guardian Parties, either by means of settlement or judgment in these actions. At the time such sums became due and payable, CadleRock argues, this Court would no longer have jurisdiction over the parties. Thus, CadleRock asserts, the maintenance of the creditor's bill actions cannot be deemed to interfere with this Court's authority to determine the parties' disputes in the multidistrict litigation.[4] Moreover, CadleRock contends, its pursuit of the State Actions seeking equitable relief cannot create any inconsistency with any judgment in this litigation, in which the Guardian Parties assert claims for monetary relief.

CadleRock argues, finally, that "[i]f the enjoined state proceeding could not prejudice any . . . disposition of some claim pending in the federal suit . . .," *Jos. L. Muscarelle, Inc. v. Central Iron Mfg. Co.*, 328 F.2d 791, 794 (3d Cir. 1964), then an injunction is inappropriate under the "aiding in jurisdiction" exception. Here, CadleRock asserts that, since the Guardian Parties have failed to point to any Court ruling that may be negated or undermined by the continuance of the State Actions, the Guardian Parties' motion must fail. *See, e.g., Nat'l Fuel Gas Supply Corp. v. 138 Acres of Land in the Village of Springville*, 186 F. Supp. 2d 339, 345 (W.D.N.Y. 2001).

As noted previously in this opinion, Royal has filed a response indicating its non-opposition to the Guardian Parties' motion for an injunction.[5] Royal notes its agreement with the

---

[4] CadleRock asserts that the Arizona action, similarly, cannot be deemed to interfere with this Court's jurisdiction, since that action seeks only to register a judgment against Blaine Tanner, individually, in Yavapai County, Arizona. Although the Guardian Parties request that this Court issue an injunction against the maintenance of all five of the State Actions, the Guardian Parties do not indicate how the Arizona action may be deemed to interfere with this Court's jurisdiction over the multidistrict litigation proceedings. Since the Arizona action does not seek any relief relating to potential payments that may become due to Tanner or the other Guardian Parties in this litigation, it is difficult to understand how that action could be deemed to affect this Court's jurisdiction in any manner.

[5] Royal is a party to only three of the State Actions, each of which is pending in the Cuyahoga County Court of Common Pleas: *Sky Bank v. Guardian Capital IX, LLC*, Case No. 05-567005; *Sky Bank v. Diversity Capital II, LLC*, Case No. 05-567006; *Sky Bank v. Guardian Capital XV, LLC*, Case No. 05-569391. Royal takes no position with respect to the other State Actions, including the Arizona action seeking to register a foreign judgment against Blaine Tanner individually.

Guardian Parties' assertion that the State Actions should be stayed pending resolution of the MDL proceedings. Royal maintains that a stay of the State Actions would further judicial economy since, if the Guardian Parties do not prevail on any of their claims against Royal, or the Court finds that Royal is entitled to set off the amount of its counterclaims against any relief awarded to the Guardian Parties, then one or more of the creditor's bill actions may become moot.

In their reply memorandum, the Guardian Parties reiterate and expand upon their prior arguments. The Guardian Parties challenge CadleRock's assertion that the State Actions are unrelated to these proceedings, and argue that, in both the state and federal actions, CadleRock has asserted essentially identical claims. According to the Guardian Parties, it is the province of this Court alone to determine which parties have interests in the surety bond proceeds and the relative priority of those interests.

The Court carefully has considered the parties' arguments relating to the propriety of an All Writs Act injunction, and finds that Guardian's motion for an injunction should be <u>denied</u>. The Court's review of the State Actions suggests that these actions involve questions entirely separate from those concerned in the multidistrict litigation, and present no risk of impinging on this Court's jurisdiction. Accordingly, the State Actions neither threaten this Court's authority to manage the instant litigation nor present the potential of conflicting orders.

CadleRock's claims in the State Actions are based upon state law rights and upon judgments obtained against the Guardian Parties in Ohio state courts. The creditor's bill actions seek to utilize an Ohio statutory mechanism for execution on CadleRock's judgments. O.R.C. § 2333.01 permits a judgment creditor to secure a lien on assets in which a judgment debtor has an equitable interest—including a chose in action that represents a claim "to become due" under the

statute. *See Lakeshore Motor Freight (Co.) v. Glenway Industries, Inc.*, 2 Ohio App. 3d 8, 10 (1st Dist. 1981), *citing Cincinnati v. Hafer*, 49 Ohio St. 60 (1892).

The creditor's bill actions present only narrow state law questions, presumably including (1) whether CadleRock is a creditor entitled to take advantage of the statutory provisions; (2) whether Guardian's claims against Royal are assets appropriately subject to the lien provisions of § 2333.01; and (3) whether there are any other barriers that would preclude CadleRock's resort to the creditor's bill statute for enforcement of its judgments against the Guardian Parties. With respect to the Arizona action seeking enrollment of the Ohio judgment, the questions presented are even more limited, and presumably would be restricted to issues such as (1) the regularity of the Ohio judgment; and (2) CadleRock's compliance with appropriate Arizona procedures for registration of foreign judgments. Patently, none of the State Actions purport to determine any party's entitlement to proceeds of the Royal bonds, or in fact any rights whatsoever as between the Guardian Parties and Royal.

Conversely, none of the actions involved in these consolidated multidistrict proceedings raise issues as to the rights of the Guardian Parties vis-à-vis their respective lenders. None of the lender banks have asserted claims against the Guardian Parties in these actions relating to debts owed to the banks or the Guardian Parties' alleged default on those debts. Thus, to the extent that Arizona or Ohio state courts undertake to determine such rights in the context of the State Actions, any such ruling would not impact the questions involved in the multidistrict proceedings. Regardless of the outcome of the State Actions, the claims and defenses as between the Guardian Parties and Royal still would remain for determination by this Court.

The Guardian Parties contend that CadleRock's claims in the State Action are identical to its claims here and are grounded on the same transaction documents. In making such arguments,

however, the Guardian parties misunderstand the nature of CadleRock's claims. The claims involved in the multidistrict litigation are based on the interests created by the lease bonds issued by the sureties, as well as the Sale and Servicing Agreements entered into in connection with the majority of the respective pools. The Court's resolution of the parties' disputes in this litigation will center on several important issues, including questions as to (1) the intended "obligee" status of certain parties to the transactions; and (2) the availability of certain defenses to payment under the terms of the transaction documents. The loan documents executed by the Guardian Parties and their lenders are only marginally, if at all, relevant to these inquiries. Conversely, to the extent that the State Actions involve interpretation of any transaction documents, those actions will focus almost exclusively on the loan documents executed by the Guardian Parties and the rights conveyed by those documents. Issues as to obligee status and the availability of fraud defenses—questions critical to resolution of the federal disputes—thus will have virtually no relevance to determining the questions presented by the State Actions.

For the same reasons, the continuation of the State Actions should not obstruct the negotiation and consummation of settlements in the multidistrict litigation. Since the State Actions raise factual and legal issues entirely distinct from those presented here, there is no danger of repetitive or duplicative claims that might tend to discourage parties from pursuing amicable resolution in these actions. Nor would the potential necessity of obtaining CadleRock's consent to any agreed settlement impede the productivity of the settlement process. Although the Guardian Parties might prefer the opportunity to negotiate unilaterally with the Sureties, there is no indication that CadleRock would be less amenable to the amicable resolution of claims than the Guardian Parties would have been.

The Court is mindful of the breadth and complexity of the issues presented by this multidistrict litigation, and of the authorities holding that such complexity weighs in favor of the issuance of an injunction. Several of the cases cited by both parties identify complex class actions as a species of litigation that may be appropriate for the issuance of an All Writs Act injunction. "[A] lengthy and complicated class action suit is the virtual equivalent of a *res* to be administered. . . ." *Wesch v. Folsom*, 6 F.3d 1465, 1470 (11th Cir. 1993); *see also Nat'l Fuel Gas Supply Corp.*, 186 F. Supp. 2d at 344 (situations in which All Writs Act has been applied include "complex class litigation that would be undermined by actions in other courts. . . .")(citation omitted).

Nonetheless, the determination of the appropriateness of an All Writs Act injunction is not to be made mechanically. Rather, such an injunction "may be granted or withheld in the sound discretion of the court. . . ," *Roche v. Evaporated Milk Ass'n*, 319 U.S. 21, 25 (1943), *cited in Padilla v. Bush*, 233 F. Supp. 2d 564, 603 (S.D.N.Y. 2002), *aff'd in part and rev'd in part*, 352 F.3d 695, *rev'd on other grounds by Rumsfeld v. Padilla*, 542 U.S. 426 (2004), and should issue only where the State Actions "impair the federal court's jurisdiction and authority over the consolidated federal multidistrict actions. . . ." *Baldwin*, 770 F.2d at 336. Where, as here, the state court actions involve distinct questions severable from the matters involved in the consolidated federal proceedings, the federal multidistrict litigation is not analogous to an *in rem* proceeding, and the Court should defer to the presumption in favor of allowing the state courts to proceed. *See Atlantic C. L. R. Co.*, 398 U.S. at 297.

In this Court's view, while the continuation of the State Actions may well affect the Guardian Parties' strategy in the federal litigation, the State Actions in no way threaten this Court's "flexibility and authority to decide" the issues in these cases. *Atlantic C. L. R. Co.*, 398

U.S. at 295. The issuance of an injunctive stay in such circumstances is inappropriate and, accordingly, the Court declines to enjoin the maintenance of the State Actions. The Guardian Parties' motion is <u>denied</u>.

### III. CONCLUSION

For the reasons set forth herein, the motion of the Guardian Parties for an injunction pursuant to the All Writs Act, 28 U.S.C. § 1651 (02-16000, Doc. 1840), is <u>denied</u>.

**IT IS SO ORDERED.**

<u>s/ Kathleen M. O'Malley</u>
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: October 3, 2006**

44721-1