UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: COMMERCIAL MONEY CENTER, INC., EQUIPMENT LEASE LITIGATION | : : : : : : : : : : | Case No. 1:02CV16000<br><br>(MDL Docket No. 1490)<br><br>JUDGE O'MALLEY<br><br>**MEMORANDUM AND ORDER**<br><br>This Order Relates To Case Nos. 02CV16012, 02CV16019 and 02CV16022 |

This action is before the Court upon the renewal (Doc. 1883) by CadleRock Joint Venture, L.P. ("CadleRock"), assignee of Sky Bank, of an appeal from the Magistrate Judge's denial of the Banks' Motion to Compel Royal Indemnity Company ("Royal") to Respond to Claimants' Third Consolidated Interrogatories and Claimants' Third Request for Production of Documents ("Motion to Compel"). (Doc. 882). The Motion to Compel was denied by Judge Vecchiarelli on April 5, 2004 (Doc. 1045). The Court has reviewed the documents initially submitted to Judge Vecchiarelli, the arguments presented on the Banks' appeal of Judge Vecchiarelli's decision, and the parties' briefing relating to CadleRock's renewal of the appeal. For the reasons set forth herein, Judge Vecchiarelli's decision is upheld, and the appeal from the denial of the Banks' Motion to Compel (Doc. 1127) is <u>denied</u>.

I.   **Background**

On March 10, 2004, multiple Banks (Footbridge Limited Trust, General Electric Capital Corporation, Lakeland Bank, Metropolitan Bank & Trust Company, Second National Bank of

1

Warren, SkyBank, The Huntington National Bank, United Security Bank, and NetBank) filed the initial Motion to Compel, which sought discovery relating to credit enhancement transactions engaged in by Royal to guarantee the payment of equipment leases, for the time period 1997 through 2001. Pursuant to the Court's reference order (Doc. 187), that motion was submitted to Magistrate Judge Vecchiarelli, who denied it on April 5, 2004. (Doc. 1045).

On April 19, 2004, the Banks filed a document styled as a motion for reconsideration of Judge Vecchiarelli's Order and an appeal to this Court from that order. (Doc. 1127). On May 12, 2004, Judge Vecchiarelli issued an Order denying the Banks' motion for reconsideration, on the ground that the Banks' filing of a motion simultaneously requesting two different forms of relief, from two separate courts, was improper. (Doc. 1216). This Court, on May 25, 2004, in an Order memorializing its orders previously made on the record at a status conference in this litigation, reserved ruling on the "appeal" portion of the Banks' motion pending resolution of the then-pending motions for judgment on the pleadings. (Doc. 1254).

While the Banks' appeal remained pending, numerous events occurred in this litigation, including (1) the completion of fact discovery; (2) the Court's issuance of its opinions determining the motions for judgment on the pleadings (Docs. 1708/1709); (3) the settlement or resolution of claims between Royal and various banks that originally participated in the filing of the Motion to Compel; and (4) the passage of the Court-imposed deadlines for motions for leave to amend pleadings and for leave to reopen discovery. On October 4, 2006, the Court issued an Order indicating its uncertainty about the continued relevance of the

appeal and requiring any party desiring to assert a continued interest in the appeal to file a Notice within ten days. (Doc. 1866).

On October 13, 2006, CadleRock filed a Notice of Renewal of the Motion to Compel ("Notice of Renewal"). (Doc. 1883). At the time of filing of the Notice of Renewal, CadleRock had succeeded as assignee to certain rights of SkyBank (one of the original claimants), which also was successor by merger to Metropolitan Bank & Trust ("MB&T") in 02-16012, and to Second National Bank of Warren ("Second National") in 02-16022. None of the original claimants filed a notice or indicated any continued interest in the Motion to Compel.

Royal filed a brief in opposition to CadleRock's Notice of Renewal. Thus, the appeal from Magistrate Judge Vecchiarelli's denial of the Motion to Compel (Doc. 1127), as renewed by CadleRock's Notice (Doc. 1883), is presently before the Court for consideration.

**II. Discussion**

In the initial Motion to Compel, the Banks sought discovery and documents pertaining to Royal's experience in selling and underwriting credit enhancement policies for equipment leases for the time period 1997 to 2001. The Banks argued that such discovery was relevant to demonstrate (1) the correct interpretation of the surety bonds, to the extent the Court might find the bonds to be ambiguous; (2) Royal's lack of due diligence prior to issuing the bonds in this case; and (3) Royal's knowledge of the existence of fraud in the leasing industry, and knowledge that investors sought surety bonds to defray that risk.

The Banks argued that Fed. R. Civ. P. 26 permits a broad scope of examination, encompassing "any matter, not privileged, that is relevant to the claim or defense of any party. . .

." Fed. R. Civ. P. 26(b)(1). *See also Gagne v. Reddy*, 104 F.R.D. 454, 456 (D. Mass. 1984)("a request for discovery should be considered relevant if there is *any* possibility that the information sought may be relevant to the subject matter of the action. . . .")(emphasis in original)(citation omitted). "Unless it is palpable that the evidence sought to be made subject to discovery can have no possible bearing upon the issues, the spirit of the new federal rules calls for every relevant fact . . . . to be brought out for the inspection not only of the opposing party but for the benefit of the court . . . ." *E. I. Du Pont de Nemours & Co. v. Deering Milliken Research Corp.*, 72 F.R.D. 440, 443 (D. Del. 1976), *quoting Hercules Powder Co. v. Rohm & Haas Co.*, 3 F.R.D. 302, 304 (D. Del. 1943).

The Banks presented evidence showing that Royal had entered into two or three allegedly similar transactions during the relevant time period, and contended that documents relating to those transactions would demonstrate Royal's understanding of fraud in the leasing business as of the relevant time period—including the types of fraud that might be covered by waiver language encompassing "issues of fraud." The Banks asserted that the scope of coverage extended by Royal in allegedly similar transactions might shed light on Royal's understanding of the intended scope of coverage in this case.

The Banks also argued that the discovery sought would be relevant to Royal's fraudulent inducement defense, insofar as that defense required Royal to show that it had exercised proper due diligence. In order to evaluate the sufficiency of Royal's due diligence here, the Banks asserted that examination of the due diligence conducted in similar transactions was relevant. Finally, the Banks contended that evidence of Royal's knowledge of fraud in the leasing industry would demonstrate that Royal failed to adequately consider such fraud in underwriting and servicing the CMC leases.

Royal argued before Judge Vecchiarelli that the Banks' requested discovery was irrelevant to the Banks' claims in these actions, since there was no connection between the CMC lease bonds and the transactions as to which the Banks sought discovery. Royal argued, first, that the CMC transactions were underwritten by Custom Risk Solutions, Inc. ("CRS"), a managing general underwriter of Royal, not by Royal itself, and thus that documents relating to credit enhancement insurance issued by Royal's "Financial Enhancement Unit" would lead to no admissible evidence relating to the CMC dispute. Second, Royal contended that its relationship with CRS was primarily contractual and that it did not have control over the underwriting practices and procedures utilized by CRS. For that additional reason, Royal maintained, evidence of Royal's own underwriting practices would not be relevant to evaluating the performance of CRS.

Royal argued, moreover, that that the asset-backed securitizations as to which the Banks sought discovery were completely different financial products from the bonds at issue in these cases, since the asset-backed securitizations involved <u>customized insurance instruments</u>, while these cases involved <u>form</u> surety bonds. In addition, Royal maintained, the bonds named CMC as obligee, while the credit enhancement insurance instruments actually named lenders as the beneficiaries of the insurance instruments.

Royal asserted that the discovery relating to the credit enhancement transactions could shed no light on the underwriting conducted in connection with the CMC transactions, since the credit enhancement transactions occurred <u>after</u> all underwriting for the CMC program was complete. Finally, Royal contended, allowing the Banks to engage in a fishing expedition would open the door to permit other parties to seek voluminous discovery at a late stage in the proceedings.

In their reply brief filed before Judge Vecchiarelli, the Banks claimed that, although the underwriting for the CMC transactions admittedly was conducted by a third party (CRS), Royal retained significant involvement in and control over the underwriting process. The Banks also argued that the allegedly differing financial products served exactly the same purpose, since each was intended to guarantee the payment of an underlying consumer obligation. The Banks contended that the credit enhancement transactions occurred at approximately the same time as the issuance of the CMC bonds and that, regardless of the chronology of the transactions, the credit insurance transactions would be relevant as representative samples of the numerous similar transactions engaged in by Royal.

In her Order denying the Banks' motion to compel, Magistrate Judge Vecchiarelli found that the Banks had not established the relevance of the discovery sought, since they had not demonstrated that (1) the securitizations and bonds were of the same type; or (2) there was some connection between them. Judge Vecchiarelli noted that the credit enhancement instruments involved customized insurance, not form bonds and that, on the face of the documents, the securitizations and bonds named different obligees. Judge Vecchiarelli held that the fact that the instruments may arguably have had the same purpose was insufficient to demonstrate a relevant similarity between the transactions.

Judge Vecchiarelli also held that the Banks failed to demonstrate a connection between the securitizations and the CMC bonds because there was insufficient evidence that Royal employee David Schneider was involved in drafting <u>both</u> the securitizations and the CMC bonds. Rather, the Banks had demonstrated only that Mr. Schneider <u>may</u> have prepared a draft bond form before the transaction was outsourced to CRS. Judge Vecchiarelli observed that the evidence presented suggested that Royal played only a minimal role in the CMC underwriting,

and that Royal did not have sufficient control to impose its underwriting standards upon CRS. Finally, Judge Vecchiarelli found that the Banks had presented insufficient evidence that any of the credit enhancement policies were issued prior to the CMC bonds.

On appeal, the Banks argued that Judge Vecchiarelli imposed a standard of discoverability far more stringent than that contained in Fed. R. Civ. P. 26. The Banks contended that requiring a showing of precise similarity between the transactions at issue was unfair where the Banks had no access to the relevant documents. Imposing such a strict threshold burden, the Banks argued, was inconsistent with the broad discovery standards of the Federal Rules. *See, e.g., Leighr v. Beverly Enterprises-Kansas*, 164 F.R.D. 550, 552 (D. Kan. 1996)("[a] party does not have to prove a prima facie case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence. . . .").

The Banks also contended that Judge Vecchiarelli's Order made numerous erroneous factual determinations, including conclusions as to Royal's degree of involvement with the CMC bonds, the purported dissimilarity of the types of financial products involved, and the timing of the underwriting performed with respect to the various transactions. On appeal, the Banks submitted more than 900 pages of exhibits, including deposition transcripts of Royal and CRS employees, to support their arguments that (1) from a substantive standpoint, the bonds and securitizations were similar and intended to serve the same purpose; (2) Royal's Financial Enhancement Group had substantial involvement with the CMC lease program, including choice of the bond instrument and pricing of that instrument; and (3) Royal had significant control over CRS (through the rights conveyed to Royal by the Managing General Underwriter Agreement, the presence of Royal members on CRS's board and a Royal liaison present at CRS's offices) and thus could have imposed its own underwriting standards on CRS. The Banks argued that, at

best, the evidence created issues of fact, which the Magistrate Judge should not have resolved against the Banks to preclude the requested discovery.

Royal opposed the Banks' appeal, arguing that the Banks had a full opportunity to argue the relevance of the requested discovery before Magistrate Judge Vecchiarelli. Royal objected to the majority of the evidence submitted by the Banks, arguing that such evidence had not been submitted to the Magistrate Judge and could not properly be considered on appeal. Royal argued, however, that even if considered in light of the voluminous evidence submitted by the Banks on appeal, Magistrate Judge Vecchiarelli's decision was proper. Royal maintained that, contrary to the Banks' arguments, it did not have significant involvement with, or control over, CRS's underwriting of the CMC program. Royal pointed to testimony suggesting that any involvement of the Royal Financial Enhancements Unit with the program—including Royal's participation in choosing and pricing the instrument to be used for the CMC program—was cursory and preliminary. Moreover, Royal argued, the discovery sought by the Banks was unrelated to any of the limited areas in which Royal was involved with the CMC program. Finally, Royal again asserted that its credit insurance policies and surety bonds were simply different financial products, such that the Banks' requested discovery could not be relevant to this litigation.

In its Notice of Renewal of the Motion to Compel, CadleRock argues that several occurrences since the original filing of the motion to compel—including (1) the Court's issuance of its opinions on the Motions for Judgment on the Pleadings (Docs. 1708, 1709); (2) CadleRock's filing of its amended complaints; and (3) Royal's filing of its expert disclosures—lend further support to the Banks' initial request for discovery. According to CadleRock, the Court's opinions disposing of the pleadings motions suggest that Royal may

have undertaken obligations to the Banks. Thus, CadleRock argues that evidence of Royal's undertakings to other lenders in the credit enhancement instruments is relevant to demonstrate the obligations Royal was willing to assume and at what premium cost.

CadleRock also asserts, apparently for the first time, that the discovery sought is relevant to CadleRock's claims of negligent misrepresentation, based on "estoppel letters" sent by Royal to Second National, MB&T, and MidAm Bank (all now part of Sky Bank, CadleRock's assignor). CadleRock claims that the requested discovery will be important to demonstrate Royal's negligence in misrepresenting the enforceability of the bonds. CadleRock notes, additionally, that Royal has indicated its intention to present expert testimony to the effect that the underwriting performed by Royal and CRS was reasonable. CadleRock seeks to challenge these assertions and demonstrate Royal's negligence by comparing the underwriting of the CMC program with Royal's underwriting of other asset-backed securitizations.

Royal argues that none of the recent events in this litigation add any further support to CadleRock's arguments, since each of the claims raised by CadleRock in its amended complaints had been raised by at least one of the original movants. Additionally, although the Court's Orders on the pleadings motions permitted the Banks to continue to assert their claims for reformation of the bonds, the issue of reformation has been present since the commencement of these proceedings. Finally, Royal argues that CadleRock should not be granted the requested discovery in order to challenge the expected testimony of Royal's expert, since Royal's expert has not analyzed unrelated insurance transactions and will not rely on any documents that have not been produced to the Banks in discovery.

The decision of a magistrate judge relating to a non-dispositive matter is subject to reversal by the district court only where the "order is clearly erroneous or contrary to law. . . ."

Fed. R. Civ. P. 72(a)("[t]he district judge . . . shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law. . . ."). "The 'clearly erroneous' standard applies only to factual findings made by the Magistrate Judge, while her legal conclusions will be reviewed under the more lenient 'contrary to law' standard. . . ." *Gandee v. Glaser*, 785 F. Supp. 684, 686 (S.D. Ohio 1992), *aff'd*, 19 F.3d 1432 (6th Cir. 1994). "A finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . ." *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). Accordingly, courts have held that "a magistrate's resolution of pretrial discovery disputes is entitled to substantial deference. . . .'" *Bogan v. Northwestern Mut. Life Ins. Co.*, 163 F.R.D. 460, 463 (S.D.N.Y. 1995).

Under this stringent standard, the Court sees no reason to overturn Magistrate Judge Vecchiarelli's decision to deny the Banks' motion to compel. In reaching this conclusion, the Court relies upon the Magistrate Judge's factual determination that the Banks did not show any involvement by Royal in credit enhancement transactions <u>prior to</u> the underwriting of the CMC transactions. Although the transactions in question undisputedly occurred close in time, it was not clearly erroneous for the Magistrate Judge to conclude that the evidence established that CRS's underwriting for the CMC program was substantially complete before Royal was introduced to any of the credit enhancement opportunities involving equipment leases. To the extent that underwriting on the CMC transaction was performed prior to investigation of the credit enhancement transactions, this Court agrees with the Magistrate Judge that evidence regarding the credit enhancement transactions, and Royal's state of knowledge at that point in time, is not relevant to Royal's knowledge of "fraud in the leasing industry" at the time of the

CMC underwriting.

The Court declines to opine on the other factual findings made by the Magistrate Judge, finding questions regarding the scope of Royal's participation in evaluating and underwriting the CMC transactions, and the similarity of the financial instruments at issue, to be far more difficult to resolve. In light of the Court's conclusions relating to the timing of the transactions and, thus, the relevance of the discovery sought, the Court declines to balance the conflicting evidence on these other issues. Because the Court finds that the Magistrate Judge's factual conclusion regarding the timing of the respective transactions was not clearly erroneous and that her relevance determinations, based at least partially on that factual finding, were not contrary to law, the Court affirms the discovery ruling at issue in this appeal.

As a final note, the Court observes that permitting CadleRock to pursue the requested evidence at this stage of the litigation would be disruptive to the coordinated framework the Court has established for the management of this litigation. This case has involved extensive and voluminous discovery over a period of years. With the exception of certain, narrowly-circumscribed issues, fact discovery in this litigation is complete (and, in fact, was substantially complete at time of the Banks' initial appeal). The Court notes that none of the original movants has indicated any interest in pursuing this discovery at this stage of the proceedings—presumably because the parties now have crystallized their strategies based on the voluminous discovery already conducted.

Even if the Banks had demonstrated sufficient facts to justify the discovery at issue, the relevance of the matters sought to be explored would be marginal at best. At this stage, the Court has no desire to expand the remaining fact discovery in this case—particularly with respect to tangential issues. The appeal from the denial of the Banks' Motion to Compel is

denied.

## III. Conclusion

For the reasons set forth herein, Judge Vecchiarelli's decision is upheld, and the appeal from the denial of the Banks' Motion to Compel (Doc. 1127) is denied.

**IT IS SO ORDERED.**

                                              **s/ Kathleen M. O'Malley**
                                              **KATHLEEN McDONALD O'MALLEY**
                                              **UNITED STATES DISTRICT JUDGE**

**Dated: May 3, 2007**

49314-1