UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: COMMERCIAL MONEY CENTER, INC., EQUIPMENT LEASE LITIGATION | : : : : : : : : : : | Case No. 1:02CV16000<br><br>(MDL Docket No. 1490)<br><br>JUDGE O'MALLEY<br><br>**MEMORANDUM AND ORDER**<br><br>This Order Relates To Case Nos. 02CV16001, 02CV16005, 02CV16013, and 02CV16027 |

This action is before the Court upon two motions by Sky Bank ("Sky"), Ameriana Bank and Trust, SB ("Ameriana"), Atlantic Coast Federal Bank ("Atlantic Coast") and NorStates Bank f/k/a Bank of Waukegan ("NorStates")(collectively, "Banks") to strike all or portions of two expert reports submitted by RLI, as well as testimony related to the allegedly improper portions of the expert reports. (02-16000, Docs. 1953, 1954). The first motion (Doc. 1953) requests that the Court strike the entire expert report of Richard Masters ("Masters Report"), as well as any trial testimony offered by Mr. Masters, on the ground that the Masters Report contains inappropriate legal conclusions, as well as statements that allegedly contravene the law of the case. The Banks' second motion (Doc. 1954) requests that the Court exclude certain portions of the expert reports (as well as any related testimony) of Richard Masters and Kenneth Mathisen ("Mathisen Report"), based on statements in those Reports that allegedly contradict the law of the case.

Since these motions appear to request somewhat duplicative relief, particularly with respect to the Masters Report, it is unclear why the Banks have presented them to the Court in two separate filings. In any event, the Court addresses these related issues together.

For the reasons set forth herein, the Banks' motion to exclude certain portions of the expert reports and related testimony of Richard Masters and Kenneth Mathisen (Doc. 1954) is <u>denied</u> without prejudice. The motion to strike the expert report of Richard Masters (Doc. 1953) is <u>denied</u>. The Court declines to strike the Masters Report in its entirety at this time. Mr. Masters's testimony will be permitted to the extent that such testimony summarizes the standards of conduct applicable to a surety broker. Mr. Masters will not be permitted to testify as to (1) whether Mr. Anthony's conduct breached those standards; (2) the validity of documents executed by Mr. Anthony; or (3) Mr. Anthony's subjective state of mind.

A.  **Law of the Case**

The Banks seek to strike all portions of the Masters and Mathisen Reports ("Reports") that contradict the Court's prior rulings in this case—specifically, statements made by the Court in its August 19, 2005 Lead Opinion disposing of the parties' motions for judgment on the pleadings (Doc. 1708). The Banks argue that, pursuant to the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004).

The Banks allege that the Reports contain numerous assertions contradicting the legal rulings made by the Court in the Lead Opinion, particularly the Court's rulings with respect to the apparent authority of Michael Anthony. As an example, the Banks cite the following paragraph contained in the Masters Report:

> Under the guise of his very limited 'power o[f] attorney', Anthony sign[ed] various "Sales and Service Agreements" (SSA's)

> allegedly on behalf of RLI, for which he had no authority. In the agency agreement between Anthony and RLI, it clearly states that Anthony's authority was limited to 'solicit, receive applications and premiums for surety bonds on behalf of RLI . . . and to act in accordance with the Power of Attorney issued by RLI.' The agreement expressly limits Anthony's authority and states that Anthony has 'no authority to execute bonds without prior approval of RLI.' Anthony was never granted any authority to sign SSA's on behalf of RLI and any and all such documents should be void.

Masters Report, at 2.

With respect to the Mathisen Report, the Banks specifically reference only one allegedly improper statement, which is located on page 17 of the Mathisen Report:

> "It is my opinion that Mr. Anthony did not have the authority to execute any Sales and Servicing Agreements. . . . Therefore, any Sales and Servicing Agreements executed by Mr. Anthony should also be declared null and void. . . ."

Mathisen Report, at 17. The Banks suggest, however, that other portions of the Masters and Mathisen Reports also contradict the Court's prior rulings and must be stricken for the same reasons.

RLI asserts that the Banks' "law of the case" argument should not preclude the introduction of the Masters and Mathisen reports, since "law of the case" is a discretionary doctrine, and the Court is free to modify its decisions at any time prior to final judgment. *See, e.g., United States v. Dunbar*, 357 F.3d 582, 592-593 (6th Cir. 2004)("[a]t the trial court level, the doctrine of the law of the case is little more than a management practice to permit logical progression toward judgment. Prejudgment orders remain interlocutory and can be reconsidered at any time. . . ."), *quoting Gillig v. Advanced Cardiovascular Sys.*, 67 F.3d 586, 589 (6th Cir. 1995).

RLI contends that both Mr. Masters and Mr. Mathisen are experienced in the insurance and surety fields, and the Banks do not challenge their expert qualifications. RLI also asserts

3

that its experts based their conclusions upon voluminous documents and evidence from this case, and that their conclusions are substantiated by the evidence and by standard practices in the insurance and surety industries. Accordingly, RLI argues that the Court should not restrict its experts from stating their well-supported opinions, particularly prior to completion of expert discovery in these cases.

Finally, RLI argues that the Banks' motion is premature, since the appropriateness of expert testimony cannot be determined, at a minimum, until the deposition of the expert, or perhaps even until trial. RLI cites several cases for the general proposition that, unless evidence is clearly inadmissible on all possible grounds, evidentiary rulings should be deferred until trial. *See, e.g., Tzoumis v. Tempel Steel Co.*, 168 F. Supp. 2d 871, 873 (N.D. Ill. 2001)("generally, 'evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in the proper context. . . .'"), *quoting Hawthorne Partners v. AT&T Technologies*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993); *Lozano v. City of Hazleton*, 2007 U.S. Dist. LEXIS 13295, at *15 (M.D. Pa. Feb. 27, 2007)(unpublished disposition)(determination that expert testimony would offer legal conclusions was premature prior to trial). RLI points out that the Bank's cited cases dealing with exclusion of an expert's testimony all come from the trial context and thus are inapposite in the Court's consideration of whether to strike a proffered expert report. *See, e.g., Berry v. City of Detroit*, 25 F.3d 1342, 1354 (6th Cir. 1994).

In fact, none of the parties has pointed to any case involving the striking of expert reports or exclusion of expert witness testimony based on the law of the case doctrine. The Court's independent research indicates that the law is sparse in this area. The Court has found only one case, unpublished, in which a federal court struck an expert report based on the law of the case

doctrine. In *Carson Harbor Vill., Ltd. v. Unocal Corp.*, 2003 U.S. Dist. LEXIS 14438, *8-*10 (C.D. Cal. Aug. 8, 2003), the Court precluded an expert's testimony that there were lead contaminants in storm water runoff prior to 1994, since the Ninth Circuit already had held that there was "no evidence" of contaminants in the runoff prior to that date. Accordingly, any testimony by the expert as to contaminants present prior to 1994 was absolutely barred.

Case law or not, however, it is beyond meaningful debate that the Court has the authority to restrict expert testimony that is at odds with the Court's own purely legal rulings. Thus, for instance, an expert in a patent case may not proffer a claim construction at odds with the Court's construction, an expert in a securities case may not declare something to be a security where the Court has declared, as a matter of law, that the particular instrument does not qualify as such, and no expert in this case would be permitted to opine that the agreements between Illinois Union and those entities with whom it dealt were classic insurance policies.

The real question the Court must address, however, is not whether it has the authority to impose such restrictions, or even what the source of its authority is. What the Court must decide is what the appropriate vehicle and time frame are for exercising that authority.

As an initial matter, the Court notes that the proper use of motions to strike is actually quite narrow. While some courts have employed Rule 12(f) to strike an affidavit or portions thereof, *see McLaughlin v. Copeland*, 435 F. Supp. 513, 519-20 (D. Md. 1977), there is no basis in the Federal Rules for doing so. In fact, a decision in this district, affirmed by the Sixth Circuit Court of Appeals, refused to employ Rule 12(f) to strike an affidavit because "the rule relates only to pleadings and is inapplicable to other filings." *Dawson v. City of Kent*, 682 F. Supp. 920, 922 (N.D. Ohio 1988), *aff'd*, 865 F.2d 257 (6th Cir. 1988). With respect to expert reports, too, courts in this Circuit have held that motions to strike are inapplicable, and have stated that the

proper vehicle is a motion *in limine*. *See Johnson v. Manitowoc Boom Trucks, Inc.*, 406 F. Supp. 2d 852, 864, n. 10 (M.D. Tenn. 2005); *Porter v. Hamilton Beach/Proctor-Silex, Inc.*, 2003 U.S. Dist. LEXIS 14089, *5-6 (W.D. Tenn. Jul. 28, 2003)(unpublished disposition)(motion to strike supplementary expert report treated as motion *in limine*).

With this background, the Court finds the earlier rulings to which the Banks cite to be more vague than the Banks describe. The Court's analysis in the Lead Opinion focused primarily on the question of whether Michael Anthony had <u>apparent authority</u> to execute and/or issue SSAs on behalf of the Sureties in these cases. Although the Court found that Anthony did possess such authority, the Lead Opinion did not focus on issues of actual authority or the relationship between Anthony and his principals, the Sureties. Thus, to the extent that RLI's proffered expert reports opine as to the scope of Michael Anthony's actual authority, such statements arguably are not inconsistent with any prior holding of this Court.

The statements in the Masters and Mathisen Reports relating to (1) Anthony's lack of authority, or (2) the expressions of opinion that documents executed by Anthony are "void," do not provide any context supporting these opinions, and in light of the many differing claims involved in this litigation, such context may be significant. For example, an expert opinion relating to Anthony's lack of actual authority might be appropriate for consideration by the fact-finder in the context of RLI's fraud claims against Anthony, but inadmissible as against the Banks.[1] Absent deposition testimony providing the context in which the issue is to be presented, it is hard to tell just what portion of those opinions should be excluded. In such circumstances, it

---

[1] By including this discussion, the Court does not intend to preclude or pretermit the parties' arguments, at the trial stage, as to the appropriate impact of the evidence presented. Rather, the Court provides only an illustrative example of the potentially differing effect of such evidence in the context of the divergent claims presented in this litigation.

would seem that a properly timed motion *in limine* would be a better vehicle to address whether to "strike" or prohibit the testimony at issue.

In any event, RLI is correct that the Banks will suffer no prejudice by the Court's refusal to strike its expert reports at the pretrial, pre-deposition stage. While the Court does not intend, either at the dispositive motion stage or at trial, to consider or permit evidence that contravenes this Court's explicit prior rulings, the Court declines to hold, at this stage, that RLI's proffered expert reports fall into this category.[2] The Banks' motion to strike or exclude the reports and testimony of Richard Masters and Kenneth Mathisen based on the "law of the case" doctrine (Doc. 1954) is <u>denied</u> without prejudice.

B.  **Improper Legal Conclusions**

The Banks also move (Doc. 1953) for an order excluding the Masters Report in its entirety, based on Mr. Masters's allegedly improper inclusion of legal conclusions, including conclusions that purport to instruct on the "ultimate issues" before the Court. Specifically, the Banks refer to the following and other similar statements in the Masters Report: (1) "Anthony was never granted any authority to sign SSA's on behalf of RLI and any and all such documents should be voided," (2) "[Anthony] purposely and repeatedly concealed and misrepresented material information," (3) "[i]t is my opinion that all bonds issued on behalf of RLI were issued under false pretenses and must be voided," and (4) Michael Anthony's conduct was "a clear breach of his duty to RLI." The Banks argue that such statements do no more than direct the

---

[2] The Court does not agree with RLI's suggestion that it should wait until trial to make these determinations. When talking about expert testimony, the inefficiency and confusion created by RLI's proposal is obvious. As noted below, moreover, the Court also does not mean to imply that it would <u>never</u> rule on the propriety of expert testimony before discovery. If an expert report contains no opinions other than those clearly at odds with unequivocal prior rulings of the Court, pre-discovery *in limine* rulings would be appropriate to avoid undue burden and expense relating to those reports. Here, the Masters and Mathisen reports go beyond the opinions that have drawn the Banks' ire in these motions, making deposition discovery from those experts necessary regardless of the Court's ruling here.

finder of fact as to what result to reach, are unhelpful to the trier of fact and are properly excluded under the Federal Rules of Evidence.

"Although an expert's opinion may 'embrace[] an ultimate issue to be decided by the trier of fact[,]' Fed. R. Evid. 704(a), the issue embraced must be a factual one. . . ." *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). *See also Torres v. County of Oakland*, 758 F.2d 147, 150 (6th Cir. 1985)("Rule 704 . . . does not provide that witnesses' opinions as to the legal implications of conduct are admissible. . . ."), *quoting United States v. Baskes*, 649 F.2d 471, 479 (7th Cir. 1980). "Testimony . . . which attempts to tell the jury what result to reach and which runs the risk of interfering with a district court's jury instructions, hardly can be viewed as being helpful to the jury. . . ." *Woods v. Lecureux*, 110 F.3d 1215, 1221 (6th Cir. 1997). The Banks argue that, based on these principles, the entire Masters Report must be stricken.

RLI asserts that the Masters Report is merely a summary, couched in the language of an industry expert, of Mr. Masters's opinions as to Michael Anthony's compliance with the standards of the industry governing the conduct of brokers. RLI contends that Mr. Masters's opinions are reasonably based on his 30 years of experience in the insurance industry and the voluminous documentary evidence in this case. RLI denies that Mr. Masters articulates any legal conclusions as to Anthony's breaches of duties owed to RLI. Rather, RLI argues that Mr. Masters's conclusions that Anthony breached duties were based only on the standards applicable to a broker in the insurance industry—standards as to which Mr. Masters is well-qualified to testify. To the extent the Banks seek to challenge the correctness of Mr. Masters's conclusions, RLI submits that the proper method is cross-examination rather than exclusion. *See, e.g., Ruiz-Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998).

Additionally, RLI argues that Mr. Masters's report is based on an assessment of the facts that Michael Anthony knew at the time relevant to this action, and that Mr. Masters's opinion is directed, in part, to Anthony's state of mind. RLI contends that Mr. Masters's experience in the field qualifies him to testify as to issues such as whether Anthony, as an experienced broker, should have known that he was required to inform RLI that he was receiving payments from CMC.

RLI also argues that, even if the Masters Report does go to ultimate facts in the case, the Federal Rules of Evidence do not bar such testimony. "[T]estimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact. . . ." F.R.E. 704(a). RLI asserts that, even if the Masters Report appears to use words that possess a particular legal meaning, the Court should consider the terms used in the Masters Report in light of their everyday industry meaning, not their legal meaning. "Even if the everyday understanding of a term and its legal meaning are congruent, exclusion is inappropriate where the opinion will not consist of a naked conclusion." *Richman v. Sheahan*, 415 F. Supp. 2d 929, 947 (N.D. Ill. 2006)(expert was permitted to testify as to "reasonableness" of police conduct).

RLI further contends that equitable issues (including the Banks' claims for reformation and RLI's claims for rescission) predominate in this dispute, and thus that certain matters may be presented to a district court, rather than to a jury. RLI argues that a court is well able to distinguish permissible expert opinions from legal conclusions. *See Suter v. Gen. Accid. Ins. Co. of Am.*, 424 F. Supp. 2d 781, 793 (D.N.J. 2006)("the rule against legal conclusions should become less stringent in the case where the factual findings are to be made by the Court. . . ."); *Moses v. Halstead*, 2007 U.S. Dist. LEXIS 14726, *12 (D. Kan. Feb. 28, 2007)(unpublished

disposition)("the Court is capable of screening factual statements from legal conclusions. . . ."). Finally, RLI again argues that the Banks' motion is premature, and that the Court cannot properly address the import of Mr. Masters's testimony until trial. *See, e.g., Lozano*, 2007 U.S. Dist. LEXIS 13295, at *15 ("any determination that [the expert's] testimony would offer inappropriate legal conclusions is premature. . . .").

In their reply memorandum, the Banks contend that Sixth Circuit standards are significantly more stringent than the case law cited by RLI. Specifically, the Banks argue that, while the Sixth Circuit permits expert opinions as to the duties imposed by industry standards, it <u>does not</u> permit an expert to instruct the fact-finder that such duties have been breached. *See, e.g., McGowan v. Cooper Indus., Inc.* 863 F.2d 1266, 1272 (6th Cir. 1988)(while court erred in excluding expert testimony as to responsibilities customarily undertaken by factory representatives, the court correctly excluded testimony that representative breached his duties). "[T]estimony of an expert that constitutes mere personal belief as to the weight of the evidence invades the province of the jury. . . ." *Id.* at 1273. The Banks argue that numerous statements in the Masters Report, including opinions that Anthony "breached (or violated) his duties" and that documents "must be voided" fall into this category. The Banks contend that, in any event, whether Anthony breached duties to RLI is irrelevant in the cases involving the Banks, as the Court already found that Anthony possessed apparent authority to sign the lease bond documents.

The Banks also dispute RLI's contention that its expert may opine as to Anthony's subjective state of mind, including assertions that Anthony "purposely" or "intentionally" concealed information, or that he "knew" that the information concealed would be material to RLI's decision as to whether to issue the lease bonds. *See, e.g., Woods*, 110 F.3d at 1221

10

(expert's testimony could not imply that he knew defendant's state of mind); *Woodhull v. County of Kent*, 2006 U.S. Dist. LEXIS 54028, *20 (W.D. Mich. Aug. 3, 2006)(unpublished disposition)("[o[bjective facts and circumstances may provide evidence of a defendant's state of mind, but conclusory statements . . . do not assist the trier of fact. . . .").

As noted above, "striking" the Masters Report on the grounds the Banks assert is not the proper vehicle for the Court to employ. *See* discussion at 5, *supra*. As noted above, however, where no illumination of an expert's theories during discovery could impact the propriety of those opinions, the Court need not delay expressing its views about the admissibility of any of those conclusions.

The Court has reviewed the Masters Report in detail, and finds that the Report contains a significant number of improper conclusory statements as to the legal propriety of Michael Anthony's conduct, as well as the impact of various actions taken by Anthony. However, because the Court finds that <u>portions</u> of the Masters Report may be of some utility in assisting the fact finder, the Court declines to strike the Masters Report in its entirety.

The Masters Report contains numerous statements that render impermissible conclusions as to the legality or ultimate legal effect of Anthony's actions. This category of statements includes conclusions that the surety bonds and SSAs issued by Anthony were undertaken "without authority" or are "void" (e.g., the opinion that "all bonds issued on behalf of RLI . . . must be voided"). To the extent RLI intends to present Mr. Masters's testimony as to Anthony's compliance with standards or the legal effect of Anthony's conduct, such statements by Mr. Masters will be disallowed. The Masters Report also contains, however, certain statements relating to the standards of loyalty and care imposed on industry brokers. To the

limited extent that Mr. Masters's testimony states the obligations on brokers imposed by industry standards, portions of Mr. Masters's testimony may be relevant and admissible.

Similarly, with respect to the conclusions allegedly relating to Anthony's state of mind, the Court finds that unsupported statements and conclusory opinions regarding Anthony's "knowledge" or "fraudulent intent" would not be helpful to the finder of fact. Again, however, certain segments of Mr. Masters's testimony may have some limited relevance, to the extent that they explain (1) industry standards imposed on a surety broker; (2) the information available to a typical surety broker; or (3) the reasons that a surety broker generally would be aware of the obligations imposed on him. For these reasons, the Court declines to strike the <u>entirety</u> of the Masters Report.

Since the Banks seek exclusion of the Masters report in its entirety, they have not identified each individual statement alleged to state an impermissible legal conclusion. The Court also declines to enumerate each such statement at this point in time, because it is unclear both whether RLI will purport to offer such obviously improper testimony, and, if so, the context in which it will seek to do so. Further discovery and trial preparation will afford the Court a more relevant framework in which to evaluate each of Mr. Masters's conclusions.

In declining to identify the specific testimony to be excluded based on the content of the Masters Report alone, the Court is swayed by a similar hesitancy previously expressed by the Southern District of New York:

> At this preliminary stage, we are reluctant to rule on the admissibility of each item in [the expert's] report. The parties have not yet completed expert depositions, much less trial preparation. Furthermore, this case is only one piece of a complex, multi-party, multi-action securities litigation. It is simply impossible to foresee at this point what testimony the parties will actually seek to introduce at trial or in what context it will be presented. Especially in litigation as complicated as this, we are

> hesitant to rule in advance, and in the abstract, on the admissibility of particular pieces of evidence. . . .

*Ausa Life Ins. Co. v. Dwyer*, 899 F. Supp. 1200, 1202 (S.D.N.Y. 1995). The court went on to note, however, that "[t]he use of expert testimony . . . must be carefully circumscribed to assure that the expert does not usurp either the role of the trial judge . . . or the role of the jury. . . ." *Id.* (internal quotation omitted). Accordingly, the court admonished the parties that, to the extent that defendants did seek to introduce testimony as to the meaning of the requirements of federal securities law, those portions of the expert's testimony would be inadmissible. *Id.* at 1203.

Similarly, here, the Court will not presume to declare, at the pre-deposition stage, the import or propriety of each statement made in the Masters Report. The Court finds that some aspects of Mr. Masters's report may have at least limited relevance in evaluating the conduct of Michael Anthony in the context of the standards applicable in the surety broker industry. Nonetheless, RLI is admonished that, to the extent it proffers Mr. Masters to testify to (1) the legal standards governing Mr. Anthony's conduct; (2) the legal validity of the transaction documents; or (3) conclusory speculation as to Anthony's subjective state of mind, such testimony will not be permitted. The motion to strike the expert report of Richard Masters (Doc. 1953) is <u>denied</u>, subject to the caveats noted by the Court.

### C. Conclusion

For the reasons set forth herein, the Banks' motion to exclude certain portions of the expert reports and related testimony of Richard Masters and Kenneth Mathisen (Doc. 1954) is <u>denied</u> without prejudice. The motion to strike the expert report of Richard Masters (Doc. 1953) is <u>denied</u>. The Court declines to strike the Masters report in its entirety at this time. Mr. Masters's testimony will be permitted to the extent that such testimony summarizes the standards of conduct applicable to a surety broker. Mr. Masters will not be permitted to testify

as to (1) whether Mr. Anthony's conduct breached those standards; (2) the validity of documents executed by Mr. Anthony; or (3) Mr. Anthony's subjective state of mind.

**IT IS SO ORDERED.**

<u>s/ Kathleen M. O'Malley</u>
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: May 22, 2007**

48639-1