# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: COMMERCIAL MONEY | : | **Case No. 1:02CV16000** |
| CENTER, INC., EQUIPMENT | : | |
| LEASE LITIGATION | : | **(MDL Docket No. 1490)** |
| | : | |
| | : | **JUDGE O'MALLEY** |
| | : | |
| | : | **MEMORANDUM OF OPINION** |
| | : | **AND ORDER** |
| | : | |
| | : | **As Identified Herein, This Order** |
| | : | **Relates to Numerous Individual** |
| | : | **Cases** |

These actions were transferred to this Court by order of the Judicial Panel on Multidistrict Litigation ("the MDL Panel"), issued on October 25, 2002. (02-16000, Doc. 1). This Court has ordered that these actions be coordinated for pretrial purposes. (02-16000, Doc. 2).

The dispute in these actions centers around the Sureties' liability on various surety bonds issued in connection with certain transactions between the Banks[1] and Commercial Money Center ("CMC"). CMC's business purportedly involved the leasing of equipment and vehicles to numerous lessees in exchange for lease payments. CMC then pooled the leases and sold them to institutional investors. Apparently, the majority of CMC's leasing business was a sham, and the Banks claim millions of dollars in losses from these transactions. The Banks now sue the Sureties to recover on the surety bonds associated with the transactions.[2]

---

[1] Where not defined herein, capitalized terms used in this Opinion have the meanings ascribed to them in the Court's Consolidated Rulings issued August 19, 2005 (02-16000, Docs. 1708, 1709), and in the Court's Amendment Order (02-16000, Doc. 1865).

[2] The Court does not summarize here the entirety of the complicated factual scenario involved in these cases. Rather, the Court refers the reader to its two Consolidated Rulings on the numerous Motions for Judgment on the Pleadings, issued August 19, 2005 (02-16000, Docs. 1708, 1709).

## I.  Background and Overview of Pending Notifications

On September 12, 2006, the Court issued its Amended Revised Case Management Plan ("ARCMP")(Doc. 1861), which established a procedure for parties desiring to file dispositive motions in this action.  The ARCMP provided that "[a]ny party wishing to file a dispositive motion shall file a *Notification of Intent and Request for Leave to File Summary Judgment Motion* ("Notification"). . . ."

The Court instructed that any Notification filed by the parties "shall contain a statement of issues as to which the party intends to seek summary resolution, and a brief explanation of the reasons each issue is appropriate for summary resolution. . . ."  The Court prohibited the parties, however, from filing Notifications as to certain issues deemed inappropriate for summary adjudication, including (1) Reformation of the contracts / Intent of the parties in entering into the respective transactions; and (2) Fraud.[3]

In accordance with the ARCMP, multiple parties to these actions filed Notifications requesting leave to file motions for summary judgment as to various issues in these actions. Each Notification now is ripe for determination by the Court.  For convenience, the Court sets forth each of the pending Notifications, and the Court's disposition of each request for leave to file a summary judgment motion, below.

|     | CASE NUMBER/NAME | FILING PARTY | DISPOSITION |
| --- | --- | --- | --- |
| (1) | **02-16001, *RLI Ins. v. CMC, et al.*** (Doc. 55) | Ameriana | DENIED AS MOOT |

---

[3] As explained in detail on the record of these proceedings at the time the ARCMP was issued, these restrictions were not lightly imposed.  Before the ARCMP was issued, the Court had analyzed and ruled upon multiple motions for judgment on the pleadings, through which the parties had laid out in detail (through hundreds of pages of briefing) their respective positions on most legal issues raised in this action.  While the Court's exhaustive analysis of those motions, as reflected in a number of lengthy opinions addressing them, did result in a number of dispositive legal rulings, it also led to a number of rulings in which the Court concluded that the legal issue posed turned on still-debated issues of fact.  The exercise of analyzing the Rule 12(c) motions in this case gave the Court a thorough perspective on the matters to be resolved in this case and on the most efficient way to handle them.  That perspective, and the Court's desire to avoid undue (and unduly expensive) motions practice, led to the ARCMP.

| | | | |
|---|---|---|---|
| (2) | **02-16001, *RLI Ins. v. CMC, et al.***<br><br>**02-16013, *Sky Bank v. RLI, et al.***<br>(02-16001, Doc. 56) | Sky Bank | DENIED AS MOOT |
| (3) | **02-16001, *RLI Ins. v. CMC, et al.***<br><br>**02-16027, *Atlantic Coast Federal v. RLI***<br>(02-16001, Doc. 57) | Atlantic Coast Federal | GRANTED IN PART, DENIED AS MOOT IN PART AND DENIED IN PART |
| (4) | **02-16001, *RLI Ins. v. CMC, et al.***<br><br>**02-16005, *Ameriana Bank v. RLI***<br><br>**02-16013, *Sky Bank v. RLI, et al.***<br><br>**02-16027, *Atlantic Coast Federal v. RLI***<br><br>**03-16001, *Lakeland Bank v. AMICO, et al.***<br><br>**04-16001, *Bank of Waukegan v. RLI***<br>(02-16000, Doc. 1925) | RLI | DENIED AS MOOT IN PART, GRANTED IN PART AND DENIED IN PART |
| (5) | **02-16002, *Royal v. CMC, et al.*,**<br><br>**02-16003, *AMICO v. Rafferty, et al***<br><br>**02-16004, *Safeco Ins. v. CMC, et al.***<br><br>**02-16005, *Ameriana Bank v. RLI***<br><br>**02-16006, *CSC v. Ace American, et al.***<br><br>**02-16014, *Bank One (Chase)  v. Safeco***<br><br>**02-16020, *CadleRock v. Safeco***<br><br>**02-16021, *Provident Bank v. Safeco***<br>(02-16000, Doc. 1920) | Safeco | GRANTED |
| (6) | **02-16005, *Ameriana Bank v. RLI***<br>(Doc. 14) | Ameriana | DENIED AS MOOT |
| (7) | **02-16007, *CMC v. Ace American and Illinois Union***<br><br>**02-16010, *NetBank v. Illinois Union, et al.***<br>(02-16000, Doc. 1918) | Illinois Union | DENIED AS MOOT |
| (8) | **02-16010, *NetBank v. Illinois Union, et al.***<br>(Doc. 43) | NetBank | DENIED AS MOOT IN PART AND |

| | | | DENIED IN PART |
|---|---|---|---|
| (9) | (Doc. 44) | Royal Indemnity Company | GRANTED |
| (10) | (02-16000, Doc. 1917) | Safeco | GRANTED |
| (11) | **02-16012, *Metropolitan Bank v. Royal, et al.*** (Doc. 99) | CadleRock | DENIED |
| (12) | (Doc. 100) | Guardian Capital XV, LLC | DENIED |
| (13) | **02-16012, *Metropolitan Bank v. Royal, et al.*** **02-16018, *Huntington Bank v. Royal*** **02-16019, *Sky Bank, et al. v. Royal*** **02-16022, *Second National Bank v. Royal*** (02-16000, Doc. 1924) | Royal Indemnity Company | GRANTED |
| (14) | **02-16014, *Bank One (Chase) v. Safeco*** (02-16000, Doc. 1923) | JP Morgan Chase Bank (successor in interest to Bank One) | GRANTED IN PART AND DENIED IN PART |
| (15) | **02-16017, *Huntington Bank v. AMICO, et al.*** (Doc. 60) | AMICO | GRANTED |
| (16) | (Doc. 61) | Guardian Capital XVI, LLC | DENIED |
| (17) | **02-16018, *Huntington Bank v. Royal*** (Doc. 56) | Guardian Capital XIV, LLC | DENIED |
| (18) | **02-16019, *Sky Bank, et al. v. Royal*** (Doc. 78) | CadleRock | DENIED |
| (19) | (Doc. 79) | Guardian Capital IX, LLC | DENIED |
| (20) | **02-16020, *CadleRock v. Safeco*** (Doc. 42) | CadleRock | DENIED |
| (21) | **02-16022, *Second National Bank v. Royal*** (Doc. 78) | CadleRock | DENIED |
| (22) | (Doc. 79) | Diversity Capital II, LLC | DENIED |
| (23) | **02-16024, *AMICO v. Ameriana Bank*** (Doc. 48) | AMICO | GRANTED IN PART AND DENIED IN PART |
| (24) | **03-16000, *RLI v. Guardian Financial Group LLC*** (Doc. 22) | Guardian Capital XVIII, LLC, Guardian Financial, and | DENIED |

| | | Blaine Tanner | |
|---|---|---|---|
| (25) | **03-16002, *Guardian Capital LLC v. Safeco*** (Doc. 13) | Guardian Capital, LLC | DENIED |
| (26) | **03-16003, *Guardian Capital I, LLC v. Safeco*** (Doc. 13) | Guardian Capital I, LLC | DENIED |
| (27) | **03-16004, *Guardian Capital II, LLC v. Safeco*** (Doc. 10) | Guardian Capital II, LLC | DENIED |
| (28) | **03-16005, *Guardian Capital III, LLC v. Safeco*** (Doc. 10) | Guardian Capital III, LLC | DENIED |
| (29) | **03-16006, *Diversity Capital One, Inc. v. Safeco*** (Doc. 11) | Diversity Capital One, LLC | DENIED |

## II.    Discussion

The Court carefully has reviewed each Notification, and has considered the issues as to which each party seeks leave to file a dispositive motion.  The Court sets forth its determinations as to each of the Notifications herein, proceeding through these actions in numerical order.

### A.    02-16001, *RLI Insurance Company v. Commercial Money Center, Inc., et al.* (Doc. 55—Ameriana Bank and Trust, S.B.)

Ameriana Bank and Trust, S.B. ("Ameriana") filed a Notification, seeking leave to file a motion for partial summary judgment against RLI Insurance Company ("RLI") as to several issues.  On September 6, 2007, however, Ameriana and RLI filed a Proposed Stipulation of Dismissal of all claims between them. (02-16001, Doc. 73).  This Court approved the Stipulation on September 17, 2007 (Doc. 74).  Accordingly, Ameriana's request for leave to file a summary judgment motion against RLI is denied as moot.

### B.    02-16001, *RLI Insurance Company v. Commercial Money Center, Inc., et al.* 02-16013, *Sky Bank v. RLI Insurance Company* (02-16001, Doc. 56—Sky Bank)

Sky Bank filed a Notification, requesting leave to file a summary judgment motion with

respect to three issues relating to RLI's claims and affirmative defenses in these two cases. On July 10, 2007, however, Sky and RLI filed Proposed Stipulations of Dismissal of all claims between them. (02-16001, Doc. 70; 02-16013, Doc. 80). This Court approved the Stipulations on July 13, 2007. (02-16001, Doc. 71; 02-16013, Doc. 81). Accordingly, Sky's request for leave to file summary judgment motions as to various issues in these two cases is <u>denied as moot</u>.

      **C.**      **02-16001, *RLI Insurance Company v. Commercial Money Center, Inc., et al.***
                     **02-16027, *Atlantic Coast Federal v. RLI Insurance Company***
                     **(02-16001, Doc. 57/02-16027, Doc. 12—Atlantic Coast Federal)**

Atlantic Coast has filed a Notification requesting leave to file a summary judgment motion against RLI Insurance Company with respect to several issues.[4] The Court addresses each of the issues raised by Atlantic Coast below.

      **1.**      **Claims and Defenses Against Atlantic Coast Involving Fraud**

Atlantic Coast contends that all claims and defenses involving fraud are subject to adjudication on summary judgment, because (1) any fraud by CMC is not imputable to Atlantic Coast, as a matter of law; and (2) any suggestion that Atlantic Coast committed fraud is meritless as a matter of law. For the reasons set forth herein, the Court finds that none of the fraud-related issues raised by Atlantic Coast is amenable to summary judgment, and the request for leave to file a summary judgment motion as to the fraud-related issues is <u>denied</u>.

---

[4] Atlantic Coast also states, in a footnote, that it "joins in Net and Sky Banks' Notification of Intent and Request for Leave and the Points and Authorities set forth therein." With respect to Sky Bank's Notification, the Court assumes that Atlantic Coast refers to the Notification filed by Sky in 02-16001 and 02-16013 (and addressed in section II.B., *supra*). As noted in that section, Sky and RLI have settled and dismissed the claims between them. Accordingly, the Court denied Sky's request for leave to file a summary judgment motion as moot.

Atlantic Coast is not a party to case number 02-16013; accordingly, the Court considers only the arguments raised by Sky with respect to case number 02-16001. The Court has examined those arguments and has found that each of those arguments already has been raised and discussed by Atlantic Coast in its own memorandum. Accordingly, the Court does not address Sky's arguments separately.

With respect to NetBank's Notification, that Notification was filed in 02-16010, and will be addressed in section II.H., *infra*. To the extent relevant, the analysis relating to NetBank's Notification also extends to Atlantic Coast. (Since Atlantic Coast was not a party to any transactions with Illinois Union, it appears that Atlantic Coast seeks to join only in the portion of NetBank's Notification that seeks to file a summary judgment motion against Safeco).

Atlantic Coast argues, first, that the transfer of rights from CMC to Atlantic Coast created a novation under California law, and that, based on the plain language of the transaction documents, Atlantic Coast became an obligee immediately upon CMC's assignment of rights. RLI responds that novation has not been pleaded in this action, and that, in any event, Atlantic Coast's novation theory depends on a factual determination as to the parties' intent.

Second, Atlantic Coast argues that RLI cannot rescind its surety contracts, because California law prohibits rescission where the rights of innocent third parties have intervened. RLI responds that Atlantic Coast is not an "innocent third party," since it negligently failed to perform due diligence and comply with appropriate banking standards.

Third, Atlantic Coast argues that RLI's claims and defenses grounded on fraud by Atlantic Coast (based on purported "representations" by Atlantic Coast that the transaction was a sale, not a loan) are frivolous and should be dismissed as a matter of law. RLI, on the other hand, responds that the Court's order expressly precludes motions for summary judgment as to fraud issues, and that there is ample evidence in any event to support RLI's allegations of Atlantic Coast's fraud.

The Court notes that, in the ARCMP, it specifically prohibited parties from filing motions for summary judgment with respect to certain issues, including fraud-related issues. Even leaving aside that express prohibition, however, all of Atlantic Coast's fraud-related arguments are meritless, and leave to file a summary judgment motion must be denied as to these claims.

Assuming arguendo that Atlantic Coast properly pleaded its novation claim, the Court finds that such a claim centers on the parties' intent as to the status of the parties to the transaction, and is not amenable to determination through a summary judgment motion. Under

California law,[5] "[n]ovation is made . . . by the substitution of a new creditor in place of the old one, with intent to transfer the rights of the latter to the former." Cal. Civ. Code § 1531(3). "The question whether a novation has taken place is always one of intention. . . ." *Goodman v. Citizens Life & Casualty Ins. Co.*, 253 Cal. App. 2d 807, 816 (2d Dist. 1967)(citation omitted)(internal quotation omitted). "Determining the parties' intent is a highly fact-specific inquiry," and "[s]uch inquiries are not generally suitable for disposition on summary judgment. . . ." *Fanucchi & Limi Farms v. United Agri Prods.*, 414 F.3d 1075, 1082 (9th Cir. 2005)(citations omitted).

Although Atlantic Coast argues, in essence, that novation may be determined as a matter of law where "the issue turns upon the meaning of a written instrument and there is no conflicting extrinsic evidence. . . ," *Howard v. County of Amador*, 220 Cal. App. 3d 962, 980 (3d Dist. 1990), this is not such a situation. As the Court specifically noted in its opinion disposing of the parties' motions for judgment on the pleadings (Doc. 1708), the language of the relevant transaction documents here precludes any finding as to the Sureties' obligations to the Banks without the consideration of extrinsic evidence of intent. Although the Court's analysis in considering the pleadings motions was focused on the Banks' assertion of obligee status under the transaction documents, that analysis is equally pertinent to the novation issue.

> The difficulty is that the Banks' proposed construction contradicts the plain language of the Surety Contracts, each of which explicitly conveys rights only to CMC. The Court finds that it may disregard the plain language of those documents only through a reformation of the Surety Contracts, or by finding – after consideration of all aspects of the parties' relationship – that the intention of the parties is other than as expressed in those Surety Contracts.
>
> ***
>
> [T]he language of the relevant SSAs does not unambiguously indicate that a Bank was intended to be the obligee in the transactions. Although the language set forth in many of the SSAs

---

[5] Both Atlantic Coast and RLI rely on California law in their Notifications.

> relating to the Sureties' servicer obligations (including the obligation to guarantee performance of any sub-servicer) is highly suggestive of an intention to undertake obligations to the Banks as well as CMC, the juxtaposition of this language with Surety Contracts that contain no mention of the Banks' rights at least creates a question that can be resolved only by the presentation of evidence at a later stage in the proceedings.

***

> [I]n most cases intent is considered a question of fact not amenable to pre-discovery resolution. This is especially true, moreover, where the documents memorializing the parties' agreement are, as here, hardly a picture of clarity.

Doc. 1708, at 26-28. Just as the Court was unable to determine the Banks' obligee status on the basis of the transaction documents alone, it cannot rely on those same documents to find a novation as a matter of law.

Similarly, the applicability of the principles cited by the parties in relation to the rights of "innocent third parties" cannot be determined through summary judgment. RLI's briefing with respect to this argument appears to focus on Cal. Civ. Code § 3543, which provides that, "[w]here one of two innocent persons must suffer by the act of a third, he, by whose negligence it happened, must be the sufferer. . . ." The cases cited by RLI indicate that § 3543 does not apply to reward a negligent party, even if that party was innocent of fraud in the relevant transaction. *See, e.g., Collins v. Home Sav. & Loan Asso.*, 205 Cal. App. 2d 86, 101 (2d Dist. 1962)("there was a measure of carelessness on the part of both parties . . . and accordingly the maxim stated in section 3543 has no application. . . ."). *See also American Bldg. Maintenance Co. v. Indemnity Ins. Co.*, 214 Cal. 608, 618 (1932)(§ 3543 inapplicable where employees of both parties were negligent).

Thus, to the extent Atlantic Coast seeks to invoke the principles of § 3543, the application of that principle cannot be determined through a dispositive motion. Negligence,

under California law, generally presents fact questions not appropriate for determination on summary judgment. "[N]egligence . . . is a question of fact for the jury—an inference to be deduced from the circumstances. . .," *Kentucky Fried Chicken of Cal., Inc. v. Superior Court*, 14 Cal. 4th 814, 840 (1997)(internal quotation omitted), unless the evidence reasonably supports only one conclusion. *See id*. The evidence of negligence in entering into the CMC transactions is far from one-sided, and accordingly, the applicability of Cal. Civ. Code § 3543 is not amenable to determination on summary judgment.

To the extent Atlantic Coast does not rely on section 3543, and instead relies on equitable principles disallowing rescission where a third party's rights have intervened, examination of those equitable principles also would involve fact questions. *See, e.g., Gill v. Rich*, 128 Cal. App. 4th 1254, 1265 (2005)("when the rights of others have intervened and circumstances have so far changed that rescission may not be decreed without injury to those parties and their rights, rescission will be denied and the complaining party left to his other remedies. . . .")(internal quotation omitted); *Principal Mutual Life Ins. Co. v. Vars, Pave, McCord & Freedman*, 65 Cal. App. 4th 1469, 1487, n.9 (2d Dist. 1998)(rescission will be denied where third party beneficiary has relied on promises made for its benefit). These cases speak in terms of third-party beneficiary rights under a contract, and the determination of any such status on the part of Atlantic Coast cannot be determined on a dispositive motion. *See Prouty v. Gores Technology Group*, 121 Cal. App. 4th 1225, 1233 (3d Dist. 2004)("[g]enerally, it is a question of fact whether a particular third person is an intended beneficiary of a contract. . . ."). As the Court has noted herein, the transaction documents are far from clear as to the intended status of each of the parties involved in the CMC transactions, and the determination of such status is not amenable to summary judgment.

With respect to RLI's allegations of fraud against Atlantic Coast, RLI has asserted that Atlantic Coast made fraudulent representations in the SSA by representing that the CMC transactions were sales rather than loans, although Atlantic Coast knew differently. Atlantic Coast argues that, despite the Court's prohibition on summary judgment motions relating to fraud claims, these contentions by RLI are so frivolous as to warrant disposition through a summary judgment motion.

Having reviewed the language of the SSAs and the purported "representations" made by Atlantic Coast, the Court notes its serious doubts that those representations could suffice to support any cognizable fraud claim against Atlantic Coast. Nonetheless, the issue of Atlantic Coast's fraudulent misrepresentations to RLI is inappropriate for summary judgment for another reason. Atlantic Coast indicates that allegations related to Atlantic Coast's fraud are "incorporated into the second, fourth, fifth, tenth and eleventh claims . . .," as well as that "portion of" RLI's "thirty-ninth affirmative defense. . ." that relates to intentional misconduct by Atlantic Coast. (Doc. 55, at 3). Essentially, each of the claims and defenses challenged by Atlantic Coast in its Notification seeks rescission of the bonds or SSAs, or requests relief declaring that RLI is excused from honoring its obligations under those documents. As noted by RLI, each of these claims and defenses cites multiple grounds for the purported unenforceability of the bonds and SSAs—including alleged fraud by CMC.

Accordingly, if Atlantic Coast were permitted to move for summary judgment as to RLI's allegations of fraud against it, and if Atlantic Coast were to succeed on that motion, questions of fact relating to the conduct of CMC, and the attribution of CMC's conduct to Atlantic Coast, would bar the complete disposition of any of the challenged claims or defenses. Thus, a

successful summary judgment motion still would not dispose of any entire claim or defense asserted by RLI.

Courts have split as to whether the filing of a motion for summary judgment that seeks relief as to less than an entire claim is appropriate. *Compare Classen Immunotherapies, Inc. v. King Pharms., Inc.*, 403 F. Supp. 2d 451, 456 (D. Md. 2005)("[u]nder Rule 56 a party is not entitled to summary judgment if the judgment would not be dispositive of an entire claim. . . .")(citation omitted), *and Northeast Ill. Reg'l Commuter R.R. Corp. v. Kiewit Western Co.*, 396 F. Supp. 2d 913, 921 (N.D. Ill. 2005)("[a] motion for partial summary judgment is only proper if it seeks to dispose of an entire count or claim. . . ."), *with Ramirez v. County of Los Angeles*, 397 F. Supp. 2d 1208, 1220 (C.D. Cal. 2005)("where summary judgment is not proper on the entire claim, under Rule 56(d) the Court may grant partial summary judgment on discrete elements of the claim. . . ."). This Circuit apparently has not ruled on the issue.

Without reaching a definitive ruling as to which of these positions is correct as a matter of law, the Court finds that permitting the filing of a summary judgment motion that would not dispose of any claim or defense would waste judicial resources in a complex case that already demands a good deal of such resources. Accordingly, the Court declines to entertain a summary judgment motion which, even if successful, would not dispose of any claims or defenses raised by RLI.

For the reasons set forth herein, Atlantic Coast's Notification requesting leave to file a summary judgment motion as to RLI's fraud claims is <u>denied</u>.

### 2. Negligent Disbursement Claim

Atlantic Coast asserts that RLI's negligent disbursement claim should be dismissed as a matter of law, based on the Court's prior Amendment Order (Doc. 1865), in which the Court

rejected a similar negligence counterclaim sought to be asserted by Safeco. RLI argues that its claim is distinguishable from that asserted by Safeco and thus that it is not amenable to resolution in the context of a dispositive motion.

As the Court noted in its prior opinion denying Sky Bank's motion to strike the Doster and George expert reports (Doc. 2089), there is no basis for distinguishing RLI's claim from the claim previously rejected, and RLI's claim fails as a matter of law. Based on the analysis set forth in the Court's opinion denying the motion to strike the Doster and George expert reports, the Court already has resolved the negligent disbursement claim. Accordingly, RLI's motion for leave to file a summary judgment motion on this claim is <u>denied as moot</u>.

### 3. Pre- and Post-Funding Dealings between CMC and Lessees

Atlantic Coast also requests leave to file a summary judgment motion with respect to certain defenses raised by RLI in its Amended Answer to Atlantic Coast's Amended and Supplemental Counterclaims (Doc. 49), which are based on pre- and post-funding dealings between CMC and the lessees. The defenses in question involve (1) RLI's "due and owing" defense; (2) the validity of the underlying leases; (3) illegality; and (4) the assertion of defenses that would have been available to the lessees against CMC. Atlantic Coast argues that RLI is barred from asserting fraud and misconduct by CMC, and accordingly these claims should be disposed of by summary judgment. RLI responds that Atlantic Coast's argument is premised on the incorrect assumption that the Court already has found Atlantic Coast to be the obligee on the surety bonds, and argues that the Court cannot determine obligee status at the summary judgment stage.

The Court agrees with RLI. In its opinion disposing of the motions for judgment on the pleadings (Doc. 1708), the Court stated multiple times that (1) it was impossible to determine,

from the face of the transaction documents, the merits of the Banks' claims to "obligee" status; and (2) without determining which party was the "obligee," the Court also could not determine the validity of various surety defenses relating to misconduct by CMC. The vast majority of these defenses, as the Court found, will be barred if the Banks are found to be obligees, but will be allowed if the Banks are found to be mere assignees of CMC. The determination of these issues is closely tied up with the Banks' "reformation" claims—issues as to which the Court prohibited the filing of summary judgment motions.

Atlantic Coast's suggestion that the Court may find RLI "estopped" based on its representations to Atlantic Coast in the Bonds and SSAs is merely another permutation of the obligee argument, and also will not be considered at the summary judgment stage. Accordingly, Atlantic Coast's request to file a dispositive motion with respect to RLI's defenses involving CMC's misconduct is denied.

### 4.     Other RLI Defenses

Atlantic Coast's Notification also requests leave to file a dispositive motion against RLI relating to multiple affirmative defenses raised by RLI against Atlantic Coast. As a general matter, the Court notes that Atlantic Coast again has raised many arguments, several of which, if successful, would dispose of only a portion of a defense raised by RLI. As noted above, the Court is reluctant to allow summary judgment briefing on arguments that dispose of less than an entire claim or defense, especially where the claim in question is difficult to parse or separate. With these considerations in mind, the Court analyzes each of Atlantic Coast's contentions in list form below.

(1)     Atlantic Coast argues that RLI's fourth and fifth affirmative defenses (failure to join indispensable parties and lack of standing) are barred by res judicata, based on the Global

Settlement Agreement reached in the Commercial Money Center bankruptcy proceeding. RLI responds that Atlantic Coast cannot rely on the Global Settlement Agreement, because that Agreement contains a confidentiality provision barring any reliance on or use of the Agreement in other proceedings.

RLI does not argue that Atlantic Coast's assertions with respect to the fourth and fifth affirmative defenses involve any issue of fact; rather, RLI simply asserts that the terms of the Global Settlement Agreement prohibit reliance on that agreement to support Atlantic Coast's res judicata argument as a matter of law. Moreover, if Atlantic Coast were to prevail on its res judicata argument, RLI's fourth and fifth affirmative defenses would be entirely negated, and the issues involved would drop out of the case. These issues appear to be pure issues of law, and accordingly, resolution of these issues at the summary judgment stage is appropriate. Atlantic Coast's request for leave to file a dispositive motion as to RLI's fourth and fifth affirmative defenses is <u>granted</u>.

(2)    Atlantic Coast contends that RLI's nineteenth and thirtieth affirmative defenses, based on Atlantic Coast's failure to perform its contractual obligations, lack of privity or consideration, also are amenable to disposition on summary judgment. RLI counters that these defenses encompass failure to perform by CMC, and argues that such failure to perform would be attributable to Atlantic Coast as CMC's assignee. The Court agrees with RLI that the issues raised with respect to these defenses require resolution of factual questions as to CMC's conduct and the status of Atlantic Coast vis-à-vis RLI. The Court declines Atlantic Coast's suggestion that it should separately determine issues of <u>Atlantic Coast's</u> performance and privity since these issues would be difficult to separate and, in any event, such a determination would not result in

the disposition of an entire defense.[6]   Atlantic Coast's request for leave to file a dispositive motion with respect to the nineteenth and thirtieth affirmative defenses is <u>denied</u>.

(3)     Atlantic Coast asserts that RLI's twenty-fourth and twenty-fifth affirmative defenses relating to concealment/failure to disclose should be dismissed as a matter of law, for failure to satisfy the standards of Fed. R. Civ. P. 9(b).   RLI, on the other hand, contends that ample evidence in the record supports its allegations that (a) Atlantic Coast did not conduct appropriate due diligence; and (b) Atlantic Coast misrepresented that the CMC transactions were sales, not loans.

The Court agrees with RLI that Fed. R. Civ. P. 9(b) is not an appropriate argument for dismissal of RLI's affirmative defenses here.   To the extent RLI has not pleaded its fraud and nondisclosure allegations with adequate specificity in its Answer, it has done so in its Second Amended Complaint (Doc. 42).

Additionally, although the Court has disposed of the negligent disbursement claim (as explained above), Atlantic Coast's own negligent or fraudulent conduct may be a defense to Atlantic Coast's misrepresentation claims or, in some instances, to equitable claims.   In the event RLI establishes a sufficient predicate for introduction of evidence of Atlantic Coast's conduct, proof of such allegations indisputably would involve issues of fact. (*See* Opinion denying motion to strike Doster and George Reports, Doc. 2089).   Atlantic Coast's request for leave to file a dispositive motion as to the twenty-fourth and twenty-fifth affirmative defenses is <u>denied</u>.

(4)     Atlantic Coast argues that RLI's forty-fourth affirmative defense regarding failure to mitigate damages is meritless, because Atlantic Coast has pursued RLI under the surety

---

[6] Additionally, the Court's understanding of the "privity" argument suggests that such a determination would, again, require a finding as to Atlantic Coast's status as an alleged "obligee" on the surety bonds—a ruling that the Court has found to be inappropriate for the summary judgment stage.

contracts. RLI again contends that this defense encompasses the conduct of CMC, and that, if Atlantic Coast is found to be a mere assignee of CMC, then CMC's conduct will be imputable to Atlantic Coast.

Once again, the Court declines to parse out a defense that pertains to the conduct of both CMC and Atlantic Coast. As the Court has not determined the issue of Atlantic Coast's alleged "obligee" status, it similarly cannot determine whether Atlantic Coast will be bound by the conduct of CMC as its predecessor. The Court declines, again, to entertain a summary judgment motion dealing with only a portion of the forty-fourth affirmative defense. Atlantic Coast's request for leave to file a dispositive motion with respect to that defense is <u>denied</u>.

(5)     Atlantic Coast seeks to file a dispositive motion relating to RLI's twenty-eighth and forty-second affirmative defenses, dealing with "prematurity," based on its argument that all of the lease pools now have expired. These defenses allege, essentially, that Atlantic Coast's claims are premature to the extent that amounts under the lease pools are not yet due and owing. RLI responds that Atlantic Coast has admitted it does not know whether particular leases have sums due and owing, and that there is undisputed evidence indicating that certain lease pools have no sums due and owing.

Although RLI focuses on the status of the parties and Atlantic Coast's alleged "obligee" argument, the obligee issue does not appear to be the hub of Atlantic Coast's argument. Rather, it appears that Atlantic Coast seeks only to strike those affirmative defenses that allege that portions of the lease pools have not yet come due. Such an understanding is consistent with the language of the affirmative defenses as pleaded by RLI. To the extent Atlantic Coast simply seeks to establish that all of the payments for which it seeks recovery have already come due, such an issue appears to be a straightforward one and thus easily amenable to determination on

summary judgment.  Atlantic Coast's request for leave to file a dispositive motion as to the twenty-eighth and forty-second defenses is <u>granted</u>.

(6)     Finally, Atlantic Coast requests leave to file a summary judgment motion with respect to RLI's second, tenth and eleventh defenses, which address the authority of Michael Anthony to execute lease bonds and SSAs on behalf of RLI.  Atlantic Coast asserts that the Court already has ruled that Anthony had apparent authority, as a matter of law, to execute those documents.  RLI responds that Atlantic Coast was aware of Anthony's actual powers and should not be able to rely on Anthony's apparent authority.

Initially, the Court questions whether the affirmative defenses contained in RLI's pleading actually focus on the issue of the reasonableness of Atlantic Coast's reliance on Anthony's apparent authority, as opposed to Atlantic Coast's possession of Anthony's power of attorney and knowledge of the scope of Anthony's <u>actual</u> authority.  To the extent the second, tenth and eleventh defenses address the <u>actual</u> authority granted to Michael Anthony to issue SSAs,[7] a determination of those issues would involve an examination of communications between RLI and Anthony, and would involve issues of fact.

The Court finds, moreover, that under California law (cited by both RLI and Atlantic Coast), the issue of reasonable reliance also generally presents a question of fact.  "Except in the *rare case* where the undisputed facts leave no room for a reasonable difference of opinion, the question of whether a plaintiff's reliance is reasonable is a question of fact. . . ." *City Solutions v. Clear Channel Communs., Inc.*, 365 F.3d 835, 840 (9th Cir. 2004)(emphasis in original).  Although RLI has not pointed the Court to the specific evidence it intends to introduce

---

[7] The Court's prior opinion (Doc. 1708) found that Anthony had <u>actual</u> authority to issue <u>lease bonds</u>, based on the language of the powers of attorney issued by the Sureties.  Thus, that issue already has been determined and is not appropriate for consideration on a summary judgment motion.

demonstrating that Atlantic Coast's reliance was unreasonable, RLI suggests that such evidence may include proof of Atlantic Coast's negligence. As the Court noted in its opinion denying the Banks' motion to exclude the Doster and George expert reports (Doc. 2089, at 8), evidence of negligence may be relevant to rebut assertions of justifiable reliance in certain narrow circumstances.

The Court finds that consideration of issues of negligence and reliance is inappropriate at the summary judgment stage, and thus Atlantic Coast's request for leave to file a motion for summary judgment as to RLI's second, tenth and eleventh affirmative defenses is <u>denied</u>.

Accordingly, Atlantic Coast's request for leave to file a dispositive motion is <u>granted</u> in part, <u>denied as moot</u> in part and <u>denied</u> in part, as set forth herein.

> **D.** **02-16001, *RLI Insurance Company v. Commercial Money Center, Inc., et al.***
> **02-16005, *Ameriana Bank & Trust v. RLI Insurance Company***
> **02-16013, *Sky Bank v. RLI Insurance Company***
> **02-16027, *Atlantic Coast Federal v. RLI Insurance Company***
> **03-16000, *RLI Insurance Company v. Guardian Financial Group LLC et al.***
> **04-16001, *Bank of Waukegan v. RLI Insurance Company***
> **(02-16000, Doc. 1925—RLI Insurance Company)**

RLI Insurance Company has filed a Notification requesting leave to file summary judgment motions against Ameriana Bank & Trust, Atlantic Coast Federal, Sky Bank, Bank of Waukegan and Guardian Capital XVIII (collectively, "Banks," as used in this section) on their claims and counterclaims in the above cases. As noted previously in this opinion, Sky and RLI have filed Proposed Stipulations of Dismissal of all claims between them in cases 02-16001 and 02-16013. (02-16001, Doc. 70; 02-16013, Doc. 80). Since the Stipulations resolved all claims between Sky and RLI, RLI's Notification is <u>denied as moot</u> to the extent that document requested leave to file summary judgment motions against Sky.[8]

---

[8] Accordingly, the Court does not separately address the substantive arguments raised by Sky, which focused on the application of Ohio law to the Banks' claims.

Additionally, Ameriana and RLI filed Proposed Stipulations of Dismissal of all claims between them in cases 02-16001 and 02-16005. (02-16001, Doc. 73; 02-16005, Doc. 16). The Court approved the Proposed Stipulations of Dismissal on September 17, 2007. (02-16001, Doc. 74; 02-16005, Doc. 17). Thus, RLI's Notification also is <u>denied as moot</u> to the extent it requested leave to file summary judgment motions against Ameriana.

RLI seeks to file motions presenting the following arguments: (1) the Banks' tort claims (including the claims for "bad faith," fraud and misrepresentation, and breach of fiduciary duty) should be dismissed as a matter of law; (2) punitive damages are unavailable in connection with the Banks' contract claims; and (3) Atlantic Coast's claims should be dismissed as a matter of law to the extent they rely on forged bond documents. The Banks have opposed RLI's Notification,[9] and the Court addresses each of RLI's arguments herein.

### 1. Bad Faith

RLI asserts that the Banks' claims for bad faith must be dismissed as a matter of law, since California law does not recognize a bad faith claim in the commercial surety context. Although California does permit bad faith claims against <u>insurers</u>, the California Supreme Court found, in *Cates Construction, Inc. v. Talbot Partners*, 21 Cal. 4th 28, 44 (1999), that tort remedies were not recoverable for breach of a construction surety bond. *See also Schwerdt v. Int'l Fid. Ins. Co.*, 28 Fed. Appx. 715, 719 (9th Cir. 2002)(*Cates* applied to bar bad faith recovery for breach of commercial surety bond).

Additionally, RLI argues, the bad faith claims asserted by the Banks arise from the same conduct as the breach of contract claims, and thus they are not separately actionable. *See Bionghi*

---

[9] Ameriana, Norstates Bank (f/k/a Bank of Waukegan), Atlantic Coast and Sky filed memoranda in opposition to RLI's Notification. Guardian Capital XVIII has not filed any opposition. To the extent that the parties' arguments are applicable to multiple banks and multiple cases, the Court addresses issues together.

*v. Metropolitan Water Dist.*, 83 Cal. Rptr. 2d 388, 396 (2d Dist. 1999). Finally, RLI contends, even if a "bad faith" cause of action existed in connection with its surety bonds, such a claim would fail, because there was at least a "genuine dispute" as to RLI's liability under the bonds and SSAs. *See Guebara v. Allstate Ins. Co.*, 237 F.3d 987, 992 (9th Cir. 2001).

The Banks counter that the court's analysis in the *Cates* case was specifically limited to construction performance bonds, and that it distinguished such bonds from insurance policies based on the "elements of fiduciary responsibility" present in the typical insurance contract. *See Cates*, 21 Cal. 4th at 52. The Banks argue that the circumstances of this case, including the fiduciary relationship established by the SSAs, render this case more analogous to the insurance policy context. According to the Banks, the "genuine dispute" cases cited by RLI do not assist RLI's position in a situation where RLI owes fiduciary duties to the Banks.

To the extent that the parties dispute the issue of whether California law permits a bad faith claim on behalf of the Banks in the context of the transaction documents involved in this case, such a question is a pure issue of law and thus is appropriate for determination in the context of a summary judgment motion. While the Court cautions that it will not stray into areas involving factual questions, the Court will consider a narrowly drafted dispositive motion aimed at delineating the scope of a California bad faith claim in the context of a commercial surety contract. RLI's request for leave to file summary judgment motions with respect to the Banks' bad faith claims is <u>granted</u>.

### 2.     Fraud/Misrepresentation

RLI argues that it is entitled to judgment as a matter of law as to the Banks' claims for fraud and misrepresentation, which are based on representations purportedly made by RLI to the Banks in the Bonds, SSAs and confirmation letters. RLI asserts that (1) it had no contact or

communications with any of the Banks prior to the closing of the transactions; and (2) the Banks are improperly seeking tort relief on claims arising essentially from breach of contract. RLI contends, additionally, that the Banks' claim that RLI never intended to perform on the Bonds and SSAs is not supported by any evidence, *see Tenzer v. Superscope, Inc.*, 39 Cal. 3d 18, 30 (1985)("something more than nonperformance is required to prove the defendant's intent not to perform his promise . . .")(citation omitted), and thus that the fraud and misrepresentation claims are subject to disposition through summary judgment motions.

The Banks respond that RLI should not be permitted to file a dispositive motion on these issues because the Court specifically prohibited parties from filing notices of intent as to fraud claims. Second, the Banks argue that issues of fact exist with respect to their actual and promissory fraud claims. The Banks argue that representations contained in a contract itself are sufficient to support a claim of fraud, *see Miller v. National American Life Ins. Co.*, 54 Cal. App. 3d 331, 338 (1st Dist. 1976), and that, based on deposition testimony from RLI's officers, abundant evidence exists to support the allegation that RLI never intended to perform its servicing obligations in this case. The Banks assert, additionally, that RLI's conduct in immediately denying the claims without conducting appropriate investigation supports a finding that RLI never intended to pay on the bonds. Finally, the Banks contend that, even if RLI made its representations to CMC rather than the Banks, RLI understood that the bonds were for the benefit of the Banks and were intended to induce the Banks to invest. *See Geernaert v. Mitchell*, 31 Cal. App. 4th 601, 605-06 (1st Dist. 1995)(fraudulent misrepresentations made to nonparty, with intent that those representations be communicated to others, were actionable by third parties who relied on the representations).

As previously discussed in this opinion, the Court notes that the ARCMP prohibited the

filing of summary judgment motions with respect to issues of fraud. Although RLI argues that the Banks' misrepresentation claims are subsumed in their contract claims, the Banks' claims are not grounded purely on contractual representations by RLI. Rather, certain Banks also have alleged misrepresentation by RLI based on statements made in RLI's confirmation letters to the Banks, issued <u>after</u> the parties entered into the CMC transactions. In any event, some California authority supports the Banks' position that representations contained in a written contract may support a fraud claim where another contracting party relies on those representations as an <u>inducement</u> to contract. *See Miller*, 54 Cal. App. 3d at 338 (fraud claim sustained based on representations by insurer in insurance contract).

As with all fraud claims, resolution of the Banks' claims against RLI would be heavily dependent on issues of fact. Moreover, to the extent the validity of the Banks' claims depends on whether RLI made contract representations <u>to the Banks</u>, the inquiry would require the Court to determine the status of each of the parties to the transaction—a ruling that the Court has declined to make prior to the trial stage. The Court also expresses no opinion as to the Banks' allegations that RLI fraudulently represented its intent to perform under the Bonds, since the Court finds that the viability of such a claim would require an inquiry into RLI's intent at the time of entering into the transactions—an analysis also foreclosed by the ARCMP. RLI's request for leave to file a summary judgment motion on the Banks' claims for fraud and misrepresentation is <u>denied</u>.

### 3.      Breach of Fiduciary Duty

RLI contends that the Banks' fiduciary duty claims may be disposed of through a dispositive motion since there was, as a matter of law, no fiduciary relationship between RLI and the Banks. RLI first argues that *Cates* precludes the finding of such a relationship in the context

of a commercial surety bond. Second, RLI asserts that such a relationship was not created by the terms of the SSAs. Finally, even if RLI could have assumed a fiduciary responsibility under the SSAs, RLI argues that all of the servicing obligations were undertaken by CMC or CSC, not RLI, and that the Banks were aware of the intended division of responsibility.

The Banks respond that a fiduciary duty to the Banks on the part of RLI existed as a matter of law, since the language of the SSAs specifically states that RLI is the "agent" of the Banks, and California law provides that an agent is a fiduciary with respect to its principal. *See Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 977 (1997); *Richelle L. v. Roman Catholic Archbishop*, 106 Cal. App. 4th 257, 271 (1st Dist. 2003). Additionally, the Banks argue, RLI is liable under the terms of the SSA for the acts of its subagent, CMC. The fact that the Banks were aware of the appointment of CMC as the subagent, according to the Banks, does not relieve RLI from responsibility for its subagent's acts.

The Court finds that the Banks' claims for breach of fiduciary duty are in actuality tied up with the Banks' bad faith claims, insofar as each of these claims requires a judicial analysis of the scope and breadth of the *Cates* case, and subsequent interpretations of that case under California law. Essentially, the parties ask the Court to determine whether, under California law, a document such as an SSA may create a fiduciary obligation in the context of a surety relationship. As the Court previously explained, *see* section II.D.1., these legal issues are amenable to consideration in the context of a narrowly tailored summary judgment motion. RLI's request for leave to file a summary judgment motion with respect to the Banks' fiduciary duty claims is granted.

### 4.      Punitive Damages

RLI contends that, under California law, "[i]n the absence of an independent tort,

punitive damages may not be awarded for breach of contract 'even where the defendant's conduct in breaching the contract was wil[l]ful, fraudulent, or malicious. . . .'" *Cates*, 21 Cal. 4th at 61, *quoting Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 515 (1994). RLI argues, moreover, that the Banks cannot satisfy the California standard for punitive damages in any event, since California law requires a plaintiff to "prove[] by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice. . . ." Cal. Civ. Code § 3294(a). The California statute, according to RLI, sets forth an extremely narrow standard for demonstrating oppression, fraud or malice. *See* Cal. Civ. Code § 3294(c)(fraud requires intent to cause injury); *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, (4th Dist. 1994)("despicable conduct" required to show malice or oppression).

In California, however, "entitlement to punitive damages is generally an issue for the trier of fact. . . ." *Nippon Credit Bank v. 1333 North Cal. Boulevard*, 86 Cal. App. 4th 486, 501 (1st Dist. 2001); *see also* Cal. Civ. Code § 3294(a). Although RLI correctly argues that punitive damages may not be imposed for a mere contract breach, the Banks have raised tort claims, including claims for fraud and misrepresentation. These are claims that may give rise to punitive damages, assuming that the Banks can satisfy the applicable state law standards for imposition of such damages.

While state law may set a high threshold for establishment of punitive damages, the central issue in proving such damages is the issue of intent. Proof of conduct sufficient to warrant the imposition of punitive damages is closely tied up with the issue of fraud—an issue that this Court has declined to consider at the summary judgment stage. RLI's request for leave to file a summary judgment motion with respect to the Banks' punitive damage claims is

denied.[10]

### 5. Forgery/Ratification

Finally, RLI argues that, to the extent Atlantic Coast seeks to recover from RLI on forged bonds, RLI is not obligated on those bonds as a matter of law. RLI relies on the Court's prior statement that forged bonds "cannot be binding on the sureties as a matter of law." (Doc. 1708, at 50, n.35). To the extent Atlantic Coast seeks to argue that RLI ratified the bonds, RLI responds that it could not have done so, since it did not have knowledge of material facts at the time of the alleged ratification. *See, e.g.,* Cal. Civ. Code § 1589 ("[a] voluntary acceptance of the benefit of the transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting. . . ."); *Avedissian v. Manukian*, 141 Cal. App. 3d 379, 385 (2d Dist. 1983)(conveyance of jewelry in reduction of debt did not constitute ratification of debt where defendant did not know her name had been forged on note).

Atlantic Coast responds, first, that ratification and estoppel are questions for the trier of fact, and thus that RLI's forgery defense is not subject to determination as a matter of law. *See Common Wealth Ins. Systems, Inc. v. Kersten*, 40 Cal. App. 3d 1014, 1026 (4th Dist. 1974)(ratification of forged instrument, as well as estoppel to deny validity of signature, are ordinarily questions of fact). Second, Atlantic Coast argues that RLI's own negligence (including its failure to maintain complete files and failure to monitor its agent) contributed to the alleged forgeries, and thus also prevents RLI from relying on the forgeries to defeat liability as a matter of law. *See* Cal. Comm. Code § 3406(a):

A person whose failure to exercise ordinary care contributes to an

---

[10] Of course, in the event that the Court concludes that no basis exists under California law for the Bank's claims for bad faith and/or breach of fiduciary duty, the scope of claims as to which punitive damages would be available would be significantly narrowed. Under such circumstances, the Banks could pursue punitive damages claims only to the extent they could establish their assertions of fraud.

> alteration of an instrument or to the making of a forged signature on an instrument is precluded from asserting the alteration or the forgery against a person who, in good faith, pays the instrument or takes it for value or for collection.

Cal. Comm. Code § 3406(a).  Finally, Atlantic Coast relies on the Court's previous statement in these cases that "the issue of forgery is a factual question that cannot be resolved at this stage of the proceedings. . . ."  (02-16000, Doc. 1708, at 50, n.35).  In sum, Atlantic Coast asserts that issues involving (1) actual authority; (2) ratification; and (3) estoppel, are rife with issues of fact and thus are not proper for summary resolution.

The Court agrees with Atlantic Coast.  While RLI appears able to proffer evidence to the effect that the bonds in question were in fact forged, Atlantic Coast has raised the issue of ratification based on RLI's subsequent conduct.  Additionally, Atlantic Coast has invoked RLI's purported contributory negligence to preclude RLI from asserting the forgeries against Atlantic Coast.  RLI's forgery defense will not preclude liability as a matter of law; rather, it will require an inquiry into factual issues, including (1) any conduct by RLI that may constitute ratification, or may estop RLI from asserting the forgery; (2) RLI's knowledge of material facts; and (3) negligence by RLI that may have contributed to the forgery.  RLI's request for leave to file a summary judgment motion with respect to its forgery defense is <u>denied</u>.

Accordingly, RLI's request for leave to file summary judgment motions against the Banks is <u>denied as moot</u> in part, <u>granted</u> in part, and <u>denied</u> in part, as set forth herein.

E.  **02-16002,** *Royal Indemnity Co. v. Commercial Money Center, Inc., et al.*
   **02-16003,** *American Motorists Insurance Co. v. Commercial Money Center, Inc., et al.*
   **02-16004,** *Safeco Insurance Company of America v. Commercial Money Center, Inc., et al.*
   **02-16005,** *Ameriana Bank & Trust v. RLI Insurance Company*
   **02-16006,** *Commercial Money Center, Inc., et al. v. Ace American Insurance Company*
   **02-16014,** *JP Morgan Chase Bank, N.A. v. Safeco Insurance Company of America*
   **02-16020,** *CadleRock Joint Venture, LP v. Safeco Insurance Company of America*
   **02-16021,** *Provident Bank v. Safeco Insurance Company of America*
   **(02-16000, Doc. 1920—Safeco Insurance Company)**

Safeco Insurance Company of America ("Safeco") has requested leave to file partial summary judgment motions against CadleRock Joint Venture, LP ("CadleRock"), JPMorgan Chase Bank, N.A. (successor by merger to Bank One, N.A.)("Bank One"), Provident Bank ("Provident") and the Guardian/Diversity entities (collectively, "Banks," as used in this section) in various cases, as to the claims asserted by the Banks in those cases. Only Bank One has filed a memorandum responding to Safeco's Notification.

Safeco's Notification requests leave to file summary judgment motions with respect to two specific issues. First, Safeco claims that CadleRock's claim for punitive damages against it may be determined as a matter of law, because California law does not permit an assignee to seek punitive damages on an assigned claim. *See Murphy v. Allstate Ins. Co.*, 17 Cal. 3d 937, 942 (1976). Second, Safeco argues that the Banks' claims for bad faith and/or breach of the covenant of good faith and fair dealing may be disposed of on summary judgment, because California law does not recognize these causes of action in connection with allegations of failure to pay on surety bonds. *See Cates Construction*, 21 Cal. 4th 28 (1999).

Bank One does not oppose Safeco's Notification, and in fact appears to agree that the issues raised are amenable to determination on summary judgment. Bank One argues, instead,

that Safeco's motion improperly "presumes" that California law applies to the bad faith claim, and that the Court must conduct a choice of law analysis prior to determining any summary judgment motion filed by Safeco.[11]  Bank One argues that, since Ohio is the forum state, such an analysis must be conducted under Ohio choice of law rules.  *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941).  According to Bank One, an application of the principles of the Second Restatement (adopted by Ohio courts) to the Banks' tort claims may result in the application of Ohio law to the claims for bad faith and breach of duty of good faith and fair dealing.  Even in the event California law is found to apply, however, Bank One argues that the *Cates* case does not preclude the pursuit of a bad faith claim on a <u>financial guarantee</u> bond.

As discussed previously in this opinion, *see* section II.D.1, the request for leave to file a summary judgment motion with respect to the bad faith claim presents legal issues appropriate for summary judgment determination, and that request is <u>granted</u>.

Bank One suggests that the Court's determination of the bad faith issue in the context of a summary judgment motion also will involve a construction of the transaction documents and the relationship of the parties with respect to the Safeco bonds.  The Court notes that, as previously discussed in this opinion (*see* section II.C.1), many of these issues are not subject to resolution based on the transaction documents, and will require the presentation of evidence at the trial stage.  The fact that the Court may not resolve all issues, however, does not preclude the Court from addressing those issues that present straightforward issues of law, including the issue of whether a bad faith claim exists in the surety context under either California or Ohio law.

Bank One does not address Safeco's challenge to the punitive damages claim, since that claim was asserted only by CadleRock.  No party, however, has opposed the filing of a

---

[11] Bank One also argues that conduct of a choice of law analysis is essential to determination of the issues raised by Bank One in its own Notification, filed in case number 02-16014. (02-16000, Doc. 1923).

dispositive motion on this issue, and it appears that this claim raises a pure issue of law. Whether CadleRock, as assignee, may assert a punitive damages claim against Safeco is an issue properly subject to determination by summary judgment, and Safeco's request for leave to file a dispositive motion as to this claim is <u>granted</u>.

Accordingly, Safeco's requests for leave to file summary judgment motions are <u>granted</u>, as set forth herein.

**F.      02-16005, *Ameriana Bank & Trust v. RLI Insurance Company* (Doc. 14—Ameriana Bank & Trust)**

Ameriana filed a Notification requesting leave to file a motion for partial summary judgment against RLI in case number 02-16005. As noted previously in section I.A. of this opinion, however, Ameriana and RLI have settled all claims between them. (02-16005, Doc. 16). The Court approved the Stipulation on September 17, 2007. (Doc. 17). Accordingly, Ameriana's request for leave to file a summary judgment motion against RLI is <u>denied as moot</u>.

**G.      02-16007, *Commercial Money Center, Inc., et al. v. Illinois Union Insurance Company, et al.* 02-16010, *NetBank v. Commercial Money Center, Inc., et al.* (02-16000, Doc. 1918—Illinois Union)**

Illinois Union filed a Notification requesting leave to file a summary judgment motion against NetBank with respect to three specific issues in cases 02-16007 and 02-16010. On September 4, 2007, however, Illinois Union filed a Motion for Determination that Settlement is Fair and Made in Good Faith. (02-16000, Doc. 2095). As an exhibit to that document, Illinois Union attached a settlement agreement, which purported to resolve all of the claims between NetBank and Illinois Union, subject to court approval of the parties' settlement. (Doc. 2095, Exh. 1). The Court issued an Order approving the settlement between Illinois Union and NetBank on September 20, 2007 (Doc. 2110), and signed an Order dismissing all claims as

between those parties. (Doc. 2111).  Accordingly, Illinois Union's request for leave to file a summary judgment motion against NetBank is <u>denied as moot</u>.

> **H.    02-16010, *NetBank v. Commercial Money Center, Inc., et al.*
> (Doc. 43—NetBank)**

NetBank has requested leave to file motions for summary judgment against Illinois Union and Safeco.  In its Notification, NetBank raises one issue with respect to each of the Sureties.  Illinois Union and Safeco each filed memoranda in opposition to NetBank's Notification.  As noted in section II.G. of this opinion, however, Illinois Union filed a Motion for Determination that Settlement is Fair and Made in Good Faith. (02-16000, Doc. 2095).  Pursuant to that document and attached exhibits, the parties represented that Illinois Union and NetBank had reached an agreement resolving all claims between them.  The Court issued an Order approving the settlement between Illinois Union and NetBank on September 20, 2007 (Doc. 2110), and signed an Order dismissing all claims as between those parties. (Doc. 2111).

Accordingly, NetBank's request for leave to file a summary judgment motion against Illinois Union is <u>denied as moot</u>.  The Court considers NetBank's request for leave to file a summary judgment motion against Safeco below.

NetBank contends that the Court can determine, based on the face of the transaction documents, that the Sale and Servicing Agreements were novation contracts that substituted NetBank as obligee and created new obligations running directly from Safeco to NetBank.  NetBank argues that a novation may be found as a matter of law based on written documents, where the parties' intent is clear from the face of the documents. *See, e.g., Vigilant Ins. Co. v. Burnell*, 871 F. Supp. 51, 55 (D. Me. 1994)(novation found "on the basis of the written documents. . . .").  In the event the Court finds a novation, NetBank asserts, the prior contract becomes a nullity, and no "reformation" of that contract is necessary.  Accordingly, NetBank

argues, it should be permitted to file a summary judgment motion against Safeco as to Counts I and II of its Third Amended Complaint.

NetBank argues that novation is demonstrated as a matter of law by the language of the SSAs, including language stating that NetBank has been named as "loss payee, beneficiary or obligee. . . ." SSA, at § 1.1. NetBank also contends that the indemnity agreements executed between Safeco and the CMC principals, as well as letters sent by Safeco acknowledging the validity of the bonds, support the construction of the SSAs as novation contracts. Finally, NetBank asserts that its construction is supported by the bond language providing that any "assignee shall become the Obligee" under the bonds.

Safeco responds that NetBank's Notification actually requests the Court to consider the issue of reformation, in direct contradiction to the language of the ARCMP. According to Safeco, the novation issue centers around the "intent of the parties in entering into the respective transactions," (Doc. 1861, at 3), and thus the determination of this issue at the summary judgment stage is precluded. Safeco cites Cal. Civ. Code §§ 1530 and 1531, which provide that a novation is effected when a new obligation, debtor or creditor is substituted, with the intent to extinguish the old agreement. *See also Alexander v. Angel*, 37 Cal. 2d 856, 860 (1951)("[t]he question whether a novation has taken place is always one of intention. . . .")(citation omitted). Safeco argues, accordingly, that novation is a highly fact-based inquiry and not appropriate for summary judgment determination.

According to Safeco, NetBank attempts to create a novation by substituting the SSA in place of the Safeco bonds and then declaring the SSA a surety contract. Safeco argues that the SSA cannot effect a novation because the SSA simply does not create any surety relationship. To the extent NetBank argues that the SSA substituted NetBank as a new creditor, Safeco

maintains that this argument also must fail, since the SSA demonstrates a clear intent for CMC to assign its rights to NetBank.

The Court has addressed the issue of novation previously in this opinion, *see* section II.C.1., *supra*, and has found that any determination of novation centers on the intent of the parties to the transaction. Such an inquiry is highly fact-sensitive and, as the Court already has found, intent to create a novation cannot be found from the ambiguous language of the transaction documents here. Accordingly, for the reasons set forth in section II.C.1., *supra*, NetBank's request for leave to file a summary judgment motion against Safeco as to the issue of novation is denied.

NetBank's request for leave to file a summary judgment motion against Illinois Union and Safeco is denied as moot, as to Illinois Union, and denied as to Safeco, as set forth herein.

**I.      02-16010, *NetBank v. Commercial Money Center, Inc., et al.*
          (Doc. 44—Royal Indemnity Company)**

Royal has filed a Notification requesting leave to file a summary judgment motion against NetBank on multiple counts of NetBank's Third Amended and Supplemental Complaint. While Royal concedes that certain claims asserted by NetBank are valid at least until final judgment has been entered in the California bankruptcy proceedings,[12] Royal contends that seven of the claims raised by NetBank are suitable for disposition by summary judgment at this point. Specifically, Royal seeks leave to move for summary judgment with respect to NetBank's claims for (1) fraud/negligent misrepresentation; (2) breach of fiduciary duty; (3) promissory estoppel; (4) bad faith; (5) breach of implied covenant of good faith and fair dealing; (6) anticipatory

---

[12] Royal argues that, if the Trustee prevails on a summary judgment motion currently pending before the Bankruptcy Court, then NetBank will be found to have no interest in the leases or bonds, and all of NetBank's claims will fail as a matter of law. Royal asserts that, in the event that the Trustee does prevail on all its claims against NetBank, Royal will seek to file a dispositive motion relating to all remaining claims.

repudiation; and (7) tortious interference with contract. NetBank has filed a memorandum in opposition to Royal's Notification. The Court addresses each of the claims challenged by Royal below.

### 1.    Fraud/Negligent Misrepresentation and Promissory Estoppel

Royal notes that both the fraud and promissory estoppel claims require reliance by NetBank on representations made to it by Royal. Royal argues that the undisputed facts negate any claim of reliance by NetBank on any representations by Royal, since NetBank actually purchased the lease pools at issue (with Amwest Surety Insurance Company as surety) nearly two years before Royal issued its replacement bonds. Royal contends that NetBank could not have relied on any representations as a matter of law, since NetBank purchased the lease pools at issue long before it had any contact with Royal.

Royal refers to NetBank's Third Amended Complaint, in which NetBank alleges that Royal's representations induced it to invest in the lease pools. Royal argues that the undisputed facts based on the sequence of events negate these allegations. Thus, despite the Court's prohibition on dispositive motions relating to fraud claims, Royal argues that the reliance issue is subject to determination on summary judgment.

NetBank responds that Royal has mischaracterized the allegations in its Complaint, and that Royal represented its intention to assume all obligations under the surety bonds and SSAs previously issued by Amwest. According to NetBank, the Third Amended Complaint also expressly alleges that NetBank relied on the representations of Royal in deciding to retain an interest in the lease pools. Whether NetBank's reliance was reasonable, NetBank argues, is a fact question that must be determined by a jury.

Although the ARCMP established a general prohibition on the filing of dispositive

motions on claims involving issues of fraud, the claims asserted by NetBank here are qualitatively different than those asserted by other parties to this action.  Although NetBank has alleged, in conclusory form, that it relied on representations made by Royal in deciding to <u>retain</u> the lease pools, NetBank's complaint contains no factual allegations that would support such an assertion.  NetBank does not allege that it contemplated selling or otherwise disposing of the CMC investments at the time Royal made the alleged representations.  Rather, it alleges that NetBank (or CMC or some other entity on NetBank's behalf) approached Royal seeking a replacement surety on an existing investment.

While it is not legally impossible that a plaintiff could state a claim for fraud with respect to representations made by a replacement surety, NetBank's pleading suggests that the facts may be inconsistent with the successful demonstration of the reliance element here.  If Royal can demonstrate, based on evidence obtained through discovery, that NetBank's decision to retain the CMC investments would have been unaffected by any communication or representation by Royal, then NetBank's contention that it relied on Royal's assertions must fail as a matter of law.  Recognizing the significant factual differences between NetBank's claims and the fraud claims pleaded by other parties in this action, the Court finds that the viability of NetBank's claims for fraud and promissory estoppel may be amenable to determination in the context of a summary judgment motion.

Accordingly, Royal's request for leave to file a summary judgment motion with respect to NetBank's fraud and promissory estoppel claims is <u>granted</u>.

## 2.    Breach of Fiduciary Duty

Royal asserts that NetBank's claim for breach of fiduciary duty is subject to determination on summary judgment because California law does not recognize a claim for

breach of fiduciary duty based on a commercial surety bond, *see Cates*, 21 Cal. 4th 28, or based on a mere contractual relationship. *See Richelle L.*, 130 Cal. Rptr. 2d at 601.

NetBank argues that, even if California law applies, NetBank has pleaded and will establish a principal/agent relationship sufficient to give rise to fiduciary duties on the part of Royal. According to NetBank, Royal assumed the obligations of Amwest Surety Insurance Company under a series of SSAs and, under the language of the SSAs, was expressly appointed as agent for NetBank. Pursuant to the *Richelle L.* case, NetBank contends, principal and agent is a recognized legal relationship sufficient to give rise to fiduciary duties.

As the Court previously has noted, *see* section II.D.3. of this opinion, the issue of whether the *Cates* case permits a claim for breach of fiduciary duty in the context of a commercial surety agreement is an issue of law which, if presented in the context of a narrowly tailored dispositive motion, may be subject to determination by the Court. Again, while the Court will not consider factual issues relating to the extent of any fiduciary duty created by the CMC transactions, the Court will evaluate the fiduciary duty claims to the extent those claims present pure issues of law. For the reasons stated in section II.D.3., Royal's request for leave to file a summary judgment motion with respect to NetBank's claim for breach of fiduciary duty is <u>granted</u>.

### 3. Bad Faith/Breach of Covenant of Good Faith and Fair Dealing

Royal contends that, pursuant to California law, NetBank's claims for "bad faith" and for breach of the implied covenant of good faith and fair dealing actually constitute the same cause of action. *See Hand v. Farmers Ins. Exch.*, 23 Cal. App. 4th 1847, 1854 (2d Dist. 1994). Royal then asserts that neither of these claims is recognized in California in the context of a failure to pay upon surety bonds. *See Cates*, 21 Cal. 4th 28. Rather, Royal argues, damages for NetBank's purported "bad faith" claims will be limited to compensatory contract-based damages, and thus,

the claims are duplicative of the breach of contract claims. *See also Bionghi*, 83 Cal. Rptr. 2d at 396.

NetBank asserts, first, that California law may not apply to these claims, and that the Court will be required to conduct a choice of law analysis to determine whether application of the laws of another state, such as Georgia or Nevada, would be more appropriate. Even if California law does apply, however, NetBank argues that the *Cates* case does not bar bad faith claims against sureties in these circumstances, where the sureties issued financial guarantee bonds and assumed fiduciary duties.

As stated previously, in section II.D.1. of this opinion, assuming that California law applies, analysis of the scope of a bad faith claim permitted under the law of that state is a legal question subject to determination in the context of a dispositive motion. Similarly, to the extent choice of law questions arise in the dispute between these parties, the Court may evaluate those issues in the context of summary judgment briefing and may render any necessary decisions regarding the law applicable to this case. For the reasons set forth in section II.D.1., Royal's request for leave to file a summary judgment motion with respect to NetBank's bad faith claim is granted.

### 4.      Anticipatory Repudiation

Royal argues that, now that all of the claims have come due under the bonds, NetBank's claim for anticipatory repudiation has been rendered moot. NetBank has stipulated to the dismissal of this count, and accordingly, the Court does not consider it further.

### 5.      Tortious Interference with Contract

Finally, Royal argues that the Court should grant it leave to file a summary judgment motion relating to NetBank's claims that Royal tortiously interfered with NetBank's proposed

settlement agreement with the Bankruptcy Trustee. NetBank alleges that Royal's conduct in (1) opposing Court approval of its proposed settlement agreement; and (2) ultimately entering into its own competing settlement agreement, was improper and is actionable. Royal disputes NetBank's allegations and contends that this claim is appropriate for determination in the context of a dispositive motion.

First, Royal observes that NetBank's proposed settlement agreement was, by its terms, subject to Bankruptcy Court approval, and thus that it was not a binding contract. Second, Royal argues that since NetBank and the Trustee later reached an amended settlement agreement (resolving the Trustee's claims as to lease pools bonded by Sureties other than Royal), the first settlement agreement has been extinguished, and there is no longer a claim available to NetBank based on interference with that agreement.

Royal argues, third, that bankruptcy law permits any party to oppose the proposed settlement agreement with the Trustee and to propose alternative agreements with the Trustee. *See, e.g., In re Greenberg*, 266 B.R. 45, 51 (Bankr. E.D.N.Y. 2001). In fact, Royal contends, since the Trustee has the fiduciary duty to maximize recovery to the estate, the Trustee also is free to withdraw support for a proposed settlement prior to bankruptcy court approval. *See Myers v. Martin (In re Martin)*, 91 F.3d 389, 394 (3d Cir. 1996). The thrust of Royal's argument is, apparently, that in the context of a bankruptcy settlement approval proceeding, a party's conduct in opposing the proposed settlement is absolutely privileged.

NetBank asserts that the validity of a contract is not dependent on approval by a bankruptcy court, *see Landscape Properties v. Vogel*, 46 F.3d 1416, 1425 (8th Cir. 1995), and that the contract between NetBank and the Trustee was binding even prior to receiving bankruptcy court approval. NetBank cites to this Court's prior opinion granting it leave to file its

amended and supplemental claims (Doc. 1257), in which the Court recognized a split in authority as to whether settlements are binding prior to receiving court approval. In the context of any tortious interference claim, NetBank contends, the issue of privilege would require a factual inquiry. NetBank also disputes Royal's claim that entry into a subsequent court-approved settlement agreement with the Trustee (resolving the Trustee's claims as to lease pools bonded by Sureties other than Royal) could have any impact on, or diminish NetBank's rights with respect to, a tortious interference claim against Royal relating to Royal's interference with the first proposed agreement.

NetBank argues, finally, that despite Royal's rights under bankruptcy law to oppose the proposed settlement agreement, Royal did not stand in the relationship of an ordinary third-party creditor vis-à-vis NetBank. Rather, Royal undertook fiduciary obligations to NetBank through the SSAs, which required Royal to take all necessary actions to protect NetBank's interests in the income streams from the leases. NetBank thus argues that it is the terms of the SSAs, not bankruptcy law, that prohibited Royal from taking any actions inconsistent with NetBank's interests. In any event, NetBank argues that Royal's purported "right" to object to the proposed settlement agreement is a hotly contested issue of fact.

A determination that Royal's conduct constituted a tortious interference with NetBank's contract would require (1) a finding that there was an enforceable contract between NetBank and the Trustee; (2) a finding that Royal's conduct constituted actionable interference with that contract; and (3) an evaluation of any defenses, such as privilege, raised by Royal to the tortious interference claim. Several of these inquiries are not fact-dependent; for example, if the Court found that no enforceable agreement could have been formed between NetBank and the Trustee, the claim for tortious interference would fail as a matter of law. Additionally, to the extent the

Court agreed with Royal that an <u>absolute</u> privilege precludes liability for Royal's conduct in objecting to a bankruptcy settlement, such a finding also would defeat NetBank's claim. Where a straightforward legal determination may dispose of certain claims in this case, the issue is appropriate for determination in the context of a summary judgment motion. If Royal can present these purely legal issues in a streamlined format, timely resolution of these issues might well lead to greater efficiency at trial.

Royal's request for leave to file a summary judgment motion as to NetBank's claim for tortious interference with contract is <u>granted</u>.

Accordingly, Royal's request for leave to file a summary judgment motion against NetBank is <u>granted</u>, as set forth herein.

### J.    02-16010, *NetBank v. Commercial Money Center, Inc., et al.* (02-16000, Doc. 1917—Safeco)

Safeco Insurance Company has requested leave to file a summary judgment motion as to the Ninth and Tenth Counts of NetBank's Third Amended Complaint. Safeco argues that NetBank's claims for bad faith and breach of the implied covenant of good faith and fair dealing are subject to disposition as a matter of law, since California law does not permit recovery of tort and punitive damages in commercial suretyship transactions. *See Cates*, 21 Cal. 4th 28. Safeco argues that this motion will involve a pure issue of law, and will not require interpretation of the documents, determinations as to questions of intent or evaluation of any of Safeco's defenses in the action.

NetBank argues that (1) even if California law applies, the *Cates* case involved construction performance bonds and would not apply to the financial guarantee bonds involved in this case; and (2) California law may not apply to these transactions, and choice of law must be addressed before Safeco can be permitted to move for summary judgment. NetBank's

opposition memorandum focuses on the choice of law rules of Georgia and Nevada (one of which, NetBank argues, is the appropriate source for the choice of law rules to be applied in this case). NetBank argues that Georgia follows the *lex loci delicti* rule and that, since NetBank sustained its injury in Georgia, Georgia law may apply to its tort claims. NetBank also suggests that, under Nevada's "most significant relationship" test, the interests of either Georgia or Nevada may be found to trump California's asserted relationship to this action.

Presumably, NetBank asserts that the Court may find the substantive laws of Georgia or Nevada to be applicable, and thus that NetBank's claim would be viable under the laws of those states. NetBank contends that Georgia recognizes a tort cause of action in a commercial suretyship transaction, and that Nevada permits recovery of attorney fees for bad faith refusal of a surety to perform a surety contract. NetBank argues that, since Safeco has not made any proffer supporting its contention that California law applies, Safeco should not be permitted to file a summary judgment motion at this stage.

As previously stated in sections II.D.1. and section II.I.3. of this opinion, inquiries as to whether, and to what extent, California law recognizes claims for bad faith and breach of the covenant of good faith and fair dealing are appropriately addressed in the context of a summary judgment motion. Summary judgment also provides an appropriate vehicle for addressing disputes as to choice of law. Accordingly, for the reasons set forth in sections II.D.1. and II.I.3. of this opinion, Safeco's request for leave to file a summary judgment motion relating to NetBank's claims for bad faith and breach of the covenant of good faith and fair dealing is granted.

### K.       02-16012, *CadleRock Joint Venture, L.P. v. Royal Indemnity Company* (Doc. 99—CadleRock)

CadleRock has requested leave to file a summary judgment motion against Royal

Indemnity Company with respect to Counts Four and Six of CadleRock's Second Amended Complaint, which relate to (1) CadleRock's negligent misrepresentation claim; and (2) its claim for breach of the SSA. Royal has opposed CadleRock's Notification on both issues.

### 1.    Negligent Misrepresentation

CadleRock argues that, under Ohio law, *see Haddon View Inv. Co. v. Coopers & Lybrand*, 70 Ohio St. 2d 154, 157 (1982), its negligent misrepresentation claim is valid as a matter of law based on communications by Royal with Metropolitan Bank & Trust Company (CadleRock's predecessor) and the law firm engaged by Metropolitan to review the transaction documents. According to CadleRock, Royal's vice-president, William Hibberd, wrote a letter representing that the bonds were enforceable in accordance with their terms, fully paid and non-cancelable. CadleRock asserts that any lack of fidelity by Royal's agent, Michael Anthony, is irrelevant, because Anthony's knowledge is imputed to Royal. *See Pannunzio v. Monumental Life Ins. Co.*, 168 Ohio St. 95, 105 (1958). Thus, if Royal provided information inconsistent with the facts known by its agent, CadleRock argues that Royal is liable for negligent misrepresentation as a matter of law.

Royal responds that CadleRock's attempt to seek summary judgment with respect to its negligent misrepresentation claims is an attempt to sidestep the Court's direction that summary judgment motions should not be filed with respect to issues of fraud. Although a negligent misrepresentation claim does not require a showing of intent, Royal argues that such a claim is otherwise indistinguishable from a fraud claim.

CadleRock claims that the Hibberd letter contained false representations regarding the enforcement of the bonds. Royal argues, however, that Hibberd's letter did not purport to vary either the terms of the bonds or the applicable law, and could not reasonably be read as having

done so.  Additionally, Royal cites the Court's previous opinion disposing of the Banks' Rule 12(c) motions, in which the Court found issues of fact as to when similar letters were executed and/or received by the Banks.  Thus, Royal argues that disputed issues of fact remain as to (1) whether there was a false representation; and (2) justifiable reliance on any such representation.

The Court agrees with Royal that CadleRock's negligent misrepresentation claim is akin to a fraud claim, and as such is dependent on the determination of multiple factual issues, including issues of falsity, knowledge and justifiable reliance.  Although CadleRock has alleged that the representations made by Mr. Hibberd ultimately turned out to be false, in that Royal now alleges that the bonds were void and seeks cancellation of the bonds, determining whether such representations were false at the time they were made involves a much more complex inquiry, including an inquiry into facts known by Royal officials and by Royal's agent, Michael Anthony.  Such an examination doubtless will raise numerous disputed factual issues.

The issue of the Banks' justifiable reliance is even more fraught with difficulty, as it requires an evaluation of Royal's purported representations at the time the Bank received them, and in the context of the information known by the Banks at that time.[13]  The issue of whether such reliance was reasonable in light of the facts then known is indisputably a fact question for determination by a jury.  Accordingly, CadleRock's request for leave to file a summary judgment motion with respect to its negligent misrepresentation claim is <u>denied</u>.

### 2.  Breach of the SSA

CadleRock also argues that Royal is liable as a matter of law for its breach of obligations under an SSA it executed with Guardian Capital XV.  CadleRock asserts that Royal's liability may be determined on summary judgment since, as a matter of law, none of Royal's defenses to

---

[13] This analysis also assumes that no difficulties are posed by CadleRock's assertion of a right to recover tort damages based on representations allegedly made to Metropolitan, rather than to CadleRock itself.

liability are viable. CadleRock's argument includes (1) Royal's challenge to Anthony's authority to bind Royal on the SSA; (2) Royal's defenses relating to the fraud of CMC; (3) Royal's defenses based on deficiencies in the leases; and (4) Royal's contention that CadleRock lacks standing to enforce the SSA.

With respect to CadleRock's claim for breach of the SSAs, Royal argues first that CadleRock was not assigned any rights under the SSAs.[14] Even if CadleRock possesses such rights, however, Royal argues that there are issues of fact as to whether the SSA contracts were induced by the fraud of CMC and/or the Guardian/Diversity Entities. Since CadleRock is an assignee of the Guardian Entities, Royal claims, it is subject to any fraud defenses that could be asserted against the Guardian Entities. Royal argues also that there are issues of material fact as to whether it discharged its obligations under the SSAs, since there are fact questions as to precisely what Royal's obligations were under the SSAs and whether any purported breaches by Royal actually caused the damages suffered by the Banks.

Even assuming that CadleRock was assigned rights under the SSAs by virtue of the assignment documents from Sky Bank, the Court finds that material issues of fact nonetheless would preclude the determination of CadleRock's breach of contract claim on summary judgment. First, as noted in the Court's opinion denying the Banks' motion for judgment on the pleadings, a party found to be a mere assignee of contractual rights is subject to defenses that would have been available against its assignor. Royal has asserted fraud on the part of the Guardian entities and, to the extent that Royal may be able to establish such allegations, there are issues of fact as to whether CadleRock also may be subject to such fraud defenses.

Second, the parties dispute the extent of Royal's obligations under the SSAs, and issues

---

[14] Royal has filed a Notification requesting that the issue of CadleRock's rights under the SSAs be determined through summary judgment. (02-16000, Doc. 1924). That Notification is addressed in section II.M., *infra*.

of fact remain as to the precise scope of those obligations. In its rulings on the prior pleadings motions, the Court noted that the transaction documents were ambiguous, and that, particularly with respect to the SSAs, external evidence of the parties' negotiation of the SSA provisions might be needed. (02-16000, Doc. 1708, at 27). As the Court previously found, intent issues are not amenable to summary resolution on the face of the transaction documents. CadleRock's request for leave to file a summary judgment motion with respect to CadleRock's claims under the SSA is <u>denied</u>.

Thus, CadleRock's request for leave to file a summary judgment motion against Royal is <u>denied</u> in its entirety, as set forth herein.

**L.    02-16012, *CadleRock Joint Venture, L.P. v. Royal Indemnity Company*
(Doc. 100—Guardian Capital XV, LLC)**

Guardian XV has filed a Notification requesting leave to file a summary judgment motion against Royal, with respect to certain of Royal's affirmative defenses. Guardian XV contends that, as a consequence of the Court's rulings on the pleadings motions, and based on consideration of the transaction documents, the Court can dispose of certain issues as a matter of law. Specifically, Guardian XV seeks summary judgment on the following defenses: (1) Royal's defenses based on its assertion that CMC was the obligee on the lease bonds; (2) Royal's fraud in the inducement defenses; (3) any defense asserting that Michael Anthony lacked authority to sign the lease bonds or the SSAs; and (4) any defense arising before the date of the "estoppel letter" authored by Royal.

Royal has filed an opposition memorandum, arguing that, as a result of secured party sales, the lenders acquired all of the interest of the Guardian entities in the leases and lease bonds. Accordingly, Royal contends that Guardian XV no longer has any rights in the leases, for which it could recover. Royal also provides specific arguments in opposition to each of the

issues raised by Guardian XV, and the Court addresses each of these issues separately.

### 1. Defenses Relating to CMC's Status as Obligee

Guardian XV argues, first, that the lease bond and SSA[15] establish as a matter of law that Guardian XV was the obligee on the lease bonds. According to Guardian XV, it does not request that the Court undertake the obligee analysis by way of reformation; rather, it asserts that the transactional documents clearly establish Guardian XV's obligee status on their face. In taking this position, Guardian XV relies on language in the SSA stating that "[a]ny . . . assignee shall become Obligee under this Bond, effective the date specified in the notice of the assignment. . . ." Guardian XV contends that this language establishes that, once the assignment took place, Guardian XV was the obligee as a matter of law. Guardian XV thus argues that it is entitled to summary judgment on Royal's Tenth Affirmative Defense.

Royal argues that Guardian XV has merely recapitulated an argument that was presented on the Rule 12(c) motions, and which the Court refused to decide as a matter of law based on the transaction documents. According to Royal, the Court already has indicated its view that the Banks' arguments related to their obligee status may be upheld only through a reformation of the Surety Bonds, which would require a consideration of evidence extrinsic to the transaction documents.

The Court agrees with Royal that Guardian XV's proposed motion is nothing more than a restating of arguments previously rejected in connection with the motions for judgment on the pleadings, and as to which the Court specifically has directed that the filing of summary judgment motions is inappropriate. As noted numerous times in this opinion, the Court has been unable to determine the status of the parties to the transactions, including which parties were

---

[15] In this case, the document executed between CMC and Guardian actually was entitled "Purchase and Security Agreement."

intended to be "obligees," based only upon the language of the transaction documents. For that reason, in the ARCMP, the Court barred the filing of motions for summary judgment with respect to issues relating to the status of the parties or requiring "reformation" of the transaction documents. Guardian XV's request for leave runs afoul of this restriction and, accordingly, is denied.

### 2. Fraud in the Inducement Defenses

Guardian XV argues that the fraud waiver language contained in the lease bonds precludes Royal, as a matter of law, from asserting its fraud in the inducement defenses. Guardian XV alleges that the fraud waiver language in Paragraph 7 of the Lease Bond ("Surety shall assert no defenses to any claim under this Bond as a result of any of the foregoing. . . ."), as well as the language in section 3.7 of the SSA ("Servicer . . . shall be obligated to the same extent and under the same terms and conditions as if the Servicer alone was servicing and administering the Leases. . . .") establishes that the Surety was the primary obligor and was precluded from asserting defenses. Accordingly, Guardian XV argues that it is entitled to summary judgment as to any defense (specifically, Defenses # 2, 3, 6 and 7) that seeks to avoid liability based on the misconduct of CMC, failure of performance under the leases, or failure to disclose by the Guardian entities.

Again, Royal argues that Guardian's proposed dispositive motion is precluded by the Court's prior order on the Rule 12(c) motions, since the Court held in its previous opinion (Doc. 1708) that the fraud waivers would bar the defense of fraud in the inducement only if the Banks were found to be obligees under the lease bonds. Additionally, Royal argues that there is substantial evidence supporting allegations of fraud on the part of the Guardian/Diversity entities. Thus, even if Guardian XV could avoid the fraud of CMC, Royal contends that the

proposed motion for summary judgment would be barred by the alleged fraud of Guardian XV itself.

On the motions for judgment on the pleadings, the Court carefully reviewed the language of the fraud waivers and found that such language could bar the assertion of a fraud in the inducement claim only to the extent that a party claiming under the lease bonds was an obligee. As noted above, the Court was unable to determine from the face of the transaction documents which parties had "obligee" status, and thus the Court also precluded the parties from seeking leave to file dispositive motions on this issue. Moreover, to the extent that Guardian XV itself committed fraud against Royal, it may not rely on the fraud waiver to assert rights against Royal. Accordingly, Guardian XV's request for leave to file a summary judgment motion as to Royal's fraud in the inducement defense is <u>denied</u>.

### 3. Defenses Relating to Anthony's Lack of Authority

Guardian XV argues that the Court's previous ruling established as a matter of law Michael Anthony's authority to sign the lease bonds and SSAs. Thus, Guardian XV contends that it is entitled to summary judgment on any defense (specifically, Royal's First Affirmative Defense) that purports to rely on Anthony's lack of authority. Although Royal does not address this argument directly, Royal apparently contends that the allegations relating to Guardian XV's own fraud render summary judgment inappropriate on any of the issues raised by Guardian XV.

Although the Court's prior ruling on the pleadings motions (Doc. 1708) addressed the question of Michael Anthony's authority to execute the lease bonds and/or SSAs, the Court addressed that issue only in the context of the claims by the moving Banks, against whom the Sureties had not raised allegations of fraud. The analysis of Anthony's authority in the context of claims by Guardian XV would necessarily be distinct, since Royal indisputably has raised

allegations of fraud and/or nondisclosure by Blaine Tanner, the sole principal of the Guardian entities.

As the Court's prior opinion made clear, the issue of apparent authority can be considered as a matter of law only where the party seeking to rely on the agent's ostensible authority is unaware of, and has not participated in, the fraud. "An agent can never have authority, either actual or ostensible, to do an act which is, and is known or suspected by the person with whom he deals, to be a fraud upon the principal." Cal. Civ. Code § 2306. *See also* 02-16000, Doc. 1708, at 44.

Here, since Guardian XV is alleged to have been a participant in CMC's alleged fraud, or at least aware of that fraud, an analysis of apparent authority also would require a factual determination of the fraud allegations against Guardian XV. As this Court pointed out in the ARCMP, such questions are not amenable to determination on summary judgment. Accordingly, Guardian XV's request for leave to file summary judgment with respect to defenses relating to the apparent authority of Michael Anthony is <u>denied</u>.

### 4. Defenses Arising Prior to Date of Estoppel Letter

Guardian XV asserts that, after the execution of the lease bonds and SSAs, Royal authored an "estoppel letter," which represented that the lease bonds were in full force and effect and constituted a binding obligation. Guardian XV contends that the issuance of the estoppel letter extinguished any defense arising prior to the date of the estoppel letter, and thus that Guardian XV is entitled to summary judgment on any defense (specifically, Defenses # 1, 2, 4, 5, 7 and 12) that arose prior to the date of the estoppel letter.

Royal responds that the Hibberd letter did not purport to vary either the terms of the bonds or the applicable law, and thus that there are disputed issues of material fact relating to the

Hibberd letter. Additionally, Royal notes that the Court previously found fact issues relating to when the so-called "estoppel letters" were executed and/or received by the Banks, and thus that there are disputed fact issues relating to the question of reliance.

As noted previously in this opinion, *see* section II.K., there are numerous issues of fact relating to the issuance of estoppel letters, and the Banks' alleged reliance on those letters. More significantly, however, with respect to the Guardian entities, the question of those entities' reliance on the estoppel letters also is connected with the fraud allegations raised against the Guardian entities. Once again, in the face of allegations that the Guardian entities were aware of or participated in CMC's fraud, the Court cannot determine any questions involving reliance by the Guardian entities as a matter of law. Accordingly, Guardian XV's request for leave to file a summary judgment motion with respect to Royal's defenses arising before the date of issuance of the estoppel letters is <u>denied</u>.

For the reasons set forth herein, Guardian XV's request for leave to file a summary judgment motion is <u>denied</u> in its entirety.

> **M.** **02-16012, *CadleRock Joint Venture, L.P. v. Royal Indemnity Company***
> **02-16018, *Huntington National Bank v. Royal Indemnity Company***
> **02-16019, *CadleRock Joint Venture, L.P. v. Royal Indemnity Company***
> **02-16022, *CadleRock Joint Venture, L.P. v. Royal Indemnity Company***
> **(02-16000, Doc. 1924—Royal Indemnity Company)**

Royal has filed a Notification, requesting leave to file summary judgment motions against CadleRock and the Guardian/Diversity entities in multiple cases. With respect to CadleRock, Royal seeks leave to move for summary judgment with respect to (1) CadleRock's claims for declaratory judgment and breach of the SSAs; (2) CadleRock's claims of bad faith; and (3) CadleRock's claims for punitive damages. With respect to the Guardian/Diversity entities, Royal requests leave to move for summary judgment with respect to all of the

counterclaims filed by the Guardian/Diversity entities against Royal.

Neither CadleRock nor any of the Guardian/Diversity entities have filed any opposition to Royal's Notification.[16]  SkyBank filed a memorandum in opposition to Royal's motion with respect to cases 02-16012 and 02-16022.  Recently, however, SkyBank and Royal filed stipulations of dismissal relating to claims between them in those two cases. (02-16012, Doc. 109; 02-16022, Doc. 88).  Presumably, this resolution eliminates all claims between Sky and Royal, and thus also eliminates the relevance of Sky's opposition to Royal's Notification.[17]

The Court addresses each of the issues raised by Royal separately.

### 1.      CadleRock Claims for Declaratory Judgment and Breach of SSA

Royal argues that, when CadleRock purchased its interests in the three lease pools, the assignment of interests to CadleRock did not include any rights under the SSAs.  Royal bases its argument on the language of the assignment documents executed by Sky and CadleRock which, Royal contends, provide that CadleRock succeeded only to Sky's rights under the "Guardian Credit Agreements" and the "Loan Documents."   According to Royal, the SSAs are not enumerated as documents under which CadleRock took rights, and thus CadleRock cannot maintain actions for declaratory judgment or breach of contract based on the SSAs.

---

[16] Although both CadleRock and the Guardian/Diversity entities have filed Notifications with respect to some of these cases, which are addressed in other sections of this opinion (*see* sections II.K. and II.L., *supra*, and sections II.Q., II.R., II.S., II.T., II.U., and II.V., *infra*), those Notifications do not directly address the narrow issues raised by Royal here.  To the extent CadleRock and the Guardian/Diversity entities have requested leave to file summary judgment motions on some of the same claims sought to be addressed by Royal here, the grounds on which those parties sought to move are much broader than the issues sought to be addressed by Royal here, and are closely tied up with disputed factual issues.  For those reasons, the requests by CadleRock and the Guardian/Diversity entities have been denied, while Royal's requests here are granted.

[17] Sky's opposition dealt primarily with choice of law issues and argued that Ohio law should apply to the Court's consideration of the tort claims between the parties.  Sky argued that Ohio law supported the bad faith and punitive damage claims (at least with respect to any claims raised by Sky), and that the questions involved presented issues for the jury.  Given that Sky now has stipulated to dismiss its claims and defenses as against Royal, and that no other party has filed a memorandum in opposition to Royal's Notification, the Court does not consider the memorandum in opposition filed by SkyBank.  In any event, choice of law questions will be resolved, if necessary, during the Court's evaluation of Royal's summary judgment motions.

As previously noted, CadleRock has not opposed Royal's Notification, perhaps because it does not oppose Royal's attempt to address certain issues in the context of summary judgment motions. The narrow issue raised by Royal here, relating to the scope of interests assigned to CadleRock by virtue of the assignment documents between CadleRock and Sky, may be amenable to determination based on the face of those documents alone. Moreover, the issue is discrete, and there is no suggestion that deciding this issue will implicate issues of fraud or raise fact questions. Accordingly, Royal's request to file a motion for summary judgment with respect to CadleRock's claims for declaratory judgment and breach of the SSA is <u>granted</u>.

### 2. Bad Faith

Royal also requests leave to move for summary judgment with respect to CadleRock's bad faith claim, on the ground that California law does not recognize a claim for bad faith in the context of a surety relationship. Royal asserts that, under California law, the "bad faith" tort is synonymous with a claim for breach of the implied covenant of good faith and fair dealing. *See Hand*, 23 Cal. App. 4th at 1854. Royal argues that the *Cates* case precludes both such claims against a commercial surety. *See Cates*, 21 Cal. 4th 28. Additionally, Royal contends, since California law does not permit an assignee to seek an award of punitive damages, a bad faith claim would be, in any event, merely duplicative of the claim for breach of the lease bonds. *See Bionghi*, 70 Cal. App. 4th 1358.

As previously noted in this opinion (*see* sections II.D.1., II.E., II.I.3., and II.J., *supra*), an analysis of the *Cates* case and an examination of the extent to which California law permits a bad faith claim against a commercial surety may appropriately be conducted in the context of a dispositive motion. For the reasons previously set forth in this opinion, Royal's request for leave to file a summary judgment motion addressed to CadleRock's bad faith claim is <u>granted.</u>

### 3. Punitive Damages

Royal seeks leave to file a summary judgment motion as to the punitive damages claims raised in connection with the three tort claims asserted by CadleRock. Royal bases its request on California law, and its contention that an assignee is prohibited from seeking an award of punitive damages on an assigned claim. *See Murphy*, 17 Cal. 3d at 942.

The Court has previously considered this issue in the within opinion, *see* section II.E., and has found that the issue of whether an assignee may raise a claim for punitive damages is an issue appropriate for determination in the context of summary judgment. Apparently, the parties to these actions agree, as no party has opposed Royal's request. Accordingly, Royal's motion for leave to file a summary judgment motion with respect to CadleRock's punitive damages claims is <u>granted</u>.

### 4. Request for Leave to File Summary Judgment Motion Against Guardian Entities

Finally, Royal seeks leave to move for summary judgment against the Guardian Entities in the "Ohio Bank" actions (02-16012, 02-16018, 02-16019 and 02-16022), seeking judgment in favor of Royal on all of the Counterclaims asserted by the Guardian entities against Royal. The Counterclaims filed by the Guardian entities include (1) bad faith refusal to pay under the lease bonds and SSAs; (2) promissory estoppel; and (3) breach of contract/intended third party beneficiary. Royal requests leave to move for summary judgment with respect to all of these Counterclaims, based on its argument that the Guardian/Diversity entities have no rights in the leases, bonds or SSAs.

Royal argues that all of the Counterclaims raised by the Guardian/Diversity entities fail because, through secured party sales held in October and November 2005, Huntington National Bank and Sky Bank foreclosed upon, purchased, and took title to all interests previously held by

the Guardian/Diversity entities. Royal relies on the language of the Notices of Disposition of Collateral, which were generated for each secured party sale, which provided that the collateral to be sold included <u>all</u> of the Guardian/Diversity entities' interest in the leases, lease bonds and SSAs. Accordingly, Royal asserts that the secured party sales removed any rights of the Guardian/Diversity entities, and that those entities now have no interests that they may pursue in these proceedings. Thus, Royal contends that it is entitled to summary judgment on all of the claims asserted by the Guardian/Diversity entities.

Again, the Guardian/Diversity entities have not filed any opposition memorandum in response to Royal's Notification. The Court views the issue of the scope of these entities' rights (and the effect of any transfer of rights on the claims raised by these entities) to be a straightforward one, which may be evaluated by consideration of (1) the original transaction documents; and (2) the documents generated in connection with the secured party sales. Thus, consideration of this question in the context of a dispositive motion is appropriate, and Royal's request for leave to file a summary judgment motion with respect to the Counterclaims of the Guardian/Diversity entities is <u>granted</u>.

Accordingly, Royal's request for leave to file a summary judgment motion addressed to the claims raised by CadleRock and the Guardian entities is <u>granted</u> in its entirety, as set forth herein.

**N.      02-16014, *JPMorgan Chase Bank, N.A. v. Safeco Insurance Company of America***
**(02-16000, Doc. 1923—JPMorgan Chase)**

JPMorgan Chase Bank, as successor in interest to Bank One ("Bank One") requests leave to file a motion for partial summary judgment with respect to the following issues: (1) Safeco is judicially estopped from contesting CMC's status as a principal under the Safeco lease bonds; (2)

Bank One has the right to assert in its own name all right, title and interest of its borrowers, Guardian Capital II and Guardian Capital III, in the lease bonds and SSAs; (3) Guardian Capital II, Guardian Capital III, and/or Bank One are the obligees of the Safeco bonds based on novation; (4) Bank One is entitled to partial summary judgment as to Safeco's claim for rescission based on CMC's fraud; (5) Bank One is entitled to an accounting from Safeco, as servicer; and (6) Bank One is entitled to summary judgment as to certain affirmative defenses asserted by Safeco.

Safeco has filed a memorandum opposing Bank One's Notification, arguing that the issues raised by Bank One contravene the Court's Order and raise issues relating to fraud or reformation of the contracts. Moreover, Safeco contends that each of Bank One's proposed dispositive motion issues raises disputed issues of fact. The Court addresses each issue raised by Bank One separately.

### 1. Judicial Estoppel

Bank One asserts that Safeco is judicially estopped from contesting the status of CMC as a principal with respect to the Safeco lease bonds, because Safeco required CMC and its principals to execute General Agreements of Indemnity, and because Safeco originally asserted claims against CMC and its principals based on the Indemnity Agreements.

Safeco responds that the principles of judicial estoppel do not apply, because Safeco recognized early in the litigation that the General Indemnity Agreements were inapplicable to the lease bonds, and as soon as amendments to pleadings were permitted, Safeco sought leave to amend its complaint to reflect this determination. Additionally, Safeco contends that the elements required for judicial estoppel (*see New Hampshire v. Maine*, 532 U.S. 742, 750-51 (2001)) are not satisfied here, since Safeco did not successfully persuade a court to accept its

previous position, and there is no unfair detriment to Bank One.

The Court has evaluated the previous position taken by Safeco on the Rule 12(c) motions and concludes that the doctrine of judicial estoppel does not apply here, and any motion sought to be filed on that ground would be futile. In its ruling on the pleadings motions (Doc. 1708), the Court found that, despite the existence of the indemnity agreements, the Court could not determine as a matter of law that CMC was the principal on the lease bonds. Although the indemnity agreements weighed in favor of such a finding, the Court held that the ultimate determination would require an examination of the parties' intent.

By necessary implication, the Court's ruling means that the existence of the indemnity agreements is not <u>necessarily</u> inconsistent with a finding that CMC was the obligee on the lease bonds. Rather, if Safeco presented appropriate evidence of the parties' intent, it could demonstrate that, even in the face of the indemnity agreements, the transactional structure required that CMC be considered the obligee. Thus, the position taken by Safeco earlier in the litigation is not inconsistent with the position it now takes. Moreover, Safeco did not previously persuade the Court to accept the view that CMC was the principal on the lease bonds. Rather, the Court concluded that it could not make a determination as to the status of the parties based on the transaction documents. Thus, Bank One cannot satisfy the elements of judicial estoppel under any scenario, and a summary judgment motion filed on that issue would be fruitless. Bank One's request for leave to file a summary judgment motion as to the issue of judicial estoppel is <u>denied</u>.

### 2.  Right to Assert Interests of Borrowers

Bank One seeks leave to file a summary judgment motion with respect to its contention that, pursuant to the Credit and Security Agreements executed between Bank One and its

borrowers, Bank One has the standing and right to assert the interests of both Guardian II and Guardian III in the Safeco bonds. Bank One bases this assertion on the language of section 5.3 of the Credit and Security Agreements, which grants Bank One the right, as the agent of the borrowers, to "enforce or otherwise collect any amounts owing under the Surety Bonds. . . ."

Safeco does not directly address this claim in its memorandum. It appears, however, that Safeco actually disputes Bank One's standing to pursue claims here. Safeco's Fifth Affirmative Defense alleges that "Bank One lacks standing and/or contractual privity to pursue any claims or causes of action[] against the Bonds." Bank One alleges, moreover, that this issue may be determined simply on the basis of the Credit and Security Agreements, which allegedly convey to Bank One the standing to assert its borrowers' interests. To the extent that it may be so determined, this narrow issue is appropriate for decision in the context of a dispositive motion. Bank One's request for leave to file a summary judgment motion with respect to the issue of its standing is <u>granted</u>.

### 3. Novation

Bank One argues that a consideration of all of the transaction documents as a whole supports a finding that a novation occurred, which substituted Guardian II, Guardian III and/or Bank One for CMC as the Obligees under each of the Safeco bonds. Bank One bases this argument primarily on the language of the SSAs, which Bank One argues require Safeco to name Guardian II and Guardian III as the obligees in the Safeco bonds. Bank One also appears to argue that Bank One was designated an obligee by virtue of separate transactions, through which the Guardian entities granted a security interest and assignment of the Safeco bonds to Bank One. Finally, Bank One argues that the issuance by Safeco of "estoppel letters" directly to Bank One confirms Safeco's agreement to Bank One's status as an obligee and reinforces Bank One's

argument that a novation occurred.

Safeco contends that a valid novation could not have occurred because CMC's fraud precluded the formation of an initial valid obligation. To the extent Safeco can prove that any fraud by CMC occurred, Safeco asserts that any such fraud also will be attributable to Bank One and the Guardian entities as assignees. Thus, Safeco argues, a factual dispute exists as to whether any binding obligation exists between the parties.

Additionally, Safeco argues that novation is an intensely factual inquiry, dependent on a determination of the intent of the parties. *See* Cal. Civ. Code § 1531, *Alexander v. Angel*, 37 Cal. 2d 856, 860 (1951); *Bolling v. Clevepak Corp.*, 20 Ohio App. 3d 113, 125 (6th Dist. 1984). Since the documents in this case demonstrate a clear intent to <u>assign</u> CMC's interests, Safeco argues, they cannot simultaneously demonstrate an intent to effect a novation.

The Court has addressed the issue of novation multiple times in the within opinion (*see* sections II.A.1., II.C., and II.H.2., *supra*), and each time has found that novation is a highly fact-sensitive question, requiring inquiry into the intent of the parties. Accordingly, for the reasons set forth previously in this opinion, Bank One's request for leave to file a summary judgment motion on the issue of novation is <u>denied</u>.

### 4. Rescission Based on Fraud of CMC

Bank One argues that it is entitled to summary judgment as to Safeco's claim for rescission because (1) Safeco has waived defenses based on CMC's fraud vis-à-vis Bank One and/or the Guardian entities, the obligees on the Safeco lease bonds; (2) Safeco has failed to tender to Bank One or the Guardian entities the premiums received in consideration of the Safeco bonds; and (3) Safeco is estopped to seek rescission as to Bank One's rights in the bonds and SSAs.

The Court notes, first, that Bank One's argument as to Safeco's failure to return premiums is distinct from the other arguments raised in this section, and appears to raise purely legal issues. While Safeco has not addressed this contention by Bank One, the parties' arguments in this context presumably would center on the issue of whether the failure to tender premiums received constitutes a failure of a precondition to a suit for rescission under the applicable law.[18] Determination of this issue could, in all probability, be made by the Court as a matter of law without consideration of disputed factual issues. Accordingly, this narrow issue is appropriate for determination in the context of a summary judgment motion. Bank One's request for leave to file a dispositive motion with respect to Safeco's rescission claim based on Safeco's failure to tender premiums received is <u>granted</u>.

Bank One's other arguments relating to Safeco's rescission claim focus on Bank One's claim of obligee status and the fraud waiver provisions contained in the transaction documents executed by Safeco. Safeco contends that such arguments are a mere restatement of issues already decided by the Court in the Rule 12(c) motions. According to Safeco, the Court held that the fraud waiver provisions could be enforced only by an obligee, and that the obligee status of the parties could not be determined as a matter of law based on the transaction documents. Safeco argues, therefore, that Bank One's request to file a motion on this issue violates the Court's ARCMP and should be denied.

The crux of Bank One's argument is that it is an obligee on the lease bonds and thus is

---

[18] The Court briefly has researched this issue under both California and Ohio law and has found that both states require a party seeking rescission to give appropriate notice of intention to rescind, and to restore the other party to the status quo. It is less clear, however, at what point the return of consideration must occur. Under both California and Ohio law, it appears that, in some circumstances, filing of an action seeking rescission may be deemed to be notice of intent to rescind, as well as an offer to restore the benefits received under the contract. *See* Cal. Civ. Code § 1691; 13A Ohio Jur. § 31, *citing Kirby v. Harrison*, 2 Ohio St. 326 (1853). The legal issues involved in determining whether Safeco has complied with the required preconditions for maintenance of its rescission action would best be fleshed out by appropriate briefing by the parties in the context of a summary judgment motion.

entitled to invoke the fraud waivers. As Safeco correctly states, and as the Court has stated numerous times in this opinion (*see* sections II.A.3., II.L.1.), the issue of obligee status is not amenable to determination on summary judgment. Moreover, the Court previously held that the fraud waivers could be enforced only by a party holding obligee status. (*See* section II.L.2., *supra*). To the extent that Bank One's argument on this point relies on the issuance of "estoppel letters" by Safeco, factual issues also are presented with respect to the issuance of those letters and the Banks' purported reliance on those letters. (*See* section II.K., II.L.4., *supra*). To the extent that Bank One's argument relies on its assertion of "obligee" status, the validity of Safeco's rescission counterclaim simply is not amenable to determination on summary judgment.

Bank One's request for leave to file a summary judgment motion with respect to the rescission defense is <u>granted</u> in part and <u>denied</u> in part. Bank One's request for leave to file a dispositive motion is <u>granted</u> with respect to the narrow issue of Safeco's failure to tender premiums as a precondition to the maintenance of an action for rescission. In all other respects, Bank One's request for leave to file a summary judgment motion with respect to Safeco's rescission is <u>denied</u>.

### 5. Entitlement to an Accounting

Bank One argues that, as Servicer under the SSAs, Safeco is obligated to provide monthly and annual accountings, and that the issue of Safeco's obligation to do so is appropriate for summary adjudication. Safeco responds that this argument assumes the validity of the SSAs, an issue that has not been determined at this stage. Safeco contends that fraud in the inducement by obligee CMC is attributable to all assignees on the bonds, including Bank One, and thus that Bank One cannot rely on the SSAs to attribute any obligations to Safeco. Rather, Safeco asserts that determination of its obligations under the SSA requires a factual determination as to CMC's

fraud, and is not appropriate for summary judgment.

The Court agrees with Safeco. A holding that any obligations are imposed on Safeco by virtue of an SSA necessarily requires a determination that the SSAs are valid and enforceable, and that Bank One is a party entitled to enforce those obligations. These issues have been vigorously disputed by the parties since the commencement of these proceedings, and the Court expressly declined to determine these issues in the context of the Rule 12(c) motions. At this stage, too, these issues are closely tied up with questions of fraud and contract reformation. The filing of a dispositive motion with respect to the enforceability of the SSA would be inappropriate, and Bank One's request for leave to do so is <u>denied</u>.

### 6.        Summary Judgment as to Certain Affirmative Defenses

Bank One also asserts that it is entitled to summary judgment on certain affirmative defenses raised by Safeco, including (1) material alterations to, and/or material changes in the risk of, the underlying obligations (Sixth Defense); (2) failure to join CMC as a necessary or indispensable party (Ninth Defense); (3) Bank One's lack of due diligence (Tenth Defense); and (4) unclean hands (Sixteenth Defense).

Safeco contends that Bank One has violated the Court's Order, which required each party to include "a brief explanation of the reasons each issue is appropriate for summary resolution." *See* Doc. 1861, at 3. Safeco thus argues that Bank One's request for leave to move as to Safeco's affirmative defenses should be denied for failure to properly support its request. In any event, Safeco asserts, each of the defenses enumerated above requires resolution of issues of fact, such that determination of these issues in the context of a dispositive motion is inappropriate.

Despite the cryptic manner in which Bank One has presented the above issues for determination, the Court has considered the questions raised and has determined that none of

them is appropriate for determination in the context of a summary judgment motion. First, with respect to Safeco's Ninth Defense, failure to join CMC as a necessary party, the Court notes that Safeco has withdrawn that defense by a filing dated May 2, 2007. (02-16014, Doc. 41).

With respect to the other defenses challenged by Bank One, the Court finds that all of those issues raise disputed factual questions that cannot be determined on a dispositive motion. With respect to the Tenth and Sixteenth affirmative defenses, which assert lack of due diligence and unclean hands, both of those defenses bring into play questions of Bank One's negligence, which is not amenable to determination in the context of summary judgment. (*See* section II.C.1., *supra*).[19]  Safeco's Sixth Defense, which deals with material alterations to the bonds and to the underlying risk, raises questions of the parties' intent as to the risk the Sureties were intended to assume.  Accordingly, Bank One's request for leave to file a summary judgment motion as to certain of Safeco's affirmative defenses is <u>denied</u>.

Bank One's request for leave to file a partial summary judgment motion is <u>granted</u> in part and <u>denied</u> in part, as set forth herein.

**O.    02-16017, *Huntington National Bank et al. v. American Motorists Insurance Company et al.*
(Doc. 60—AMICO)**

AMICO has requested leave to file a summary judgment motion against Guardian XVI, as to the two counterclaims asserted against AMICO by Guardian XVI for promissory estoppel and bad faith.[20]  Guardian XVI has not filed any memorandum in opposition to AMICO's

---

[19] To the extent Bank One seeks to argue that these defenses require more than a showing of mere negligence, Bank One ignores that Safeco also has alleged that the fraud of CMC is attributable to Bank One.  In that regard, factual questions also are involved.

[20] At the time the parties filed their Notifications requesting leave to file summary judgment motions, the Guardian entities had requested leave to file a late amended pleading, which had not yet been granted.  Thus, AMICO noted in a footnote that, to the extent Guardian XVI was granted leave to file its third-party beneficiary claim, AMICO desired to file a motion for summary judgment as to that claim as well.  Accordingly, the Court considers the arguments presented by AMICO on the promissory estoppel claim as applying to the third-party

Notification.

## 1. Promissory Estoppel

AMICO argues that, based on a series of transactions between Guardian XVI and Huntington National Bank, Guardian XVI has no rights under the lease bonds. First, in September 2001, Guardian XVI entered into a Credit and Security Agreement with Huntington, which granted Huntington a security interest in the AMICO bonds and appointed Huntington as attorney in fact to enforce or collect any amounts owing under the bonds.

According to the allegations of Guardian XVI's pleadings, the Credit and Security Agreement required Huntington to remit a portion of monthly payments received from CMC to Guardian XVI. AMICO asserts, however, that it was not a party to the Credit and Security Agreement and did not assume any obligation to remit any portion of monthly payments to Guardian XVI.

AMICO contends that, as a result of the 2001 transaction and the execution of the Credit and Security Agreement, Guardian XVI assigned all rights to payment under the bonds to Huntington.[21] Additionally, AMICO asserts, after Guardian XVI defaulted on its loans from Huntington, Huntington formally foreclosed on all collateral (including all rights in the bonds, leases and SSA) at a secured party disposition sale.

AMICO cites various sources for the principle that an assignor who has transferred its contract rights can no longer sue to enforce those rights. *See, e.g., Nebco & Assoc. v. United States*, 23 Cl. Ct. 635, 644 (1991)("[a] valid assignment transfers all interest of the assignor to the assignee so that the assignor no longer has any rights in the property. . . ."); Cal. Civ. Code §

---

beneficiary claim as well. For the reasons set forth in this section, AMICO's request for leave to file a summary judgment motion as to Guardian XVI's third-party beneficiary claim is <u>granted</u>.

[21] Huntington and AMICO have settled their disputes with respect to the AMICO bonds.

1084. Pursuant to these principles, AMICO seeks leave to file a summary judgment motion alleging that Guardian XVI has no rights to recover under the AMICO bonds.

As the Court previously explained, *see* section II.M.4., *supra*, the Court finds that the issue of whether the Guardian entities retain any rights under the lease bonds for which they may seek recovery is an inquiry driven primarily by the terms of the various documents memorializing the transactions between the Guardian entities and Huntington. An examination of the provisions of these documents is appropriate within the context of summary judgment motions. AMICO's request for leave to file a summary judgment motion with respect to the scope of Guardian XVI's rights is granted.

### 2. Bad Faith

AMICO also seeks leave to file a motion for summary judgment as to Guardian XVI's "bad faith" claim, which seeks tort damages for AMICO's refusal to pay on its bonds. As with respect to the promissory estoppel claims, AMICO argues that Guardian cannot proceed on its bad faith claims because it no longer has any interest in the bonds, and thus there is no contract to which the implied covenant of good faith and fair dealing could apply. *See, e.g., CalFarm Ins. Co. v. Krusiewicz*, 131 Cal. App. 4th 273, 285 (4th Dist. 2005)("[t]he implied covenant of good faith and fair dealing arises out of a contractual relationship and does not exist independently of its contractual underpinnings. . . ."); *Agosta v. Astor*, 120 Cal. App. 4th 596, 607 (4th Dist. 2004)("covenant [of good faith and fair dealing] cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement. . . .")(internal quotation omitted). Additionally, however, AMICO argues that California law does not permit a bad faith cause of action seeking punitive damages in the context of a commercial surety contract. *See Cates*, 21 Cal. 4th 28; *Schwerdt*, 28 Fed. Appx. 715.

As previously noted in this opinion, *see* sections II.D.1., II.E., II.I.3., II.J., and II.M.2, the Court will permit the filing of narrowly tailored summary judgment motions as to the extent to which California law permits a bad faith claim in the context of a surety relationship. AMICO's request for leave to file a motion for summary judgment motion as to the bad faith claim is granted. Accordingly, AMICO's request for leave to file a summary judgment motion is <u>granted</u> in its entirety, as set forth herein.

**P.** **02-16017, *Huntington National Bank et al. v. American Motorists Insurance Company et al.***
**(Doc. 61—Guardian XVI)**

Guardian XVI has requested leave to file a motion for summary judgment as to certain affirmative defenses raised by AMICO.[22] Specifically, Guardian XVI seeks summary judgment on the following defenses: (1) AMICO's defenses based on its assertion that CMC was the obligee on the lease bonds; (2) AMICO's fraud in the inducement defenses; (3) any defense asserting that Michael Anthony lacked authority to sign the lease bonds or the SSAs; and (4) any defense arising before the date of the "estoppel letters" authored by AMICO.

### 1. Defenses Relating to CMC's Status as Obligee

Guardian XVI relies on language in the SSA stating that "[a]ny . . . assignee shall become Obligee under this Bond, effective the date specified in the notice of the assignment. . . ." Guardian XVI argues that the lease bond and SSA establish as a matter of law that Guardian XVI was the obligee on the lease bonds. Thus, Guardian XVI seeks leave to move for summary judgment on AMICO's sixth affirmative defense.

AMICO responds, first, that as a result of the secured party sales, Guardian XVI no

---

[22] Although the Notification in this case purports to have been filed by Guardian Capital XVI, LLC, Guardian Financial Group, and Blaine Tanner, the Court indicated, in its Order dated March 1, 2007 (Doc. 1962), that Guardian Financial Group and Blaine Tanner are not proper parties to any counterclaim. Accordingly, the Court treats the Notification in the within case as having been filed only by Guardian Capital XVI.

longer has any rights in the leases, lease bonds or SSAs.  Second, AMICO contends that Guardian XVI's motion is a restatement of issues already rejected by the Court in its consideration of the Rule 12(c) motions.  Third, AMICO asserts, Guardian XVI impermissibly seeks leave to file a summary judgment motion relating to issues involving reformation of the transaction documents.  Fourth, AMICO argues that issues of assignment and obligee status with relation to the Guardian XVI pool are highly complex and fact-sensitive in any event, since there were multiple, and sometimes inconsistent, assignments.

The Court has considered the issues presented by Guardian XVI's request previously in this opinion.  For the reasons set forth in section II.L.1., *supra*, the request for leave to file a summary judgment motion as to CMC's obligee status is <u>denied</u>.

### 2.      Fraud in the Inducement Defenses

Guardian XVI argues that the fraud waiver language contained in the lease bonds precludes AMICO, as a matter of law, from asserting its fraud in the inducement defenses.  Accordingly, Guardian XVI argues that it is entitled to summary judgment as to any defense (specifically, Affirmative Defenses 7, 10 and 26) that seeks to avoid liability based on the misconduct of CMC, performance under the leases, or failure to disclose by the Guardian entities.

AMICO responds that the Court already concluded, in its opinion relating to the Rule 12(c) motions (Doc. 1708), that the enforceability of the fraud waivers was dependent on a determination of which party was intended to be the "obligee" on the lease bonds—an issue that could not be decided on the face of the transaction documents.  Moreover, with respect to claims asserted by Guardian XVI, AMICO argues that there is substantial evidence of Guardian XVI's own fraud, which makes a finding of obligee status on the part of Guardian XVI even less

appropriate.

The Court has reviewed the parties' arguments, and has determined that, for the reasons set forth in section II.L.2., *supra*, Guardian XVI's request for leave to file a summary judgment motion with respect to AMICO's fraud in the inducement defenses is <u>denied</u>.

### 3. Defenses Relating to Anthony's Lack of Authority

Guardian XVI argues that the Court's previous ruling established as a matter of law Michael Anthony's authority to sign the lease bonds and SSAs. Thus, Guardian XVI contends that it is entitled to summary judgment on any defense (specifically, Affirmative Defenses 22, 23 and 28) that purports to rely on Anthony's lack of authority. AMICO, on the other hand, asserts that Guardian XVI may not invoke the benefits of the Court's prior rulings with respect to the apparent authority of Michael Anthony, since Blaine Tanner, the sole principal of Guardian XVI, was an active participant with Michael Anthony in the fraud.

As previously noted in section II.L.3., *supra*, any issue involving the alleged reliance of a Guardian entity on the apparent authority of Michael Anthony is closely tied with factual issues relating to purported knowledge and participation in the fraud by the Guardian entities. Accordingly, this issue is inappropriate for disposition on summary judgment and Guardian XVI's request for leave to file a dispositive motion is <u>denied</u>.

### 4. Defenses Arising Prior to Date of Estoppel Letters

Guardian XVI contends that the issuance of the estoppel letters drafted by AMICO extinguished any defense arising prior to the date of the estoppel letters, and thus that Guardian XVI is entitled to summary judgment on any defense (specifically, Affirmative Defenses 6, 7, 8, 12, 16, 17, 21, 26, 28, 31 and 33) that arose prior to the date of the estoppel letters. AMICO responds that it issued <u>no</u> estoppel letters to Guardian XVI, and that the letters directed to Sky

Bank did not purport to vary the terms of the bonds. AMICO argues that material issues of fact are presented as to the elements of falsity, knowledge of falsity, and reliance.

Again, the Court has previously addressed the issues presented by this request. *See* section II.L.4., *supra*. For the reasons set forth in that section, Guardian XVI's request for leave to file a summary judgment motion with respect to defenses arising before the date of the estoppel letters is <u>denied</u>.

For the reasons set forth herein, Guardian XVI's request for leave to file a summary judgment motion is <u>denied</u> in its entirety.

> **Q.** **02-16018, *Huntington National Bank v. Royal Indemnity Company* (Doc. 56—Guardian XIV)**

Guardian XIV has filed a Notification requesting leave to file a summary judgment motion against Royal, with respect to certain of Royal's affirmative defenses. Guardian XIV contends that, as a consequence of the Court's rulings on the pleadings motions, and based on consideration of the transaction documents, the Court can dispose of certain issues as a matter of law. Specifically, Guardian XIV seeks summary judgment on the following defenses: (1) Royal's defenses based on its assertion that CMC was the obligee on the lease bonds; (2) Royal's fraud in the inducement defenses; (3) any defense asserting that Michael Anthony lacked authority to sign the lease bonds or the SSAs; and (4) any defense arising before the date of the "estoppel letter" authored by Royal. Royal has filed a memorandum in opposition to Guardian XIV's Notification.

The arguments raised by Guardian XIV and Royal in this case are substantively identical to those raised in Case No. 02-16012, which was discussed in detail in section II.L., *supra*. For the reasons set forth in that section, Guardian XIV's request for leave to file a summary judgment motion is <u>denied</u> in its entirety.

### R. 02-16019, *CadleRock Joint Venture, L.P. v. Royal Indemnity Company* (Doc. 78—CadleRock)

CadleRock has requested leave to file a summary judgment motion against Royal Indemnity Company with respect to Counts Four and Six of CadleRock's Second Amended Complaint, which relate to (1) CadleRock's negligent misrepresentation claim; and (2) its claim for breach of the SSA. Royal has filed a memorandum in opposition to CadleRock's Notification.

The arguments raised by CadleRock and Royal in this case are substantively identical to those raised in Case No. 02-16012, which was discussed in detail in section II.K., *supra*. For the reasons set forth in that section, CadleRock's request for leave to file a summary judgment motion is <u>denied</u> in its entirety.

### S. 02-16019, *CadleRock Joint Venture, L.P. v. Royal Indemnity Company* (Doc. 79—Guardian IX)

Guardian IX has filed a Notification requesting leave to file a summary judgment motion against Royal, with respect to certain of Royal's affirmative defenses. Guardian IX contends that, as a consequence of the Court's rulings on the pleadings motions, and based on consideration of the transaction documents, the Court can dispose of certain issues as a matter of law. Specifically, Guardian IX seeks summary judgment on the following defenses: (1) Royal's defenses based on its assertion that CMC was the obligee on the lease bonds; (2) Royal's fraud in the inducement defenses; (3) any defense asserting that Michael Anthony lacked authority to sign the lease bonds or the SSAs; and (4) any defense arising before the date of the "estoppel letter" authored by Royal. Royal has filed a memorandum in opposition to Guardian IX's Notification.

The arguments raised by Guardian IX and Royal in this case are substantively identical to

those raised in Case No. 02-16012 and 02-16017, which were discussed in detail in sections II.L. and II.P., *supra*. For the reasons set forth in those sections, Guardian IX's request for leave to file a summary judgment motion is <u>denied</u> in its entirety.

    **T.**    **02-16020,** *CadleRock Joint Venture, L.P. v. Safeco Insurance Company of America*
    **(Doc. 42—CadleRock)**

CadleRock has requested leave to move for summary judgment against Safeco with respect to (1) CadleRock's claim for negligent misrepresentation;[23] and (2) CadleRock's claim for breach of the SSA. Safeco has opposed CadleRock's Notification as to both issues.

    **1.**    **Negligent Misrepresentation**

With respect to the negligent misrepresentation claim, CadleRock argues that Safeco represented to First Merit (CadleRock's predecessor in interest) that the bonds were fully enforceable, and that payment would be made to First Merit regardless of any payments to intermediaries or servicers. Safeco responds that CadleRock's request is an impermissible attempt to file a dispositive motion on fraud-related issues, and that the negligent misrepresentation claim raises disputed fact issues. Specifically, Safeco claims that CadleRock's argument relies on unsupported allegations as to the assurances requested by Guardian I and First Merit. Additionally, Safeco contends that the representations made by Safeco to First Merit did not contain any false information.

As the Court previously has noted in this opinion (*see* section II.K.1., *supra*), the negligent misrepresentation claim cannot be determined without the resolution of certain factual issues, including issues of falsity and reliance. Accordingly, CadleRock's request for leave to

---

    [23] CadleRock's Notification incorrectly refers to CadleRock's claim as one for "negligent misappropriation;" however, the Court has determined that CadleRock actually requests leave to move for summary judgment as to its negligent misrepresentation claim.

file a summary judgment motion on its negligent misrepresentation claim is <u>denied</u>.

### 2. Breach of SSA

CadleRock also argues that Safeco's failure to remit funds to First Merit, upon default under the lease bonds, constitutes a breach of the SSA. Safeco, however, contends that the fraud of CMC prevented the formation of any valid contract and excuses Safeco from any duty of performance under the SSA. Safeco asserts that the Court cannot determine the validity of the SSA without considering the fraud of CMC, and that such a determination cannot be rendered in the context of summary judgment.

The Court agrees with Safeco. The Court can determine the validity of Safeco's defenses to the SSA only by conducting a factual examination of the underlying fraud alleged by Safeco, including fraud alleged to have been committed by CMC and/or the Guardian entities. As previously noted in this opinion, *see* section II.K.2., *supra*, as an assignee, CadleRock may be subject to defenses based on fraud alleged against its assignors. Likewise, in the absence of a valid contract between the parties, Safeco cannot be liable for breach of that contract. As the Court cannot resolve the underlying disputed fact issues in the context of a summary judgment motion, CadleRock's request for leave to file a summary judgment motion with respect to its claim for breach of the SSA is <u>denied</u>.

For the reasons set forth herein, CadleRock's request for leave to file a summary judgment motion is <u>denied</u> in its entirety.

### U. 02-16022, *CadleRock Joint Venture, L.P. v. Royal Indemnity Company* (Doc. 78—CadleRock)

CadleRock has filed a Notification requesting leave to file a motion for partial summary judgment as to CadleRock's claims of (1) negligent misrepresentation; and (2) breach of the SSA. Royal has filed a memorandum opposing CadleRock's Notification on both issues.

The Court has examined the parties' arguments, and has determined that they are substantively identical to the arguments raised by CadleRock and Royal in Case No. 16012, previously addressed in section II.K., *supra*. For the reasons set forth in that section, CadleRock's request for leave to file a summary judgment motion is <u>denied</u> in its entirety.

### V. 02-16022, *CadleRock Joint Venture, L.P. v. Royal Indemnity Company* (Doc. 79—Diversity Capital II)

Diversity Capital II has filed a Notification requesting leave to file a summary judgment motion against Royal with respect to certain affirmative defenses raised by Royal, including: (1) any affirmative defenses based on CMC's status as obligee; (2) any defense that contravenes the fraud waiver language of the lease bonds; (3) any defense asserting that Michael Anthony lacked authority to sign the lease bonds and SSAs; (4) any defense arising before the date of the "estoppel letter" authored by Royal. Royal has opposed Safeco's Notification as to each of these issues.

The Court has examined the arguments raised by the parties and finds that they are substantively identical to the arguments raised by Royal and Guardian XV in Case No. 02-16012, addressed in section II.L., *supra*. For the reasons set forth in that section, Diversity Capital II's request for leave to file a motion for summary judgment is <u>denied</u> in its entirety.

### W. 02-16024, *American Motorists Insurance Company et al. v. United Security Bank* (Doc. 48—AMICO)

AMICO has filed a Notification requesting leave to file a summary judgment motion with respect to the three tort claims asserted by USB against AMICO: (1) breach of implied covenant of good faith and fair dealing; (2) negligent misrepresentation; and (3) fraud. USB has filed a memorandum opposing AMICO's Notification. The Court addresses each issue raised by AMICO separately.

### 1.     Breach of Implied Covenant of Good Faith and Fair Dealing

AMICO relies on the *Cates* case, 21 Cal. 4th 28, and argues that California law does not permit tort causes of action for bad faith breach of the covenant of good faith and fair dealing in the context of commercial suretyship transactions.   Rather, AMICO contends, parties to commercial surety transactions are limited to recovery of contractual damages for breach. *See Schwerdt*, 28 Fed. Appx. 715; *Bionghi*, 83 Cal. Rptr. 2d 388.

USB responds that the holding of the *Cates* case is limited to construction performance bonds and thus that the *Cates* case does not preclude USB's claims here.   USB argues that the Court's holding in *Cates* was intended to be limited to the particular facts of the construction performance bond cases, including the reality that a construction bond obligee may alter the terms of a construction performance bond and may contract with others to complete the work.   In contrast, USB argues, California courts have upheld claims for bad faith in the context of fidelity bonds. *See, e.g., Downey Savings & Loan Assn. v. Ohio Casualty Ins. Co.*, 189 Cal. App. 3d 1072, 1096-97 (2d Dist. 1987); *Pacific-Southern Mortgage Trust Co. v. Insurance Co. of North America*, 166 Cal. App. 3d 703, 715 (4th Dist. 1985).

For the reasons previously set forth in sections II.D.1., II.E., II.I.3., II.J., II.M.2, and II.O.2., the Court finds that USB's bad faith claim presents issues appropriate for determination in the context of a dispositive motion, and AMICO's request for leave to file a summary judgment motion as to the bad faith claim raised by USB is <u>granted</u>.

### 2.     Negligent Misrepresentation/Fraud

AMICO contends that USB's negligent misrepresentation and fraud claims are subject to disposition on summary judgment because USB has no evidence demonstrating that AMICO had any communications with USB at the time of bond issuance, which were intended to induce

reliance by USB. AMICO argues that, since USB is at least the fourth assignee of the lease bonds, AMICO never had any communications with USB until long after the AMICO bonds were issued. Rather, AMICO asserts, USB obtained all of its information from broker Rafferty Capital Markets, and received only copies of AMICO correspondence sent by surety broker Michael Anthony to other parties. In fact, AMICO alleges, AMICO did not know that USB had acquired rights under the bonds until it received USB's claim on the bonds.

Additionally, AMICO argues that USB's claim of fraud is unsupported, since AMICO paid USB over $600,000 on its claim under reservation of rights—an action that AMICO would not have taken if it had never intended to honor the bonds at the time of issuance. Finally, AMICO argues that CMC's assignment to USB did not include any rights to tort claims or claims for punitive damages and, in any event, California law does not permit an assignee to recover punitive damages. *See Murphy*, 17 Cal. 3d at 942.

USB responds, first, that issues of fraud and misrepresentation cannot be summarily adjudicated, and the Court in fact prohibited the filing of Notifications with respect to such issues. Second, USB argues that AMICO entered into an SSA with it, through its attorney-in-fact, Michael Anthony, and that AMICO may be held liable for the representations directly made to USB in that document. Third, USB contends that AMICO may be liable for representations made indirectly to other parties, while intending or expecting that those representations would be repeated to USB. *See Shapiro v. Sutherland*, 64 Cal. App. 4th 1534, 1548 (2d Dist. 1998)("a defendant cannot escape liability if he or she makes a representation to one person while intending or having reason to expect that it will be repeated to and acted upon by the plaintiff (or someone in the class of persons of which plaintiff is a member). . . ."); *Varwig v. Anderson-Behel Porsche/Audi, Inc.*, 74 Cal. App. 3d 578, 580 (1st Dist. 1977)("[i]f a representation is made with

intent to defraud a particular class of persons, the one making such a representation is deemed to have intended to defraud every individual in that class who is actually misled by the deceit. . . .")(internal quotations omitted)(citation omitted).

USB relies on a letter drafted by AMICO attorney-in-fact David Noddle to Sky Bank, stating that "[t]he company understands that the bonds will be relied on by purchasers (and their assignees) of the related lessees. . . ."  USB argues that this letter demonstrates that AMICO recognized the existence of investors such as USB and knew that the investors would rely on the letters in deciding to purchase interests in the lease bonds.

Finally, USB argues that, pursuant to California law, allegations of fraud may be premised on non-disclosure as well as affirmative misrepresentation. *See Marketing West, Inc. v. Sanyo Fisher (USA) Corp.*, 6 Cal. App. 4th 603, 613 (2d Dist. 1992).  According to USB, it is entitled to pursue its claims of nondisclosure against AMICO, based on AMICO's failure to disclose to USB the fact that it was not taking full responsibility to underwrite the leases.

The Court has examined the parties' arguments and finds that the issues presented by USB's claims of negligent misrepresentation and/or fraud are not amenable to disposition on summary judgment.  Although AMICO argues either that (1) it did not make any representations to USB; or (2) USB is not a party entitled to rely on such representations, both of these contentions present disputed factual issues.

As explained previously, *see* section II.D.2. of this opinion, to the extent (1) AMICO made representations, either within the SSA or separately; and (2) USB can prove it was a member of the class of persons intended to rely on those representations, then it may be able to assert claims based on AMICO's indirect representations.  Moreover, while AMICO contends that USB is a mere assignee not entitled to assert rights against it (or that USB in fact has not

received a valid assignment), the status of the parties to the transaction is a factual determination, which the Court has declined to make in the context of summary judgment.

AMICO's request for leave to file a summary judgment motion with respect to USB's claims of negligent misrepresentation and fraud is <u>denied</u>.

Accordingly, AMICO's request for leave to file a summary judgment motion against USB is <u>granted</u> in part and <u>denied</u> in part, as set forth herein.

**X.       03-16000, *RLI Insurance Company v. Guardian Financial Group, LLC, et al.* (Doc. 22—Guardian XVIII)**[24]

Guardian XVIII has filed a Notification requesting leave to file a summary judgment motion against RLI with respect to certain affirmative defenses raised by RLI: (1) any defense based on an assertion that CMC was the obligee under the lease bonds; (2) any defense contravening the language of the fraud waivers; (3) any defense asserting that Michael Anthony lacked authority to execute the lease bonds and/or SSAs; and (4) any defense arising before the date of the "estoppel letter" authored by RLI.  The arguments raised by Guardian XVIII are substantively identical to those raised in other cases and discussed in section II.L., *supra*.

RLI has filed a memorandum opposing Guardian XVIII's Notification.  Since the arguments raised by RLI are, to some extent, distinct from those raised by other Sureties, the Court sets them forth herein.

RLI argues, first, that Guardian XVIII has violated the Court's ARCMP by filing motions relating to issues of fraud and intent of the parties in entering into the respective transactions.  To the extent that Guardian XVIII argues that it was the original obligee on the bonds, RLI contends

---

[24] Although the Notification in this case purports to have been filed by Guardian Capital XVIII, LLC, Guardian Financial Group, and Blaine Tanner, the Court indicated, in its Order dated March 1, 2007 (Doc. 1962), that Guardian Financial Group and Blaine Tanner are not proper parties to any counterclaim.  Accordingly, the Court treats the Notification in the within case as having been filed only by Guardian Capital XVIII.

that such a contention may be established only through a finding of reformation. Moreover, RLI asserts that summary judgment would be inappropriate on its rescission claims, since the fraud in the inducement defenses are based on factual issues, including the alleged fraud of CMC and the Guardian entities.

Additionally, RLI argues that the facts relating to the purported assignment to Guardian XVIII are particularly complex, since the bonds were assigned by CMC to Guardian Financial Group, who assigned them to Sky Bank. After the assignment to Sky Bank, Guardian XVIII received an assignment from CMC. Since there is no record of any assignment from Sky Bank back to CMC, RLI argues that Guardian XVIII has no rights in the lease bonds or SSAs.

To the extent Guardian XVIII seeks leave to file a summary judgment motion relating to the authority of Michael Anthony, RLI argues that summary judgment would be inappropriate where there is evidence that Blaine Tanner (Guardian XVIII's sole principal) participated in the fraud with Anthony. Additionally, RLI asserts that there are factual disputes as to Anthony's authority to sign SSAs, since the SSAs in RLI's pools related to only some of the bonds in each pool.

Finally, RLI argues that there are factual issues presented as to any estoppel letters, since none of those letters were issued to Guardian XVIII, none purported to vary the terms of the bonds, and in any event Guardian XVIII was a participant in the fraud.

The Court finds that, for the reasons set forth in sections II.L., II.P., II.Q., and II.S., *supra*, Guardian XVIII's request raises issues not amenable to resolution on summary judgment. For the reasons set forth in those sections, and the additional reasons raised by RLI, Guardian XVIII's request for leave to file a summary judgment motion is <u>denied</u> in its entirety.

**Y.     03-16002, *Guardian Capital LLC v. Safeco Insurance Company of America* (Doc. 13—Guardian Capital)**

Guardian Capital has filed a Notification requesting leave to file a summary judgment motion against Safeco with respect to certain affirmative defenses raised by Safeco: (1) any defense based on an assertion that CMC was the obligee under the lease bonds; (2) any defense contravening the language of the fraud waivers; (3) any defense asserting that Michael Anthony lacked authority to execute the lease bonds and/or SSAs; and (4) any defense arising before the date of the "estoppel letter" authored by Safeco.  The arguments raised by Guardian Capital are substantively identical to those raised in other cases and discussed in section II.L., *supra*.

Safeco has filed a memorandum opposing Guardian Capital's Notification.  To the extent the arguments raised by Safeco are distinct from those raised by other Sureties, the Court sets them forth herein.

Safeco argues, first, that the claims of Guardian Capital are intertwined with disputed issues of fact and thus contravene the Court's ARCMP.  Additionally, Safeco contends that Guardian Capital's "obligee" argument is a rehashing of the same argument that was rejected by the Court on the Rule 12(c) motions.  Similarly, Safeco asserts that the Court previously rejected Guardian Capital's arguments relating to the fraud waiver language, and held that the fraud waiver language could be enforced only by a party found to be an obligee.

With respect to Guardian Capital's arguments relating to the authority of Michael Anthony, Safeco responds that it has not asserted any defense relating to Anthony's lack of authority and in fact does not dispute Anthony's authority to sign the lease bonds and the SSAs.  Thus, there is no contested issue as to which the filing of a summary judgment motion would be appropriate.  Finally, with respect to the "estoppel letters" purportedly issued by Safeco, Safeco argues that those letters did not vary the terms of the bonds, and in any event, there are disputed

factual issues relating to reliance.

The Court finds that, for the reasons set forth in sections II.L., II.P., II.Q., and II.S., *supra*, Guardian Capital's request raises issues not amenable to resolution on summary judgment. For the reasons set forth in those sections, and the additional reasons raised by Safeco, Guardian Capital's request for leave to file a summary judgment motion is <u>denied</u> in its entirety.

### Z.    03-16003, *Guardian Capital I LLC v. Safeco Insurance Company of America* (Doc. 13—Guardian I)

Guardian I has filed a Notification requesting leave to file a summary judgment motion against Safeco with respect to certain affirmative defenses raised by Safeco: (1) any defense based on an assertion that CMC was the obligee under the lease bonds; (2) any defense contravening the language of the fraud waivers; (3) any defense asserting that Michael Anthony lacked authority to execute the lease bonds and/or SSAs; and (4) any defense arising before the date of the "estoppel letter" authored by Safeco.  Safeco has filed a memorandum in opposition to Guardian I's Notification.

The Court has examined the arguments raised by the parties and finds that they are substantively identical to the arguments raised by the parties in Case No. 03-16002, addressed in section II.Y., *supra*.  For the reasons set forth in that section, and in sections II.L., II.P., II.Q., and II.S., *supra*, Guardian I's request for leave to file a summary judgment motion is <u>denied</u> in its entirety.

### AA.    03-16004, *Guardian Capital II LLC v. Safeco Insurance Company of America* (Doc. 10—Guardian II)

Guardian II has filed a Notification requesting leave to file a summary judgment motion against Safeco with respect to certain affirmative defenses raised by Safeco: (1) any defense based on an assertion that CMC was the obligee under the lease bonds; (2) any defense

contravening the language of the fraud waivers; (3) any defense asserting that Michael Anthony lacked authority to execute the lease bonds and/or SSAs; and (4) any defense arising before the date of the "estoppel letter" authored by Safeco. Safeco has filed a memorandum in opposition to Guardian II's Notification.

The Court has examined the arguments raised by the parties and finds that they are substantively identical to the arguments raised by the parties in Case No. 03-16002, addressed in section II.Y., *supra*. For the reasons set forth in that section, and in sections II.L., II.P., II.Q., and II.S., *supra*, Guardian II's request for leave to file a summary judgment motion is <u>denied</u> in its entirety.

### BB. 03-16005, *Guardian Capital III LLC v. Safeco Insurance Company of America* (Doc. 10—Guardian III)

Guardian III has filed a Notification requesting leave to file a summary judgment motion against Safeco with respect to certain affirmative defenses raised by Safeco: (1) any defense based on an assertion that CMC was the obligee under the lease bonds; (2) any defense contravening the language of the fraud waivers; (3) any defense asserting that Michael Anthony lacked authority to execute the lease bonds and/or SSAs; and (4) any defense arising before the date of the "estoppel letter" authored by Safeco. Safeco has filed a memorandum in opposition to Guardian III's Notification.

The Court has examined the arguments raised by the parties and finds that they are substantively identical to the arguments raised by the parties in Case No. 03-16002, addressed in section II.Y., *supra*. For the reasons set forth in that section, and in sections II.L., II.P., II.Q., and II.S., *supra*, Guardian III's request for leave to file a summary judgment motion is <u>denied</u> in its entirety.

**CC.    03-16006,** *Diversity Capital One, Inc. v. Safeco Insurance Company of America* **(Doc. 11—Diversity Capital One)**

Diversity Capital One has filed a Notification requesting leave to file a summary judgment motion against Safeco with respect to certain affirmative defenses raised by Safeco: (1) any defense based on an assertion that CMC was the obligee under the lease bonds; (2) any defense contravening the language of the fraud waivers; (3) any defense asserting that Michael Anthony lacked authority to execute the lease bonds and/or SSAs; and (4) any defense arising before the date of the "estoppel letter" authored by Safeco. Safeco has filed a memorandum in opposition to Diversity Capital One's Notification.

The Court has examined the arguments raised by the parties and finds that they are substantively identical to the arguments raised by the parties in Case No. 03-16002, addressed in section II.Y., *supra*. For the reasons set forth in that section, and in sections II.L., II.P., II.Q., and II.S., *supra*, Diversity Capital One's request for leave to file a summary judgment motion is <u>denied</u> in its entirety.


**III.    Conclusion**

For the reasons set forth herein, the Court disposes of the multiple pending Notifications as set forth in detail in the chart contained in section I, *supra*.

To the extent the Court has granted any party's request for leave to file a summary judgment motion, the following briefing schedule shall apply to any dispositive motions to be filed by the parties:

(1)    To the extent that a party has been granted leave to file a dispositive motion by the terms of this Memorandum and Order, any such motion shall be filed on or before <u>February 15, 2008</u>.

(2)        Any memorandum in opposition shall be filed on or before <u>April 15, 2008</u>.

(3)        Any reply memorandum shall be filed on or before <u>May 15, 2008</u>.

**IT IS SO ORDERED.**

_____
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: December 19, 2007**

47060-1