IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| In re:  Commercial Money Center, Inc. Equipment Lease Litigation | MDL Docket No. 1:02-16000<br>Hon. Kathleen M. O'Malley<br><br>This Document Relates to<br>02-16012,<br>02-16018,<br>02-16019, and<br>02-16022 |

**Royal Indemnity Company's Memorandum of Law In Support of Its Motion for Summary Judgment Against the  Guardian/ Diversity Entities**

Sonnenschein Nath & Rosenthal LLP
7800 Sears Tower
Chicago, IL  60606
Phone:  (312) 876-8000
Fax:  (312) 876-7934
    *and*
1221 Avenue of the Americas
New York, NY  10020-1089
Phone:  (212) 768-6700
Fax:  (212) 768-6800


Spieth, Bell, McCurdy & Newell
925 Euclid Avenue - Ste. 2000
Cleveland, OH 44115
Phone:  (216) 696-4700
Fax: (216) 696-2706

*Attorneys for Royal Indemnity Company*

February 15, 2008

## TABLE OF CONTENTS

STATEMENT OF UNDISPUTED FACTS .............................................................................................. 1

ARGUMENT — THIS COURT SHOULD GRANT SUMMARY JUDGMENT DISMISSING ALL OF
    THE GUARDIAN/DIVERSITY ENTITIES' CLAIMS BECAUSE, AS A RESULT OF THE
    SECURED PARTY SALES, THE GUARDIAN/DIVERSITY ENTITIES NO LONGER HAVE ANY
    INTEREST IN THE LEASES, BONDS, OR SALE AND SERVICING AGREEMENTS UPON
    WHICH THEY BASE ALL OF THEIR CLAIMS ............................................................................ 5

CONCLUSION...................................................................................................................................... 9

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

|  |  |
|---|---|
| IN RE:  COMMERCIAL MONEY CENTER, INC. EQUIPMENT LEASE LITIGATION | MDL Docket No. 1:02-16000<br>Hon. Kathleen M. O'Malley<br><br>This Document Relates to<br>02-16012,<br>02-16018,<br>02-16019, and<br>02-16022 |

**ROYAL INDEMNITY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
FOR SUMMARY JUDGMENT AGAINST
THE  GUARDIAN/ DIVERSITY ENTITIES**

Royal Indemnity Company ("Royal") respectfully submits this Memorandum of Law in support of its motion for summary judgment against the Guardian/Diversity Entities (as defined below), dismissing all of their claims.  Royal is also making a motion for summary judgment in three of these cases (not in Case No. 02-16018), seeking summary judgment on certain claims of CadleRock Joint Venture, LP ("CadleRock") and is submitting a separate memorandum of law on that motion.

### STATEMENT OF UNDISPUTED FACTS

Royal seeks summary judgment dismissing all of the Guardian/Diversity Entities' claims because, as a result of secured party sales conducted under the Uniform Commercial Code, all of the Guardian/Diversity Entities' rights in the leases, Bonds, and Sale and Servicing Agreements ("SSAs"), upon which they base their claims, were extinguished, and sold to the purchasers at the secured party sales.

This motion for summary judgment thus turns on a single, undisputed fact[1]:

- ***As a result of the secured party sales, the Guardian/Diversity Entities no longer have any rights in the leases, bonds, and SSAs, upon which they base all of their claims.***

Royal respectfully submits that one document, in each of the four cases, is dispositive of all of the Guardian/Diversity Entities' claims:  the Notification of Disposition of Collateral for the secured party sale.  (Exs. G, Q, X, DD.)  That Notification sets forth all of the rights that were sold at each secured party sale.  A brief review of the history of the four lease pools at issue will put that document in context.

Each of the "Guardian/Diversity Entities"— Guardian Capital IX LLC ("Guardian IX"), Diversity Capital II LLC ("Diversity II"), Guardian Capital XV LLC ("Guardian XV"), and Guardian Capital XIV LLC ("Guardian XIV")—entered into a transaction with Commercial Money Center, Inc. ("CMC").  The Guardian/Diversity Entities financed these transactions with loans from what were then four separate Ohio banks, Mid Am Bank ("Mid Am"), Second National Bank of Warren ("Second National"), Metropolitan Bank & Trust Company ("MB&T"), and The Huntington National Bank ("Huntington").

In November 2000, Guardian IX purchased (or made a secured loan relating to) a lease pool from CMC, which Guardian IX financed with a loan from Mid Am.  (Exs. J – P.)  In March 2001, Diversity II purchased (or made a secured loan relating to) a lease pool from CMC, which Diversity II financed with a loan from Second National.  (Exs. R – W.)  In April 2001, Guardian XV purchased (or made a secured loan relating to) a lease pool from CMC, which Guardian XV financed with a loan from MB&T.  (Exs. A – F.)  In May 2001, Guardian XIV purchased (or

---

[1]     The documents relied upon in this Statement of Undisputed Facts are submitted as exhibits to the accompanying certification of Richard M. Zuckerman, Esq., which is related to both this motion and the motion with respect to the claims of CadleRock (cited herein as "Ex. ___").  The certification contains tables describing each exhibit.

made a secured loan relating to) a lease pool from CMC, which Guardian XIV financed with a loan from Huntington.  (Exs. Y – CC.)

For each of these three transactions, lease bonds were issued in Royal's name for the lease pool, naming CMC as Obligee ("Royal Bonds or "Bonds").  (Exs. B, K, S, Z.)  CMC assigned those Bonds to the relevant Guardian/Diversity Entity.  (Exs.  P, W, AA.)[2]  For each transaction, the relevant Guardian/Diversity Entity entered into a Sale and Servicing Agreement ("SSA") with Royal and CMC.  (Exs. F, N, V, CC.)  As security for each loan, the relevant Guardian/Diversity Entity assigned to the bank a security interest in the Bonds (Exs. P, W, AA), and entered into a "Credit and Security Agreement" under which, among other things, it granted the bank a security interest in the SSA, which was included within the definition of "Collateral." (Ex. C, p. 1; Ex. L, p. 1; Ex. T, p. 1; Ex. BB, p. 1.)

After CMC collapsed, actions were commenced against Royal by MB&T (02-16012), by Sky Bank, as successor (as a result of a bank merger) to Mid Am (02-16019), by Second National (02-16022), and by Huntington (02-16018).  Through additional bank mergers, Sky Bank also later succeeded to the interests of MB&T and Second National, so that Sky Bank held the banks' interests in all three lease pools.  Huntington continued to retain its interest in the pool that it had financed.

 On October 26, 2005, Huntington conducted a secured party sale with respect to all of Guardian XIV's interests in the leases, Bonds, and SSAs at issue in 02-16019.  On November 9, 2005, Sky Bank conducted a secured party sale with respect to all of Guardian IX, Diversity II, and Guardian XV's interests in the leases, Bonds, and SSAs at issue in 02-16012, 02-16019, and

---

[2]     Guardian XV has never produced a copy of such an assignment, but claims that it was assigned the Bonds.  Of course, if there was no such assignment, then Guardian XV can make no claims relating to the Bonds, and it is irrelevant what further events transpired.

02-16022.  Each secured party sale was conducted pursuant to a Notice of Disposition of

Collateral.  (Exs. G, Q, X, DD.)  Each Notice of Disposition of Collateral specifically

enumerated the property of the "Debtor" (*i.e.,* Guardian IX, Diversity II, Guardian XV, and

Guardian XIV) that was to be sold.  For example, the Notice of Disposition of Collateral for the

Guardian IX sale stated that the collateral to be sold was:

> ***All of Debtor's right, title, or interest in or to:***
> (a) ***the leases*** listed on Exhibit 1 hereto ("Leases"),
> including, but not limited to, all contract rights under each Lease
> and any and all equipment that is the subject of any and all of the
> Leases;
> * * *
> (e) ***all*** insurance policies, insurance policy endorsements or
> ***surety bonds,*** and all rights thereunder, issued to protect Debtor or
> Sky against losses incurred due to a default under the Leases,
> including, but not limited to, each of the Lease Bonds issued by
> Royal Indemnity Company in respect of each of the Leases and
> more fully described on Exhibit 2 hereto;
> (f) the Purchase and Security Agreement between Debtor
> and Commercial Money Center, Inc., ("CMC") dated November
> 20, 2000, and ***the Sale and Servicing Agreement dated as of***
> ***November 20, 2000 among Debtor, CMC and Royal Indemnity***
> ***Company***; * * * .

(Ex. G (emphasis added).)  The Notices of Disposition of Collateral for the Diversity II,

Guardian XV, and Guardian XIV sales were to the same effect.  (Exs. Q, X, DD.)  Huntington

was the successful purchaser at its secured party sale, and Sky Bank was the successful purchaser

at each of its three secured party sales.  Thus, Huntington took title, as purchaser, to all of

Guardian XIV's  right, title, and interest in the Collateral (including the leases, bonds, and rights

under the SSA) that was sold at its sale, and Sky Bank took title, as purchaser, to all of Guardian

IX, Diversity II, and Guardian XV's right, title, and interest in the Collateral (including the

leases, bonds, and rights under the SSAs) that was sold at its sales.

Sky Bank subsequently assigned certain (but not all) rights in such Collateral to The

Cadle Company, which assigned those rights to CadleRock.  Sky Bank and Royal subsequently

- 4 -

10011035

settled, and in September 2007 Stipulations and Orders were entered dismissing all remaining

claims between Sky Bank and Royal—including all claims that Sky Bank could assert against

Royal by having purchased the Collateral at the secured party sales (with the exception of those

limited rights that Sky Bank assigned to The Cadle Company, CadleRock's affiliate).

(02-16012, Doc. 111; 02-16022, Doc. 90.)

     After its secured party sale, Huntington entered into a settlement agreement with Royal,

and all of Huntington's claims against Royal—including all claims that Huntington could assert

by having purchased the Collateral at the secured party sale—were dismissed.  (02-16018, Doc.

55.)

     In sum, as a result of the secured party sales, the Guardian/Diversity Entities have no

right, title, or interest in any of the leases, Bonds, or SSAs upon which they base their claims

against Royal.

**ARGUMENT**
—
**THIS COURT SHOULD GRANT SUMMARY JUDGMENT DISMISSING ALL OF THE GUARDIAN/DIVERSITY ENTITIES' CLAIMS BECAUSE, AS A RESULT OF THE SECURED PARTY SALES, THE GUARDIAN/DIVERSITY ENTITIES NO LONGER HAVE ANY INTEREST IN THE LEASES, BONDS, OR SALE AND SERVICING AGREEMENTS UPON WHICH THEY BASE ALL OF THEIR CLAIMS**

     All of the Guardian/Diversity Entities' claims are founded upon an assertion that the

Guardian/Diversity Entities have rights in the leases, Bonds, and SSAs.  All of these claims

should be dismissed because, as a result of the secured party sales, the Guardian/Diversity

Entities no longer have any rights in the leases, Bonds, or SSAs.

     In November 2006, the following Guardian/Diversity entities filed the following

Amended Counterclaims against Royal:

- Amended Counterclaim of Guardian XV (02-16012, Doc. 98 ) in CadleRock, assignee of Sky Bank, successor by merger to Metropolitan Bank & Trust Co. v. Royal, 02-16012.

10011035

- Amended Counterclaim of Guardian XIV (02-16018, Doc. 54) in Huntington National Bank v. Royal, 02-16018.

- Amended Counterclaim of Guardian IX (02-16019, Doc. 77) in CadleRock, assignee of Sky Bank v. Royal, 02-16019.

- Amended Counterclaim of Diversity II (02-16022, Doc. 77) in CadleRock, assignee of Sky Bank, successor by merger to Second National Bank of Warren, 02-16022.

The Amended Counterclaims purport to set forth claims for bad faith refusal to pay under the lease Bonds and SSAs (Count I), promissory estoppel, based on Royal's alleged written "promise" to "guarantee Guardian's investment" (Count II) and "breach of contract/intended third party beneficiary" (Count III).

Each of the three counterclaims is premised upon the Guardian/Diversity Entities' having rights in the leases, Bonds, and SSAs.

In ***Count I,*** the Guardian/Diversity Entities premise their claim of "bad faith" upon an allegation that Royal has obligations to the Guardian/Diversity Entities, under the SSAs and Bonds.  Guardian XV thus alleges:

> 45.     Royal, as Servicer ***under the Servicing Agreement,*** is obligated to collect from Royal, ***as issuer of surety Lease Bonds***, the amount not paid to MB&T and to pay that amount to the Bank.
>
> * * *
>
> 47.     Royal has refused and continues to refuse to make payments as required ***under the surety Lease Bonds and under the Servicing Agreement***.

(02-16012, Doc. 98 ¶¶ 45, 47 (emphasis added).)  The other Guardian/Diversity Entities make comparable allegations.  (02-16018, Doc. 54 ¶¶ 45, 47; 02-16019, Doc. 77 ¶¶ 45, 47; 02-16022, Doc. 77 ¶¶ 45, 47.)

In ***Count II,*** the Guardian/Diversity Entities premise their claim that the lease Bonds include a written "promise" to "guarantee Guardian's investment."  Guardian XV thus alleges:

- 6 -

62.     In or about April, 2001, Royal promised Guardian that Royal would guarantee Guardian's investment in CMC and Guardian's financial obligation to MB&T *by means of Royal's issuance of surety Lease Bonds* that would unconditionally pay any defaults in the payment of income streams of individual Leases sold by CMC.

(02-16012, Doc. 98 ¶ 62 (emphasis added).)  The other Guardian/Diversity Entities make comparable allegations.  (02-16018, Doc. 54 ¶ 62; 02-16019, Doc. 77 ¶ 62; 02-16022, Doc. 77 ¶ 62).

In *Count III,* the Guardian/Diversity Entities' claim for "breach of contract and intended third party beneficiary" is, by its terms, for alleged breach of the lease Bonds and SSAs. Guardian XV thus alleges:

83.     As a direct result of *Royal's refusal to honor its obligations under the Lease Bonds and the SSA* to Guardian or to Guardian's lender, Guardian has been damaged in an amount to be proved at trial.

(02-16012, Doc. 98 ¶ 83 (emphasis added).)  The other Guardian/Diversity Entities make comparable  allegations (02-16018, Doc. 54 ¶ 83; 02-16019, Doc. 77 ¶ 83; 02-16022, Doc. 77 ¶ 83).

There can be no claim of "bad faith refusal to pay" under the Bonds if the claimant has no rights under the Bonds.  There can be no claim of "promissory estoppel" based on a promise to pay in the Bonds or SSAs if the claimant has no rights under the Bonds or SSAs.  There can be no claim of breach of contract based on alleged breach of the Bonds and SSAs, if the claimant has no rights in the contract, whether as a party thereto or a third party beneficiary thereof.

These claims all fail, as a matter of law, for the same reason:  The Guardian/Diversity Entities no longer have any interest in the leases, Bonds, or SSAs as the result of secured party sales at which they lost such rights.  Even if there otherwise had been a factual or legal basis for these claims, the Guardian/Diversity Entities can no longer pursue such claims.

As noted above, the Notification of Disposition of Collateral for each secured party sale made clear that, upon the sale, the Guardian/Diversity Entity would no longer have any rights in the leases, Bonds, or SSAs.  Each Notification provided, in part, that the collateral to be sold included (defining the relevant Guardian/Diversity Entity as the "Debtor"):

> **All of Debtor's right, title, or interest in or to**: * * *
> (a) **the leases** … including, but not limited to, all contract rights under each Lease …;* * *
> (e) **all** insurance policies, insurance policy endorsements or **surety bonds,** and all rights thereunder, issued to protect Debtor or [name of bank] against losses incurred due to a default under the Leases, including, but not limited to, each of the Lease Bonds issued by Royal Indemnity Company in respect to each of the Leases and more fully described on Exhibit 2 hereto [a list of the Lease Bonds];
> (f) * * * **the Sale and Servicing Agreement** dated as of [date] among Debtor, CMC, and Royal Indemnity Company.

(emphasis added).

Under Revised Article 9 of the Uniform Commercial Code,

> (a) **A secured party's disposition of collateral after default does all of the following:**
> **(1) Transfers to a transferee for value all of the debtor's rights in the collateral.**
> (2) Discharges the security interest under which the disposition is made.
> (3) Discharges any subordinate security interest or other subordinate lien.

UCC § 9-617, WEST'S ANN.CAL.COMM.CODE § 9617 (emphasis added) (recodifying former UCC § 9-504(4)).  *See also In re Worldwide Wholesale Lumber, Inc.,* 2007 Bankr. LEXIS 1564, at *27-28 (Bankr. S.C., Feb. 12, 2007) (noting that after "a public sale" by secured party, "Debtor and the estate lost any rights to the collateral"; such rights were "terminated by the UCC sale" in accordance with UCC § 9-617).

The secured party sales took away all of the Guardian/Diversity Entities' rights in the leases, Bonds, and SSAs—whether they asserted such rights as original Obligees, Obligees by

assignment, parties to the SSAs, third party beneficiaries of the SSAs, or otherwise.  Those rights were transferred to the "transferees" at the secured party sales—Sky Bank and Huntington. Some of the rights transferred to Sky Bank were later assigned to CadleRock.  The remaining rights transferred to Sky Bank, and all of the rights transferred to Huntington, were released as part of settlements with Royal.  None of those rights remain with the Guardian/Diversity Entities. Whether or not the Guardian/Diversity Entities could have asserted any claims before the secured party sales is academic.  The undisputed fact is that the Guardian/Diversity Entities no longer have any such rights, and their claims should therefore be dismissed on this motion for summary judgment.[3]

CONCLUSION

All of the Guardian/Diversity Entities' claims are based on their having rights in the leases, Bonds, and SSAs.  They have no such rights, because all such rights were extinguished at the secured party sales.  Royal is therefore entitled to summary judgment dismissing all of the Guardian/Diversity Entities' claims.

---

[3]     If any of the Guardian/Diversity Entities' claims could otherwise survive—which they cannot— Royal would be entitled to summary judgment dismissing the bad faith claims for the reasons set forth in Royal's motion relating to CadleRock.

10011035

Dated: February 15, 2008

Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL LLP

/s/ Steven L. Merouse

John I. Grossbart
*jgrossbart@sonnenschein.com*
Steven L. Merouse
*smerouse@sonnenschein.com*
7800 Sears Tower
Chicago, IL  60606
Phone:  (312) 876-8000
Fax:  (312) 876-7934

Michael H. Barr
*mbarr@sonnenschein.com*
Richard M. Zuckerman
*rzuckerman@sonnenschein.com*
1221 Avenue of the Americas - 23rd Floor
New York, NY  10020-1089
Phone:  (212) 768-6700
Fax:  (212) 768-6800

SPIETH, BELL, MCCURDY & NEWELL
Timothy G. Warner
925 Euclid Avenue - Ste. 2000
Cleveland, OH 44115
Phone:  (216) 696-4700
Fax: (216) 696-2706

*Attorneys for Royal Indemnity Company*

10011035

## CERTIFICATE OF SERVICE

I hereby certify that on February 15, 2008, a copy of the foregoing

**ROYAL INDEMNITY COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST THE GUARDIAN/DIVERSITY ENTITIES**

was filed electronically.  Notice of this filing will be sent to all parties by operation of the

Court's electronic filing system.  Parties may access this filing through the Court's system.

Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL LLP

/s/ Steven L. Merouse

John Grossbart
*jgrossbart@sonnenschein.com*
Steven L. Merouse
*smerouse@sonnenschein.com*
7800 Sears Tower
Chicago, IL  60606
Phone:  (312) 876-8000
Fax:  (312) 876-7934

Michael H. Barr
*mbarr@sonnenschein.com*
Richard M. Zuckerman
*rzuckerman@sonnenschein.com*
1221 Avenue of the Americas
24th Floor
New York, NY  10020-1089
Phone:  (212) 398-5213
Fax:  (212) 768-6800

*Attorneys for Royal Indemnity Company*

- 11 -