# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: COMMERCIAL MONEY | ) | CASE NO.    1:02cv16000 (MDL Docket) |
| CENTER, INC., EQUIPMENT | ) | |
| LEASE LITIGATION | ) | JUDGE KATHLEEN M. O'MALLEY |
| | ) | |
| | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| | ) | **MEMORANDUM OPINION & ORDER** |
| | ) | |

On October 18, 2007, four of the sureties in this multi-district litigation ("MDL"),

SafeCo Insurance Company of America ("SafeCo"), RLI Insurance Company ("RLI"), Royal

Indemnity Company ("Royal") and American Motorists Insurance Company ("AMICO")

(collectively, "the Sureties"), filed a motion for a protective order (Doc. No. 2126) in accordance

with this Court's October 2, 2007 Order (Doc. No. 2120). The motion relates to a discovery

request from four banks, hereinafter referred to as the SafeCo Claimant Banks,[1] to SafeCo and its

forensic accounting expert, Michael R. Huhn, C.P.A. ("Huhn"). The SafeCo Claimant Banks

requested SafeCo and Huhn to "produce all documents that Huhn received, obtained, generated,

reviewed, considered and/or relied upon in connection with his retention as SafeCo's forensic

accounting expert." (*See* 02-16000, Doc. No. 2118.)[2] SafeCo has withheld production of

---

[1]The four SafeCo Claimant Banks are J.P. Morgan Chase Bank, N.A. successor to Bank One ("Chase"), Netbank, FSB ("Netbank"), The Provident Bank ("Provident"), and CadleRock Joint Venture, L.P. ("CadleRock).

[2]Unless otherwise noted, all document numbers refer to the docket in case number 1:02-cv-16000.

certain documents on the basis of privileges being asserted by it, as well as by the three other sureties. For the reasons set forth below, the Sureties' motion for a protective order (Doc. No. 2126) is **DENIED**.

The Sureties must produce all the documents withheld and identified on the privilege log immediately.

## I. BACKGROUND

In February 2002, each of the Sureties filed lawsuits against Commercial Money Center ("CMC") and related parties in the Southern District of California. (*See* Doc. No. 2126 at 1.) At that time, RLI, Royal, and AMICO obtained temporary restraining orders freezing CMC's bank accounts and ordering CMC to turn over its books and records for audit. (*Id*. at 1-2.) CMC subsequently entered into a stipulated restraining order with SafeCo to the same effect. (*Id*.)

On or about February 1, 2002, RLI retained Huhn as a consultant to conduct an investigation of CMC's financial records. (Doc. No. 2126-2, Huhn Decl. ¶ 2.) Huhn was retained in a similar consultative capacity by Royal and AMICO on or about February 6, 2002 and by SafeCo on or about February 13, 2002. (*Id*.) According to Huhn, he began an audit of the lease files and accounting records of CMC and its subsidiary, Commercial Servicing Center ("CSC"), but was unable to complete it because CMC withheld documents. (*Id*.) When the Sureties returned to court to enforce their discovery rights, Huhn "provided advice to the Sureties, spoke or met with CMC principals and managers in an effort to understand and locate the documents needed, helped organize the documents produced and supplied factual declarations to the Sureties as needed." (*Id*.)

2

In 2002, CMC filed for bankruptcy and "CSC abandoned most of the files to the Sureties." (*Id.* ¶ 3.) According to Huhn, "for a time, [his] role was primarily to assist the Sureties in organizing the documents." *(Id.)* The Sureties "retained outside companies to service the leases," and as those companies undertook the task of determining "which leases were paying and which were not," Huhn was not asked by any of the Sureties to complete the audit of the lease files. *(Id.)*

On October 25, 2002, after a number of banks, including the SafeCo Claimant Banks, filed suits against the Sureties in various federal courts, all of the CMC-related suits were transferred to this Court by order of the Judicial Panel on Multidistrict Litigation (Doc. No. 1). The cases have been coordinated by the Court for pretrial purposes. (Doc. No. 2).

Over the course of litigation, Huhn continued to provide consulting services to each of the Sureties. In April 2002, at SafeCo's request, Huhn calculated the default rate on CMC lease pools pre-dating SafeCo's involvement, which Huhn understood to have begun in June 1999. (Huhn Decl. ¶ 4.) According to Huhn, he was able to make his calculation from "a limited number of documents," and he provided the information to counsel for SafeCo. (*Id.*)

From May 2002 forward, at the direction of the individual Sureties, Huhn "performed discrete forensic accounting analysis assignments related to the individual Sureties." (Huhn Decl. ¶ 5.) Huhn did not keep, and was not directed to keep, separate files for the work he performed for the various Sureties. (Huhn Decl. ¶ 14.)

According to the declaration of counsel for AMICO, Ronald W. Hopkins, prior to the filing of the actions against CMC in February 2002, counsel for the Sureties agreed that any attorney-client, work-product, and other privileged information shared between them would be

confidential.  (Doc. No. 2126-4, Hopkins Decl. ¶ 3.)   On May 8, 2002, the Sureties

memorialized the oral agreement in a document  identified as the "Joint Information Sharing

Agreement."  (*Id*. at ¶ 4.)

On October 10, 2006, SafeCo designated Huhn as a testifying expert.  (02-16000, Doc.

No. 1869.)   None of the other Sureties ("non-SafeCo Sureties") have designated Huhn as such.

SafeCo produced Huhn's expert report on January 4, 2007.  (Doc. No. 2126, Ex. B.)  Huhn's

report provides his opinions on the default rate of CMC lease pools prior to SafeCo's

involvement, the default rate on lease pools during SafeCo's involvement, and the lack of

payments on lease pools involving lessee Shandoro Ventures, Inc. or Medquick Supply, Inc.  (*Id*.

at 4-5.)   It also provides Huhn's "financial statement observations."  (*Id*. at 5.)

On August 30, 2007, the SafeCo Claimant Banks requested SafeCo to produce all

documents that Huhn considered in connection with his retention as SafeCo's forensic

accounting expert.  (Doc. No. 2129, Ex. 1.)  SafeCo produced some documents from Huhn's file,

but withheld others on the ground that they fall outside the scope of Federal Rule of Civil

Procedure 26(a)(2)(B) and are privileged and confidential.

After being notified of the discovery dispute, the Court held a telephone conference on

October 2, 2007.  During the conference, counsel informed the Court that some of the documents

originally withheld have been produced, and that the non-SafeCo Sureties would permit SafeCo

to produce a number of other documents subject to an agreed-upon protective order.  However,

the Sureties declined to produce a group of documents based on their assertion of the attorney-

client and work-product privileges.  As to these documents, the Court ordered SafeCo to file a

motion for a protective order and a privilege log.  (Doc. No. 2120.)

On October 18, 2007, the Sureties filed a motion for a protective order with an attached privilege log identifying 184 withheld documents. (Doc. No. 2126.) According to the Sureties, the majority of these documents were "created, reviewed, or received by Huhn in his consulting capacity to the non-SafeCo sureties," and "approximately five documents [were] generated by Huhn in his consulting capacity to SafeCo." (Doc. No. 2135 at 2.) The Sureties maintain that the documents are privileged under the attorney-client and work-product privileges, and, in any event, do not relate to the subject matter of Huhn's report, and thus, are not subject to discovery under Rule 26(a)(2)(B). The motion has been fully briefed and is ready for review.

## II. DISCUSSION

Central to the Sureties arguments is their contention that the withheld documents were reviewed or generated by Huhn in his capacity as a consultant for all the Sureties, and that only SafeCo has named Huhn as a testifying expert. Based on the Sureties' brief, the documents can be divided into three broad categories. The first category includes the majority of withheld documents. The Sureties collectively maintain that these documents were reviewed or generated by Huhn in his role as a consultant for the non-SafeCo Sureties and are privileged under the attorney-client privilege and/or the work product doctrine. In addition, they maintain that these documents were not considered by Huhn in forming his opinions and not related to the subject matter of his opinions. All but six of the withheld documents fall into this category. The second category includes five documents (Document Numbers SICA (Hunn) 7197-7198; 7199-7209; 7562-7564). SafeCo argues that these documents were considered by Huhn in his role as a consultant for SafeCo, and therefore, constitute work product not subject to disclosure. SafeCo maintains that these documents are unrelated to Huhn's expert opinions. The third category

includes only one document.  The Sureties seek to withhold a letter on the ground that it was in

Huhn's file only because Huhn was inadvertently "copied" on it.  The SafeCo Claimant Banks

argue that regardless of whether the documents were given to or created by Huhn in his role as a

consultant for SafeCo or for the non-SafeCo Sureties, both Rule 26(a)(2)(B) and the Agreed

Expert Deposition Protocol ("Agreed Protocol") (Doc. No. 2129, Ex. 12) require disclosure of

the documents.  The Court will analyze the Sureties' obligation to disclose the materials in

Huhn's expert files under both the Agreed Protocol and Rule 26.

**A.  The Agreed Protocol**

Paragraph six of the Agreed Protocol provides as follows:

> <u>Expert Files</u>.  *Expert files shall be produced to the opposing party for whom the expert has directed his opinions to* by March 19, 2007, with copies of same to the document depository.  The expert's file shall be divided into two basic subsets: (A) a list of any "Case Materials" in the expert's file.  "Case Materials" may include: (i) documents produced in the MDL . . .; (ii) depositions in the MDL . . .; (iii) pleadings in the MDL . . .; and (iv) correspondence exchanged in the MDL . . .;  (B) "Non-Case Materials:" *anything else that the expert has reviewed, was provided, has in his or her files* [sic]*, including but not limited to expert notes, correspondence sent or received by the expert, draft reports, invoices, and bills.  These shall be produced* by the above date in electronic format . . . ."

(Doc. No. 2129, Ex. 12.) (emphasis added.)  The language of the Agreed Protocol is very broad.

It provides, without qualification, that "[e]xpert files shall be produced to the opposing party for

whom the expert has directed his opinions to."  It defines non-case materials that must be

produced as "anything else . . . that the expert has in his or her files."  There is no requirement

that the materials relate to the expert opinions or that the expert considered or relied on the

materials in forming his or her opinions.

All of the documents identified in the privilege log were in Huhn's expert file.

Accordingly, under the terms of the Agreed Protocol, all of the documents must be produced. Although the Court concludes that all of the documents must be produced under the Agreed Protocol, the Court will nonetheless analyze the documents under Rule 26, as it concludes that the vast majority of the documents must be produced under Rule 26 as well.

## B.  Rule 26(a)(2)(B)

Rule 26(a)(2)(B) provides that when an expert is designated as a testifying witness, the proponent of the expert must disclose "the data or other information considered by the witness in forming [the witness'] opinions." Fed. R. Civ. P. 26(a)(2)(B).  The Court will organize its analysis based on the three categories of documents identified by the Sureties, and as to each category, will determine whether the documents must be produced  under Rule 26(a)(2)(B).

### 1.  Documents Reviewed or Generated by Huhn in His Role As Consultant For the Non-SafeCo Sureties

The Sureties make three arguments for withholding these documents.  First, they argue that the documents are confidential and privileged under the common interest doctrine.  They further argue that Huhn did not consider the materials in forming his opinions.  Finally and alternatively, they argue that even assuming Huhn considered the materials, they are unrelated to the subject matter of his opinions.  For the following reasons, each of these arguments is rejected.

### a.  Attorney-Client Privilege, Work Product Doctrine, and Common Interest Doctrine

When a party designates an expert as a testifying witness, the party must disclose the identity of the expert, and, among other things, a written report setting forth a complete statement of the expert's opinions and "the data or other information considered by the witness in forming the opinions." Fed. R. Civ. P. 26(a)(2)(B).  A majority of courts, including the Sixth

Circuit, hold that even otherwise protected work product and attorney-client communications must be disclosed if considered by the expert in forming his or her opinions. *See, e.g.*, *Reg'l Airport Auth. of Louisville v. LFG, LLC*, 460 F.3d 697, 717 (6th Cir. 2006); *In re Pioneer Hi-Bred Int'l, Inc.*, 238 F.3d 1370, 1375 (Fed. Cir. 2001); *Johnson v. Gmeinder*, 191 F.R.D. 638, 644 (D. Kan. 2000); *Karn v. Ingersoll-Rand*, 168 F.R.D. 633, 637-41 (N. D. Ind. 1996) (cited by the Sixth Circuit and other circuit courts as the majority view). This view is consistent with the Advisory Committee Notes to the 1993 Amendments to Rule 26: "[L]itigants should no longer be able to argue that materials furnished to their experts to be used in forming their opinions– whether or not ultimately relied upon by the expert– are privileged or otherwise protected from disclosure when such persons are testifying or being deposed." Fed. R. Civ. P. 26(a), Adv. Comm. Notes to 1993 Amend. In *Reg'l Airport Auth.*, the Sixth Circuit adopted the majority view, holding that "Rule 26 creates a bright-line rule mandating disclosure of all documents, including attorney opinion work product, given to testifying experts." *Reg'l Airport Auth.*, 460 F.3d at 717. As another court has put it, Rule 26 "trumps any assertion of work product or privilege." *Karn*, 168 F.R.D. at 639.

While the Sureties appear to concede that Rule 26(a)(2)(B) mandates disclosure of all materials considered by a testifying expert, even materials that would otherwise be privileged, they assert that SafeCo's designation of Huhn as a testifying expert cannot waive the privileges of the non-SafeCo Sureties as to documents reviewed or generated by Huhn in his role as a consultant for the non-SafeCo Sureties. In support of this assertion, they invoke the common interest doctrine and the related rule that waiver of a privilege by one member of a common interest group does not operate as a waiver as to the other members. (Doc. No. 2126 at 9.)

An exception to the general rule that disclosure of confidential or privileged information to a third party waives any applicable privilege, the common interest doctrine provides that "attorneys facing a common litigation opponent may exchange privileged communications and attorney work product . . . without waiving either privilege." *Schachar v. Am. Acad. of Ophthalmology, Inc.*, 106 F. R.D. 187, 191 (N.D. Ill. 1985). Although the doctrine, sometimes referred to as the "joint defense privilege," first arose in the context of criminal co-defendants whose attorneys shared information to devise a strategy for their defense, it has been extended to apply to plaintiffs and defendants in civil cases, as well as to potential co-parties to prospective litigation. *In re Grand Jury Subpoenas,* 89-3 & 89-4, 902 F.2d 244, 248 (4th Cir. 1990) (internal citations omitted). The common interest doctrine is an extension of the attorney-client privilege and work product doctrine. It is not an independent source of privilege or confidentiality. *Bitler Inv. Venture II, LLC v. Marathon Ashland Petro. LLC*, No. 1:04-cv-477, 2007 WL 465444 *2 (N.D. Ind. Feb. 2, 2007). If a communication or document is not otherwise protected by the attorney-client privilege or work product doctrine, the common interest doctrine has no application.

For purposes of this analysis, the Court will assume *arguendo* that the withheld documents would be otherwise privileged under the attorney-client privilege and/or the work product doctrine. The Sureties rely on case-law holding that where documents are shared by members of a common interest group, an unauthorized waiver of privilege by one member of the group does not operate as a waiver as to others. *See In re Grand Jury Subpoenas,* 89-3 & 89-4, 902 F.2d at 248; *In re Megan-Racine Associates, Inc.*, 189 B.R. 562, 572 (Bkrtcy. N.D.N.Y. 1995) (citing *Matter of Grand Jury Subpoena,* 406 F.Supp. at 381 (S.D.N.Y. 1975)) ("The joint-

defense privilege cannot be waived unless all the parties consent or where the parties become adverse litigants.")  They argue that because the non-SafeCo Sureties did not consent to SafeCo's designation of Huhn as a testifying witness, their privileges have not been waived.  Thus, the non-SafeCo sureties ask this Court to find an exception to the requirement of Rule 26 that a testifying expert disclose all information and data considered in forming the expert's opinion.

The Sureties' reliance on the common interest doctrine is misplaced.  "Rule 26 creates a bright-line rule mandating disclosure of *all* documents" provided to testifying experts, including work product and communications protected by the attorney-client privilege.  *Reg'l Airport Auth.,* 460 F.3d at 715.  "Rule 26(a)(2)(B) 'trumps' any assertion of work product or privilege."  *Bitler*, 2007 WL 465444, at *3 (quoting *Karn*, 168 F.R.D at 639).   Rule 26 contains no exception for documents provided to an expert by third parties.  Once an expert is designated, the expert must disclose all information and data considered in forming the expert's opinions.  The Sixth Circuit requires that "*all* documents provided to a testifying expert" be disclosed."  *Reg'l Airport Auth.,* 460 F.3d at 715.  Moreover, in light of the purpose behind the disclosure requirement – to enable the opposing party to challenge the expert's opinions at trial – from whom the expert obtained the documents is simply not relevant.

Thus, in the context of Rule 26 disclosures, the withheld documents are not protected by the attorney-client privilege or work product doctrine.  As the common interest doctrine is merely an extension of the attorney-client privilege and work product doctrine, where these privileges do not protect a document from disclosure, the common interest doctrine has no application.  Because, for Rule 26 purposes, Huhn is required to produce the documents in his

expert file, they are not protected by the attorney-client privilege or the work product doctrine in the first place. Thus, the common interest doctrine is of no use to the Sureties. *See Bitler*, 2007 WL 465444, at *3 (applying the same reasoning and reaching the same conclusion on analogous facts). Accordingly, the Sureties' argument that the withheld documents are protected by the common interest doctrine is rejected.

Finally, for the reasons discussed at the conclusion of Section 1, the Court is not persuaded by the Sureties appeal to a "fairness" doctrine. *See infra* pp. 18-19.

### b. Whether Huhn Considered the Documents

Next, the Sureties argue that even assuming the attorney-client privilege or work product doctrine does not apply to these documents, they are not subject to disclosure under Rule 26(a)(2)(B) because Huhn did not "consider" them in forming his opinions. For Rule 26 purposes, a testifying expert has "considered" data or information if the expert "has read or reviewed the privileged materials before or in connection with formulating his or her opinion." *Western Resources, Inc. v. Union Pac. R.R. Co.*, No. 00-2043-CM, 2002 WL 181494, *9 (D. Kan. Jan. 31, 2002) (quoting *Johnson v, Gmeinder*, 191 F.R.D. at 647). *See also Euclid Chem. Co. v. Vector Corrosion Techs., Inc.*, No. 1:05 CV 80, 2007 WL 1560277 at *4 (N.D. Ohio May 29, 2007); *Monsanto*, 214 F.R.D. 545, 547 (E.D. Missouri 2002). Courts have declined to adopt a definition that would necessitate an inquiry into the "subjective mental processes" of the testifying expert. *Bitler*, 2007 WL 465444 at *6 (quoting *Johnson v. Gmeinder*, 191 F.R.D. 638, 349 (D. Kansas 2000). Materials reviewed or generated by an expert must be disclosed, "regardless of whether the expert[] actually rel[ies] on the material as a basis for [his or her] opinions." *SEC v. Reyes*, No. C 06-04435 CRB, 2007 WL 963422 *1 (N.D. Cal. March 30,

11

2007) (citing *Reg'l Airport Auth.*, 460 F.3d at 715; *In re Pioneer*, 238 F.3d at 1375; *U.S. v. City of Torrance*, 163 F.R.D. 590, 593-94 (C.D. Cal. 1995)). Thus, experts have been deemed to have considered materials even when they have testified, under oath, that they did not consider the materials in forming their opinions. *See, e.g.*, *Euclid Chem. Co.*, 2007 WL 1560277 at *3; *Monsanto*, 214 F.R.D. at 547; *Western Resources, Inc.*, 2002 WL 181494 at *9.

The Sureties do not dispute that the withheld documents were contained in Huhn's file and, as such, were either reviewed or generated by him. They also do not dispute that Huhn "read or reviewed the materials *before* . . . formulating his opinion." Nonetheless, they contend that "[i]n compliance with Rule 26, Huhn's report provides a list of documents 'relied upon to produce' his report." (Doc. No. 2135 at 4.) This contention is premised on an erroneous definition of "considered." Huhn need not have relied upon the documents to have considered them. As long as Huhn "read or reviewed the privileged materials *before* or in connection with formulating [his] opinions," he considered them for Rule 26 purposes. The Sureties do not contest that Huhn read or reviewed the materials before he formed his opinions, and the Court has no reason to doubt that he did so. Therefore, for Rule 26 purposes, the materials were considered by Huhn.

### c. Whether the Documents Are Unrelated to the Subject Matter of Huhn's Expert Report

The Sureties argue, alternatively, that even if Huhn considered the documents, the documents cannot be disclosed because they were reviewed or generated by Huhn in his role as consultant for the non-SafeCo Sureties and "in no way relate" to the subject matter of the opinions expressed in Huhn's expert report for SafeCo. (Doc. No. 2126-2 at 6.) Rule 26(b)(4)(B) provides that a litigation consultant is "generally immune from discovery." Fed. R.

Civ. P. 26(b)(4)(B).  However, when an expert serves as both a litigation consultant and a testifying witness, an issue arises as to whether the party relinquishes the privilege that would otherwise attach to the litigation consultant's work.  *Id.*  Courts that have considered this issue have consistently concluded  "that an expert's proponent still may assert a privilege over such materials, but only over those materials generated or considered *uniquely* in the expert's role as consultant."  *Reyes*, 2007 WL 963422 at *2  (emphasis added); *Monsanto*, 214 F.R.D. 545, 547; *Western Resources, Inc.*, 2002 WL 181494 at *9; *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co.*, 171 F.R.D. 57, 62 (S.D.N.Y. 1997).

Courts have further concluded that in light of the purpose behind Rule 26(a)(2)(B)'s disclosure requirement – to allow parties to reveal weaknesses in expert testimony offered by an adversary, "the scope of the privilege must be narrowly construed against the expert's proponent."  *Reyes*, 2007 WL 963422 at *2 (citing *City of Torrance*, 163 F.R.D. at 593).  Thus, "documents having no relation to the expert's role as [a witness] need not be produced but . . . any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking discovery.  *B.F.C. Oil Refining Co.*, 171 F.R.D. at 62.  If the line between consultant and witness is blurred, the dispute must be resolved in favor of the party seeking discovery.  The Court will apply this standard to the documents claimed by the Sureties to have been reviewed or generated by Huhn in his capacity as a consultant for the non-Safeco Sureties.

As the Sureties point out, each of the cases cited above involved an expert who worked as consultant and witness for the same party, whereas Huhn worked as a consultant for parties other than SafeCo, the party for whom he will testify; there appears to be no case directly on

point.  However, the rule that applies where an expert acts as a consultant and witness for the same party should apply to the circumstances of this case.  SafeCo and the other Sureties aligned their interests for the limited purpose of obtaining Huhn's consulting services.  They shared Huhn as a consultant, and entered into an information sharing agreement with regard to his consulting work.  Huhn testified that he "provided services and information to all the Sureties jointly and separately."  (Huhn Decl. ¶¶ 2-3.)  Moreover, Huhn was not asked to keep, and did not keep, separate files for the work he did for each Surety.  Thus, under these circumstances, it is reasonable to conclude that Huhn's consulting work was performed for all the Sureties jointly.  This being so, *each document* Huhn reviewed or generated in his role as a consultant, was reviewed or generated in his role as a consultant for SafeCo, as well as for each of the other Sureties.  If the documents are related to the subject matter of Huhn's expert report or if there is any doubt as to whether they are related, the documents must be produced.

Before applying this standard, the Court must identify the subject matter of Huhn's expert report.  The Sureties' characterization of the subject matter is too narrow.  Their opening brief identifies four areas to which Huhn's opinions relate: (1) the default rate of CMC's lease pool prior to SafeCo's involvement; (2)  the default rate of CMC's lease pool during SafeCo's involvement; (3) the lack of payments on pools involving lessee Med-Quik/Shandoro from Med-Quik/Shandoro; and (4) the analysis of the CMC financial statements.  (Doc. No. 2126-2 at 6.)  Their reply brief significantly narrows the scope of Huhn's opinions, particularly the last category, "the analysis of CMC financial statements."  It states that Huhn's opinions pertain to "default rates on lease pools and the facial content of CMC's financial statements."  Further, the reply brief apparently contradicts the statement in the opening brief that Huhn's opinions relate

to "*the analysis* of the CMC financial statements," as it states that "Huhn provides very limited

'observations' – *without analysis* or comment– on certain facts reported on the face of CMC

financial statements for the years 1998 and 1999." (Doc. No. 2135 at 2.) The Sureties do not

explain the reason for this contradiction, and there is nothing in the report indicating that Huhn's

"observations" or analysis was limited to the "facial content" of the financial statements. Thus,

the Court rejects the Sureties' contention that Huhn's report relates only to the facial content of

the financial statements. The Court presumes that any documents that appear to relate in any

way to the financial statements are related to the subject matter of Huhn's report. Any ambiguity

will be resolved in favor of the Banks. As the Sureties have not explained with sufficient

specificity why a particular document or group of documents that appear to relate to the financial

statements do not pertain to the matters expressed in Huhn's report, the documents must be

disclosed.

Further, Section I of Huhn's report, labeled "introduction and background," sets forth

several paragraphs of factual information, all of which is part of the subject matter of Huhn's

report. In this section, Huhn summarizes the events that gave rise to the instant lawsuits and

explains the purpose for which Huhn was originally hired by SafeCo and the other Sureties – to

investigate CMC's accounting records, and determine "the status of lease payments, receivables,

and payment delinquencies." It also provides a description of some of the work Huhn had done,

such as examining individual lease files, reviewing bank account statements, and interviewing

employees of CMC as well as purported lessees. The background section describes the difficulty

the Sureties had in obtaining accounting records from CMC and the effect of subsequent court

orders on the Sureties' acquisition of those records. Each of these matters are stated as facts in

Huhn's reports, and although they may be "background" material, they are part of the subject matter of Huhn's report.  Thus, any documents pertaining to these diverse matters are presumed to be related to the subject matter of Huhn's report.

The Sureties have not demonstrated that the documents identified in their privilege log were reviewed or generated by Huhn uniquely in his role as consultant for the non-SafeCo Sureties and have no relation to the subject matter of Huhn's expert report for SafeCo.  Contrary to the Sureties suggestion, the SafeCo Claimant Banks do not bear the burden of establishing that the documents are related to the subject matter of Huhn's report.[3]  It is well-settled that the party asserting a privilege bears the burden of establishing it.  *In re Columbia/HCA Healthcare Corp. Billing Practices Litig,*, 293 F.3d 289 (6th Cir. 2002).  The Sureties have failed to do so.  As any doubt must be resolved in favor of the party seeking discovery, the documents must be disclosed.

In support of their burden, the Sureties rely primarily on Huhn's affidavit "stating that the Consulting Documents do not relate to the subject matter of his report."  (Doc. No. 2135 at 4-5.)  An expert's sworn statement that certain materials were not considered in forming the expert's opinions or do not relate to the subject matter of his or her report is "hardly convincing."  *Bitler*, 2007 WL 465444 at *5.  As the *Bitler* court noted, "such an assertion by an expert witness could become too easy a dodge."  *Id.* (quoting *Simon Prop. Group L.P. v. mySimon, Inc.*, 194 F.R.D. 644, 549-50).  *See also United States v. City of Torrance*, 163 F.R.D. 590, 593 (C.D. Cal. 1995).  Moreover, as discussed above, an expert may be deemed to have considered materials "even if

---

[3]In their reply brief, the Sureties conclude that "[t]he Banks have failed to demonstrate that any documents on the log relate to the subject matter of Huhn's report."  (Doc. No. 2129 at 9.)  The SafeCo Claimant Banks do not bear that burden.

he testifies under oath that he didn't actually consider the disputed materials in forming his opinions." *Western Resources*, 2002 WL 181494 at *9.

Aside from Huhn's affidavit, the Sureties rely on their privilege log to establish that the documents are unrelated to the subject matter of Huhn's report. However, their privilege log fails to state the subject matter of the withheld documents with the level of specificity necessary to enable the Court to make a reasoned decision. The Sureties had an opportunity to explain their log in more detail in their briefs, but did not. Rather than explaining why the documents do not relate to the subject matter of Huhn's report, they merely assert, in a conclusory fashion, that the documents pertain to (1) "payments made by CMC to certain vendors," (2) "analysis of non-Safeco lease pools unrelated to default rates," (3) "notes related to certain depositions attended by Huhn," (4) "analysis of CMC cash transactions," (5) "issues related to CMC's document storage facility and CMC document review, and the like." (Doc. No. 2135 at 5.) These descriptions are too vague to enable the Court to conclude unequivocally that the documents do not relate to the subject matter of Huhn's report. Moreover, some of these matters do appear to relate to the subject matter of Huhn's report.

Documents related to "payments made to CMC vendors" and "analysis of CMC cash transactions" both appear to relate to CMC's financial statements, a subject matter of Huhn's report. The Sureties have made no effort to explain why the documents are not related. They have, therefore, not met their burden. These documents must be produced.

As to "the analysis of non-SafeCo lease pools unrelated to default rates," the Sureties have failed to articulate why only SafeCo lease pools related to default rates fall within the subject matter of Huhn's report. The Sureties have consistently claimed that Huhn's report

pertains to the "default rates of CMC lease pools" or the "default rates and delinquency profile of CMC's lease pools" prior to and during SafeCo's involvement.  There is no restriction to SafeCo lease pools in these statements.  More significantly, Huhn has testified that his calculation of delinquency rates includes analyses of leases in pools bonded by Sureties other than SafeCo. (*See* Doc. No. 2129, Ex. 8, Huhn Depo. at 397-400.)  The Sureties fail to explain their apparent contradiction of Huhn's testimony.  They also fail to articulate their reasons for so narrowly interpreting the subject matter of Huhn's report.  Accordingly, the Sureties have not established that documents in this category are unrelated to Huhn's opinions.  The documents must, therefore, be produced.

The remaining two categories identified by the Sureties, "notes related to certain depositions attended by Huhn" and "issues related to CMC's document storage facility and CMC document review," are both too vague.  The Court is unable to conclude from these very general descriptions that these documents do not relate to the subject matter of Huhn's report.  As to the deposition notes, the Sureties fail to indicate the subject matter of the depositions.  Without this relevant information, the Court is unable to conclude that the notes do not relate to matters in Huhn's report.  Similarly, the Sureties fail to identify the "issues" related to the storage facility and document review.  Without that information, the Court is unable to determine that the documents do not pertain to any of the matters expressed in Huhn's reports.  With these vague descriptions and nothing more, the Sureties have simply not satisfied the burden of establishing that the documents are unrelated to the subject matter of Huhn's report.

Before addressing the next category of documents, the Court must address the Sureties' repeated reference to the fact that "only SafeCo designated Huhn as a testifying expert," the

implication being that it would not be fair to require the Sureties to produce documents related to Huhn's consulting work for the other Sureties. In invoking a "fairness" doctrine, the Sureties are asking the Court to balance the interests of the Sureties in withholding the documents against the interests of the SafeCo Claimant Banks in obtaining them. Even of the Court considered the equities in this case, the Sureties would not prevail. The Sureties created the situation in which they now find themselves. Moreover, the situation was forseeable and the Sureties could have taken steps to avoid it, but did not. At the time the Sureties entered into their Joint Information Sharing Agreement, they could have anticipated that one of them might later decide to designate Huhn as a testifying expert. They could have discussed the possibility and addressed it in the terms of the agreement so as to avoid the current situation. They also could have required Huhn to maintain separate files for the work he did for each of the Sureties individually, as well as a file for the work he did for the Sureties jointly. They did neither. Whatever hardship results from the instant circumstance, it is more fairly born by the parties who created the circumstance than by the SafeCo Claimant Banks, who are entitled to the information under Rule 26.

As the SafeCo Claimant Banks are entitled to the documents under Rule 26 and the Agreed Protocol, the only question is whether the documents should be produced or whether SafeCo should be precluded from designating Huhn as an expert. Because the Sureties created the current situation, a situation that was forseeable and preventable, the documents must be produced.

### 2. Five Documents Reviewed by Huhn In His Role As Consultant for SafeCo

SafeCo has identified five documents (SICA 7197-7198; 7199-7209; 7562-7564) on the supplementary privilege log that it claims were created by Huhn in his role as a consultant for

SafeCo and have nothing to do with any of the matters expressed in his expert report. According to SafeCo, the documents relate to Huhn's analysis of Netbank's Securities and Exchange Commission ("SEC") filings. The Court agrees that these documents are unrelated to the subject matter of Huhn's report under Rule 26. Huhn's report deals with the default rate of lease pools, CMC's financial statement, and the background information identified above. Netbank's SEC filings do not relate to any of those subjects. Thus, the documents need not be disclosed under Rule 26.

However, Rule 26 is not the only provision governing disclosure of expert files in this case. The Agreed Protocol unqualifiedly requires Huhn's entire expert file to be produced. The Sureties make no argument addressing the requirements of the Agreed Protocol. As the documents were in Huhn's expert file, they must be produced pursuant to the Agreed Protocol.

### 3. Inadvertently Communicated Letter

The Sureties seek to withhold one document (SICA 6846-47) on the ground that it is an attorney-client privileged communication that was inadvertently provided to Huhn. According to the Sureties, the document "is a letter from Michael Lowe (lead counsel for SAFECO in the CMC MDL litigation) to Russel Bogue (bankruptcy counsel for SAFECO and RLI)." (Doc. No. 2126-2 at 11.) In requesting that the document be protected from disclosure, the Sureties cite no law. As stated above, the Sixth Circuit has held that *all* documents provided to a testifying expert must be disclosed to the opposing party. If the Sureties believe that an applicable exception exists for inadvertently communicated documents, they must make a legal argument to that effect. They have not done so. Accordingly, their argument is deemed waived. *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir.1997) ("[I]ssues adverted to in a perfunctory manner,

unaccompanied by some effort at developed argumentation, are deemed waived.  It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones."); *Meridia Prods. Liab. Litig. v. Abbott Labs.*, No. 04-4175, 2006 U.S. App. LEXIS 11680 (6th Cir. May 11, 2006).  The letter must be produced.

### III. CONCLUSION

All the documents identified in the Sureties' privilege log were part of Huhn's expert file. The Agreed Protocol requires that a testifying expert's entire file be produced to the opposing party.  Accordingly, the Sureties must produce all the documents identified in their privilege log.

For the foregoing reasons, the Sureties' motion for a protective order (Doc. No. 2126) is **DENIED**.  The Sureties shall produce the withheld documents to the SafeCo Claimant Banks immediately.

IT IS SO ORDERED.

s/ *Nancy A. Vecchiarelli*
United States Magistrate Judge

Date: March 4, 2008