**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: COMMERCIAL MONEY ) | CASE NOS. | 1:02cv16000 (MDL Docket) |
| CENTER, INC., EQUIPMENT ) | | 1:02cv16012 |
| LEASE LITIGATION ) | | 1:02cv16019 |
| ) | | 1:02cv16020 |
| ) | | 1:02cv16022 |
| ) | | |
| ) | JUDGE KATHLEEN M. O'MALLEY | |
| ) | | |
| ) | MAGISTRATE JUDGE VECCHIARELLI | |
| ) | | |
| ) | **MEMORANDUM OPINION & ORDER** | |

On February 18, 2008, CadelRock Joint Venture, L.P. ("CadleRock JV") filed a letter informing the Court of a discovery dispute involving CadleRock JV and two sureties, Royal Indemnity Company ("Royal") and SafeCo Insurance Company ("SafeCo") (collectively, "the Sureties"). (Doc. No. 2160.)[1] The dispute concerns CadleRock JV's request that the Sureties pay CadleRock JV's designated expert, Daniel C. Cadle ("Cadle"), a fee for his time spent being deposed by the Sureties.

During a telephone conference held February 22, 2008, the Court ordered counsel to brief the following two issues: (1) whether Cadle is entitled to any compensation from the Sureties for his time spent in deposition, and (2) in the event Cadle is entitled to some compensation, what fee amount constitutes a reasonable fee. In accordance with that order, CadleRock JV filed a motion for payment of expert fees on March 6, 2007. (Doc. No. 2165.) The Sureties filed a

---

[1]Unless otherwise noted, all document numbers refer to the docket of case number 02-cv-16000.

brief in opposition on March 13, 2008 (Doc. No. 2166), and CadleRock JV filed a reply on March 17, 2008 (Doc. No. 2167).

For the reasons set forth below, CadleRock JV's motion for payment of expert fees (Doc. No. 2165) is **DENIED**.

## I. Background

It is undisputed that Cadle is the president and 100% shareholder of CadleRock, Inc. (*See* Doc. No.2165-2, Declaration of Daniel C. Cadle ("Cadle Decl.") ¶ 2.) CadleRock, Inc. is the sole general partner of CadleRock JV. (Cadle Decl. ¶ 3.) CadleRock, Inc. holds a 1% ownership interest in CadleRock JV and Cadle personally holds "about 40% ownership interest" in CadleRock JV "by virtue of [his] various ownership interests in limited partners of [CadleRock JV]." (Cadle Decl. ¶ 4-5.) According to Cadle, about 60-70 % of CadleRock JV is owned by either Cadle or his family members, 6-7 % of CadleRock JV is owned through an employee stock ownership plan, and the remainder is owned by "some friends" of Cadle. (Doc. No. 2165-4, Deposition of Daniel C. Cadle ("Cadle Depo.") at 18, lines 1-16.)

On October 10, 2006, CadleRock JV designated Cadle as its expert witness. (Doc. No. 1882.) According to CadleRock JV, in August or September 2006, acting through its account officer, Jon Gluckner ("Gluckner"), CadleRock JV retained Cadle to provide expert testimony. (Doc. No. 2165-12, CadleRock JV's Brief in Support ("Br. in Supp.") at 2 .) However, CadleRock JV asserts that it is uncertain as to whether the terms of the oral agreement were ever put in writing. (*Id*. at 2-3.) Cadle's expert report contains no statement as to whether Cadle was to be compensated for his role as CadleRock's expert. (*Id*. at 6.)

The Sureties deposed Cadle from May 30, 2007 to May 31, 2007 and again, from August

29, 2007 to August 30, 2007, for a total of 26.5 hours. Cadle was questioned regarding the terms of his alleged retention as an expert witness and the absence from his expert reports of any documents setting forth the compensation, if any, Cadle was to be paid. When Cadle was asked whether he "basically hired himself," he testified that "Jon Gluckner is the account officer responsible for the account, so he hired me with my blessing." (Cadle Depo. at 57-58.) When asked whether there was a fee agreement between Cadle and CadleRock JV, Cadle testified that he thought counsel for CadleRock JV "actually typed [a written agreement] up," and that he, Cadle, "probably" signed it. (Cadle Depo. at 57.) Cadle has testified, more recently, that "the terms of the oral agreement between [Cadle and CadleRock JV] were put in writing, [but that he] cannot locate the writing because it has been lost, misplaced, or destroyed." (Cadle Decl. ¶ 8.) Gluckner has testified that he has "no recollection of whether the terms of [the] arrangement were put in writing." (Doc. No. 2165-3 (Declaration of Jon D. Gluckner ¶ 5.)

The Sureties questioned Cadle regarding whether Cadle had been or was to be compensated by CadleRock JV for his work as an expert witness, and if so, at what rate:

> Q. Are you being paid for the work you've done for CadleRock Joint Venture?
>
> A. Yes, I'm going to be paid, yes.
>
> Q. And what is your hourly rate?
>
> A. If I recall, it was a thousand dollars an hour.
>
> Q. Can you tell me where I would find some indication of that fee?
>
> A. It was probably in the engagement letter or something. I do know that it was at least a thousand dollars an hour.
>
> Q. It could have been more?

| | |
|---|---|
| A. | It could have been more. I'm worth it. |
| Q. | And how much have you billed CadleRock Joint Venture for your work so far in this case? |
| A. | I haven't sent them the bill yet. I gave them the hours, but I haven't typed up a bill yet. |
| Q. | Okay, so you did keep track of the hours you spent? |
| A. | I told either Joe or my secretary, Jo Beth, the number of hours, so they've got it somewhere. |
| Q. | Okay. Is there a reason that information wasn't produced to SafeCo in this case? |
| A. | No, no reason at all. |
| Q. | How did you arrive at the thousand or more dollars an hour for your fee? |
| A. | I earn more than a thousand dollars an hour, so if I take time away from my company, or companies shorting them by that amount. And the other thing is, some of the experts that were hired, they were charging five, six, seven, 800 an hour and I read their reports and I know darn well I'm better than they are. |

(Cadle Depo. at 58-59). CadleRock JV concedes that Cadle kept no record of the amount of time he spent acting as CadleRock's expert. (Br. in Supp. at 3.) According to Cadle, he thought he spent forty hours acting as an expert, but that figure was derived from his memory alone. (Cadle Depo at 681-83.) Nonetheless, Cadle eventually billed CadleRock JV $40,000 for forty hours of work in preparing the expert reports.

Attached to CadleRock JV's motion is what appears to be a September 26, 2007 invoice from Cadle to CadleRock JV for $40,000 and a check, dated November 15, 2007, issued by an entity named The Cadle Company to Cadle for $40,000.[2] According to Cadle "[i]t is ordinary

---

[2] Cadle's signature appears on both the face of the check and the back of the check.

procedure for The Cadle Company to issue checks on behalf of CadleRock [JV]. CadleRock [JV] reimburses the Cadle Company for all checks issued on its behalf." (Cadle Decl. ¶ 16.)

Prior to and during the telephone conference with the Court held February 18, 2008, CadleRock JV requested that the Sureties pay Cadle $1,000 per hour for each of the 26.5 hours he spent being deposed, a total of $26,500. In its motion for payment of fees, however, CadleRock JV concedes that the $1,000 per hour Cadle originally sought "is unreasonable." It submits that "$500 per hour is reasonable," and now seeks $13,250 from the Sureties.[3]

## II. Analysis

CadleRock contends that the Sureties are required to compensate Cadle for his deposition time under Federal Rule of Civil Procedure 26 ("Rule 26") as well as under the terms of the Agreed Expert Deposition Protocol ("Agreed Protocol").[4] The Court will first address CadleRock's argument based on the Agreed Protocol.

### A. The Agreed Protocol

Paragraph 4 of the Agreed Protocol requires that the party seeking the deposition of another party's expert pay the costs of the expert's deposition time. (Doc. No. 2160-2, Ex. A.) It provides, in relevant part, as follows:

> 4. <u>Costs of Expert Witnesses</u>. Costs of expert witnesses are to be paid by the party(ies) seeking the deposition. The requesting party(ies) will only be responsible for the time the expert spends testifying and not for his/her travel, preparation, or other related costs.

---

[3] CadleRock JV offers no explanation as to why it would have originally agreed to a fee it now concedes is unreasonable.

[4] All parties to this multi-district litigation, by and through liaison counsel, entered into the Agreed Protocol on March 15, 2007. (Doc. No. 2160.)

(*Id.*)

CadleRock JV asserts that the language of the Agreed Protocol requiring that costs of expert witnesses be paid by the party seeking the deposition is broad and unqualified and, therefore, requires the Sureties to pay for Cadle's deposition time. To the extent that the deposition of an expert witness results in "costs," the Court agrees that the Agreed Protocol unqualifiedly requires the party seeking the deposition to pay those costs. Based on the facts set forth above, however, CadleRock JV has failed to demonstrate that it incurred any legitimate costs for the time Cadle spent testifying at the depositions.

It is clear that the "agreement" between CadleRock JV and Cadle, whatever its terms, was not an arms-length transaction. Cadle is the controlling partner of CadleRock JV and at the time of the alleged agreement, had never before served as an expert witness in litigation. Cadle testified that Gluckner's alleged retention of him required his own approval. The November 15, 2007 check with which Cadle was paid was written by The Cadle Company and signed by Cadle himself. These facts reveal, essentially, that Cadle hired himself. Although CadleRock JV alleges that it reached an oral fee agreement with Cadle in August or September 2006 and Cadle worked for forty hours on expert reports that were completed in January 2007, Cadle did not bill CadleRock JV until September 2007, well after his deposition and when it became clear that the Sureties objected to the fees sought by Cadle.

CadleRock JV has not produced any written fee agreement or any other documentation of its alleged agreement to compensate Cadle, and concedes that it is not known whether a fee agreement was put in writing. Gluckner, who allegedly retained Cadle "with Cadle's blessing," testified that he cannot recall if there was ever a written agreement. According to Cadle's

deposition testimony, Cadle was unsure if a written agreement ever existed. Cadle's memory has apparently improved over time, as in his recent declaration, attached to CadleRock's motion, Cadle testified that the terms of the alleged fee agreement between himself and CadleRock JV were put in writing, but that he "cannot locate the writing because it has been lost, misplaced, or destroyed." (Cadle Decl. ¶ 8.)

Moreover, Cadle's conduct with respect to his expert reports is inconsistent with the existence of a fee agreement. Cadle's expert reports contains no statement regarding compensation. Although Cadle alleges he spent forty hours working on the expert reports, he kept no records of his time. While CadleRock JV concedes these facts, it offers no explanation as to how they may be consistent with the existence of a fee agreement.

In addition to the lack of persuasive evidence of a fee agreement, CadleRock JV's position with regard to its demand for compensation from the Sureties undermines its allegation that it agreed to compensate Cadle as an expert witness. CadleRock JV initially sought compensation from the Sureties for Cadle's deposition time at the rate of $1,000 per hour. CadleRock JV now concedes that a fee based on an hourly rate of $1,000 is unreasonable and asserts that an hourly rate of $500 is reasonable. (Br. in Supp. at 8.) CadleRock JV offers no explanation as to why it would have initially agreed to a fee it now considers to be twice the amount of what it considers a reasonable fee.

CadleRock JV has not shown that it agreed to compensate Cadle for his work as an expert witness and has failed to demonstrate that it incurred any legitimate costs for Cadle's deposition time. Because the Agreed Protocol requires the party requesting a deposition to pay only the costs of the expert's deposition time, the Sureties are not required to pay for the time

Cadle spent being deposed.

**B. Rule 26**

Rule 26 contains several provisions governing expert witness discovery. Rule 26(a)(2), which provides for the disclosure of expert testimony, requires "that a party shall disclose to other parties the identity of any person who may be used at trial to present evidence under Rules 702, 703, or 705 of the Federal Rules of Evidence." Fed. R. Civ. P. 26(a)(2)(A). If the person identified as an expert "is retained or specially employed to provide expert testimony in the case or whose duties as an employee of the party regularly involve giving expert testimony," the disclosure must be accompanied by a report containing, among other things, "the compensation to be paid for the [expert's] study and testimony." Fed. R. Civ. P. 26(a)(2)(B).

Rule 26(b)(4)(A) authorizes the deposition of "any person who has been identified as an expert whose opinions may be presented at trial." Fed. R. Civ. P. 26(b)(4)(A). Finally, Rule 26(b)(4)(C) provides that "[u]nless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision." Fed. R. Civ. P. 26(b)(4)(C).

CadleRock JV argues that Rule 26(b)(4)(C) requires the Sureties to pay Cadle a reasonable fee for his deposition time. The Court disagrees. In light of the fact that Cadle is the controlling partner of CadleRock JV, it would be manifestly unjust to require the Sureties to pay for Cadle's deposition time. Although CadleRock JV is a legal entity distinct from Cadle in form, Cadle controls CadleRock JV. This is clear from the fact that Cadle's designation as an expert witness for CadleRock JV required Cadle's own approval and that the check made out to Cadle and endorsed by Cadle was signed by Cadle himself. Moreover, Cadle's financial

interests are substantially aligned with those of CadleRock JV, as Cadle owns about 40% of CadleRock JV and he and his family together own 60-70% of CadleRock JV.

Under these circumstances, and for all the reasons discussed in Part II.A, above, to require the Sureties to pay Cadle for his deposition time would be manifestly unjust. Although Cadle may be an expert witness as defined by Rule 26, as he "may be used at trial to present evidence under Rule 702, 703, or 705 of the Federal Rules of Evidence," he is also the controlling partner of CadleRock JV. Furthermore, as discussed above, CadleRock JV has not provided any persuasive evidence that it actually incurred any costs for Cadle's deposition time. Accordingly, Rule 26(b)(4)(C) does not require the Sureties to pay for Cadle's deposition time.

### III. Conclusion

CadleRock JV has failed to demonstrate that it incurred any costs for the time Cadle spent being deposed. Accordingly, it is not entitled to compensation from the Sureties under the terms of the Agreed Protocol.

CadleRock JV has also failed to demonstrate that Cadle is entitled to a reasonable fee for his deposition time under Rule 26, as it would be manifestly unjust to require the Sureties to pay Cadle any fee.

For the foregoing reasons, CadleRock JV's motion for payment of expert fees (Doc. No. 2165) is **DENIED**.

**IT IS SO ORDERED**.

                                                        s/ *Nancy A. Vecchiarelli*
                                                       United States Magistrate Judge

Date: April 1, 2008