# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| IN RE: COMMERCIAL MONEY CENTER, INC., EQUIPMENT LEASE LITIGATION | Case No. 1:02CV16000<br><br>(MDL Docket No. 1490)<br><br>JUDGE O'MALLEY<br><br><u>MEMORANDUM OF OPINION AND ORDER</u><br><br>This Order Relates To Case Nos. 02CV16012, 02CV16019, 02CV16020 and 02CV16022 |

This matter is before the Court upon an appeal by CadleRock Joint Venture, L.P. ("CadleRock") from Magistrate Judge Vecchiarelli's denial (Doc. 2171) of CadleRock's motion for payment of the expert fees of Daniel C. Cadle (Doc. 2165). For the reasons set forth herein, CadleRock's appeal is <u>denied</u>, and the decision of the Magistrate Judge is upheld.

## I.    Background

CadleRock is the successor in interest to Sky Bank and First Merit Bank, N.A. Daniel C. Cadle ("Cadle") is the President and 100% shareholder of CadleRock, Inc., which is the sole general partner of CadleRock and holds a 1% ownership interest in CadleRock. Through his ownership interests in various limited partners of CadleRock, Cadle personally holds a 40% interest in CadleRock, and members of his family hold or control an additional 20% to 30% of that entity. Royal Indemnity Company ("Royal") and Safeco Insurance Company of America ("Safeco") are surety companies and are adverse parties to CadleRock in the above-denominated cases ("Sureties").

1

On October 11, 2006, pursuant to the Court's Amended Revised Case Management Plan, CadleRock formally designated Cadle as its expert witness pursuant to Fed. R. Civ. P. 26(a)(4)(C)(i) (Doc. 1882). Subsequent to this designation, all parties to these actions, through their respective liaison counsel, entered into an Agreed Expert Deposition Protocol ("Protocol"). Cadle prepared two expert reports—one relating to the Safeco transactions and the other to the Royal transactions ("Reports"). The Reports contained statements of Cadle's opinions, the data he considered in forming his opinions, and a resume setting forth his qualifications. They omitted, however, any statement of the compensation to be paid to Cadle for preparation of the Reports.

Pursuant to the Protocol, the Sureties deposed Cadle for a total of 26.5 hours. During his deposition, Cadle testified that he was retained by Jon Gluckner, Assistant Vice President of CadleRock, Inc. (with the "blessing" of Cadle himself, as President), and that he was to perform his expert duties outside the scope of his ordinary duties for CadleRock. Cadle also stated that he believed a retainer agreement was prepared and executed; to date, however, that agreement has not been produced. Cadle testified that he would be compensated by CadleRock for his services as an expert, at a rate of "at least" a thousand dollars per hour. Cadle justified this substantial fee, in part, by a reference to the fees charged by other experts in the case, and his assertion that he "know[s] darn well [he's] better than they are."[1]

After completion of his deposition, Cadle sent an invoice to the Sureties, requesting payment of his fee at the rate of $1,000.00 per hour for his time spent in deposition (a total of $26,500.00). In connection with the instant motion, CadleRock also provided a copy of an invoice sent by Cadle to CadleRock, in the amount of $40,000.00, as well as a copy of the check

---

[1] Magistrate Judge Vecchiarelli's opinion (Doc. 2171) contains numerous citations to the deposition testimony of Daniel Cadle, and the Court finds it unnecessary to repeat that testimony verbatim herein.

delivered to Cadle in payment of his expert witness invoice. This payment apparently reflects a request for compensation for the hours spent in preparing the Reports, although Cadle acknowledges that he kept no written records of his time.

The Sureties flatly refused to pay any amount of Cadle's alleged expert witness fees. After counsel exchanged several written communications and participated in two telephone conferences in an unsuccessful attempt to resolve the dispute, CadleRock requested Court intervention.

On February 21, 2008, Magistrate Judge Nancy A. Vecchiarelli conducted a phone conference with counsel for CadleRock and the Sureties. Subsequently, the Magistrate Judge ordered that the parties brief the issues of "(1) whether Mr. Cadle is entitled to any compensation from the Sureties for his time spent in deposition[;] and (2) in the event Mr. Cadle is entitled to some compensation, what fee amount constitutes a reasonable fee. . . ." (Doc. 2162).

On March 6, 2008, CadleRock filed its motion for payment of expert fees (Doc. 2165) and, on March 13, 2008, the Sureties opposed that motion. (Doc. 2166). In its motion, CadleRock conceded that the rate previously demanded in the phone conference with Judge Vecchiarelli—$1,000.00 per hour—was unreasonable, and instead requested that Cadle be compensated at the rate of $500.00 per hour. CadleRock based this position on a comparison with Royal's expert, Frank Bernatowicz, who charged a fee of $600.00 per hour and, according to CadleRock, testified on topics "similar" to those addressed by Cadle. CadleRock arrived at its proposed hourly rate by applying a discount of approximately 18% to the rate charged by Bernatowicz, to account for the statistical difference in living costs between Chicago, Illinois and Cleveland, Ohio. Thus, CadleRock sought a total of $13,250.00 in expert fees.

On April 1, 2008, Magistrate Judge Vecchiarelli issued an opinion denying CadleRock's

motion (Doc. 2171). Judge Vecchiarelli found that, because Cadle was the controlling partner of CadleRock and the alleged retainer agreement between CadleRock and Cadle "was not an arm's-length transaction," CadleRock did not incur any legitimate expert "costs."

Judge Vecchiarelli found, moreover, that "Cadle's conduct with respect to his expert reports [was] inconsistent with the existence of a fee agreement . . . .", and the available evidence belied any assertion that genuine "costs" were incurred. Specifically, Judge Vecchiarelli noted, Cadle (1) was unable to produce a fee agreement; (2) kept no timesheets documenting the time spent on the engagement; (3) did not bill CadleRock for nearly a year after allegedly completing work on his expert reports; and (4) did not receive compensation for his work as an expert until November 15, 2007, two days after the Sureties had declined in writing to pay any expert witness costs. Accordingly, Judge Vecchiarelli held that the Sureties were not required to pay any such costs. Alternatively, Judge Vecchiarelli found that, under Fed. R. Civ. P. 26, it would be "manifestly unjust" to require the Sureties to pay deposition costs for the controlling partner of CadleRock, especially where CadleRock produced insufficient evidence of legitimate costs.

The matter is before the undersigned pursuant to CadleRock's appeal of Judge Vecchiarelli's order. (Doc. 2173). The Sureties have filed a brief in opposition to CadleRock's appeal (Doc. 2189), urging that the Court should uphold the decision of the Magistrate Judge.

## II.  Contentions of the Parties

### A.  Sureties' Position

The Sureties argue that, due to Cadle's position as President of CadleRock and his substantial ownership interest in that entity, Cadle is, for all intents and purposes, a party with a financial interest in the litigation. The Sureties maintain that Cadle's attempt to recover fees

distorts the purposes underlying Fed. R. Civ. P. 26(b)(4)(C), which was not intended to provide a windfall for a party to the action. The Sureties base their position primarily on *In re Kegg*, 116 F.R.D. 643, 645 (N.D. Ohio 1987), and *U.S. Energy Corp. v. Nukem, Inc.*, 163 F.R.D. 344, 347 (D. Colo. 1995). Based on these cases, the Sureties argue that Cadle is not an "expert" within the meaning of Rule 26(b)(4)(C)(i), such that he would be entitled to compensation for time spent in deposition.

In *Kegg*, defendant's expert witness had completed the underlying work while an employee of defendant, but he was not actually deposed until after retirement from his employment. Judge David D. Dowd, Jr. declined to award witness fees, holding that a regular employee of defendant "cannot be considered the type of impartial observer which Rule 26(b)(4)(C)(i) contemplates as an 'expert' entitled to fees for time spent in deposition. . . ." 116 F.R.D. at 645.

*Nukem* (which was decided after the 1993 amendments to the Federal Rules but based almost entirely on the reasoning of the *Kegg* decision) held that plaintiffs' Chief Financial Officer was not entitled to recover expert witness fees. In denying the motion for fees, the Court stated, "[t]hough one be an expert, if his contact with the case is not in his capacity as an impartial observer, but is instead as one going about his duties as a loyal employee, then he 'should be treated as an ordinary witness. . . .'" 163 F.R.D. at 347, *quoting Virginia Electric & Power Co. v. Sun Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397, 407 (E.D. Va. 1975).

Similarly, here, the Sureties assert that Cadle lacks the necessary impartiality to qualify as an "expert" under the provisions of either the Federal Rules or the Protocol. The Sureties argue that awarding fees to an "expert" who is merely a proxy for a party rises to the level of "manifest injustice" and provides an exception to the general rule of expert compensation set

forth in Fed. R. Civ. P. 26(b)(4)(C). The Sureties also dispute CadleRock's contention that the language of the Protocol requires payment of expert fees to Cadle. While the Sureties concede that the Protocol sets forth a standard allocation of costs, they argue that the Protocol does not expand any party's obligations under the Federal Rules and does not serve to broaden the definition of an "expert" entitled to compensation under the Rules.

Additionally, the Sureties assert that Cadle's failure to reveal his compensation prior to his deposition indicates his intent not to receive expert compensation for his services to CadleRock. The Sureties argue that the documents provided in support of Cadle's fee request are simply an "after-the-fact shell game" designed to justify a financial windfall to Cadle. The Sureties point out that Cadle purportedly was retained by an employee of CadleRock who is supervised by Cadle himself. Moreover, the Sureties note that the Reports contain no reference to the fact or terms of Cadle's retention, hourly rate, or the amount of time spent on the Reports. In fact, Cadle did not generate an invoice to CadleRock until after completing his deposition, nearly a year after creating the Reports. The payment check to Cadle, issued by an entity called The Cadle Company, was signed by Cadle himself, and was issued November 15, 2007—two days after Surety counsel refused to pay Cadle's invoice for deposition testimony. According to the Sureties, Cadle is not entitled to compensation for expert testimony provided "on behalf of himself."

The Sureties also maintain that Magistrate Judge Vecchiarelli correctly applied the "manifest injustice" standard set forth in Fed. R. Civ. P. 26(b)(4)(C). The Sureties dispute CadleRock's contention that the "manifest injustice" standard takes into account only economic factors. Rather, the Sureties argue, a court is free to consider any factors it deems appropriate in evaluating the applicability of that standard. *See, e.g., Rogers v. Penland*, 232 F.R.D. 581, 583

(E.D. Tex. 2005)(denying expert fee request where expert failed a *Daubert* challenge and was not called).

Finally, the Sureties argue that even the $500.00 per hour fee now sought by Cadle is unreasonable. The Sureties point out that CadleRock has provided no explanation for changing its position as to the amount of compensation it believes is "reasonable," nor has it provided any support for the $500.00 hourly rate. Rather, the Sureties contend, CadleRock arbitrarily selected one of the Sureties' experts and unilaterally concluded that Cadle's testimony was "similar." The Sureties urge that CadleRock bears the burden of justifying the reasonableness of the fee proposed by its expert, *see Feliciano v. County of Suffolk*, 246 F.R.D. 134, 137 (E.D.N.Y. 2007), and that CadleRock has not met this burden.

**B.     CadleRock's Position**

CadleRock argues that Cadle performed his expert duties outside the scope of his normal duties for CadleRock, and thus that Cadle should be considered "retained or specially employed" within the definition of Fed. R. Civ. P. 26(a)(2)(B). Courts have required such expert employees to produce written reports, in line with the obligations imposed on non-employee experts, *see, e.g., McCulloch v. Hartford Life & Accident Ins. Co.*, 223 F.R.D. 26, 28 (D. Conn. 2004), and CadleRock asserts that such employee experts should be paid reasonable expert fees as well.

In support of its position that Cadle is entitled to compensation from the Sureties for the time spent in deposition as an expert witness, CadleRock relies on the language of the Protocol, as well as Fed. R. Civ. P. 26(b)(4)(C)(i), each of which governs the payment of fees to designated expert witnesses. Paragraph 4 of the Protocol provides:

> Costs of Expert Witnesses. Costs of expert witnesses are to be paid by the party(ies) seeking the deposition. The requesting party(ies) will only be responsible for the time the expert spends testifying and not for his/her travel, preparation or other related

7

costs.

CadleRock argues that the language of this negotiated provision is unconditional, and thus that the Sureties' obligation to pay Cadle is unaffected by Cadle's status as an employee of CadleRock. Moreover, CadleRock contends, the Sureties' decision to proceed with 26.5 hours of deposition questioning of Cadle, and request voluminous disclosure relating to CadleRock's expert witness designation, without revealing their belief that Cadle was not entitled to be compensated under the terms of the Protocol, waived the Sureties' right to contest Cadle's request for fees.

The relevant provision of the Federal Rules states:

> Unless manifest injustice would result, (i) the court shall require that the party seeking discovery pay the expert a reasonable fee for time spent in responding to discovery under this subdivision; and (ii) with respect to discovery obtained under subdivision (b)(4)(B) of this rule the court shall require the party seeking discovery to pay the other party a fair portion of the fees and expenses reasonably incurred by the latter party in obtaining facts and opinions from the expert.

Fed. R. Civ. P. 26(b)(4)(C). CadleRock asserts that this provision, too, imposes a mandatory obligation on the Sureties, subject to relief only under the narrow circumstances representing "manifest injustice."

CadleRock maintains that the expansive definition of "expert" under the Federal Rules necessarily encompasses a witness in Cadle's position. An "expert" under the current version of the Federal Rules of Civil Procedure is defined broadly as ". . . any person who may be used at trial to present evidence under Rules 702, 703 or 705 of the Federal Rules of Evidence. . . ." Fed. R. Civ. P. 26(a)(2)(A). Accordingly, a party may depose "any person who has been identified as an expert whose opinions may be presented at trial. . . ." Fed. R. Civ. P. 26(b)(4)(A).

CadleRock argues that both *Kegg* and *Nukem* were based on interpretations of the Federal

8

Rules prior to the 1993 amendments. The prior version of the Federal Rules defined an "expert" as a "person[] with knowledge or opinions acquired or developed in anticipation of litigation or for trial. . . ." *Hoover v. United States of America*, 2002 WL 1949734, *1 (N.D. Ill. Aug. 22, 2002)(unpublished disposition). CadleRock contends that the current, broader definition renders the *Kegg* and *Nukem* decisions inapplicable.

On appeal, CadleRock argues that the Magistrate Judge improperly ascribed to CadleRock the burden of demonstrating that it had incurred legitimate expert "costs." CadleRock contends that such a requirement is a misreading of the case law and the Protocol, which suggest that the deposing party originally incurs the cost of the expert's fee for testimony. Accordingly, CadleRock maintains, CadleRock should not be required to demonstrate that it actually intended to compensate Cadle for his time spent performing duties as an expert witness. CadleRock asserts, similarly, that the lack of evidence of a legitimate retainer agreement is irrelevant, since CadleRock does not seek to recover any fees for the time spent by Cadle in expert work outside deposition. CadleRock argues, moreover, that all experts—even those experts not "retained" within the meaning of Fed. R. Civ. P. 26—are entitled to a reasonable fee for time spent in deposition.

Additionally, CadleRock contends that Magistrate Judge Vecchiarelli misapplied the narrow "manifest injustice" exception, which is properly limited only to situations presenting financial or economic hardship for one of the parties. *See, e.g., Reed v. Binder*, 165 F.R.D. 424, 427-28 (D.N.J. 1996)(the Court must "[w]eigh the possible hardships imposed on the respective parties . . . and balance the need for doing justice on the merits . . . against the need for maintaining orderly and efficient procedural arrangements. . . ."). Finally, CadleRock argues, Judge Vecchiarelli's ruling conflicts with the policies of Fed. R. Civ. P. 26, which are designed

to shift the costs of discovery to the party seeking such discovery.

## III. Discussion

Pursuant to Fed. R. Civ. P. 72(a) and Local Rule 72.3, this Court must affirm the order of a magistrate judge unless that order is "clearly erroneous or contrary to law." A magistrate judge's "finding is clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . [T]he test is whether there is evidence in the record to support the lower court's finding, and whether its construction of that evidence is a reasonable one. . . ." *JGR, Inc. v. Thomasville Furniture Indus.*, 2006 U.S. Dist. LEXIS 7029, *3-*4 (N.D. Ohio Feb. 24, 2006)(Aldrich, J.)(unpublished disposition), quoting *Heights Community Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985). In determining whether a magistrate judge's decision is contrary to law, the Court reviews that decision under an "abuse of discretion" standard. *See JGR, Inc.*, 2006 U.S. Dist. LEXIS 7029, at *4. A court finds abuse of discretion only where "a [magistrate judge] improperly applies the law or uses an erroneous legal standard." *United States v. Taplin*, 954 F.2d 1256, 1258 (6th Cir. 1992).

Upon a thorough review of the relevant law and Magistrate Judge Vecchiarelli's Order, this Court finds that Magistrate Judge's Vecchiarelli's determination was neither clearly erroneous nor contrary to law. Although there is a dearth of case law governing the precise issues presented here, the Court has concluded that Judge Vecchiarelli appropriately considered the law and the underlying purposes of Fed. R. Civ. P. 26(b)(4)(C). Given the circumstances here and the unique relationship of the purported expert to his retaining party, even the amended version of the Federal Rules does not support a finding that Cadle is an expert entitled to

compensation under the Rules. Moreover, Judge Vecchiarelli did not err in holding that CadleRock failed to demonstrate that any legitimate expert "costs" were incurred.

The Court notes, first, that absent the 1993 amendments to the Federal Rules of Civil Procedure, the *Kegg* decision unquestionably would guide the resolution of this matter. In *Kegg*, a judge in this district found that the expert, a retired employee of defendant, was not sufficiently impartial to qualify as an expert under Fed. R. Civ. P. 26(b)(4)(C) and, as a result, was not entitled to compensation for time spent performing his expert duties. 116 F.R.D. at 644. Relying on *Virginia Electric & Power Co. v Sun Shipbuilding & Dry Dock Co.*, 68 F.R.D. 397, 406 (E.D. Va. 1975), the *Kegg* court stated, "In order to be an expert one must be in a position to testify as an expert and not as a partisan . . . ." *Kegg*, 116 F.R.D. at 644.

CadleRock argues that the 1993 amendments to the Federal Rules, which broadened the definition of an "expert" for purposes of disclosure obligations under Fed. R. Civ. P. 26, superseded the *Kegg* ruling and rendered it inapplicable. The Court disagrees. Although the definition of "expert" set forth in Fed. R. Civ. P. 26(a)(2)(A) no longer is limited to a person whose "knowledge or opinions [were] acquired or developed in anticipation of litigation," the general language of the current definition does not speak to the issue of whether the Court may (or must) consider the legitimacy of a party's designation of an expert witness, or of the purported expert witness costs. Where, as here, the party's designated expert is essentially a proxy for the party itself, the Court declines to find such concerns irrelevant.

Notably, while CadleRock argues that the 1993 amendments changed the analysis in determining whether an individual qualifies as an "expert," the courts apparently have not considered the impact of the Federal Rules amendments on an expert fee motion presenting the type of inequity manifested here. CadleRock has not pointed to any post-amendment cases

11

awarding fees to an "expert" who is, for all practical purposes, substantially identical with a party. The Court finds that, where a party seeks to function as its own expert, in an attempt to obtain payment for undocumented expenses, the Federal Rules permit the Court to decline an award of expert costs that would effectively subsidize one party's litigation efforts.

To the extent the agreed Protocol requires separate analysis, the Court finds that the Protocol also fails to support CadleRock's request for payment of expert fees. The terms of the Protocol, which provide for payment of "costs of expert witnesses," were negotiated against the backdrop of the Federal Rules and presuppose the applicability of the discovery provisions of the Rules. Thus, the Protocol's provision for payment of costs presumes that an individual for whom payment of "costs" is requested qualifies as an "expert" entitled to reimbursement under Fed. R. Civ. P. 26(b)(4)(C). Where a designated individual does not meet that description, no reimbursement obligation can attach.

Even more significantly, Fed. R. Civ. P. 26(a)(2)(B) requires that an expert's report contain a statement of "the compensation to be paid for the study and testimony. . . ." Undisputedly, Cadle's report did not contain this mandatory statement, and thus the Sureties were unaware until the time of Cadle's deposition that Cadle intended to seek compensation for his testimony.

Although CadleRock cites several cases suggesting that deficiencies in an expert report may be "cured" by later production of the required information at deposition, *see, e.g., United States ex rel. O'Connell v. Chapman Univ.*, 245 F.R.D. 652, 655 (C.D. Cal. 2007); *Wechsler v. Hunt Health Sys.*, 2003 U.S. Dist. LEXIS 2589, *4 (S.D.N.Y. Feb. 24, 2003)(unpublished disposition), these cases presented the issue in the context of motions to strike expert testimony. CadleRock has not cited any cases, nor is the Court aware of any, in which an expert omitted a

statement of compensation in a situation analogous to that presented here—where such an omission might reasonably have suggested that no fee was being sought. Here, where Cadle was both an owner and an employee of a party, and drew a substantial salary from his employment with the entity, the Sureties logically could have concluded that their request for a deposition of Cadle did not invoke the reimbursement provisions of the Protocol. Since the Sureties' supposition was reasonable, the Protocol's terms relating to payment of expert fees did not come into play.

CadleRock's motion suggests that the Sureties' extensive deposition questioning of Cadle posed an undue burden, for which Cadle will not be adequately compensated. The length of Cadle's deposition, however, is justified by the context of this case and CadleRock's role in the litigation. First, given the complexity of this dispute, the Court, in conjunction with the parties, developed a discovery mechanism that waived the presumptive 7-hour deposition limit set forth in Fed. R. Civ. P. 30(d)(2), while establishing certain "hours limits" for deposition discovery. (Memorandum & Order, Doc. 221). This approach afforded the parties a degree of flexibility to conduct certain longer depositions, while remaining within overall discovery limits.

Moreover, the 26.5-hour Cadle deposition is understandable, at least to some extent, against the background of Cadle's role as a representative of a party to the action. While such a lengthy deposition of a true "expert" witness—one with no personal knowledge of any fact relevant to the action—might appear unduly burdensome, Cadle is the principal of a major party, which has asserted a number of claims in this action. Thus, the duration of this deposition likely is attributable, at least in part, to Cadle's status as a fact witness.[2]

---

[2] The Court notes briefly that, to the extent Cadle's deposition testimony constituted testimony of a fact witness, awarding expert fees for such testimony also would be inappropriate. Given the Court's resolution of this motion, however, the Court need not consider this issue.

All in all, the Court finds that Cadle is not an "expert" as contemplated by the Federal Rules and is not entitled to compensation under Fed. R. Civ. P. 26(b)(4)(C). Although CadleRock argues that an inquiry into the legitimacy of its retention of Cadle and its intention to compensate Cadle for his expert services is irrelevant to a determination of this motion, the Court disagrees. The attempt here to recover fees from adverse parties for services that may ultimately benefit Cadle in his partisan capacity smacks of deception.

The failure to produce a retainer agreement, coupled with Cadle's casual attitude toward recording his time and CadleRock's changing position regarding the level of compensation that it considered "reasonable," all suggest that CadleRock engaged Cadle as an expert without consideration of any form of compensation apart from Cadle's regular salary. Apparently, only after counsel became aware that the Federal Rules provided for the award of expert fees did CadleRock begin to construct documentation to support a fee award. While the Federal Rules normally award compensation to both retained and non-retained experts, CadleRock's behavior amounts to a backhanded attempt to obtain a windfall from its adversaries, and the proposed result cannot equitably be countenanced.

Even assuming arguendo that CadleRock could establish both Cadle's status as an "expert" and the existence of expert "costs", Judge Vecchiarelli did not err in refusing to permit the recovery of an expert witness fee under Rule 26(b)(4)(C) on the ground of "manifest injustice." The Court rejects CadleRock's effort to limit the "manifest injustice" analysis to a rigid balancing of the parties' financial status. Rather, the Court finds that the inquiry must be flexibly applied in the context of all the circumstances. The circumstances presented here compel the Court to conclude that an award of expert fees would be inequitable.

As noted by the parties, the courts have generated little case law delineating the scope of

the "manifest injustice" standard. Since the completion of briefing in this matter, however, a Federal Circuit decision (on appeal from the Northern District of Illinois), addressed precisely that issue, declining to adopt appellants' position that the "manifest injustice" exception is limited to cases where a party is indigent or undergoing financial hardship. *See Nilssen v. Osram Sylvania, Inc.*, 2008 U.S. App. LEXIS 12696, *20 (Fed. Cir. Jun. 17, 2008)(unpublished disposition). In reaching its determination, the *Nilssen* court stated:

> While we agree with appellants that the Advisory Committee Notes explicitly encourage courts to reverse the presumption of expert fee payments under Rule 26(b)(4)(C) in cases involving an indigent party, it does not follow that the court's discretion in shifting fees is therefore limited to such cases. . . . There is nothing in the familiar understanding of the term "manifest injustice" to suggest that it applies only to indigent parties. Thus, it appears that the Advisory Committee intended "manifest injustice" to encompass traditional notions of trial court discretion.
> . . .

*Nilssen*, 2008 U.S. App. LEXIS 12696, *21-22. Accordingly, the Federal Circuit upheld the refusal of the District Court to award expert witness fees, where appellants had (1) engaged in inequitable conduct before the Patent and Trademark Office, and (2) required the adverse party to take their expert's deposition in Norway. This Court agrees with the Federal Circuit's recitation of the applicable standards. Moreover, this Court finds that similar injustice would be engendered here by requiring the Sureties to subsidize the litigation efforts of their adversary.

Accordingly, for the reasons set forth herein, Judge Vecchiarelli's denial of CadleRock's motion for payment of the expert witness fees of Daniel Cadle was not clearly erroneous and should be upheld.

### IV. Conclusion

For the reasons set forth herein, CadleRock's appeal is <u>denied</u>, and the decision of the

Magistrate Judge is upheld.

**IT IS SO ORDERED.**

<u>s/Kathleen M. O'Malley</u>
**KATHLEEN McDONALD O'MALLEY**
**UNITED STATES DISTRICT JUDGE**

**Dated: July 18, 2008**

58535-1