**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: COMMERCIAL MONEY CENTER, INC., EQUIPMENT LEASE LITIGATION | : : : : : : : : : | Case No. 1:02CV16000<br><br>(MDL Docket No. 1490)<br><br>JUDGE O'MALLEY<br><br><u>MEMORANDUM AND ORDER</u><br><br>This Order Relates to Case No. 02cv16014 |

This matter arises on the Court's own initiative, pursuant to the Court's obligations under 28 U.S.C. § 455 and Canon 3 of the Code of Conduct for United States Judges.

**I. BACKGROUND**

On Thursday, January 21, 2010, the undersigned discovered that, unbeknownst to her or her spouse, her spouse's financial advisors had purchased on his behalf a *de minimus* interest in JPMorgan Chase Bank ("JPMorgan") on April 14, 2009.[1] Realizing that JPMorgan is a party to this litigation, the undersigned immediately divested herself of the interest in JPMorgan and, as of late in the day on January 21, 2010, no longer has any financial interest in JPMorgan.

**II. LEGAL STANDARD**

The above circumstances require the Court to analyze whether the undersigned's brief ownership of a *de minimus* financial interest in JPMorgan requires her to recuse herself from this litigation. *See MDCM Holdings, Inc. v. Credit Suisse First Boston Corp.*, 205 F. Supp. 2d 158, 160 n5 (S.D.N.Y. 2002) ("[E]ven if the parties do not move for recusal, section 455 creates an independent duty requiring federal judges to evaluate in every case whether they should disqualify themselves." (citation omitted)).

---

[1] The value of the interest in JPMorgan was $ 800.00.

In analyzing this question, the Court considers that she has issued no orders impacting JPMorgan during the time that she held this interest, that the Court and the parties have invested substantial resources in this case, that she did not have actual knowledge of her financial interest until yesterday, and that she immediately divested herself of that financial interested upon discovering its existence. *See Union Carbide Corp. v. U.S. Cutting Serv.*, 782 F.2d 710, 714 (7th Cir. 1986) (Posner, J.) (analyzing the relevant ethical cannons and concluding that recusal is not appropriate when the court and parties invest substantial time in litigation, the judge has no knowledge that she holds a financial interest that might cause the appearance of a conflict, and the judge divests herself of that interest upon learning of the conflict); *Perpich v. Cleveland Cliffs Iron Co.*, 927 F. Supp. 226, 234 ( E.D. Mich. 1996) (citing same). Several sources of authority are pertinent to this analysis.

Canon 3 of the Code of Conduct for United States Judges requires that "[a] Judge should perform the duties of the office fairly, impartially and diligently." Codes of Conduct for United States Judges, Canon 3 (July 20, 2009) ("Codes of Conduct"). More specifically, Canon 3C(1)(c) provides as follows in pertinent part:

> (1) A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might be reasonably questioned, including but not limited to instances in which:
> . . .
> > (c) the judge knows that the judge, individually or as a fiduciary, or the judge's spouse . . ., has a financial interest in the subject matter in controversy or in a party to the proceeding, or any other interest that could be affected substantially by the outcome of the proceeding[.]

*Id*.[2] A "financial interest" is defined as "ownership of a legal or equitable interest, however small," and, accordingly, includes ownership of a *de minimus* amount of stock. *Id*. at Canon 3C(3)(c); *see also*

---

[2] The language of 28 U.S.C. § 455(b)(4) mirrors the language of Canon 3C(1)(c).

Federal Judicial Conference Committee on Codes of Conduct ("FJC Committee"), Advisory Opinion No. 20 (June, 2009). Under this authority, any financial interest in a party to the litigation requires disqualification. *See Union Carbide*, 782 F.2d at 714 ("Although the prohibition results in recusal in cases where the interest is too small to sway even the most mercenary judge, occasional silly results may be an acceptable price to pay for a rule that both is straightforward in application and spares the judge from having to make decisions under an uncertain standard apt to be misunderstood.")

There is an important exception to this rule, however. As the FJC Committee clearly explains in Advisory Opinion No. 69, Canon 3C(4) "recognizes that in some instances . . . the disqualification may not exist or be known until after the judge has participated in the case, and addresses the propriety of the judge continuing to sit on such a case[.]" FJC Committee, Advisory Opinion No. 69 (June, 2009); *Union Carbide*, 782 F.2d at 714; *see also Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 862 (1988) ("[T]here is surely room for harmless error committed by busy judges who inadvertently overlook a disqualifying circumstance."); *cf. In re Initial Public Offering Securities Litig.*, 174 F. Supp. 2d 70, 81 (S.D.N.Y. 2001) (Scheindlin, J.), *writ of mandamus denied*, *In re Certain Underwriter Defendants*, 294 F.3d 297 (2d Cir. N.Y. 2002) (Pooler, Sotomayor, Garaufis, JJ.) ("The legislative history of the statute and subsequent case law interpreting the statute show that courts may eliminate disqualifying interests upon being assigned a case and thereby continue to preside."). Canon 3C(4) provides:

> Notwithstanding the preceding provision of this Canon, if a judge to whom a matter has been assigned would be disqualified because of a financial interest in a party (other than an interest that could be substantially affected by the outcome), disqualification is not required if the judge (or the judge's spouse . . .) divests the interest that provides the grounds for the disqualification.

Codes of Conduct, Canon 3C(4). Advisory Opinion No. 69 states that "[i]n a case in which a great deal

3

of time and effort has been invested by the judge, counsel, and the litigants by the time the disqualifying interest came to light, the public interest in the efficient administration of justice would appear to outweigh concern for an appearance that the judge is seeking to continue participation in a particular case." FJC Committee, Advisory Opinion No. 69. Consequently, the Court must evaluate the propriety of continuing to participate in this particular case in light of the nature, duration, and complexity of the case as well as the circumstances of the disqualifying financial interest that has been divested.

**III. ANALYSIS**

The Court concludes that the public interest in the efficient administration of this long-standing, very complex, and substantial litigation outweighs any countervailing concerns regarding an appearance of impropriety now that the undersigned has divested the interest in JPMorgan. *See Union Carbide*, 782 F.2d at 714; *Perpich*, 927 F. Supp. at 234. This is particularly so because the appearance of impropriety is slight: the undersigned had no interest whatsoever in JPMorgan at the time she issued any orders impacting JPMorgan. *Cf. Muchnick v. Thomson Corp*, 509 F.3d 136, 143–44 (2d Cir. 2007) ("[b]efore [I] discovered [I] had a financial interest, [I] could have had no incentive to favor [JPMorgan]; . . . now, when [I] ha[ve] no interest, [I] cannot enrich [myself] by favoring [JPMorgan]." (citing *Union Carbide,* 782 F.2d at 714)).

JPMorgan is a party to this litigation as successor to Bank One, N.A.; JPMorgan acquired Bank One, N.A. in 2004.[3] On April 2, 2009 the Court denied a motion for summary judgment filed by JPMorgan. Since that date, the Court has not issued any orders impacting JPMorgan's involvement in this litigation. Although the Court conducted a status conference during the last week of April 2009,

---

[3] JPMorgan was also a party to this litigation as trustee for Citibank, N.A. Citibank, N.A. was dismissed from the lawsuit on March 31, 2008, however, and has not been involved in this litigation in any way since that date.

4

and conducted a bench trial in July and September of 2009, these proceedings did not involve JPMorgan.[4]

The stock purchase at issue occurred on April 14, 2009, when financial advisors acting on behalf of the undersigned's spouse purchased $ 800.00 worth of stock in JPMorgan. Neither the undersigned's spouse nor the undersigned knew of this purchase when it occurred, and, although it could have been discovered earlier, the undersigned and her spouse did not actually know of its existence until January 21, 2010, in the course of gathering financial data in connection with the Court's yearly obligation to file a Financial Disclosure Statement. Immediately upon learning of its existence, the undersigned's spouse contacted his financial advisors and instructed them to sell the stock immediately. They did so on the afternoon of January 21, 2010.

Accordingly, the undersigned (1) divested herself of the *de minimus* interest in JPMorgan, the company in which she held the disqualifying financial interest, immediately upon learning of its existence and (2) issued no orders involving JPMorgan during the period in which, unbeknownst to her or her spouse, she held a financial interest in that company. The public interest in the undersigned's continued involvement in this litigation is, moreover, substantial. This is an MDL of extraordinary factual and legal complexity. Since 2002, the Court has invested a remarkable amount of time and resources to this case, and the litigation has advanced to the latter stages of dispositive motions, settlements, and trials. At this point, it would take any other judicial officer an inordinate amount of time and effort to educate himself or herself adequately to determine the remaining issues.

---

[4] JPMorgan was among many parties who designated certain expert witnesses who were the subject of *Daubert* hearings in the summer of 2009. The Court has not, to date, issued any rulings with respect to these hearings.

## IV. CONCLUSION

For all of the foregoing reasons, the Court concludes that it is appropriate under 28 U.S.C. § 455(b)(4) and the Codes of Conduct for the undersigned to continue to participate in this litigation and informs the parties that she will do so.

**IT IS SO ORDERED.**

                                                **s/ Kathleen M. O'Malley**
                                                **KATHLEEN McDONALD O'MALLEY**
                                                **UNITED STATES DISTRICT JUDGE**

**DATED: January 25, 2010**