**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| IN RE: COMMERCIAL MONEY CENTER, INC., EQUIPMENT LEASE LITIGATION | ) ) ) ) ) ) ) ) ) | CASE NO.   1:02cv16000 (MDL Docket) <br><br> JUDGE KATHLEEN M. O'MALLEY <br><br> MAGISTRATE JUDGE VECCHIARELLI <br><br> **ORDER** <br> DOC. NO. 2441 |

This matter is before the magistrate judge on referral. Before the court is the motion of Royal Indemnity Company ("Royal Indemnity") to reopen the deposition of Harold Gewerter (""Gewerter"). Doc. No. 2441. Safeco Insurance Company of America ("Safeco"; collectively, "plaintiffs" or "movants") joins Royal Indemnity in its motion. Doc. No. 2444. Defendant Cadlerock Joint Venture, L.P. ("Cadlerock") opposes Royal Indemnity's motion. Doc. No. 2446. The Guardian entities[1] join Cadlerock in opposing the motion (collectively "defendants"). Doc. No. 2447. For the reasons given below, Royal Indemnity's motion is GRANTED.

---

[1] The Guardian entities consist of Guardian Shield Holdings, Ltd.; Guardian Advisor Corporation; Guardian Financial Group, LLC; Guardian Investment Group 1, Ltd.; Guardian Capital, LLC; Guardian Capital I, LLC; Guardian Capital II, LLC; Guardian Capital III, LLC; Guardian Capital IV, LLC; Guardian Capital V, LLC; Guardian Capital VI, LLC; Guardian Capital VII, LLC; Guardian Capital VIII, LLC; Guardian Capital IX, LLC; Guardian Capital XIV, LLC; Guardian Capital XVI, LLC; Guardian Capital XVII, LLC; and Guardian Capital XVIII, LLC.

I.

The parties allege or do not deny the following facts. Gewerter served as legal counsel for Commercial Money Center, Inc. ("CMC"), first as outside counsel then as in-house corporate counsel. As in-house counsel, he worked closely with the principals controlling CMC, Mark Fisher, Ron Fisher ("R. Fisher"), and Wayne Pirtle ("Pirtie") (collectively, "the CMC principals").

A group of defendants deposed Gewerter on January 12-13, 2004. The trustee in the bankruptcy of CMC repeatedly asserted attorney-client privilege during the deposition, preventing Gewerter from answering many of the questions posed to him. Gewerter testified in relevant part as follows:

> What I learned, just so everyone understands thus, is after the litigation was commenced in San Diego with the four sureties, that's when I actually learned what was or was not going on with CMC.
> That was—I remember being, the sureties got an ex parte TRO, it was on a Friday, I found out about it the following day, on a Saturday, I got a panic phone call . . . Then we had to find out there was an ex parte application granted by the court in San Diego.
> And that's when I sat down afterwards with all the principals of CMC, and I did my own, I would say, major inquiry of what was true and what was not true.

Excerpts from the Deposition of Gewerter ("Gewerter Depo."), Declaration of John Grossbart ("Grossbart Decl."), Doc. No. 2443, Exh. A, p. 179. At the conclusion of his discussion, Gewerter testified that his "wealth of . . . knowledge . . . multiplied one thousand fold if not more . . . ." *Id.* at 535.

During the deposition, after the attorney-client privilege had been asserted a number of times, the trustee's counsel proposed the following:

> I think that a more efficient way to [take the deposition] is to recognize that we're asserting the privilege[;] if and when it is ever waived, Mr. Gewerter's deposition can be reopened, but you know that we're going to assert the privilege.

2

> You know he is going to abide by it; so just ask questions you do not think are calling for privileged information.

*Id.* at 343. The parties then went off the record, agreed to a stipulation, then returned to the record. Counsels for the defendants listed various kinds of information about which they intended to question Gewerter regarding fraud or wrongdoing at CMC, and counsel for the trustee stipulated that he would assert attorney-client privilege in response to any such questions. *Id.* at 344-49.

On May 31, 2005, the court presiding over the bankruptcy of CMC approved and accepted the trustee's waiver of attorney-client and work product privileges for CMC and its wholly-owned subsidiary, Commercial Servicing Corp. for the entire period prior to those entities' filing for bankruptcy protection.

Subsequently, criminal proceedings were initiated against the CMC principals. In the course of those proceedings, the CMC principals asserted that Gewerter had represented them as individuals and could not testify against them unless they waived attorney-client privilege, which they refused to do. In a motion to the court opposing this position, the United States Attorney revealed the following:

> Gewerter informed the agents that each of the defendants pled mea culpa to him about the fraud at CMC and that he had other significant information including the destruction of CMC computer evidence. Gewerter further explained to the agents that in February or March of 2002, he confronted all of the "players" involved with CMC regarding what actually took place. . . . He first confronted Defendant Pirtle and then confronted Defendant R. Fisher and Defendant M. Fisher a day or two later. Gewerter said that all of them pled mea culpa with a complete 180 degree turn on what was being told to everyone.

Grossbart Decl., Memorandum of Points and Authorities in Support of United States' Motion for an Order Regarding the Waiver of Privileges Related to Former Commercial Money Center Counsel Harold Gewerter, *United States v. Pirtle et al*, 06-CR-1806-W (S.D.

Cal. April 21, 2008), Exh. D, p. 7. On September 2, 2008, the District Court for the Southern District of California ruled that the CMC principals had enjoyed no personal representation by Gewerter separable from CMC, that CMC held the attorney-client privilege related to that representation, and that the bankruptcy trustee had waived the privilege. For these reasons, the court held, the CMC principals could not assert attorney-client or work-product privilege regarding what they had told Gewerter. R. Pirtie and Fisher later pleaded guilty to federal criminal charges related to CMC's operations.

Counsel for Safeco began investigating the possibility of reopening the Gewerter deposition after he learned of the criminal court's September 2, 2008 decision. On January 15, 2009, and on subsequent occasions, the Assistant United States' Attorneys ("AUSA") prosecuting the CMC principals asked the attorney for Safeco to delay deposing Gewerter. Eventually, the AUSA asked attorneys involved in several civil actions against the CMC principals to delay deposing Gewerter until the CMC principals had been sentenced. Gewerter also asserted, upon advice of the AUSA, that he would assert the Fifth Amendment privilege against self-incrimination in any civil deposition until the criminal action against the CMC principals was fully resolved. The last of the CMC principals is currently scheduled to be sentenced on March 22, 2010.

Plaintiffs Royal Indemnity and Safeco moved on December 1, 2009 to reopen discovery for the limited purpose of re-deposing Gewerter regarding what the CMC principals told him about their fraud. Cadlerock and the Guardian entities oppose the motion as untimely and as seeking unnecessary information.[2]

---

[2] Cadlerock also objects, apparently, because only some of the information that Royal Indemnity and Safeco are likely to obtain from the deposition would be admissible.

II.

District courts have broad discretion over the conduct of discovery. *Trepel v. Roadway Express, Inc.,* 194 F.3d 708 (6th Cir.1999). However, Fed. R. Civ. P. 16(b)(4) provides that a discovery schedule may be "modified only for good cause . . . ." In the Sixth Circuit, courts establish good cause by determining whether the party requesting reopening has been guilty of dilatory conduct. *Vance v. United States,* 90 F.3d 1145, 1149-50 (6th Cir. 1996). Courts also examine whether the requested discovery is relevant, whether the movant is likely to be prejudiced if the motion were denied, and whether the party opposing the motion would be prejudiced by reopening. *Id.*; *see also U.S. Diamond & Gold v. Julius Klein Diamonds, LLC*, 2008 WL 2977891, at *11 (S.D. Ohio July 29, 2008). A motion to reopen may properly be granted even when a court is considering a pending motion for summary judgment. *Emmons v. McLaughlin*, 874 F.2d 351 (6th Cir. 1989).

Examination of the affidavits and exhibits submitted by counsel for Safeco and Royal Indemnity reveals that counsel have not been dilatory in requesting a reopening of Gewerter's deposition. *See also* Doc. Nos. 2453, 2454. Gewerter asserted attorney-client privilege with regard to his conversations with the CMC principals when he was first deposed. The trustee in bankruptcy who held the privilege did not waive it until May 31, 2005. It was not until April 21, 2008 that pleadings in the criminal case against the CMC principals disclosed that the CMC principals had revealed to Gewerter evidence of fraud at CMC and that computer evidence had been destroyed. The criminal court ruled on September 2, 2008 that the CMC principals enjoyed no personal representation by

---

*See* Cadlerock Opposition Brief at 4-5. The court fails to understand Cadlerock's grounds for believing that this constitutes a sufficient reason for preventing discovery.

5

Gewerter separable from CMC and that the bankruptcy trustee had waived the only attorney-client privilege relevant to Gewerter and fraud at CMC. By January 15, 2009, the AUSA had asked Safeco to delay deposing Gewerter. The requested delay will not end until March 22, 2010, when the last of the CMC principals is sentenced. Based on these facts, Royal Indemnity and Safeco have not been in any way dilatory by waiting until December 1, 2009 to request a reopening of the Gewerter deposition.

As regards relevancy, defendants did not object to the requested deposition testimony on the grounds of relevancy when it was first posed. Rather, defendants asserted attorney-client privilege and assured plaintiffs that the deposition could be reopened if the privilege were waived. Defendants have waived, therefore, any argument that the requested deposition testimony regarding statements made by the CMC principals regarding their fraud is not relevant. Indeed, any such argument would be pointless. Royal Indemnity and Safeco contend that they were fraudulently induced to participate in the CMC lease program by knowingly false assurances and documentation from the CMC principals that the leases in the pool were current. The confessions of the CMC principals regarding their fraud is clearly relevant

The guilty pleas of two of the CMC principals truncated the development of evidence of fraud at CMC in the criminal cases against the CMC principals. Thus, it is likely that the full extent of the fraud at CMC will not be revealed without testimony by Gewerter regarding the confessions of the CMC principals. For this reason, Royal Indemnity and Safeco may well be prejudiced if they do not obtain additional testimony from Gewerter about his knowledge of CMC's fraud.

Finally, Cadlerock and the Guardian entities have not shown that they would be

6

prejudiced by reopening the Gewerter deposition.

III.

Movants have not been dilatory in seeking a reopening of the Gewerter deposition, and the information they seek is relevant to these cases. Movants would likely be prejudiced if the deposition were not reopened, and defendants fail to show that reopening of the deposition would prejudice them. For these reasons, discovery is reopened after March 22, 2010 for the limited purpose of allowing Royal Indemnity and Safeco to continue the deposition of Gewerter regarding what he knows about CMC's fraud.

**IT IS SO ORDERED.**


Date: March 11, 2010                      s/ *Nancy A. Vecchiarelli*
                                                         United States Magistrate Judge